1   LATHAM & WATKINS LLP
    Daniel P. Brunton (Bar No. 218615)
2   12670 High Bluff Drive
    San Diego, CA 92130
3   Tel.: (858) 523-5400
    Fax: (858) 523-5450
4   Email: daniel.brunton@lw.com

5   Janice M. Schneider
    (*Pro Hac Vice Pending*)
6   Devin M. O'Connor
    (*Pro Hac Vice Pending*)
7   555 Eleventh Street, NW, Suite 1000
    Washington, D.C. 20004-1304
8   Tel.: (202) 637-2200
    Fax: (202) 637-2201
9   Email: janice.schneider@lw.com
    Email: devin.o'connor@lw.com
10

11  *Attorneys for Proposed Intervenor-Defendant*
    *Sable Offshore Corp.*
12

13                    UNITED STATES DISTRICT COURT

14                    CENTRAL DISTRICT OF CALIFORNIA

15                          WESTERN DIVISION

16

17  CENTER FOR BIOLOGICAL              CASE NO. 2:24-cv-05459-FMO-MAA
    DIVERSITY; WISHTOYO
18  FOUNDATION,                        **SABLE OFFSHORE CORP.'S**
                                       **MEMORANDUM OF POINTS AND**
19            Plaintiffs,              **AUTHORITIES IN SUPPORT OF**
                                       **MOTION TO INTERVENE**
20       v.

21  DEBRA HAALAND, Secretary of the    <u>Hearing</u>
    U.S. Department of the Interior;   Date: November 14, 2024
22  BUREAU OF SAFETY AND               Time: 10:00 a.m.
    ENVIRONMENTAL                      Judge: Hon. Fernando M. Olguin
23  ENFORCEMENT; BRUCE HESSON,         Courtroom: 6D
    Pacific Regional Director, Bureau of
24  Safety and Environmental
    Enforcement,
25
              Defendants.
26

27

28

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN DIEGO

1

CASE NO. 2:24-cv-05459-FMO-MAA
SABLE'S MEMORANDUM IN SUPPORT OF
MOTION TO INTERVENE

1

## <u>TABLE OF CONTENTS</u>

2
**Page**

3
I.     INTRODUCTION ....................................................................................... 5

4
II.    BACKGROUND .......................................................................................... 6

5

6
       A.    The Santa Ynez Unit Has Historically Been a Strong
             Producer of Oil and Gas ................................................................. 6

7
       B.    Sable Purchased the Santa Ynez Unit Assets from EM
             and Has Significant Protectable Interests Related to the
8            Subject of This Action .................................................................... 7

9
III.   ARGUMENT ............................................................................................... 8

10
       A.    Sable Is Entitled to Intervention as a Matter of Right ...................... 8

11
             1.    Sable's Intervention Motion Is Timely .................................. 10

12
             2.    Sable Has Significant Protectable Interests Related
                   to the Subject of This Action ................................................. 10

13
             3.    Sable's Ability to Protect Its Interests Would Be
14                 Impaired by a Decision in Plaintiffs' Favor .......................... 11

15
             4.    Existing Parties Will Not Adequately Represent
                   Sable's Interests .................................................................... 13

16
       B.    Alternatively, This Court Should Grant Permissive
17           Intervention ................................................................................... 15

18
IV.    CONCLUSION ......................................................................................... 15

19

20

21

22

23

24

25

26

27

28

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN DIEGO

2

CASE NO. 2:24-cv-05459-FMO-MAA
SABLE'S MEMORANDUM IN SUPPORT OF
MOTION TO INTERVENE

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

## CASES

*Allco Renewable Energy Ltd. v. Haaland*,
No. 1:21-CV-11171-IT, 2022 WL 18033002 (D. Mass. Jan. 7,
2022), *aff'd sub nom. Melone v. Coit*, 100 F.4th 21 (1st Cir. 2024)...................9

*Arakaki v. Cayetano*,
324 F.3d 1078 (9th Cir. 2003)...............................................................13

*Citizens for Balanced Use v. Montana Wilderness Ass'n*,
647 F.3d 893 (9th Cir. 2011)...........................................................10, 12, 13, 14

*Defs. of Wildlife v. Bureau of Ocean Energy Mgmt.*,
No. 10-0254-WS-C, 2010 WL 5139101 (S.D. Ala. Dec. 9, 2010)...................14

*Env't Defense Center v. Bureau of Safety and Env't Enforcement*,
No. 2:14-cv-09281, 2015 WL 12734012 (C.D. Cal. Apr. 2, 2015).........9, 11, 12

*Friends of Earth v. Haaland*,
No. CV 21-2317 (RC), 2021 WL 5865386 (D.D.C. Dec. 11, 2021) ..................9

*Montana Wildlife Fed'n v. Haaland*,
No. 20-35793, 2022 WL 42794 (9th Cir. Jan. 5, 2022) ...................................13

*S. Utah Wilderness All. v. United States Dep't of the Interior*,
No. 2:23-CV-00804-TC-DBP, 2024 WL 2111755 (D. Utah May
10, 2024)......................................................................................................11

*Sequoia ForestKeeper v. Price*,
2017 WL 56655 (E.D. Cal. Jan. 5, 2017).........................................................14

*Sequoia ForestKeeper v. Watson*,
2017 WL 4310257 (E.D. Cal. Sept. 28, 2017)..................................9, 10, 11, 14

*Sierra Club v. EPA*,
995 F.2d 1478 (9th Cir. 1993).............................................................................9

*Sw. Ctr. For Biological Diversity v. Berg*,
268 F.3d 810 (9th Cir. 2001).................................................................9, 11, 14

LATHAM&WATKINSLLP
ATTORNEYS AT LAW
SAN DIEGO

CASE NO. 2:24-cv-05459-FMO-MAA
SABLE'S MEMORANDUM IN SUPPORT OF
MOTION TO INTERVENE

*Trbovich v. United Mine Workers*,
    404 U.S. 528 (1972) ................................................................................. 13

*W. Watersheds Project v. Haaland*,
    22 F.4th 828 (9th Cir. 2022) .................................................................. 13

*Wildearth Guardians v. Jewell*,
    No. 2:16-CV-00168-DN, 2016 WL 4133533 (D. Utah Aug. 3,
    2016) ........................................................................................................ 12

*Wilderness Society v. U.S. Forest Service*,
    630 F.3d 1173 (9th Cir. 2011) (en banc) ................................. 8, 9, 10, 12

**STATUTES**

5 U.S.C. § 551(8) ....................................................................................... 11

**RULES**

Fed. R. Civ. P.
    24 ............................................................................................................ 12
    24(a)(2) .................................................................. 5, 8, 9, 10, 11, 13, 14
    24(b) .................................................................................................. 6, 15
    24(b)(1)(B) .............................................................................................. 15
    24(b)(3) ................................................................................................... 15
    24(c) ......................................................................................................... 6

L.R. 7-3 ................................................................................................. 6, 7, 8

LATHAM&WATKINSLLP
ATTORNEYS AT LAW
SAN DIEGO

4

CASE NO. 2:24-cv-05459-FMO-MAA
SABLE'S MEMORANDUM IN SUPPORT OF
MOTION TO INTERVENE

I.     INTRODUCTION

Proposed Intervenor-Defendant Sable Offshore Corp. ("Sable") is an independent oil and gas company headquartered in Houston, Texas.  Sable is the new owner of three offshore oil platforms in the Santa Ynez Unit, located in federal waters north of Santa Barbara, California—including the 16 oil and gas leases that Plaintiffs challenge here.

The leases were in active production since mid-2015, when the oil and gas operations at the Santa Ynez Unit were shut down as a result of the onshore Plains All American Pipeline leak during prior ownership of that facility.  Since then, the Bureau of Safety and Environmental Enforcement ("BSEE") has authorized extensions to resume operations on the 16 offshore oil and gas leases in the Santa Ynez Unit to maintain the status quo, with the most recent authorization occurring on November 14, 2023 ("2023 Extension").

Sable purchased the Santa Ynez Unit assets in 2022 and has been diligently investing in and upgrading the facilities, as appropriate, to facilitate a restart of operations.  Sable has committed close to $1 billion to date associated with the purchase, repair, maintenance, and upgrades of these assets.  Although BSEE has annually granted extensions to resume operations since 2016 after the wells were shut-in, Plaintiffs allege that BSEE's 2023 Extension violates the Outer Continental Shelf Lands Act and the National Environmental Policy Act ("NEPA") and seek to have that extension vacated.  As the leaseholder and owner and operator of the Santa Ynez Unit assets, Sable has significant property, economic, and contractual interests in this action which could be impaired if Plaintiffs prevail and which can only be protected through Sable's intervention in this action.

Sable respectfully requests that the Court grant this motion to permit Sable to intervene as a defendant in this action as of right because it meets the requirements of Federal Rule of Civil Procedure 24(a)(2).  Sable's motion is timely, Sable has significant, legally protectable interests at stake in this action,

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN DIEGO

1   and a decision in Plaintiffs' favor in this action could significantly impair its

2   interests given that Plaintiffs seek vacatur of the 2023 Extension.  Finally, Sable's

3   unique, private interests in the 2023 Extension is not adequately represented by the

4   Federal Defendants in this action.  Under Ninth Circuit precedent, Sable as an oil-

5   and-gas lessee plainly meets the requirements to intervene as of right in a lawsuit

6   that challenges its leases.  Alternatively, the Court should grant Sable permissive

7   intervention under Federal Rule of Civil Procedure 24(b) because Sable also

8   satisfies those requirements.[1]

9        This motion is made following the conference of counsel pursuant to L.R. 7-

10  3 which took place on October 9, 2024.  The Federal Defendants take no position

11  on Sable's intervention.  The Plaintiffs have not yet provided a position.

12  **II.    BACKGROUND**

13       **A.    The Santa Ynez Unit Has Historically Been a Strong Producer of**

14              **Oil and Gas**

15       Sable is an independent oil and gas company focused on responsibly

16  developing the Santa Ynez Unit in federal waters offshore California.  *See*

17  Declaration of Steve Rusch in support of Motion to Intervene ("Rusch Decl.") ¶ 2.

18  The Santa Ynez Unit consists of 16 leases issued by the federal government

19  between 1968 and 1982, including three offshore oil platforms located five to nine

20  miles offshore in federal waters north of Santa Barbara, California, as well as

21  related pipelines and 112 wells.  *Id.* ¶ 3.  These assets were previously owned by

22  Exxon Mobil Corporation ("Exxon") and Mobil Pacific Pipeline Company

23  ("MPPC," and together with Exxon, "EM").  *Id.*  Between 1981 and 2014, the

24  Santa Ynez Unit produced over 671 million of barrels of oil.  *Id.* ¶ 4.  In 2014, the

25  Santa Ynez Unit averaged production of about 29,000 barrels of oil per day.  *Id.*

26

27

28  [1] In accordance with Federal Rule of Civil Procedure 24(c), Sable has lodged a
    proposed answer concurrently with this motion.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN DIEGO

6

CASE NO. 2:24-cv-05459-FMO-MAA
SABLE'S MEMORANDUM IN SUPPORT OF
MOTION TO INTERVENE

1    Oil and gas produced from various platforms, including those within the
2  Santa Ynez Unit, were pumped onshore to the Las Flores facility and then
3  eventually entered two onshore pipelines operated by Plains All American
4  Pipeline, L.P. ("Plains").  *Id.* ¶ 5.  One of the Plains pipelines experienced a leak,
5  and, as a result, oil and gas production in the Santa Ynez Unit was shut down in
6  mid-2015 until those onshore pipeline repairs are complete.  *Id.*  Exxon continued
7  to maintain the facilities until November 2022, when EM purchased the Plains
8  pipelines, and ultimately sold the Santa Ynez Unit and related pipeline assets to
9  Sable.  *Id.*  The Santa Ynez Unit offshore facilities are not currently producing oil
10  and gas; however, all equipment is in a near operation-ready state, with ongoing
11  function and pressure testing, inspections, upgrading and maintenance.  *Id.* ¶ 6.

12    **B.    Sable Purchased the Santa Ynez Unit Assets from EM and Has**
13    **Significant Protectable Interests Related to the Subject of This**
14    **Action**

15    On November 1, 2022, Sable entered into a purchase and sale agreement
16  with EM under which Sable agreed to acquire from EM the leases and other assets
17  constituting the Santa Ynez Unit in federal waters offshore California and the
18  associated onshore processing and pipeline assets (the "Purchase Agreement").  *Id.*
19  ¶ 8. On February 14, 2024, Sable consummated the Purchase Agreement.  *Id.*
20  That same day, Exxon assigned the 16 leases to Sable and on May 21, 2024, the
21  Bureau of Ocean Energy Management approved all 16 assignments.  *Id.*  As such,
22  Sable is the current leaseholder of the 16 leases Plaintiffs challenge in this action.
23  *Id.*  The onshore facilities included in the Purchase Agreement are not within
24  BSEE's jurisdiction.

25    Since acquisition of the assets, Sable has been diligently investing in and
26  upgrading the facilities to facilitate a restart of operations.  *Id.* ¶¶ 9, 10.  Contrary
27  to Plaintiffs' allegations, the offshore assets are well maintained and in good
28  operational order.  *Id.* ¶ 10.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN DIEGO

7

CASE NO. 2:24-cv-05459-FMO-MAA
SABLE'S MEMORANDUM IN SUPPORT OF
MOTION TO INTERVENE

1    Although not within federal jurisdiction or at issue in this lawsuit, Sable has

2    also worked diligently to repair and upgrade the onshore pipelines. *Id.* ¶ 11.  Sable

3    became a party to and agreed to assume compliance with the requirements

4    (including pipeline safety requirements) of the 2020 Consent Decree between

5    Plains and Federal and State Governments that resolved all regulatory claims

6    related to the pipeline leak incident and provides a path forward for potential

7    restart of the offshore pipelines. *Id.*

8    Since the close of the Purchase Agreement, Sable's geoscience and reservoir

9    engineering management team has been evaluating reservoir development

10   opportunities. *Id.* ¶ 12.  Sable has identified over one hundred additional infill

11   development and step-out opportunities across the leasehold. *Id.* ¶ 13.  Sable

12   estimates that over 1 billion barrels of oil are still recoverable from the Santa Ynez

13   Unit, which represents nearly $10 billion in net contingent resources overall. *Id.*

14   Since it acquired the Santa Ynez Unit Assets, Sable has committed close to

15   $1 billion associated with the purchase, repair, maintenance and upgrades of the

16   assets. *Id.* ¶ 9.

17   **III.   ARGUMENT**

18       **A.    Sable Is Entitled to Intervention as a Matter of Right**

19       Under Federal Rule of Civil Procedure 24(a)(2), "[o]n timely motion, the

20   court must permit anyone to intervene who . . . claims an interest relating to the

21   property or transaction that is the subject of the action, and is so situated that

22   disposing of the action may as a practical matter impair or impede the movant's

23   ability to protect its interest, unless existing parties adequately represent that

24   interest."  In *Wilderness Society v. U.S. Forest Service*, the Ninth Circuit overruled

25   prior precedent and affirmed that intervention as of right shall be granted whenever

26   the elements of Rule 24(a)(2) are met, including in NEPA cases in defense of

27   federal agency actions.  630 F.3d 1173, 1180 (9th Cir. 2011) (en banc).

28

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN DIEGO

8

CASE NO. 2:24-cv-05459-FMO-MAA
SABLE'S MEMORANDUM IN SUPPORT OF
MOTION TO INTERVENE

1    In determining whether an applicant meets the requirements of Rule
2    24(a)(2), district courts in the Ninth Circuit apply a four-part test: "(1) the motion
3    must be timely; (2) the applicant must claim a 'significantly protectable' interest
4    relating to the property or transaction which is the subject of the action; (3) the
5    applicant must be so situated that the disposition of the action may as a practical
6    matter impair or impede its ability to protect that interest; and (4) the applicant's
7    interest must be inadequately represented by the parties to the action." *Id.* at 1177
8    (quoting *Sierra Club v. EPA*, 995 F.2d 1478, 1481 (9th Cir. 1993)); *see also*
9    *Friends of Earth v. Haaland,* No. CV 21-2317 (RC), 2021 WL 5865386, at *4
10   (D.D.C. Dec. 11, 2021) (granting intervention to trade group of oil-and-gas
11   companies in lawsuit challenging offshore oil-and-gas leases under NEPA);
12   *Sequoia ForestKeeper v. Watson*, 2017 WL 4310257, at *1–*3 (E.D. Cal. Sept. 28,
13   2017) (applying four-part test and granting intervention in NEPA case); *Allco*
14   *Renewable Energy Ltd. v. Haaland*, No. 1:21-CV-11171-IT, 2022 WL 18033002,
15   at *3–*6 (D. Mass. Jan. 7, 2022), *aff'd sub nom. Melone v. Coit*, 100 F.4th 21 (1st
16   Cir. 2024) (granting intervention of BOEM offshore wind lessee under OCSLA in
17   case alleging violation of environmental statutes including NEPA and OCSLA).
18   When deciding motions to intervene, courts must apply "[a] liberal policy in
19   favor of intervention," *Wilderness Soc'y*, 630 F.3d at 1179 (citation omitted),
20   "guided primarily by practical considerations, not technical distinctions," *Sw. Ctr.*
21   *For Biological Diversity v. Berg*, 268 F.3d 810, 818 (9th Cir. 2001) (citation
22   omitted).
23   In *Environmental Defense Center v. Bureau of Safety and Environmental*
24   *Enforcement*, No. 2:14-cv-09281, 2015 WL 12734012, at *3–4 (C.D. Cal. Apr. 2,
25   2015), this Court granted intervention as of right to both Exxon and a trade
26   association in a lawsuit challenging on NEPA grounds BSEE approvals for permits
27   to drill and permits to modify certain offshore oil and gas activities.  The Court
28   found that Exxon as the then leaseholder and operator had sufficient personal

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN DIEGO

9

CASE NO. 2:24-cv-05459-FMO-MAA
SABLE'S MEMORANDUM IN SUPPORT OF
MOTION TO INTERVENE

1  financial interest that could be impaired by plaintiffs' requested relief.  For the

2  same reasons, Sable is entitled to intervention as of right for all purposes in this

3  action.

4  1.    <u>Sable's Intervention Motion Is Timely</u>

5  The "traditional features" of a timely intervention motion are that the motion

6  "was made at an early stage of the proceedings, the parties would not have suffered

7  prejudice from the grant of intervention at that early stage, and intervention would

8  not cause disruption or delay in the proceedings." *Citizens for Balanced Use v.*

9  *Montana Wilderness Ass'n*, 647 F.3d 893, 897 (9th Cir. 2011).  Sable is filing this

10  motion approximately 3.5 months after Plaintiffs filed the Complaint on June 27,

11  2024, and before the administrative record is served and any briefing has taken

12  place in this case.  Sable is prepared to meet the schedule set forth in the Court's

13  Case Management Order, Dkt. 17.  As a result, the parties in this case will not be

14  prejudiced by Sable's intervention at this early stage.  *See, e.g.*, *Watson*, 2017 WL

15  4310257, at *2 (motion to intervene timely filed eight months after complaint and

16  after initial scheduling conference).  Sable's motion to intervene in this case is

17  therefore timely.

18  2.    <u>Sable Has Significant Protectable Interests Related to the</u>

19  <u>Subject of This Action</u>

20  Under Rule 24(a)(2), to determine whether a proposed intervenor has a

21  "significantly protectable" interest in the subject of the action, "the operative

22  inquiry [is] whether the 'interest is protectable under some law' and whether 'there

23  is a relationship between the legally protected interest and the claims at issue.'"

24  *Wilderness Soc'y*, 630 F.3d at 1180–81.  Sable has significant protectable property,

25  economic and contractual interests that are related to the subject of this action.

26  Plaintiffs specifically challenge BSEE's decision to authorize extensions to resume

27  operations on Sable's offshore oil and gas leases in the Santa Ynez Unit.  Compl.

28  ¶¶ 1, 57, Dkt. 1.  The Santa Ynez Unit leases issued by the federal government are

10    CASE NO. 2:24-cv-05459-FMO-MAA
SABLE'S MEMORANDUM IN SUPPORT OF
MOTION TO INTERVENE
LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN DIEGO

1  legally protectable "license[s]" under the Administrative Procedure Act.  5 U.S.C.

2  § 551(8) ("'[L]icense' includes the whole or a part of an agency permit, certificate,

3  approval, registration . . . or other form of permission").  Furthermore, since

4  acquisition of the assets, Sable has been diligently investing in and upgrading the

5  facilities, as appropriate, to facilitate a restart of production.  Rusch Decl. ¶ 10.  To

6  date, Sable has obligated close to $1 billion associated with the purchase, repair,

7  maintenance and upgrades of the Santa Ynez Unit assets.  *Id.* ¶ 9.

8       Courts routinely find that Rule 24(a)(2) recognizes and protects interests of

9  this nature.  *See, e.g.*, *S. Utah Wilderness All. v. United States Dep't of the Interior*,

10  No. 2:23-CV-00804-TC-DBP, 2024 WL 2111755, at *3 (D. Utah May 10, 2024)

11  (holder of oil-and-gas leases was entitled to intervene in suit challenging leases

12  under NEPA and Endangered Species Act; owning challenged leases "alone" was

13  sufficient to satisfy burden significant protectable interest prong of intervention

14  standard); *Sw. Ctr. for Biological Diversity*, 268 F.3d at 820–21 (finding proposed

15  intervenor had a protectable interest where lawsuit implicated "projects that are in

16  the pipeline for design and mitigation . . . and approval" because "[c]ontract rights

17  are traditionally protectable interests"); *Env't Def. Ctr.*, 2015 WL 12734012, at *3

18  (finding proposed intervenor Exxon's "personal financial interest" in the Santa

19  Ynez Unit a significantly protectable interest because it "invested significant

20  resources in obtaining" permits); *Watson*, 2017 WL 4310257, at *2 (holding

21  proposed intervenor had protectable interest in NEPA action where intervenor

22  possessed contracts to implement projects that were subject of litigation).  Sable

23  has clearly cognizable, protectable interests relating to the challenged BSEE 2023

24  Extension in this case.

25       3.    <u>Sable's Ability to Protect Its Interests Would Be Impaired by a</u>

26              <u>Decision in Plaintiffs' Favor</u>

27       Under the third element of the Rule 24(a)(2) inquiry, "[i]f an absentee would

28  be substantially affected in a practical sense by the determination made in an

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN DIEGO

11

CASE NO. 2:24-cv-05459-FMO-MAA
SABLE'S MEMORANDUM IN SUPPORT OF
MOTION TO INTERVENE

action, he should, as a general rule, be entitled to intervene." *Citizens for Balanced Use*, 647 F.3d at 898 (quoting Fed. R. Civ. P. 24, advisory committee notes (1966 Amendment)).  A party is even entitled to intervene in an action that potentially threatens its interests.  *See id.* at 900 ("intervention of right does not require an absolute certainty that a party's interests will be impaired").  Among other things, Plaintiffs ask this Court to: (1) declare that BSEE's 2023 Extension violates federal laws; (2) vacate and remand the 2023 Extension; and (3) "[p]rohibit BSEE from authorizing additional lease extensions . . . unless and until it complies with" federal laws.  Compl. ¶ 30 (Request for Relief).  Thus, the vacatur of BSEE's approval that Plaintiffs seek, if granted, would impair Sable's ability to protect its significant financial interests in oil and gas production at the Santa Ynez Unit, including its planned timely restart of production and further development of the Santa Ynez Unit.  *See supra*, Section II.A.2.  Therefore, Sable could lose significant benefits from the challenged 2023 Extension, and "will suffer a practical impairment of its interests as a result of [the action]" if Plaintiffs prevail.  *See Wilderness Soc'y*, 630 F.3d at 1180; *see also Env't Def. Ctr.*, 2015 WL 12734012, at *3 ("The relief sought by Plaintiff would undoubtedly have a 'significant detrimental impact on [Exxon's]' interests in its Santa Ynez Unit leases and permits."); *Wildearth Guardians v. Jewell*, No. 2:16-CV-00168-DN, 2016 WL 4133533, at *4 (D. Utah Aug. 3, 2016) (granting intervention by federal coal lessee challenging NEPA review for lease; action by plaintiffs to "seek a more careful consideration of coal mining's environmental effects, and a court decision would return the issue to the administrative decision-making process" sufficient to meet impairment-of-interest prong for intervention).  Sable's intervention in this action is thus necessary to protect its interests in the Santa Ynez Unit assets and BSEE's 2023 Extension concerning those assets.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN DIEGO

12

CASE NO. 2:24-cv-05459-FMO-MAA
SABLE'S MEMORANDUM IN SUPPORT OF
MOTION TO INTERVENE

4.  <u>Existing Parties Will Not Adequately Represent Sable's Interests</u>

To satisfy the fourth element of the Rule 24(a)(2) inquiry, "[t]he burden of showing inadequacy of representation is 'minimal' and satisfied if the applicant can demonstrate that representation of its interests 'may be' inadequate. *Citizens for Balanced Use*, 647 F.3d at 898 (quoting *Arakaki v. Cayetano*, 324 F.3d 1078, 1086 (9th Cir. 2003)); *see also Trbovich v. United Mine Workers*, 404 U.S. 528, 538 n.10 (1972). Indeed, the Ninth Circuit has held that even a trade group with "the same 'ultimate objective' of upholding the [government's] lease sales" for oil and gas cannot adequately represent the interests of an individual lessee. *W. Watersheds Project v. Haaland*, 22 F.4th 828, 841–42 (9th Cir. 2022) (holder of oil-and-gas leases was entitled to intervene as of right in case challenging leases under NEPA and Federal Land Policy and Management Act; "[A]s a party with a legally protected interest in contract rights with the federal government, [the individual oil-and-gas lessee] would offer a necessary element to the proceeding that other parties would neglect."); *see also Montana Wildlife Fed'n v. Haaland*, No. 20-35793, 2022 WL 42794, at *1 (9th Cir. Jan. 5, 2022) (reversing district court's denial of leaseholder's motion to intervene in lawsuit challenging lease sale of 24,000 acres of intervenor's oil-and-gas lease, finding trade organization could not adequately represent leaseholder's interest). In this case, Federal Defendants— BSEE and senior agency officials—do not share Sable's interests in this action. To determine adequacy of representation, courts in the Ninth Circuit consider the following: "(1) whether the interest of a present party is such that it will undoubtedly make all of a proposed intervenor's arguments; (2) whether the present party is capable and willing to make such arguments; and (3) whether a proposed intervenor would offer any necessary elements to the proceeding that other parties would neglect." *Id.* at 898 (citation omitted). The public interest represented by government parties is not "identical to the individual parochial

LATHAM&WATKINS<sup>LLP</sup>
ATTORNEYS AT LAW
SAN DIEGO

13

CASE NO. 2:24-cv-05459-FMO-MAA
SABLE'S MEMORANDUM IN SUPPORT OF
MOTION TO INTERVENE

interest" of private parties by virtue of "both entities occupy[ing] the same posture in the litigation." *See Citizens for Balanced Use*, 647 F.3d 893 at 899. Government agencies advance the "broad public interest." *See Watson*, 2017 WL 4310257, at *3; *Sequoia ForestKeeper v. Price*, 2017 WL 56655, at *1 (E.D. Cal. Jan. 5, 2017). In contrast, Sable's interest in this matter is centered on protecting its property, contractual and overall financial interests relating to the Santa Ynez Unit assets. *See supra*, Section II.A.2. Because Federal Defendants do not share Sable's unique interests in this action, the existing Defendants may be incapable of and unwilling to make arguments that advance and protect Sable's interests as a private party. Even where the Federal Defendants and Sable may share a common litigation posture, they "do not have sufficiently congruent interests" to warrant a finding of adequate representation. *See Sw. Ctr. for Biological Diversity*, 268 F.3d at 823; *see also Defs. of Wildlife v. Bureau of Ocean Energy Mgmt.*, No. 10-0254-WS-C, 2010 WL 5139101, at *3 (S.D. Ala. Dec. 9, 2010) (holding that oil and gas lessee meets "minimal" requirement of showing inadequacy of representation because lessee has "narrowly focused, direct and specific interest in [] controversy").

As the owner and operator of the Santa Ynez Unit leases, which are subject to the 2023 Extension that Plaintiffs challenge in this case, Sable is uniquely positioned to provide relevant information to the Court to address the merits and potential ramifications of Plaintiffs' arguments and requested relief. As such, Sable meets its "minimal" burden of demonstrating that Federal Defendants' representation of Sable's protectable interests may be inadequate, and Sable must be granted intervention. *See Citizens for Balanced Use*, 647 F.3d at 898.

Therefore, Sable is entitled to intervene as of right in this action because it meets all of the requirements of Rule 24(a)(2).

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN DIEGO

14

CASE NO. 2:24-cv-05459-FMO-MAA
SABLE'S MEMORANDUM IN SUPPORT OF
MOTION TO INTERVENE

**B.    Alternatively, This Court Should Grant Permissive Intervention**

In the alternative, this Court should allow Sable to intervene because Sable meets all the requirements for permissive intervention under Rule 24(b).  Rule 24(b)(1)(B) provides that on timely motion, "the court may permit anyone to intervene who . . . has a claim or defense that shares with the main action a common question of law or fact."  Fed. R. Civ. P. 24(b)(1)(B).  Courts also consider "whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights."  Fed. R. Civ. P. 24(b)(3).

Sable satisfies the standard for permissive intervention under Rule 24(b) for many of the same reasons that Sable is entitled to intervene as of right.  *First*, Sable's motion is timely.  *See supra*, Section II.A.1.  *Second*, Sable is moving to intervene in this case to address the same claims set forth by Plaintiffs and thus defend BSEE's 2023 Extension, which will necessarily involve common facts and legal issues with the main action.  *Third*, Sable's intervention at this early stage in the case will not "unduly delay or prejudice the adjudication of the original parties' rights" pursuant to Rule 24(b)(3) because Sable is prepared to participate in this case in accordance with the schedule that will be set by this Court.  Indeed, Sable's participation in this action as an intervenor will promote a fair and full adjudication of Plaintiffs' claims.

## IV.    CONCLUSION

For the foregoing reasons, Sable respectfully requests that this Court grant its motion to intervene as of right or, in the alternative, to grant permissive intervention.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN DIEGO

15

CASE NO. 2:24-cv-05459-FMO-MAA
SABLE'S MEMORANDUM IN SUPPPORT OF
MOTION TO INTERVENE

1    Dated:  October 16, 2024                Respectfully submitted,

2                                            LATHAM & WATKINS LLP

3                                            By: /s/ *Daniel P. Brunton*
                                             _____
4                                                Daniel P. Brunton (Bar No. 218615)
                                                 12670 High Bluff Drive
5                                                San Diego, CA 92130
                                                 Tel.: (858) 523-5400
6                                                Fax: (858) 523-5450
                                                 Email: daniel.brunton@lw.com
7
                                                 Janice M. Schneider
8                                                (*Pro Hac Vice Pending*)
                                                 Devin M. O'Connor
9                                                (*Pro Hac Vice Pending*)
                                                 555 Eleventh Street, NW, Suite 1000
10                                               Washington, D.C. 20004-1304
                                                 Tel.: (202) 637-2200
11                                               Fax: (202) 637-2201
                                                 Email: janice.schneider@lw.com
12                                               Email: devin.o'connor@lw.com

13                                               *Attorneys for Proposed Intervenor-*
                                                 *Defendant Sable Offshore Corp.*

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

LATHAM & WATKINS LLP
ATTORNEYS AT LAW
SAN DIEGO

16

CASE NO. 2:24-cv-05459-FMO-MAA
SABLE'S MEMORANDUM IN SUPPORT OF
MOTION TO INTERVENE

**CERTIFICATE OF COMPLIANCE**

The undersigned, counsel of record for Proposed Intervenor-Defendant Sable Offshore Corp., certifies that this brief contains 3,454 words, which complies with the word limit of L.R. 11-6.1.


Dated:  October 16, 2024                    By: /s/ *Daniel P. Brunton*
                                                Daniel P. Brunton (Bar No. 218615)

LATHAM&WATKINSLLP
ATTORNEYS AT LAW
SAN DIEGO

17

CASE NO. 2:24-cv-05459-FMO-MAA
SABLE'S MEMORANDUM IN SUPPPORT OF
MOTION TO INTERVENE