TODD KIM
Assistant Attorney General
United States Department of Justice
Environment and Natural Resources Division

DANIEL C. LUECKE (CA Bar No. 326695)
Trial Attorney, Natural Resources Section
Ben Franklin Station, P.O. Box 7611
Washington, D.C. 20044-7611
Telephone:   (202) 598-7863
Email:       daniel.luecke@usdoj.gov

*Counsel for Federal Defendants*

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT CALIFORNIA
# WESTERN DIVISION

| | |
|---|---|
| CENTER FOR BIOLOGICAL DIVERSITY; WISHTOYO FOUNDATION,<br><br>*Plaintiffs*,<br><br>v.<br><br>DEBRA HAALAND, et al.,<br><br>*Federal Defendants*<br><br>and<br><br>SABLE OFFSHORE CORP.,<br><br>*Intervenor-Defendant.* | Case No. 2:24-cv-05459-MWC-MAA<br><br>**FEDERAL DEFENDANTS' NOTICE OF MOTION AND MOTION FOR VOLUNTARY REMAND**<br><br>Hearing Date:  January 31, 2025<br>Hearing Time:  1:30 p.m.<br>Courtroom:     6A<br><br>Honorable Michelle Williams<br>United States District Judge |

**NOTICE OF MOTION AND MOTION FOR VOLUNTARY REMAND**

PLEASE TAKE NOTICE that, on January 31, 2025, or as soon thereafter as they may be heard, Federal Defendants Debra Haaland, in her official capacity as Secretary of the United States Department of the Interior, Bureau of Safety and Environmental Enforcement ("BSEE"), and Bruce Hesson, in his official capacity as Pacific Regional Director for the Bureau of Safety and Environmental Enforcement ("Federal Defendants") move this Court for an order remanding this action to BSEE for reconsideration of its 2023 decision approving a lease extension for the Santa Ynez Unit. This motion will be made in courtroom 6A of the First Street Courthouse, before the Honorable Michelle Williams, United States District Judge, located at 350 W. 1st St., Los Angeles, CA 90012.

Federal Defendants make this motion for remand based on substantial concerns regarding potential deficiencies in BSEE's 2023 decision and supporting analysis. Federal Defendants thus ask that the Court remand this matter back to BSEE so it can reconsider its decision to ensure that it complies with the requirements of the Outer Continental Shelf Lands Act ("OCSLA"), the National Environmental Policy Act ("NEPA") and the Administrative Procedure Act ("APA").

This motion is made following the conference of counsel pursuant to Local Rule 7-3, which was conducted with counsel on December 4, 2024, December 6, 2024.

Dated: December 20, 2024

TODD KIM
Assistant Attorney General
U.S. Department of Justice
Environment and Natural Resources Division

*/s/ Daniel C. Luecke*
DANIEL C. LUECKE

i

Trial Attorney (CA Bar 326695)
Natural Resources Section
P.O. Box 7611, Ben Franklin Station
Washington, D.C. 20044
(202) 598-7863 | (202) 305-0506 (fax)
daniel.luecke@usdoj.gov

*Counsel for Federal Defendants*

# MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR VOLUNTARY REMAND

## TABLE OF CONTENTS

INTRODUCTION ........................................................................................................5

LEGAL BACKGROUND ..........................................................................................5

    I.    The Outer Continental Shelf Lands Act..................................................5

    II.    The National Environmental Policy Act................................................6

    III.    The Administrative Procedure Act .........................................................7

FACTUAL BACKGROUND.....................................................................................7

LEGAL STANDARD................................................................................................11

ARGUMENT .............................................................................................................12

    I.    Voluntary Remand Is Appropriate to Allow BSEE to Revisit the Challenged Extension Decision and Prepare New Analysis ..............12

    II.    Federal Defendants' Request for Voluntary Remand is Not in Bad Faith and Will Not Cause Undue Harm .......................................14

CONCLUSION..........................................................................................................16

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Alaska Env't Ctr. v. Haaland*,
   Nos. 3:20-CV-00187-SLG, 3:20-cv-00253-SLG, 2022 WL 1556028 (D. Alaska
   May 17, 2022) .................................................................................................. 14, 15

*Alaska Wilderness League v. Jewell*,
   788 F.3d 1212 (9th Cir. 2015) ................................................................................. 5

*Am. Fed'n of Tchrs. v. Cardona*,
   No. 20-CV-00455-EJD, 2022 WL 1471388 (N.D. Cal. May 10, 2022) .............. 11

*Am. Great Lakes Ports Ass'n v. Zukunft*,
   301 F. Supp. 3d 99 (D.D.C. 2018) ....................................................................... 15

*Am. Great Lakes Ports Ass'n v. Zukunft*,
   962 F.3d 510 (D.C. Cir. 2020) ............................................................................. 15

*Cal. Cmtys. Against Toxics v. U.S. Env't Prot. Agency*,
   688 F.3d 989 (9th Cir. 2012) .......................................................................... 11, 12

*California v. Norton*,
   311 F.3d 1162 (9th Cir. 2002) ..................................................................... 5, 6, 13

*Citizens Against Pellissippi Parkway Extension, Inc. v. Mineta*,
   375 F.3d 412 (6th Cir. 2004) ................................................................................ 15

*Coast Rivers All. v. U.S. Dep't of the Interior*,
   No. 116CV00307LJOMJS, 2016 WL 8673038 (E.D. Cal. Dec. 16, 2016) ... 11, 14

*Ctr. for Biological Diversity v. U.S. Bureau of Land Mgmt.*,
   No. CV 21-2507-GW-ASX, 2022 WL 4233648
   (C.D. Cal. Sept. 13, 2022) ........................................................................ 11, 12, 14

*Env't Def. v. Leavitt*,
   329 F. Supp. 2d 55 (D.D.C. 2004) ....................................................................... 15

*FBME Bank Ltd. v. Lew*,
   142 F. Supp. 3d 70 (D.D.C. 2015) ....................................................................... 15

*In re Clean Water Act Rulemaking*,
   60 F.4th 583 (9th Cir. 2023) ..................................................................... 11, 12, 15

Case 2:24-cv-05459-MWC-MAA    Document 37    Filed 12/20/24    Page 6 of 20    Page ID
#:254

*Limnia, Inc. v. United States Dep't of Energy*,
  857 F.3d 379 (D.C. Cir. 2017) ...................................................................................11

*Lute v. Singer Co.*,
  678 F.2d 844 (9th Cir. 1982) ....................................................................................11

*McFarland v. Kempthorne*,
  545 F.3d 1106 (9th Cir. 2008) ..............................................................................7, 8

*Nat. Res. Council*,
  490 U.S. 360 (1989) ..................................................................................................6

*Native Vill. of Point Hope v. Salazar*,
  680 F.3d 1123 (9th Cir. 2012) ...................................................................................7

*ONRC Action v. Bureau of Land Mgmt.*,
  150 F.3d 1132 (9th Cir. 1998) ...................................................................................7

*Or. Nat. Desert Ass'n v. Freeborn*,
  No. CV 06-1311-MO, 2007 WL 9658100 (D. Or. June 19, 2007) ........................14

*Sec'y of Interior v. California*,
  464 U.S. 312 (1984) ..................................................................................................5

*SKF USA Inc. v. United States*,
  254 F.3d 1022 (Fed. Cir. 2001) .........................................................................11, 13

*Soc'y of Portland v. Haaland*,
  40 F.4th 967 (9th Cir. 2022) ......................................................................................6

*Trujillo v. Gen. Elec. Co.*,
  621 F.2d 1084 (10th Cir. 1980) ...............................................................................11

*U.S. Dep't of Interior*,
  275 F. Supp. 2d 1136 (C.D. Cal. 2002) ...................................................................11

*U.S. Env't Prot. Agency*,
  38 F.4th 34 (9th Cir. 2022) ......................................................................................12

**Statutes**

43 U.S.C. 1337(b)(4) .........................................................................................................5

5 U.S.C. § 706(2) ............................................................................................................12

**Regulations**

30 C.F.R. § 250.180(e) ...............................................................................................6, 10

30 C.F.R. § 556.601(a) ............................................................................................. 5

30 C.F.R. §§ 250.410–18 ........................................................................................ 16

40 C.F.R. § 1501.4 (2020) ..................................................................................... 6, 7

40 C.F.R. § 1508.4 ...................................................................................................... 7

43 C.F.R § 46.215 ................................................................................... 9, 10, 13, 14

## INTRODUCTION

In November 2023, the Department of the Interior's Bureau of Safety and Environmental Enforcement ("BSEE") approved a one-year extension of the sixteen leases comprising the Santa Ynez Unit, an offshore oil and gas operation near Santa Barbara, California. Plaintiffs Center for Biological Diversity ("CBD") and Wishtoyo Foundation challenge the 2023 extension decision under the Outer Continental Shelf Lands Act ("OCSLA"), the National Environmental Policy Act ("NEPA") and the Administrative Procedure Act ("APA"). After reviewing Plaintiffs' claims and the administrative record, BSEE has decided to seek voluntary remand of the challenged decision. On remand, BSEE plans to reconsider its decision in light of Plaintiffs' claims and conduct additional analysis, as warranted, under OCSLA and NEPA. The Court should grant Federal Defendants' Motion for Voluntary Remand so the agency can undertake the analysis Plaintiffs seek in their Complaint in order to conserve party and judicial resources.

## LEGAL BACKGROUND

### I. The Outer Continental Shelf Lands Act

OCSLA establishes the federal statutory scheme that governs leasing, exploration, development, and production of natural resources located in the seabed of the Outer Continental Shelf. 43 U.S.C. 1337(b)(4); *Sec'y of Interior v. California*, 464 U.S. 312 (1984). This statutory four-stage process includes granting oil and gas leases subject to certain terms and provisions. *Alaska Wilderness League v. Jewell*, 788 F.3d 1212, 1214-15 (9th Cir. 2015). The primary term of an OCSLA oil and gas lease varies in length from five to ten years, after which "the lease continues in effect so long as oil and gas are being produced in paying quantities or drilling operations are underway." *California v. Norton*, 311 F.3d 1162, 1168 (9th Cir. 2002) (43 U.S.C. § 1337(b)(2)(A) & (B)); *see also* 30

C.F.R. § 556.601(a).

If a lease is beyond its primary term and operations cease, an operator may apply for an extension to preserve their lease. 30 C.F.R. § 250.180(e). Such a request "must be in writing and explain the operating conditions that warrant" granting more time to resume production. *Id*. BSEE must then determine whether granting the extension is "in the National interest" and "conserves resources, prevents waste, or protects correlative rights." *Id*. If BSEE grants the request, the operator must either resume operations or request another extension before the prior one expires. *Id.* § 250.180(d).

## II. The National Environmental Policy Act

NEPA is a procedural statute that "focus[es] Government and public attention on the environmental effects of proposed agency action." *Marsh v. Or. Nat. Res. Council*, 490 U.S. 360, 371 (1989). "NEPA does not mandate particular results, but simply provides the necessary process to ensure that federal agencies take a hard look at the environmental consequences of their actions." *Audubon Soc'y of Portland v. Haaland*, 40 F.4th 967, 979–80 (9th Cir. 2022) (cleaned up). Although NEPA generally requires an Environmental Assessment ("EA") or Environmental Impact Statement ("EIS") for major federal actions, an agency may adopt a "categorical exclusion" for a "category of actions which do not individually or cumulatively have a significant effect on the human environment." *Norton*, 311 F.3d at 1168 (quoting 40 C.F.R. § 1508.4 (2001)).[1] However, an action that would normally be subject to a categorical exclusion may nonetheless

---

[1] The challenged decision in this case was issued in 2023 and therefore is subject to the NEPA regulations that became effective on September 14, 2020. However, the provision on categorical exclusions in the 2020 regulations is substantively identical to the prior version cited in *California v. Norton*. *See* 40 C.F.R. § 1501.4 (2020).

require an EA or EIS if "extraordinary circumstances" suggest it may have significant impacts. *Id.* (citing 40 C.F.R. § 1508.4).

### III. The Administrative Procedure Act

Agency actions challenged under OCSLA or NEPA are subject to review under the APA. *Native Vill. of Point Hope v. Salazar*, 680 F.3d 1123, 1129 (9th Cir. 2012); *ONRC Action v. Bureau of Land Mgmt.*, 150 F.3d 1132, 1135 (9th Cir. 1998). Review under the APA is "deferential," and an agency decision will be overturned "only if it is 'arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law.'" *Native Vill. of Point Hope*, 680 F.3d at 1129 (quoting 5 U.S.C. § 706(2)(A)). Courts thus vacate an agency action only:

> if the agency relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, or offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise.

*McFarland v. Kempthorne*, 545 F.3d 1106, 1110 (9th Cir. 2008) (citation and quotation marks omitted); *see also Citizens to Pres. Overton Park v. Volpe*, 401 U.S. 402, 416 (1971).

## FACTUAL BACKGROUND

The Santa Ynez Unit consists of sixteen offshore oil and gas leases serviced by three separate platforms. Exxon submitted the development and production plan for the Unit in 1982, AR000002, and updated the plan in subsequent years, AR000493; AR000618. BLM completed an EIS and approved the plan of operations in 1985. AR000026. The Unit produced oil and gas for roughly the next three decades. AR017026.

On May 19, 2015, one of the pipelines serving the Santa Ynez Unit and other nearby leases failed, releasing over 2,500 barrels of heavy crude-oil. AR001049. Following the spill, the U.S. Department of Transportation ordered the

7

1 Plains All American Pipeline Company ("PAAPC")— owner of the failing
2 pipeline—to cease service pending further corrective actions. AR017027. This
3 order was subsequently rolled into a federal consent decree in 2020. AR001048–
4 118. After PAAPC's pipeline went out of service, all wells in the Santa Ynez Unit
5 were shut in. AR017027.

6       Following the 2015 shut-in, Exxon sought and obtained yearly extensions
7 from BSEE to prevent its leases in the Santa Ynez Unit from expiring for lack of
8 production. AR017036.[2] To comply with the requirements of its lease extensions,
9 Exxon provided BSEE with quarterly updates regarding its maintenance of the
10 Unit and efforts to resume production. *See, e.g.*, AR016990–016994; AR017013–
11 017024; AR017030–017034. In its December 2022 update, Exxon informed BSEE
12 that it had reached an agreement with Sable Offshore Corp. for sale of the Unit,
13 related assets, and all shares in Pacific Pipeline Company—an Exxon subsidiary
14 that had acquired the pipeline formerly owned by PAAPC that failed in 2015.
15 AR016992–93.

16       On February 8, 2023, CBD sent a letter to BSEE opposing the agency's
17 "various decisions to grant Exxon . . . extensions of its oil and gas leases in the
18 Pacific Outer Continental Shelf." AR001164. CBD asserted that extending
19 Exxon's leases was "antithetical to the national interest in addressing the climate
20 crisis, promoting environmental justice, recovering endangered species, and
21 otherwise protecting the environment[.]" *Id.* The letter also challenges BSEE's

---

[2] Due to a clerical error, the second paragraph of BSEE's November 8, 2023, categorical exclusion review identifies "Freeport" as the leaseholder requesting extension. AR017036. That error was corrected in another decision issued the next day that was inadvertently left out of the administrative record. Federal Defendants plan to file a supplement to the administrative record to fix this mistake as well as to add other documents that the agency considered but incorrectly omitted from the record.

8

decision to approve the extensions via categorical exclusions in light of the Santa Ynez Unit's aging infrastructure. AR001164–65. In support, CBD provided further discussion of climate change, AR001165–71, the risk of oil spills, AR001171–74, potential harm to species, AR001174–77, and concerns about the reliability of offshore infrastructure, AR001177–79; *see also* AR001180–16989 (references attached to CBD letter).

On October 19, 2023, Exxon requested another one-year extension of its leases in the Santa Ynez Unit. AR17026. Exxon's request explained that the company's attempts to repair the pipeline, replace the pipeline, and establish an interim trucking system to transport oil and gas from the Unit had so far been unsuccessful. AR17026–28. The letter attributed these failures in part to resistance from organizations opposed to oil and gas development and political circumstances in California. AR17028. In light of these issues and the benefits of reestablishing production from the Unit's "sizable additional reserves," Exxon asserted that an additional 365 days to resume operations was warranted. AR17028–29.

BSEE granted Exxon's request for an extension in November 2023. First, BSEE concluded that Exxon's requested extension was subject to a categorical exclusion and therefore did not warrant preparation of an EA or EIS under NEPA. AR017036–38. To reach this conclusion, BSEE observed that the request qualified for the categorical exclusion applicable to "[a]pproval[s] of suspensions of operations and suspensions of production." AR017036 (citing 516 DM 15.4 (C)(6)). Then, as required by NEPA, BSEE considered whether the proposed action fell into any of the categories identified in 43 C.F.R § 46.215 that would indicate "extraordinary circumstances." AR017039–40. BSEE concluded that no extraordinary circumstances existed, in large part based on the determination that operations at the Unit would remain idle and facilities would be maintained pursuant to preservation plans overseen by BSEE. *Id.* Consequently, BSEE

9

determined that granting the extension would not significantly impact public health, ecologically significant areas, endangered species, or other resources. *Id.*

Second, BSEE decided that granting the extension was "in the National interest" and would "conserve[] resources, prevent[] waste, or protect[] correlative rights," as required by 30 C.F.R. § 250.180(e). AR017044. For support, BSEE cited Exxon's assertion that "there are sizable additional remaining reserves in the Hondo, Pascado, and Sacate Fields" serviced by the Santa Ynez Unit. AR017044. Continuing to exploit those reserves would "help meet the Nation's energy needs without the impacts associated with new infrastructure installations or exploration and development of unproven fields." AR017044. Resuming production would also benefit taxpayers through the payment of royalties, conserve proven reserves, and protect the rights of the lessee. *Id.* BSEE therefore granted Exxon's request for an additional one-year extension. AR017044–45.

Since Exxon' 2023 extension request, Sable has become the sole leaseholder on the Santa Ynez Unit. Decl. of Stephen P. Rusch ¶ 3, ECF No. 18-2; Decl. of Bruce H. Hesson ¶ 4, ECF No. 37-1. In September 2024, Sable submitted two Applications for Permits to Modify ("APMs") that would allow Sable to rework two of the Unit's wells. Hesson Decl. ¶ 13. BSEE approved the APMs—which are not at issue in this case—and Sable completed reworking one of the wells in October 2024.[3] *Id.* However, Sable must complete several other steps before it can reestablish production, including additional approvals from BSEE and the State of California. *Id.* at ¶ 14. Consequently, at this time, all wells on the Unit remain out of production. *Id.* ¶ 5.

---

[3] In the event Plaintiffs opt to amend their complaint to challenge the two 2024 APMs before the Court has resolved the motion for voluntary remand, Federal Defendants reserve the right to revise the scope of anticipated analysis on remand.

10

# LEGAL STANDARD

Courts recognize the propriety of voluntarily remanding a challenged agency decision before deciding the merits so the agency may "reconsider its initial action." *See Cal. Cmtys. Against Toxics v. U.S. Env't Prot. Agency*, 688 F.3d 989, 992 (9th Cir. 2012) (citing *SKF USA Inc. v. United States*, 254 F.3d 1022, 1029 (Fed. Cir. 2001)). "Voluntary remand is consistent with the principle that '[a]dministrative agencies have an inherent authority to reconsider their own decisions, since the power to decide in the first instance carries with it the power to reconsider.'" *Nat. Res. Def. Council, Inc. v. U.S. Dep't of Interior*, 275 F. Supp. 2d 1136, 1141 (C.D. Cal. 2002) (quoting *Trujillo v. Gen. Elec. Co.*, 621 F.2d 1084, 1086 (10th Cir. 1980)); *see also Lute v. Singer Co.*, 678 F.2d 844, 846 (9th Cir. 1982). Voluntary remand also serves to "conserve judicial resources by allowing agencies to correct their errors *before* courts reach merits determinations requiring them to do so." *In re Clean Water Act Rulemaking*, 60 F.4th 583, 593 (9th Cir. 2023).

For "voluntary remand to be granted, 'the agency ordinarily . . . need[s] to profess intention to reconsider, re-review, or modify the original agency decision that is the subject of the legal challenge.'" *Id.* (quoting *Limnia, Inc. v. United States Dep't of Energy*, 857 F.3d 379, 387 (D.C. Cir. 2017). An agency may express its "intention to reconsider its previous position without confessing error[.]" *Am. Fed'n of Tchrs. v. Cardona*, No. 20-CV-00455-EJD, 2022 WL 1471388, at *2 (N.D. Cal. May 10, 2022) (quoting *SKF*, 254 F.3d at 1027); *see also Ctr. for Biological Diversity v. U.S. Bureau of Land Mgmt.*, No. CV 21-2507-GW-ASX, 2022 WL 4233648, at *3 (C.D. Cal. Sept. 13, 2022); *N. Coast Rivers All. v. U.S. Dep't of the Interior*, No. 116CV00307LJOMJS, 2016 WL 8673038, at *5 (E.D. Cal. Dec. 16, 2016). "Courts generally grant an agency's request for voluntary remand unless the request is frivolous or made in bad faith." *Nat. Res.*

1  *Def. Council v. U.S. Env't Prot. Agency*, 38 F.4th 34, 60 (9th Cir. 2022) (citing
2  *Cal. Cmtys. Against Toxics v. EPA*, 688 F.3d 989, 992 (9th Cir. 2012). Indeed,
3  "[a]bsent bad faith, general deference to agency decision-making counsels remand
4  when an agency so moves." *Ctr. for Biological Diversity*, 2022 WL 4233648, at
5  *4.

6        If a Court grants voluntary remand before reaching the merits, it may not
7  simultaneously vacate the challenged action. *In re Clean Water Act Rulemaking*,
8  60 F.4th at 593. This is so both because courts lack equitable power to vacate
9  executive actions before ruling on the merits, *id.* at 594, and because the APA only
10 "instructs courts to 'set aside' (i.e., to vacate) agency actions held to be unlawful,"
11 *id.* at 594 (quoting 5 U.S.C. § 706(2)). Consequently, when a defendant moves for
12 voluntary remand without vacatur, the reviewing court's task is to determine
13 whether remand is appropriate.

## ARGUMENT

15       Remand is appropriate in this case because BSEE is committed to
16 reconsidering the challenged 2023 extension decision. Hesson Decl. ¶¶ 8–12. The
17 Court should thus permit the agency to address the potential deficiencies with the
18 challenged decision rather than expend the additional resources necessary to
19 resolve this case on the merits. Federal Defendants' motion is made in good faith
20 and will not cause undue harm. The Court should therefore grant Federal
21 Defendants' Motion.

22 **I.  Voluntary Remand Is Appropriate to Allow BSEE to Revisit the**
23     **Challenged Extension Decision and Prepare New Analysis.**

24       Remand is warranted because BSEE has identified "substantial and
25 legitimate" concerns about the challenged decision and is committed to
26 reconsidering that decision through the administrative process. *Ctr. for Biological*
27 *Diversity*, 2022 WL 4233648, at *4 (quoting *SKF USA*, 254 F.3d at 1029). The

1   Court should therefore allow BSEE to exercise its inherent authority to revisit its
2   decision and ensure that it complies with OCSLA and NEPA. *See id.*
3         First, remanding the 2023 decision will allow BSEE to reconsider its NEPA
4   analysis. Hesson Decl. ¶¶ 8–9, 11. Where there is "substantial evidence in the
5   record that exceptions to the categorical exclusion *may* apply," the agency must
6   "explain why the action does not fall within one of those exceptions." *Norton*, 311
7   F.3d at 1177. After reviewing its analysis for the 2023 extension, BSEE has
8   resolved to further consider whether any of the twelve exceptions indicating
9   extraordinary circumstances may apply. *See* 43 C.F.R § 46.215. The agency's
10  analysis on remand will revisit the assumption that the Unit's infrastructure will
11  remain idle, AR017039—an assumption in tension with Exxon's statements about
12  its efforts to reestablish production, AR17026–28; Hesson Decl. ¶ 9. BSEE will
13  also reconsider whether granting the extension may have significant impacts—for
14  example, on public health, endangered species, and nearby ecologically significant
15  or critical areas—and whether such impacts have been previously analyzed. *Id.* If
16  the agency determines that extraordinary circumstances are present, it will conduct
17  the appropriate NEPA review in the form of an EA or EIS. *Id.*
18        Second, with respect to OCSLA, BSEE plans to expand its analysis of
19  whether the requested extension was consistent with the National interest. *Id.* ¶ 8,
20  10–11. Although BSEE approved Exxon's request based on the size of remaining
21  reserves and a desire to prevent waste, the November 2023 extension decision
22  failed to explain these rationales in significant detail. *Id.* ¶ 10; AR017044.
23  Moreover, CBD's February 2023 letter to BSEE presented arguments and evidence
24  in opposition to further extending the Santa Ynez Unit leases. AR001164–16989;
25  *supra* at 8–9. BSEE's November 2023 extension decision did not incorporate these
26  issues into its National interest determination or explain why the factors favoring
27  extension outweigh the risks. AR017043–44. On remand, BSEE intends to address

this issue by considering the potential downsides of extending the challenged leases in addition to the benefits. Hesson Decl. ¶ 10. Following its analysis, BSEE will either reaffirm the 2023 extension or withdraw its approval. *Id.* ¶ 12.

Courts in the Ninth Circuit have allowed voluntary remand where, as here, the agency has identified specific concerns with the challenged action and "recognized the need for additional analysis." *N. Coast Rivers All.,* 2016 WL 8673038, at *5; *see also, e.g.*, *Ctr. for Biological Diversity*, 2022 WL 4233648, at *6; *N. Alaska Env't Ctr. v. Haaland*, Nos. 3:20-CV-00187-SLG, 3:20-cv-00253-SLG, 2022 WL 1556028, at *4 (D. Alaska May 17, 2022); *Or. Nat. Desert Ass'n v. Freeborn*, No. CV 06-1311-MO, 2007 WL 9658100, at *1 (D. Or. June 19, 2007). The Court should follow this precedent and allow BSEE to revisit its decision on remand.

## II. Federal Defendants' Request for Voluntary Remand is Not in Bad Faith and Will Not Cause Undue Harm.

A basis for denying remand here is lacking because BSEE's request to revisit its analysis is neither frivolous nor made in bad faith. "[B]ad faith may be demonstrated when an agency's position does not demonstrate a commitment to a changed approach." *Ctr. for Biological Diversity*, 2022 WL 4233648, at *4 (quoting *N. Coast Rivers All.*, 2016 WL 8673038, at *3). Here, BSEE has identified specific issues that it plans to address on remand, including those Plaintiffs challenge in their complaint. Hesson Decl. ¶¶ 9–10. Plaintiffs allege that BSEE engaged in a lopsided analysis of whether a lease extension is in the national interest under OCSLA, Compl. ¶ 94, ECF No. 1, and failed to consider the potential impacts of leaving offshore oil and gas infrastructure in place under NEPA, *id.* at ¶¶ 100–102. BSEE does not concede Plaintiffs' characterizations but intends to revisit its analysis in light of Plaintiffs' arguments—a clear departure from the agency's prior approach in 2023. *See N. Alaska Env't Ctr.*, 2022 WL

14

1556028, at *4 (allowing remand where defendants had committed to address deficiencies with decision on remand and there was "no indication that they [were] acting in bad faith"); *see also FBME Bank Ltd. v. Lew*, 142 F. Supp. 3d 70, 73 (D.D.C. 2015) (holding that, where "an agency seeks a remand to take further action consistent with correct legal standards, courts should permit such a remand in the absence of apparent or clearly articulated countervailing reasons" (quoting *Citizens Against Pellissippi Parkway Extension, Inc. v. Mineta*, 375 F.3d 412, 416 (6th Cir. 2004))).

Remanding the 2023 extension decision without vacatur also does not present a "risk of harm" that could outweigh "considerations of judicial and administrative efficiency." *See In re Clean Water Act Rulemaking*, 60 F.4th at 596. Importantly, even if Plaintiffs succeeded on the merits, vacatur would not terminate the underlying leases. Longstanding Department precedent recognizes that a timely request for extension tolls the expiration of a lease until BSEE acts on the request. *Harvey E. Yates Co., et. al*, 156 IBLA 100, 105 (Dec. 19, 2001) (collecting cases). Exxon submitted a timely request for extension in 2023. AR17026. Because vacatur "restores the status quo" prior to the challenged agency action, the effect of vacatur here would be to return Exxon's 2023 request to a "pending" status and toll the expiration of the leases until a new decision could be issued. *Am. Great Lakes Ports Ass'n v. Zukunft*, 301 F. Supp. 3d 99, 103 (D.D.C. 2018), *aff'd*, 962 F.3d 510 (D.C. Cir. 2020) (quoting *Env't Def. v. Leavitt*, 329 F. Supp. 2d 55, 64 (D.D.C. 2004)); *see also* Hesson Decl. ¶ 12. In other words, the leases would remain in effect regardless of whether the court allows remand now or, in the event Plaintiffs prevailed, ordered vacatur later.

Nor would allowing activity on the leases to continue during the remand period pose a substantial risk of harm to Plaintiffs' interests. Compl. ¶¶ 13–26. The Santa Ynez Unit is not currently producing oil and gas. Hesson Decl. ¶ 5; *see also*

15

ECF No. 18-2 ¶ 6. While BSEE approved two APMs submitted by Sable in September 2024, completion of that work is merely one of several preliminary steps Sable must undertake to reestablish production. Hesson Decl. ¶¶ 13–14. Most notably, Sable still needs approval from the California State Fire Marshall Office's Pipeline Division to operate the onshore pipeline or else establish some other means of transporting any oil and gas produced at the Unit. *Id.* ¶ 14. This is the same obstacle that stymied Exxon for years before it transferred its rights to Sable. AR17026–28. It is thus unclear if and when Sable will be able to bring the Unit back to production.

It is possible that Sable could submit additional APMs during the remand period or take other steps in an effort to reestablish production, Hesson Decl. ¶ 14, but this also does not warrant denying Federal Defendants' motion. Any new APMs would require additional approvals and NEPA analyses by BSEE. *See* 30 C.F.R. §§ 250.410–18, 250.465. If BSEE received any applications while reconsidering the 2023 extension, it would aim for consistency among all of its NEPA analyses, including the renewed analysis of the 2023 extension. Hesson Decl. ¶ 14. In short, the practical effects of granting remand would be similar to vacatur: the Santa Ynez Unit's infrastructure would remain in place while BSEE revisited its 2023 OCSLA and NEPA analysis. Consequently, rather than expend the considerable resources necessary to decide the merits in this case, the Court should allow BSEE to reconsider its 2023 decision on remand.

## CONCLUSION

For the reasons explained above, the Court should grant Federal Defendants' motion for voluntary remand without vacatur and stay further proceedings in this matter pending completion of the agency's proceedings on remand.

Respectfully submitted this 20th day of December 2024.

1
2                                        TODD KIM
3                                        Assistant Attorney General

---

TODD KIM
Assistant Attorney General
U.S. Department of Justice
Environment and Natural Resources Division

*/s/ Daniel C. Luecke*
DANIEL C. LUECKE
Trial Attorney (CA Bar 326695)
Natural Resources Section
P.O. Box 7611, Ben Franklin Station
Washington, D.C. 20044
(202) 598-7863 | (202) 305-0506 (fax)
daniel.luecke@usdoj.gov

*Counsel for Federal Defendants*