TODD KIM
Assistant Attorney General
United States Department of Justice
Environment and Natural Resources Division

DANIEL C. LUECKE (CA Bar No. 326695)
Trial Attorney, Natural Resources Section
Ben Franklin Station, P.O. Box 7611
Washington, D.C. 20044-7611
Telephone: (202) 598-7863
Email: daniel.luecke@usdoj.gov

*Counsel for Federal Defendants*

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT CALIFORNIA
# WESTERN DIVISION

| | |
|---|---|
| CENTER FOR BIOLOGICAL DIVERSITY; WISHTOYO FOUNDATION,<br><br>*Plaintiff,*<br><br>v.<br><br>DEBRA HAALAND, in her official capacity as Secretary of the United States Department of the Interior; BUREAU OF SAFETY AND ENVIRONMENTAL ENFORCEMENT, BRUCE HESSON, Pacific Regional Director, Bureau of Safety and Environmental Enforcement,<br><br>*Federal Defendants.* | Case No. 2:24-cv-05459<br><br>**DECLARATION OF BRUCE HESSON** |

1. My name is Bruce Hesson and I am the Regional Director of the Bureau of Safety and Environmental Enforcement (BSEE) for the Pacific Region. I graduated from Texas

A&M University in 1983 with a Bachelor of Science in Petroleum Engineering and have been a California Registered Professional Engineer since 1997. I worked for the California Division of Oil, Gas and Geothermal Resources for 29 years, serving as the District Deputy for the Ventura District for the final 13 years, and retired from the State in May 2016. I have been with BSEE since 2016, serving first as Supervisor of the Compliance Section until my appointment to Regional Director in August 2022.

2. As the Regional Director, I am responsible for supervising the regulation of operations, inspections, and enforcement programs, as well as overall protection and safety of activities and environmental compliance on submerged federal lands leased for oil, gas and other mineral or energy development on the Pacific Outer Continental Shelf. As part of my oversight responsibilities, I manage a staff of thirty-four employees, including petroleum engineers, structural engineers, geologists, geophysicists, environmental scientists, and administrative staff.

3. The Regional Supervisor for the BSEE Pacific Region, Office of Production and Development reports directly to me. This office is responsible for reviewing applications for lease suspensions and extensions as described in 30 C.F.R. §§ 250.160-180. The Senior Drilling Engineer in the BSEE Pacific Office of Field Operations (OFO) reports to the Regional Supervisor for OFO, who reports directly to me. The Senior Drilling Engineer is responsible for reviewing Applications for Permit to Drill and Applications for Permit to Modify (APM) a well. Prior to restarting a facility, a complete pre-production inspection of the facility is required to be conducted by the BSEE Pacific Compliance Section within OFO, under the management of the Supervisory Inspector.

4. The ExxonMobil Corporation (Exxon) acquired the 16 leases that comprise the Santa Ynez Unit between 1979 and 1982 and began production in 1981. In November 2022, Exxon entered into a purchase and sale agreement with Sable Energy Corp. (Sable) for

2

all Santa Ynez Unit assets, including the onshore pipelines that Exxon acquired from Plains All-American Pipeline, LLC (PAAPL) in October 2022 as the Exxon subsidiary, Pacific Pipeline Company (PPC). On May 23, 2024, Sable became the official operator of record for the Santa Ynez Unit leases under the authority of the Bureau of Ocean Energy Management (BOEM).

5. After the rupture of the PAAPL Line 901 on May 19, 2015, and the subsequent Corrective Action Order from the Pipeline and Hazardous Materials Safety Administration to remove the pipeline from service, Exxon idled production from the offshore Santa Ynez Unit facilities on June 16, 2015. Due to uncertainty about the duration of repair operations for the PAAPL Line 901, Exxon submitted a lease extension request to BSEE on November 19, 2015, in accordance with 30 C.F.R. § 250.180(e) to pause operations at Santa Ynez Unit pending renewed availability of local downstream infrastructure. BSEE has approved subsequent lease extensions annually, including the most recent approval on November 14, 2023. Currently, the Santa Ynez Unit is not producing oil and gas.

6. On behalf of BSEE, I have reviewed 1) the November 14, 2023, decision granting Exxon additional time to resume operations for the Santa Ynez Unit until December 13, 2024 (the 2023 Extension Decision), 2) the agency's National Environmental Policy Act (NEPA) categorical exclusion review supporting that decision, and 3) the underlying documents in the administrative record for this case that was filed with the court.

7. To grant an extension under section 250.180(e), BSEE must conduct a NEPA categorical exclusion review (see 516 DM 15.4(C)(6)), including a determination about whether there are associated extraordinary circumstances, and decide whether an extension is in the National interest and that it conserves resources, prevents waste, or protects correlative rights.

8. Upon further review, BSEE has identified deficiencies in the completeness and sufficiency of both the categorical exclusion review and National interest analysis that were performed. These deficiencies, impacting the sufficiency and completeness of the agency's review, necessitate remand of the 2023 Extension Decision for further review by BSEE.

9. In particular, the categorical exclusion review that was performed lacks sufficient discussion and support regarding potentially applicable extraordinary circumstances and relies on overly conclusory statements, including regarding the infrastructure remaining idle. In the event a remand is granted, BSEE will reconsider in more detail, for example, whether granting an extension may significantly impact public health, listed or endangered species, and surrounding ecologically significant or critical areas, and will not assume that oil and gas operations will be idled during an extension period and instead consider the possibility that such operations may resume. In addition, BSEE will analyze the extent to which the potential impacts of resumed production may have already been analyzed under NEPA and to what extent any additional analysis is warranted. In the event BSEE concludes that extraordinary circumstances are present, the next appropriate level of NEPA review will be conducted.

10. Likewise, the National interest analysis that was performed is similarly over broad and conclusory. Little detail was provided on how granting the extension conserves resources, prevents waste, or protects correlative rights. Further, CBD raised several concerns in its February 2023 letter to BSEE in opposition to further extending the Santa Ynez Unit leases and BSEE did not address these in its National interest determination nor analyze how granting the extension outweighs any risks to the national interest. In the event a remand is granted, BSEE plans to address these issues, including by analyzing the potential negative aspects of extending the leases.

4

11. To ensure better compliance with both NEPA and the BSEE-administered regulations governing lease extensions, 30 C.F.R. § 250.180(e), BSEE requests a remand without vacatur to conduct a more complete review under NEPA and to provide a more robust analysis of its National interest determination.

12. A remand without vacatur will keep the 2023 Extension Decision in place until an analysis on remand is completed, at which point, it would either be reaffirmed or withdrawn. In the event the 2023 Extension Decision is both remanded and vacated, the extension request would go back to a pending status during reevaluation on remand. On remand, BSEE will conduct meaningful and thorough analysis of the applicable extraordinary circumstances, other potential NEPA considerations, and National interest factors, including those concerns that have been raised by the plaintiff in this litigation. BSEE is committed to undertaking the necessary NEPA and section 250.180(e) analyses in a timely manner.

13. On September 25, 2024, BSEE approved two APMs for two wells on lease OCS-P 0182 submitted by Sable. The APMs approved well-reworking operations, which included the perforation of additional reservoir footage within the well completions to allow for increased flow and restoration of production to levels prior to the 2015 shut-in once production is resumed. BSEE also completed Categorical Exclusion Reviews for both APM approvals. Sable completed the approved work for one of the APMs on October 9, 2024. Well-reworking operations are considered lease holding activities under the BSEE-administered regulations at 30 C.F.R. § 250.180(a)(2). A lease will not expire at the end of its term if the lessee or operator is conducting operations.

14. However, before returning to production, Sable must first satisfy several conditions. The California State Fire Marshall Office's Pipeline Division must inform BSEE that Sable is approved to operate the onshore pipeline segments 901/903, which have been

5

inoperable since 2015. Sable must successfully test the pipelines for the Santa Ynez Unit that BSEE regulates, which is currently ongoing. Further, BSEE must conduct and Sable must successfully pass a complete Pre-Production inspection for Platform Harmony, which is the first facility that Sable plans to bring on-line. In addition, Sable will need to estimate future production, revise their oil spill response plan with this new information, and resubmit that plan to BSEE's Oil Spill Preparedness Division for review and approval. It is likely that a platform restart will require Sable to submit additional APMs to BSEE involving pump changes, which are necessary to restart production and produce fluids from the wellbore. In the event BSEE receives any additional APMs before the remand process is complete, it will strive for consistency with its NEPA analysis for the 2023 Extension Decision on remand.

15. I swear under penalty of perjury, pursuant to 28 U.S.C. § 1746, that the foregoing information is true, accurate, and complete.

Executed this 18 day of December 2024.

*[signature]*

Bruce H. Hesson