# EXHIBIT A

IN REPLY REFER TO:

OCS-P 0180

# UNITED STATES
## DEPARTMENT OF THE INTERIOR
### BUREAU OF LAND MANAGEMENT

Pacific Coast OCS Office
300 N. Los Angeles St.
Los Angeles, Calif. 90012

| | |
|---|---|
| Date | February 6, 1968 |
| State | California |
| Area | Channel Islands |
| Tract Number | Block Number |
| Cal. 322 Description | 52N 74W |
| | All |
| Rental $ 17,280 | Balance of Bonus $ 944,640.00 |

**DECISION**

Name: Humble Oil & Refining Co.
1800 Avenue of the Stars
Los Angeles, Calif. 90067

*GEOLOGICAL SURVEY RECEIVED MAR 13 1968 LOS ANGELES*

new lease. Sheet typed

LEASE FORMS TRANSMITTED FOR EXECUTION

Pursuant to Section 8 of the Outer Continental Shelf Lands Act (67 Stat. 462; 43 U.S.C. 1337), and the regulations pertaining thereto (43 CFR 3380 *et seq.*), your bid for the above tract is accepted.

Your qualifications have been examined and are satisfactory. Accordingly, in order to perfect your rights hereunder, the following action *must* be taken:

1. Execute and return the three copies of attached lease. (*If lease is executed by an agent, evidence must be furnished of agent's authorization.*)

2. Pay the balance of bonus bid and the first year's rental indicated above.

Copy to: Taft
Coalinga
Los Angeles
Min. Class.
Washington

*MAR 14 1968*

Thirty days from receipt of this decision are allowed for compliance with the above requirements, failing in which your rights to acquire a lease and the deposit of 1/5 of the bonus bid will be forfeited.

IMPORTANT: The lease form requires the attachment of the CORPORATE SEAL to all leases executed by corporations.

Attachments

Wm. E. Grant
(Manager)

Form 3380-9 (July 1966)   (formerly 4-1700)                        GPO 858-885

Form 3380–1
(February 1966)
(formerly 4–1255)

**UNITED STATES
DEPARTMENT OF THE INTERIOR
BUREAU OF LAND MANAGEMENT**

**OIL AND GAS LEASE OF SUBMERGED LANDS
UNDER THE OUTER CONTINENTAL SHELF LANDS ACT**

| Office | Los Angeles, Calif. |
|---|---|
| Serial Number | OCS-P 0180 |
| Cash Bonus | $1,180,800.00 |
| Rental Rate | $3 per acre |
| Minimum Royalty Rate | Royalty Rate |
| $3 per acre | 1/6th |

This indenture of lease entered into and effective as of APR 1 1968, by and between the United States of America, hereinafter called the Lessor, by the Director, Bureau of Land Management, and

**Humble Oil & Refining Company**



GEOLOGICAL SURVEY RECEIVED MAR 13 1968 LOS ANGELES

hereinafter called the Lessee, under, pursuant, and subject to the terms and provisions of the Outer Continental Shelf Lands Act of August 7, 1953 (67 Stat. 462; 43 U.S.C., Sec. 1331, *et seq.*), hereinafter referred to as the Act, and to all lawful and reasonable regulations of the Secretary of the Interior (hereinafter referred to as the Secretary) when not inconsistent with any express and specific provisions herein, which are made a part hereof:

WITNESSETH:

Sec. 1. Rights of Lessee. That the Lessor, in consideration of a cash bonus and of the rents and royalties to be paid, and the conditions and covenants to be observed as herein set forth, does hereby grant and lease to the Lessee the exclusive right and privilege to drill for, mine, extract, remove and dispose of all oil and gas deposits except helium gas in or under the following-described area of the Outer Continental Shelf (as that term is defined in the Act):

**All Block 52N 74W Official Leasing Map, Channel Islands Area Map No. 6A.**

containing **5,760** acres, more or less (hereinafter referred to as the leased area), together with:

(a) the nonexclusive right to conduct within the leased area geological and geophysical explorations which are not unduly harmful to aquatic life;

(b) the right to drill water wells within the leased area and use free of cost, and to dispose of, water produced from such wells; and

(c) the right to construct or erect and to maintain within the leased area all artificial islands, platforms, fixed or floating structures, sea walls, docks, dredged channels and spaces, buildings, plants, telegraph or telephone lines and cables, pipelines, reservoirs, tanks, pumping stations, and other works and structures necessary or convenient to the full enjoyment of the rights granted by this lease, for a period of 5 years and as long thereafter as oil or gas may be produced from the leased area in paying quantities, or drilling or well reworking operations, as approved by the Secretary, are conducted thereon; subject to any unitization or pooling agreement heretofore or hereafter approved by the Secretary which affects the leased area or any part thereof, the provisions of such agreements to govern the leased area or part thereof subject thereto where inconsistent with the terms of this lease.

Sec. 2. Obligations of Lessee. In consideration of the foregoing, the Lessee agrees:

(a) *Rentals and royalties.* (1) To pay rentals and royalties as follows:

*Rentals.* To pay the Lessor on or before the first day of each lease year commencing prior to a discovery of oil or gas on the leased area, a rental of **$3.00** per acre or fraction thereof.

*Minimum royalty.* To pay the Lessor in lieu of rental at the expiration of each lease year commencing after discovery a minimum royalty of **$3.00** per acre or fraction thereof or, if there is production, the difference between the actual royalty paid during the year and the prescribed minimum royalty, if the actual royalty paid is less than the minimum royalty.

*Royalty on production.* To pay the Lessor a royalty of 16-2/3 percent in amount or value of production saved, removed, or sold from leased area. Gas of all kinds (except helium and gas used for purposes of production from and operations upon the leased area or unavoidably lost) is subject to royalty.

(2) It is expressly agreed that the Secretary may establish reasonable minimum values for purposes of computing royalty on products obtained from this lease, due consideration being given to the highest price paid for a part or for a majority of production of like quality in the same field, or area, to the price received by the Lessee, to posted prices, and to other relevant matters. Each such determination shall be made only after due

notice to the Lessee and a reasonable opportunity has been afforded the Lessee to be heard.

(3) When paid in value, such royalties on production shall be due and payable monthly on the last day of the month next following the month in which the production is obtained. When paid in production, such royalties shall be delivered at pipeline connections or in tanks provided by the Lessee. Such deliveries shall be made at reasonable times and intervals and, at the Lessee's option, shall be effected either (i) on or immediately adjacent to the leased area, without cost to the Lessor, or (ii) at a more convenient point closer to shore or on shore, in which event the Lessee shall be entitled to reimbursement for the reasonable cost of transporting the royalty substance to such delivery point. The Lessee shall not be required to provide storage for royalty taken in kind in excess of tankage required when royalty is paid in value. When payments are made in production the Lessee shall not be held liable for the loss or destruction of royalty oil or other liquid products in storage from causes over which the Lessee has no control.

(4) Rentals or minimum royalties may be reduced and royalties on the entire leasehold or any deposit, tract, or portion thereof segregated for royalty purposes may be reduced if the Secretary finds that, for the purpose of increasing the ultimate recovery of oil or gas and in the interest of conservation of natural resources, it is necessary, in his judgment, to do so in order to promote development, or because the lease cannot be successfully operated under the terms fixed herein.

*(b) Bonds.* To maintain at all times the bond required prior to the issuance of this lease and to furnish such additional security as may be required by the Lessor if, after operations or production have begun, the Lessor deems such additional security to be necessary.

*(c) Cooperative or unit plan.* Within 30 days after demand, to subscribe to and to operate under such reasonable cooperative or unit plan for the development and operation of the area, field, or pool, or part thereof, embracing lands included herein as the Secretary may determine to be practicable and necessary or advisable in the interest of conservation which plan shall adequately protect the rights of all parties in interest, including the United States.

*(d) Wells.* (1) To drill and produce such wells as are necessary to protect the Lessor from loss by reason of production on other properties or, in lieu thereof, with the consent of the oil and gas supervisor, to pay a sum determined by the supervisor as adequate to compensate the Lessor for failure to drill and produce any such well. In the event that this lease is not being maintained in force by other production of oil or gas in paying quantities or by other approved drilling or reworking operations, such payments shall be considered as the equivalent of production in paying quantities for all purposes of this lease.

(2) After due notice in writing, to drill and produce such other wells as the Secretary may reasonably require in order that the leased area or any part thereof may be properly and timely developed and produced in accordance with good operating practice.

(3) At the election of the Lessee, to drill and produce other wells in conformity with any system of well spacing or production allotments affecting the area, field, or pool in which the leased area or any part thereof is situated, which is authorized or sanctioned by applicable law or by the Secretary.

*(e) Payments.* To make all payments to the Lessor by check, bank draft or money order payable as indicated herein unless otherwise provided by regulations or by direction of the Secretary. Rental, royalties, and other payments shall be made payable to the United States Geological Survey and tendered to the Oil and Gas Supervisor, *except* that filing charges, bonuses, and first year's rental shall be made payable to the Bureau of Land Management and remitted to the Manager of the appropriate field office of that Bureau.

*(f) Contracts for disposal of products.* To file with the Oil and Gas Supervisor, Geological Survey, not later than 30 days after the effective date thereof, copies of all contracts for the disposal of lease products; provided that the Supervisor may relieve the Lessee of this requirement, in which event the contracts shall be made available for inspection by the Supervisor upon his request. Nothing in any such contract or in any approval thereof by the Supervisor shall be construed or accepted as modifying any of the provisions of this lease, including, but not limited to, provisions relating to gas waste, taking royalty in kind, and the method of computing royalties due as based on a minimum valuation and in accordance with the regulations applicable to this lease.

*(g) Statements, plats, and reports.* At such times and in such form as the Lessor may prescribe, to furnish detailed statements and reports showing the amounts and quality of all products saved, removed, and sold from the leased area, the proceeds therefrom, and the amount used for production purposes or unavoidably lost; also a plat showing development work and improvements on or with regard to the leased area.

*(h) Inspection.* To keep open at all reasonable times for the inspection of any duly authorized representative of the Lessor, the leased area and all wells, improvements, machinery and fixtures thereon and all books, accounts, and records relative to operations and surveys or investigations on or with regard to the leased area or under the lease.

*(i) Diligence.* To exercise reasonable diligence in drilling and producing the wells herein provided for; to carry on all operations in accordance with approved methods and practices including those provided in the operating and conservation regulations for the Outer Continental Shelf; to remove all structures when no longer required for operations under the lease to sufficient depth beneath the surface of the waters to prevent them from being a hazard to navigation; to carry out at expense of the Lessee all lawful and reasonable orders of the Lessor relative to the matters in this paragraph, and that on failure of the Lessee so to do the Lessor shall have the right to enter on the property and to accomplish the purpose of such orders at the Lessee's cost: *Provided,* That the Lessee shall not be held responsible for delays or casualties occasioned by causes beyond the Lessee's control.

*(j) Freedom of purchase.* To accord all workmen and employees directly engaged in any of the operations under this lease complete freedom of purchase.

*(k) Equal Opportunity clause.* During the performance of this contract the lessee agrees as follows:

(1) The lessee will not discriminate against any employee or applicant for employment because of race, creed, color, or national origin. The lessee will take affirmative action to ensure that applicants are employed, and that employees are treated during employment, without regard to their race, creed, color, or national origin. Such action shall include, but not be limited to the following: employment, upgrading, demotion, or transfer; recruitment or recruitment advertising; layoff or termination; rates of pay or other forms of compensation; and selection for training, including apprenticeship. The lessee agrees to post in conspicuous places, available to employees and applicants for employment, notices to be provided by the contracting officer setting forth the provisions of this nondiscrimination clause.

(2) The lessee will, in all solicitations or advertisements for employees placed by or on behalf of the lessee, state that all qualified applicants will receive consideration for employment without regard to race, creed, color, or national origin.

Exhibit A
12

(3) The lessee will send to each labor union or representative of workers with which he has a collective bargaining agreement or other contract or understanding, a notice, to be provided by the agency contracting officer, advising the labor union or workers' representative of the lessee's commitments under Section 202 of Executive Order No. 11246 of September 24, 1965, and shall post copies of the notice in conspicuous places available to employees and applicants for employment.

(4) The lessee will comply with all provisions of Executive Order No. 11246 of September 24, 1965, and of the rules, regulations, and relevant orders of the Secretary of Labor.

(5) The lessee will furnish all information and reports required by Executive Order No. 11246 of September 24, 1965, and by the rules, regulations, and orders of the Secretary of Labor, or pursuant thereto, and will permit access to his books, records, and accounts by the contracting agency and the Secretary of Labor for purposes of investigation to ascertain compliance with such rules, regulations, and orders.

(6) In the event of the lessee's noncompliance with the nondiscrimination clauses of this contract or with any of such rules, regulations, or orders, this contract may be cancelled, terminated or suspended in whole or in part and the lessee may be declared ineligible for further Government contracts in accordance with procedures authorized in Executive Order No. 11246 of September 24, 1965, and such other sanctions may be imposed and remedies involved as provided in Executive Order No. 11246 of September 24, 1965, or by rule, regulation, or order of the Secretary of Labor, or as otherwise provided by law.

(7) The lessee will include the provisions of Paragraphs (1) through (7) in every subcontract or purchase order unless exempted by rules, regulations, or orders of the Secretary of Labor issued pursuant to Section 204 of Executive Order No. 11246 of September 24, 1965, so that such provisions will be binding upon each subcontractor or vendor. The lessee will take such action with respect to any subcontract or purchase order as the contracting agency may direct as a means of enforcing such provisions including sanctions for noncompliance: *Provided, however,* That in the event the lessee becomes involved in, or is threatened with, litigation with a subcontractor or vendor as a reults of such direction by the contracting agency, the lessee may request the United States to enter into such litigation to protect the interests of the United States.

(*l*) *Assignment of lease.* To file for approval with the Bureau of Land Management, within 90 days from the date of final execution, any instrument of transfer of this lease, or any interest therein, including assignments of record title, operating agreements, and subleases. Carried working interests, overriding royalty interests, or payments out of production, may be created or transferred without requirement for filing or approval. Instruments required to be filed shall take effect upon approval as of the first day of the lease month following the date of filing unless at the request of the parties an earlier date is specified in such approval.

Sec. 3. Reservations to Lessor. The Lessor reserves:

(*a*) *Geological and geophysical exploration; rights-of-way.* The right to authorize the conduct of geological and geophysical exploration in the leased area which does not interfere with or endanger actual operations under this lease, and the right to grant such easements or rights-of-way upon, through, or in the leased area as may be necessary or appropriate to the working of other lands containing the deposits described in the Act, and to the treatment and shipment of products thereof by or under authority of the United States, its Lessees or Permittees, and for other public purposes, subject to the provisions of Section 5(*c*) of the Act where they are applicable and to all lawful and reasonable regulations and conditions prescribed by the Secretary thereunder.

(*b*) *Leases of sulfur and other mineral.* The right to grant sulfur leases and leases of any mineral other than oil, gas, and sulfur within the leased area or any part thereof, subject to the provisions of Section 8(*c*), 8(*d*), and 8(*e*) of the Act and all lawful and reasonable regulations prescribed by the Secretary thereunder; *Provided,* That no such sulfur lease or lease of other mineral shall authorize or permit the Lessee thereunder unreasonably to interfere with or endanger operations under this lease.

(*c*) *Purchase of production.* In time of war, or when the President of the United States shall so prescribe, the right of first refusal to purchase at the market price all or any portion of the oil or gas produced from the leased area, as provided in Section 12(*b*) of the Act.

(*d*) *Taking of royalties.* All rights, pursuant to clause (3) of Section 8(*b*) of the Act, to take royalties in the amount or value of production.

(*e*) *Fissionable materials.* All uranium, thorium, and all other materials determined pursuant to paragraph (1) of subsection (*b*) of Section 5 of the Atomic Energy Act of 1946, as amended, to be peculiarly essential to the production of fissionable materials, contained, in whatever concentration, in deposits in the subsoil or seabed of the leased area or any part thereof, as provided in Section 12(*e*) of the Act.

(*f*) *Helium.* Pursuant to Section 12(*f*) of the Act, the ownership and the right to extract helium from all gas produced under this lease, subject to such rules and regulations as shall be prescribed by the Secretary.

(*g*) *Suspension of operations during war or national emergency.* Upon recommendation of the Secretary of Defense, during a state of war or national emergency declared by the Congress or President of the United States after August 7, 1953, the authority of the Secretary to suspend any or all operations under this lease, as provided in Section 12(*c*) of the Act: *Provided,* That just compensation shall be paid by the Lessor to the Lessee.

(*h*) *Restriction of exploration and operations.* The right, as provided in Section 12(*d*) of the Act, to restrict from exploration and operations the leased area or any part thereof which may be designated by and through the Secretary of Defense, with the approval of the President, as, or as part of, an area of the Outer Continental Shelf needed for national defense; and so long as such designation remains in effect no exploration or operations may be conducted on the surface of the leased area or the part thereof included within the designation except with the concurrence of the Secretary of Defense; and if operations or production under this lease within any such restricted area shall be suspended, any payments of rentals, minimum royalty, and royalty prescribed by this lease likewise shall be suspended during such period of suspension of operations and production, and the term of this lease shall be extended by adding thereto any such suspension period, and the Lessor shall be liable to the Lessee for such compensation as is required to be paid under the Constitution of the United States.

Sec. 4. Directional drilling. This lease may be maintained in force by directional wells drilled under the leased area from surface locations on adjacent or adjoining lands not covered by this lease. In such circumstances, drilling shall be considered to have been commenced on the leased area when drilling is commenced on the adjacent or adjoining land for the purpose of directionally drilling under the leased area, and production of oil or gas from the leased area through any directional well surfaced on adjacent or adjoining land or drilling or reworking of any such directional well

shall be considered production or drilling or reworking operations (as the case may be) on the leased area for all purposes of this lease. Nothing contained in this paragraph is intended or shall be construed as granting to the Lessee any leasehold interests, licenses, easements, or other rights in or with respect to any such adjacent or adjoining land in addition to any such leasehold interests, licenses, easements, or other rights which the Lessee may have lawfully acquired under the Act or from the Lessor or others.

Sec. 5. Surrender and termination of lease. The Lessee may surrender this entire lease or any officially designated subdivision of the leased area by filing with the Bureau of Land Management, a written relinquishment, in *triplicate*, which shall be effective as of the date of filing, subject to the continued obligation of the Lessee and his surety to make payment of all accrued rentals and royalties and to abandon all wells on the area to be relinquished to the satisfaction of the Oil and Gas Supervisor.

Sec. 6. Removal of property on termination of lease. Upon the expiration of this lease, or the earlier termination thereof as herein provided, the Lessee shall within a period of 1 year thereafter remove from the premises all structures, machinery, equipment, tools, and materials other than improvements needed for producing wells or for drilling or producing on other leases and other property permitted by the Lessor to be maintained on the area.

Sec. 7. Remedies in case of default. (*a*) Whenever the Lessee fails to comply with any of the provisions of the Act or this lease or the applicable regulations in force and effect on the date of issuance of this lease, the lease shall be subject to cancellation as follows:

(1) *Cancellation of nonproducing lease.* If, at the time of such default, no well is producing, or is capable of producing, oil or gas in paying quantities from the leased area, whether such well be drilled from a surface location within the leased area or be directionally drilled from a surface location on adjacent or adjoining lands, this lease may be cancelled by the Secretary (subject to the right of judicial review as provided in Section 8(*j*) of the Act) if such default continues for the period of 30 days after mailing of notice by registered letter to the Lessee at the Lessee's record post office address.

(2) *Cancellation of producing lease.* If, at the time of such default, any well is producing, or is capable of producing, oil or gas in paying quantities from the leased area, whether such well be drilled from a surface location within the leased area or be directionally drilled from a surface location on adjacent or adjoining lands, this lease may be cancelled by an appropriate proceeding in any United States district court having jurisdiction under the provisions of Section 4(*b*) of the Act if such default continues for the period of 30 days after mailing of notice by registered letter to the Lessee at the Lessee's record post office address.

(*b*) *Other remedies.* If any such default continues for the period of 30 days after mailing of notice by registered letter to the Lessee at the Lessee's record post office address, the Lessor may then exercise any legal or equitable remedy which the Lessor may have; however, the remedy of cancellation of this lease may be exercised only under the conditions and subject to the limitations set out above in paragraph (*a*) of this Section, or pursuant to Section 8(*i*) of the Act.

(*c*) *Effect of waiver of default.* A waiver of any particular default shall not prevent the cancellation of this lease or the exercise of any other remedy the Lessor may have by reason of any other cause or for the same cause occurring at any other time.

Sec. 8. Heirs and successors in interest. Each obligation hereunder shall extend to and be binding upon, and every benefit hereof shall inure to, the heirs, executors, administrators, successors, or assigns of the respective parties hereto.

Sec. 9. Unlawful interest. No Member of, or Delegate to, Congress, or Resident Commissioner, after his election or appointment, or either before or after he has qualified, and during his continuance in office, and no officer, agent, or employee of the Department of the Interior, except as provided in 43 CFR 7.4(a) (1), shall be admitted to any share or part in this lease or derive any benefit that may arise therefrom; and the provisions of Section 3741 of the Revised Statutes (41 U.S.C. Sec. 22), as amended, and Sections 431, 432, and 433 of Title 18 of the United States Code, relating to contracts made or entered into, or accepted by or on behalf of the United States, form a part of this lease so far as the same may be applicable.

---

HUMBLE OIL & REFINING COMPANY

By _/s/ [signature]_
(Signature of Lessee)
**Its Attorney in Fact**

_____
(Signature of Lessee)

_____
(Signature of Lessee)

_____
(Signature of Lessee)

THE UNITED STATES OF AMERICA

By _/s/ William E. Grant_
(Authorized Officer)

Manager, Bureau of Land Management
Los Angeles Office
(Title)

MAR 1 2 1968
(Date)

If this lease is executed by a corporation, it must bear the corporate seal          GPO 855-238

Exhibit A
14

State of California      )
                         ) ss
City and County of San Francisco )

On ~~September 29 1970~~ before me, Edmond Lee Kelly, a Notary Public in and for said City and County and State, residing therein, duly commissioned and sworn, personally appeared A. J. JACOBS and J. P. BOWMAN known to me to be CONTRACT AGENT and ASSISTANT SECRETARY, respectively, of STANDARD OIL COMPANY OF CALIFORNIA the Corporation described in and that executed the within instrument, and also known to me to be the persons who executed it on behalf of the said Corporation therein named, and they acknowledged to me that such Corporation executed the same.

IN WITNESS WHEREOF, I have hereunto set my hand and affixed my Official Seal, at my office in the City and County and State aforesaid the day and year in this certificate above written.



EDMOND LEE KELLY
NOTARY PUBLIC · CALIFORNIA
CITY AND COUNTY OF
SAN FRANCISCO
My Commission Expires January 22, 1972

Notary Public in and for said City and County of San Francisco, State of California

19.1

Exhibit A

15

STATE OF CALIFORNIA } ss.
COUNTY OF LOS ANGELES }

ON THIS 15th day of February, 19 68, before me, the undersigned, a Notary Public in and for said County and State personally appeared NIBERT J. JOHNSON, known to me to be the person whose name is subscribed to the within instrument, as the Attorney in Fact of HUMBLE OIL & REFINING COMPANY, a corporation, and acknowledged to me that he subscribed the name of HUMBLE OIL & REFINING COMPANY thereto as principal and his own name as Attorney in Fact.

WITNESS my hand and official seal.

KATHERINE BIDNER
NOTARY PUBLIC-CALIFORNIA
PRINCIPAL OFFICE IN
LOS ANGELES COUNTY

*Katherine Bidner*
KATHERINE BIDNER
MY COMMISSION EXPIRES JUNE 12, 1969

(Print, stamp or type name)
Notary Public in and for Said County and State.

Exhibit A

16