# EXHIBIT B

Regional File

SANTA YNEZ UNIT AGREEMENT

CHANNEL ISLANDS AREA

OUTER CONTINENTAL SHELF, OFFSHORE CALIFORNIA



U.S.G.s.—Co.—Sonservation Division
RECEIVED
NOV 1 3 1970
OIL & GAS OPERATIONS



GEOLOGICAL SURVEY
RECEIVED
NOV 3 1970
LOS ANGELES

<u>CERTIFICATION-DETERMINATION</u>

Pursuant to the authority vested in the Secretary of the Interior under the Outer Continental Shelf Lands Act, approved August 7, 1953, 67 Stat. 462; 43 U.S.C. 1331 et seq., and delegated to the Regional Oil and Gas Supervisors of the Geological Survey (33 F.R. 5812, April 16, 1968), I do hereby:

A.  Approve the attached Agreement for the development and operation of the Santa Ynez Unit Area, Channel Islands Area, Outer Continental Shelf, Offshore California.

B.  Certify and determine that the unit plan of development and operation contemplated in the attached Agreement is in the interest of conservation.

DATED:

_____12 / 2, 1970_____

D.W. Solanas
Regional Oil and Gas Supervisor
United States Geological Survey

Contract No. 14-08-0001-8979

Exhibit B
19

## TABLE OF CONTENTS

|  |  | Page |
|---|---|---|
|  | Recitals | 1 |
| Section 1 | Enabling Act and Regulations | 1 |
| Section 2 | Unit Area | 1 |
| Section 3 | Unitized Land and Unitized Substances | 2 |
| Section 4 | Unit Operator | 3 |
| Section 5 | Accounting Provisions and Unit Operating Agreement | 3 |
| Section 6 | Plan of Operations | 4 |
| Section 7 | Participation | 6 |
| Section 8 | Royalty and Allocation of Production | 7 |
| Section 9 | Relinquishment of Leases | 7 |
| Section 10 | Rentals and Minimum Royalties | 7 |
| Section 11 | Automatic Contraction of Unit Area | 8 |
| Section 12 | Leases and Contracts Conformed and Extended | 9 |
| Section 13 | Effective Date and Term | 10 |
| Section 14 | Appearances | 10 |
| Section 15 | No Waiver of Certain Rights | 11 |
| Section 16 | Unavoidable Delay | 11 |
| Section 17 | Nondiscrimination | 11 |
| Section 18 | Counterparts | 11 |
| Section 19 | Subsequent Joinder | 12 |
| Section 20 | Covenants with the Land | 12 |

1       SANTA YNEZ UNIT AGREEMENT
2       CHANNEL ISLANDS AREA
3       OUTER CONTINENTAL SHELF, OFFSHORE CALIFORNIA

4           This agreement, entered into as of
5   by and between the parties subscribing, ratifying or consenting hereto, and
6   herein referred to as the "parties hereto,"

7           W I T N E S S E T H :

8           Whereas wells have been drilled within the unit area which have
9   discovered oil and gas in paying quantities; and
10          Whereas the parties hereto are the owners of working, or other
11  interests in the oil and gas in the unit area which are subject to this agree-
12  ment; and
13          Whereas the Outer Continental Shelf Lands Act of August 7, 1953,
14  67 Stat. 462; 43 U.S.C. 1331 et seq., hereinafter referred to as the "Act",
15  authorizes the Secretary of the Interior, in the interest of conservation, to
16  provide for unitization, pooling, and drilling agreements; and
17          Whereas the parties hereto hold sufficient interest in the Santa Ynez
18  Unit area covering the land hereinafter described to give reasonable effective
19  control of operations therein; and
20          Whereas the parties hereto deem it in the interest of conservation to
21  unitize their interests in the unit area under the provisions of Section 5(a)(1)
22  of the Act with the consent of the Secretary of the Interior or his duly
23  authorized representative for the purpose of exploration, development, and
24  operation of their oil and gas leases;
25          NOW, THEREFORE, in consideration of the premise and promises
26  herein contained, the parties hereto commit their respective interests in
27  the below-defined Unit Area and agree among themselves as follows:
28  SECTION 1:   ENABLING ACT AND REGULATIONS
29          The Act and all valid pertinent regulations are accepted and made a
30  part of this Agreement, insofar as such regulations are applicable hereto.
31  SECTION 2:   UNIT AREA
32          The following described land as shown on the United States Official
33  Leasing Map for the Channel Islands Area, Map No. 6A, shall constitute the
34  Unit Area:
35  All of Blocks 52N 74W; 52N 75W; 52N 77W; 52N 78W; 52N 79W; 52N 80W;
36  53N 75W; 53N 76W; 53N 78W; 53N 79W;
37  N 1/2 Block 53N 77W; and
38  All those portions lying seaward of a line 3 geographical miles distant from
39  the coastline of California (as said coastline is defined in the Submerged

Exhibit B
21

1    Lands Act of 1953) of Blocks 53N 72W; 53N 73W; 53N 74W; 53N 80W; 53N 81W;

2    54N 74W; 54N 75W; 54N 77W; 54N 78W; 54N 79W; and 54N 81W;

3    and containing 86,399.0 acres, more or less.

4         Exhibit "A", attached hereto and made a part hereof, is a map showing

5    the Unit Area, boundaries, and identity of the blocks and leases in said area

6    to the extent known to the Unit Operator.  Exhibit "B", attached hereto and

7    made a part hereof, is a schedule showing, to the extent known to the Unit

8    Operator, the acreage and percentage and kind of ownership of oil and gas

9    interests in all land in the Unit Area.  Exhibits "A" and "B" shall be revised

10   by the Unit Operator whenever changes render such revision necessary, and

11   four (4) copies shall be filed with the Oil and Gas Supervisor of the United

12   States Geological Survey, hereinafter referred to as "Supervisor."

13        The Unit Area as described above shall, when practicable, be expanded

14   to include therein any additional land deemed necessary or advisable to

15   conform with the purposes of this Agreement.

16        Such expansion shall be effected in the following manner:

17        (a)  Unit Operator, on its own motion, after preliminary concurrence

18   of the Director of the United States Geological Survey, hereinafter referred

19   to as "Director", or on demand of the Director, shall prepare a notice of

20   proposed expansion describing the contemplated changes in the boundaries

21   of the unit area, the reasons therefor, and the proposed effective date

22   thereof, preferably the first day of a month subsequent to the date of

23   notice.

24        (b)  Said notice shall be delivered to the Supervisor, and copies thereof

25   mailed to the last known address of each working interest owner, lessee,

26   and lessor whose interest is affected, advising that 30 days will be allowed

27   for submission to the Unit Operator of any objections.

28        (c)  Upon expiration of the 30-day period provided in the preceding

29   item (b) hereof, Unit Operator shall file with the Supervisor evidence of

30   mailing of the notice of expansion and a copy of any objections thereto which

31   have been filed with the Unit Operator, together with an application, in

32   sufficient number, for approval of such expansion and with appropriate

33   joinders.

34        (d)  After due consideration of all pertinent information, the expansion

35   shall, upon approval by the Supervisor, become effective as of the date

36   prescribed in the notice thereof.

37   SECTION 3:  UNITIZED LAND AND UNITIZED SUBSTANCES

38        All land committed to this Agreement shall constitute land referred

39   to herein as "Unitized Land" or "Unitized Acreage."  All oil and gas in or

40   produced from any and all formations of the Unitized Land are unitized

41   under the terms of this Agreement and herein are called "Unitized Substances."

-2-

Exhibit B
22

SECTION 4:   UNIT OPERATOR

1  
2      Humble Oil & Refining Company, a Delaware corporation, is hereby
3  designated as Unit Operator and by signature hereto as Unit Operator agrees
4  and consents to accept the duties and obligations of Unit Operator, for the
5  discovery, development and production of Unitized Substances as herein pro-
6  vided.  Whenever reference is made herein to Unit Operator, such reference
7  means the Unit Operator acting in that capacity and not as an owner of interest
8  in Unitized Substances, and the term "Working Interest Owner," when used
9  herein, shall include Unit Operator as the owner of a working interest when
10 such an interest is owned by it.  A successor Unit Operator may be designated
11 by the owners of the working interests in Unitized Substances in accordance
12 with the Unit Operating Agreement referred to below, and four (4) executed
13 copies of the designation of successor Unit Operator shall be filed with the
14 Supervisor.  Such designation shall not become effective until (a) a Unit
15 Operator so designated shall accept in writing the duties and responsibilities
16 of Unit Operator, and (b) the selection has been approved by the Supervisor.
17     If no successor Unit Operator is selected and qualified as herein
18 provided, the Director, at his election, may declare this Unit Agreement
19 terminated.

SECTION 5:   ACCOUNTING PROVISIONS AND UNIT OPERATING AGREEMENT

20  
21     Costs and expenses incurred by Unit Operator in conducting unit
22 operations shall be paid and apportioned among and borne by the owners of
23 working interests, all in accordance with the agreement or agreements
24 entered into by and between the Unit Operator and the owners of working
25 interests, whether one or more, separately or collectively.  Any agreement
26 or agreements entered into between the working interest owners and the
27 Unit Operator as provided in this section, whether one or more, are herein
28 referred to as the "Unit Operating Agreement." Such Unit Operating
29 Agreement shall also provide the manner in which the working interest owners
30 shall be entitled to receive their respective proportionate and allocated
31 share of the benefits accruing hereto in conformity with their underlying
32 operating agreements, leases, or other contracts, and such other rights
33 and obligations as between Unit Operator and the working interest owners as
34 may be agreed upon by Unit Operator and the working interest owners; how-
35 ever, no such Unit Operating Agreement, or any amendments thereto, shall
36 be deemed either to modify any of the terms and conditions of this Unit
37 Agreement or to relieve the Unit Operator of any right or obligation
38 established under this Unit Agreement, and in case of any inconsistency or
39 conflict between this Unit Agreement and the Unit Operating Agreement, this
40 unit agreement shall govern.  Three true copies of any Unit Operating
41 Agreement executed pursuant to this section should be filed with the Supervisor,
42 prior to approval of this Unit Agreement.

-3-

Exhibit B
23

1  SECTION 6:  PLANS OF OPERATIONS

2        Unit Operator agrees to drill or commence drilling five (5) exploratory

3  wells as its initial Plan of Operations at locations selected by Unit Operator

4  and approved by the Supervisor.  Under said program, one well shall be

5  drilled on each of the following described parcels of land to respective depths

6  as shown:

| Description | Serial Number | Required Depth (true vertical sub-sea) |
|---|---|---|
| Block 52N 77W | OCS P-0182 | 9,500 feet |
| Portion of Block 53N 74W and Portion of Block 54N 74W | OCS P-0188 | 9,500 feet |
| N/2 Block 53N 75W and Portion of Block 54N 75W; or Block 53N 76W | OCS P-0189; or OCS P-0191 | 10,000 feet |
| N/2 Block 53N 78W and Portion of Block 54N 78W; or S/2 Block 53N 78W | OCS P-0193; or OCS P-0194 | 8,500 feet |
| Portion of Block 53N 79W and Portion of Block 54N 79W; or Portion of Block 53N 80W | OCS P-0195; or OCS P-0196 | 8,000 feet |

21  or to lesser respective depths at which the top of the Middle Miocene formation

22  is penetrated, unless Unitized Substances are discovered in paying quantities

23  at lesser respective depths, or Unit Operator establishes to the satisfaction

24  of the Supervisor that further drilling of any such well would be unwarranted

25  or impracticable.  Unit Operator shall continue drilling diligently allowing

26  not more than six (6) months between the completion of one well and the

27  beginning of the next well, until said five (5) wells have been drilled as

28  aforesaid.

29        Wells commenced subsequent to January 1, 1970, shall constitute

30  obligation wells above specified, if otherwise qualified, and the initial Plan

31  of Operations will expire no later than six (6) months after the completion of

32  the five (5) well program.

33        When warranted by unforeseen circumstances, the Supervisor may

34  grant a single extension of any or all of the critical dates for exploratory

35  drilling operations cited in the initial or subsequent Plan of Operations.  No

36  such extension shall exceed a period of four (4) months for each well, in the

37  initial Plan of Operations.

38        Within 12 months after the effective date of this agreement, Unit

39  Operator shall submit for the Supervisor's approval an acceptable supple-

40  mental Plan of Operations which shall provide for the development of actual

41  production from lands subject hereto; i.e., the plan shall provide for the

-4-

Exhibit B
24

1  construction of the initial production system and such related facilities as
2  may be necessary for drilling wells, and for producing, metering, storing
3  and transporting unitized substances from the unit area.  The facilities pro-
4  posed for the development of actual production shall be designed to provide
5  maximum safety and compatibility of operations giving due consideration to
6  the environment and use of the area by others.
7       The aforementioned plan shall be implemented immediately upon
8  approval by the Supervisor, and actual on site or off site construction for
9  drilling and production facilities provided in said plan shall be commenced no
10  later than one (1) year after approval of such supplemental Plan of Operations
11  and obtaining all necessary governmental permits for facilities to initiate
12  production.
13       Prior to the expiration of the Initial Plan of Operations or any supple-
14  mental plan, Unit Operator shall submit for the approval of the Supervisor
15  an acceptable Plan of Operations for the Unit Area which, when approved
16  by the Supervisor, shall constitute the exploratory and/or development
17  drilling and operating obligations of Unit Operator under this Agreement for
18  the period specified therein.
19       Until there is actual production of Unitized Substances, the failure of
20  Unit Operator to timely drill any of the wells provided for in a Plan of
21  Operations required under this Section or to timely submit an acceptable
22  supplemental Plan of Operations shall, after notice of default or notice of
23  prospective default to Unit Operator by the Supervisor and after failure of
24  Unit Operator to remedy any actual default within a reasonable time (as de-
25  termined by the Supervisor), result in termination of this Agreement,
26  effective as of the first day of the default.
27       Any plan submitted shall provide for the exploration of the Unit Area
28  and for the determination of the lands thereof capable of producing Unitized
29  Substances and/or for the development of the Unit Area, and shall be as
30  complete and adequate as the Supervisor may determine to be necessary for
31  timely exploration and/or development and to ensure proper conservation
32  of the oil and gas resources of the Unit Area.  Such plans shall (a) specify
33  the number and locations of any wells to be drilled and the proposed order
34  and time for such drilling, and (b) to the extent practicable, specify the
35  operating practices regarded as necessary and advisable for proper conser-
36  vation of natural resources and protection of the environment.
37       Separate plans may be submitted for separate productive zones, subject
38  to the approval of the Supervisor.  Said plan or plans shall be modified or
39  supplemented when necessary to meet changed conditions or to protect the
40  interest of all parties to this Agreement.

-5-

Exhibit B
25

SECTION 7:   PARTICIPATION

1
2          Prior to the commencement of production of Unitized Substances,
3    the Unit Operator shall submit for approval by the Supervisor a schedule
4    (or schedules) of all land then regarded as reasonably proved to be productive
5    from the pool (or pools) discovered or developed; all lands in said schedule
6    (or schedules), on approval of the Supervisor, to constitute a participating
7    area (or areas), effective as of the date such production commences or the
8    effective date of this Agreement, whichever is later.  Said schedule (or
9    schedules) shall also set forth the percentage of Unitized Substances to be
10   allocated, as herein provided, to each tract in the participating area (or
11   areas) so established, and shall govern the allocation of production
12   commencing with the effective date of the controlling participating area.
13   A separate participating area may be established for each separate pool of
14   Unitized Substances or for any group thereof which is produced, as a single
15   pool or zone, and any two or more participating areas so established may be
16   combined into one, on approval of the Supervisor.   The participating area or
17   areas so established shall be revised from time to time, subject to like
18   approval, to include additional land then regarded as reasonably proved
19   to be productive from such pool or pools or necessary to unit operations, or
20   to exclude land then regarded as reasonably proved not to be productive from
21   the pool or pools for which the participating area was established and/or not
22   necessary to unit operations and the schedule of allocation percentages shall
23   be revised accordingly.   The effective date of any revision shall be the first
24   of the month in which is obtained the knowledge or information on which such
25   revision is predicated, provided, however, that a more appropriate effective
26   date may be used if justified by the Unit Operator and approved by the Super-
27   visor.  No land shall be excluded from a participating area on account of
28   depletion of the unitized substances, except that any participating area
29   established under the provisions of this unit agreement shall terminate
30   automatically whenever all operations are abandoned in the pool or pools for
31   which the participating area was established.
32          On or after the ninth anniversary of the initial participating area
33   established under this Agreement  Unit Operator may submit for approval
34   of the Supervisor a schedule (or schedules) of all lands then regarded as
35   reasonably proved by appropriate data to be capable of production in paying
36   quantities from any pool (or pools) for which a participating area has not
37   been established as a result of the production of Unitized Substances.  All
38   lands in said schedule (or schedules), on approval of the Supervisor, shall
39   constitute a participating area (or areas) effective as of said ninth anniversary
40   or as of the first of the month in which the knowledge or information which
41   justifies establishment of a participating area is obtained, whichever date
42   is later.

-6-

Exhibit B
26

1        Nothing herein contained shall be construed as requiring any retro-

2   active adjustment for production obtained prior to the effective date of the

3   revision of the participating area.

4   SECTION 8:  ROYALTY AND ALLOCATION OF PRODUCTION

5        All Unitized Substances produced from a participating area established

6   under this agreement, except any part thereof used in conformity with good

7   operating practices within the unitized area for drilling, operating, camp

8   and other production or development purposes, for repressuring or recycling

9   in accordance with a Plan of Operations approved by the Supervisor, or

10  unavoidably lost, shall be deemed to be produced equally on an acreage basis

11  from the several tracts of Unitized Land of the participating area established

12  for such production and, for the purpose of determining any benefits accruing

13  under this Agreement, each such tract of Unitized Land shall have allocated

14  to it such percentage of said production as the number of acres of such tract

15  included in said participating area bears to the total acres of Unitized Land

16  in said participating area, and royalty shall be paid by Unit Operator.

17       Allocation of production hereunder for purposes other than for settle-

18  ment of the royalty obligations of the respective working interest owners,

19  shall be on the basis prescribed in the Unit Operating Agreement whether in

20  conformity with the basis of allocation herein set forth or otherwise.  It

21  is hereby agreed that production of Unitized Substances from a participating

22  area shall be allocated as provided herein regardless of whether any wells

23  are drilled on any particular part or tract of said participating area.  If any

24  gas produced from one participating area is used for repressuring or

25  recycling purposes in another participating area, the first gas withdrawn

26  from such last-mentioned participating area for sale during the life of this

27  agreement shall be considered to be the gas so transferred until an amount

28  equal to that transferred shall be so produced for sale and such gas shall

29  be allocated to the participating area from which initially produced as such

30  area was last defined at the time of such final production.

31  SECTION 9:  RELINQUISHMENT OF LEASES

32       Pursuant to the provisions of the leases and 43 CFR 3386.1, a lessee

33  of record shall, subject to the provisions of the Unit Operating Agreement,

34  have the right to relinquish any or all leases committed hereto, in whole or

35  in part; provided, that no relinquishment shall be made of land within a

36  participating area without the prior approval of the Director.  Upon such

37  relinquishment the Unit Area shall be contracted automatically to exclude

38  the relinquished land, as of the date of relinquishment.

39  SECTION 10:  RENTALS AND MINIMUM ROYALTIES

40       Rentals on nonproductive lands are payable prior to the beginning of

41  each lease year, and minimum royalties accrue as of the first of each lease

-7-

Exhibit B

27

1    year and are payable at the end of the lease year.  Beginning with the lease

2    year commencing on or after February 1, 1971, and for each lease year

3    thereafter, rentals and minimum royalty payments shall be made on the

4    following basis:

5          A.    An advance annual rental of $3.00 an acre or fraction thereof,

6                in no event creditable against production royalties, shall be

7    *Amend. #3*   paid for all Unitized Acreage which is not *leases no part of which is* within a Par-

8                ticipating Area (such rental to be due and payable as of the

9                beginning of each lease year).

10         B.    A minimum royalty shall be charged at the beginning of each

11               lease year (such minimum royalty to be due as of the last

12               day of the lease year and payable within thirty (30) days

13               thereafter) of $3.00 an acre, or fraction thereof, for all

14   *Amend. #3*   *leases any part of which is within* unitized acreage within a Participating Area as of the

15               beginning of the preceding lease year, or, if there is pro-

16               duction, the deficit if any, between the actual royalty paid

17               during the preceding lease year and the minimum royalty

18               prescribed herein.

19   SECTION 11:   AUTOMATIC CONTRACTION OF UNIT AREA

20   *Amend #2*   All 1/4 1/4 blocks of land *any lease(s)*, no part of which is entitled to be within

21   a participating area on the tenth anniversary of the effective date or the

22   initial participating area established under this agreement, shall be eliminated

23   automatically from this agreement effective as of said tenth anniversary and

24   such lands shall no longer be a part of the unit area and shall no longer be

25   subject to this agreement unless diligent drilling operations are in progress

26   on Unitized Lands not entitled to participation on said tenth anniversary, in

27   which event all such lands shall remain subject hereto for so long as such

28   drilling operations are continued diligently with not more than 6 months time

29   elapsing between the completion of one such well and the commencement of

30   the next such well.  Diligent drilling operations shall be deemed to be "in

31   progress on Unitized Lands not entitled to participation" if on said tenth

32   anniversary actual drilling operations are in progress on a well located

33   on participating land but approved for completion at a bottom hole location

34   which is outside of a participating area, or if Unit Operator has completed an

35   exploratory well drilled during the six (6) months immediately preceding said

36   tenth anniversary on Unitized Lands not entitled to participation, under an

37   approved Plan of Operations, provided drilling operations are commenced on

38   lands not entitled to participation within six (6) months after the completion of

39   said well.  With prior approval of the Supervisor, when warranted, a period

40   of time in excess of six (6) months may be allowed to elapse between the

41   completion of one well and the commencement of the next well without the

42   automatic elimination of non-participating acreage.

-8-

Exhibit B
28

1    Any Unitized Lands proved productive by drilling operations which

2    serve to delay automatic elimination of lands under this section shall be

3    incorporated into a participating area or areas in the same manner as such

4    lands would have been incorporated in such areas had such lands been

5    proven productive during the year preceding said tenth anniversary.  In

6    the event non-participating lands are retained under this Unit Agreement

7    after the tenth anniversary of the initial participating area as a result of

8    drilling operations on lands not entitled to participation, ~~all 1/4 1/4 blocks~~ *any lease(s)*

9    ~~of land~~ no part of which is entitled to be within a participating area shall

10   be eliminated automatically as of the 181st day, or such later date as may

11   be established by the Supervisor, following the completion of the last well

12   recognized as delaying such automatic elimination beyond the tenth

13   anniversary of the initial participating area established under this Agreement.

14       The leases as to any lands excluded from the Unit Agreement, in

15   accordance with this Section, shall automatically terminate as to such    *changed*

16   eliminated lands as of the date of exclusion.    *Amnd #2*

17   SECTION 12:   LEASES AND CONTRACTS CONFORMED AND EXTENDED

18       The terms, conditions and provisions of all leases, subleases and

19   other contracts relating to exploration, drilling, development, or operations

20   for oil or gas on lands committed to this Agreement, are hereby expressly

21   modified and amended to the extent necessary to make the same conform to

22   the provisions hereof, but otherwise to remain in full force and effect; and

23   the Supervisor by his approval hereof, does hereby establish, alter, suspend,

24   change, or revoke the drilling, production, rental, minimum royalty and

25   royalty requirements of the Federal leases committed hereto and the regula-

26   tions in respect thereto, to conform said requirements to the provisions of

27   this Agreement, and, without limiting the generality of the foregoing, all

28   leases, subleases, and contracts are particularly modified in accordance

29   with the following:

30       A.    Drilling and producing operations performed hereunder upon

31           any tract of Unitized Land will be accepted and deemed to be

32           performed upon and for the benefit of each and every tract of

33           Unitized Land, and no lease shall be deemed to expire by

34           reason of failure to drill or produce wells situated on the

35           tracts therein embraced;

36       B.    Suspension of drilling or producing operations on all Unitized

37           Lands pursuant to direction or consent of the Secretary, or

38           his duly authorized representative, shall be deemed to

39           constitute such suspension pursuant to such direction or

40           consent as to each and every tract of Unitized Land; however,

41           a suspension of drilling and/or producing operations on specifie

42           lands shall be applicable only to such lands;

-9-

Exhibit B
29

1    C.    Subject to the relinquishment provisions hereof, any lease
2          committed hereto shall, as to the Unitized Lands, continue
3          in force beyond the term so provided therein, or as extended
4          by law, for the life of this Agreement; provided, actual
5          sustained production is had under this Agreement or actual
6          on site or off site construction of the initial facilities
7          necessary for drilling and producing operations is commenced
8          prior to the expiration of the term of such lease.  This sub-
9          section shall not operate to extend any lease or portion there-
10         of as to lands excluded from the Unit Area by the contraction
11         thereof.  Upon termination of this Agreement, the leases
12         covered hereby may be maintained and continued in full force
13         and effect in accordance with the terms, provisions, and
14         conditions of the lease or leases and amendments thereto.

15    SECTION 13:   EFFECTIVE DATE AND TERM
16         This agreement shall become effective upon approval by the Secretary
17    or his duly authorized representative and shall terminate five (5) years from
18    said effective date unless,
19         (a)  Such date of expiration is extended by the Director, or
20         (b)  Unitized substances are produced from wells drilled hereunder,
21    in which event this agreement shall remain in effect so long as Unitized
22    Substances are or can be produced and, should production cease, so long
23    thereafter as diligent operations are in progress for the restoration of pro-
24    duction or discovery of new production and should production be restored or
25    a new discovery made, so long thereafter as unitized substances are or
26    can be produced, or
27         (c)  Operations are delayed due to the causes set forth in Section
28    16 hereof, in which event the term of this agreement shall be extended for a
29    period of time equal to the period of creditable "Unavoidable Delay" time, or
30         (d)  It is terminated as heretofore provided in this agreement.
31         This agreement may be terminated at any time by the owners of a
32    majority of the working interests, on an acreage basis, with the approval of
33    the Supervisor.  Notice of any such approval shall be given by the Unit
34    Operator to all parties hereto.

35    SECTION 14:  APPEARANCES
36         Unit Operator shall, after notice to other parties affected, have the
37    right to appear for and on behalf of any and all interests affected hereby
38    before the Department of the Interior, and to appeal from orders issued under
39    the regulations of said Department, or to apply for relief from any of said
40    regulations or in any proceedings relative to operations before the Depart-
41    ment of the Interior or any other legally constituted authority; provided,

Exhibit B
30

1    however, that any interested party shall also have the right at its own

2    expense to be heard in any such proceeding.

3    SECTION 15: NO WAIVER OF CERTAIN RIGHTS

4          Nothing contained in this Agreement shall be construed as a waiver

5    by any party hereto of the right to assert any legal or constitutional right or

6    defense pertaining to the validity or invalidity of any law of the United States,

7    or regulations issued thereunder, in any way affecting such party or as a

8    waiver by any such party of any right beyond his or its authority to waive.

9    SECTION 16: UNAVOIDABLE DELAY

10          The term of this Agreement and all obligations imposed by this

11    agreement on each party, except for the payment of money, shall be suspended

12    while compliance by the party, despite the exercise of due diligence, is

13    prevented in whole or in part by labor dispute, fire, war, civil disturbance,

14    act of God; by federal, state, or municipal laws; by any rule, regulation,

15    or order of or delay or failure to act by a federal, state, municipal or other

16    governmental agency; by inability to secure required federal, state, municipal

17    or other governmental permits, easements or ordinances; by any judicial

18    acts or restraints; by inability to secure materials; by unavoidable accidents;

19    or by any other cause or causes beyond reasonable control of the party,

20    whether or not similar to any cause above enumerated. No party shall be

21    required against its will to adjust or settle any labor dispute. No obligation

22    which is suspended under this section shall become due less than thirty (30)

23    days after it has been determined that the suspension is no longer applicable.

24    Determination of creditable "Unavoidable Delay" time shall be made by the

25    Unit Operator subject to approval of the Director. Notwithstanding any other

26    provisions of this agreement, the Director, on his own initiative or upon

27    appropriate justification by Unit Operator, may postpone any obligation under

28    this agreement to commence or continue drilling or to operate on or produce

29    Unitized Substances from lands covered by this agreement when in his

30    judgment circumstances warrant such action.

31    SECTION 17: NONDISCRIMINATION

32          In connection with the performance of work under this Agreement, the

33    Operator agrees to comply with all of the provisions of Section 202 (1) to (7)

34    inclusive, of Executive Order 11246 (30 F.R. 12319), which are hereby

35    incorporated by reference in this Agreement.

36    SECTION 18: COUNTERPARTS

37          This Agreement may be executed in any number of counterparts no

38    one of which needs to be executed by all parties, or may be ratified or

39    consented to by separate instruments in writing specifically referring hereto,

40    and shall be binding upon all parties who have executed such a counterpart,

41    ratification, or consent hereto, with the same force and effect as if all such

42    parties had signed the same document.

-11-

Exhibit B
31

1  SECTION 19:  SUBSEQUENT JOINDER

2      Any oil or gas interests in lands within the Unit Area not committed

3  hereto prior to approval of this Agreement may thereafter be committed hereto

4  by the owner or owners thereof subscribing or consenting to this Agreement,

5  and, if the interest is a working interest, by the owner of such interest

6  also subscribing to the Unit Operating Agreement.  The right of subsequent

7  joinder, as provided in this Section, by a Working Interest Owner is subject

8  to such requirements or approvals, if any, pertaining to such joinder, as

9  may be provided for in the Unit Operating Agreement.  Joinder to the Unit

10  Agreement by a Working Interest Owner, at any time, must be accompanied

11  by appropriate joinder to the Unit Operating Agreement in order for the

12  interest to be regarded as committed to this Unit Agreement.  Except as may

13  otherwise herein be provided, subsequent joinders to this Agreement shall

14  be effective as of the first day of the month following the filing with the

15  Supervisor of duly executed counterparts of all or any papers necessary to

16  establish effective commitment of any tract to this Agreement unless objection

17  to such joinder is duly made within sixty (60) days by the Supervisor.

18  SECTION 20:  COVENANTS RUN WITH THE LAND

19      The covenants herein shall be construed to be covenants running with

20  the land with respect to the interest of the parties hereto and their successors

21  in interest until this Agreement terminates, and any grant, transfer, or

22  conveyance, of interest in land or leases subject hereto shall be and hereby

23  is conditioned upon the assumption of all privileges and obligations hereunder

24  by the grantee, transferee, or other successor in interest.  No assignment

25  or transfer of any working interest, or other interest subject hereto shall

26  be binding upon Unit Operator until the first day of the calendar month after

27  Unit Operator is furnished with the original, photostatic, or certified copy

28  of the instrument of transfer.

29      IN WITNESS WHEREOF, the parties hereto have caused this agree-

30  ment to be executed and have set opposite their respective names the date of

31  execution.

UNIT OPERATOR AND
WORKING INTEREST OWNER

Date: September 2, 1970          HUMBLE OIL & REFINING COMPANY

Address: 1800 Avenue of the Stars    By _Harry Pistole_
         Los Angeles                    Harry Pistole
         California 90067               Vice President

                                     By _W. R. Gardner_
                                        W. R. Gardner
                                        Assistant Secretary

-12-



AMENDMENT NO. 1 TO SANTA YNEZ UNIT AGREEMENT
CHANNEL ISLANDS AREA
OUTER CONTINENTAL SHELF, OFFSHORE CALIFORNIA

This Amendment No. 1 to the Santa Ynez Unit Agreement
entered into as of October 1, 1982, by and between the parties
subscribing, ratifying and consenting hereto, and herein referred
to as the "parties hereto".

W I T N E S S E T H:

The parties hereto entered into that certain Unit Agree-
ment for the Exploration, Development and Operation of the Santa
Ynez Unit Area, Channel Islands Area, Outer Continental Shelf,
Offshore California, dated November 3, 1970, hereinafter referred
to as "said Unit Agreement".

The parties hereto desire to enter into this Amendment
to said Unit Agreement for the purposes of restating and revising
certain provisions thereof to reflect the current interests of the
parties hereto, setting forth the status of the lands subject to
said Unit Agreement, providing for portions of pools to constitute
separate participating areas, and providing for a different method
for allocating the royalty share of production after January
1, 1984.

NOW THEREFORE, in consideration of the mutual convenants
and promises of the parties hereto and other good and valuable
consideration, the parties hereto agree as follows:

1.   Section 2 of said Unit Agreement is hereby amended to
incorporate all of Block 52N 76W (Lease OCS-P 0329) and the S 1/2
Block 53N 77W (Lease OCS-P 0326) in the Unit Area and to delete
therefrom that portion of Block 53N 72W (relinquished Lease OCS-
P 0186) lying seaward of a line 3 geographical miles distant from
the coastline of California (as said coastline is defined in the
Submerged Lands Act of 1953), said Unit Area containing 91,677.0
acres more or less.

2.   Exhibit "A" of said Unit Agreement is hereby amended
to incorporate or delete the above-described Blocks and Leases as
shown on Exhibit "A", attached hereto and made a part hereof.

3.   Exhibit "B" of said Unit Agreement is hereby amended
to reflect the present interests of the parties hereto as shown
on Exhibit "B", attached hereto and made a part hereof.

4.   Section 7 of said Unit Agreement is hereby amended
as follows:

The words "or portion thereof" shall be inserted
between "Substances" and "or" on the 13th line
of the first paragraph.

The following is inserted as the 2nd paragraph of
Section 7:

"Before January 1, 1984, the Unit Operator
shall submit a proposed revision to the initial
participating area for the Hondo Reservoir to be

Exhibit B
33

effective January 1, 1984, for approval by the
Deputy Minerals Manager, Field Operations (succes-
sor to Supervisor as used herein), so that the
initial participating area covers only the lands
which have been or will be developed from the exist-
ing Hondo A platform.  The Unit Operator shall submit
for approval a separate proposed participating area
for that westerly portion of the Hondo Reservoir to
be developed from another platform (Hondo B) prior to
commencement of production of Unitized Substances
from said Hondo B platform.  The two above described
participating areas shall be contiguous."

The word "royalty" shall be inserted between "retro-
active" and "adjustment" on the 2nd line of the last
paragraph.

5.  Section 8 of said Unit Agreement shall be amended
effective January 1, 1984 by deleting the last part of the
first paragraph commencing with the words "on an acreage
basis" on the 6th line and substituting the following:

"for royalty purposes on a gross acre-feet basis for
a participating area containing a productive siliceous
shale (Monterey) formation and a net acre-feet basis
for a participating area containing productive sand-
stone formations from the several tracts of Unitized
Land of the participating area established for such
production, and royalty shall be paid by Unit Operator.
Gross acre-feet and net acre-feet, respectively, shall
be established in accordance with Exhibit "C" to this
Unit Agreement, attached hereto and made a part hereof.
The Unit Operator shall submit for approval by the
Supervisor the schedule of allocation percentages
for establishment of any participating area(s) in
accordance with Section 7 hereof."

6.  This Amendment may be executed in any number of
counterparts and all such counterparts shall be deemed to con-
stitute a single agreement and the execution of one counter-
part by any party hereto shall have the same force and effect
as if it had signed all of the other counterparts.

IN WITNESS WHEREOF, the parties have executed this
Amendment to the Santa Ynez Unit Agreement as of the day and
year first above written.


EXXON CORPORATION                CHEVRON U.S.A. INC.

By _____    By _____

Title __Attorney-in-Fact___    Title _____


SHELL OIL COMPANY

By _____

Title _____

effective January 1, 1984, for approval by the
Deputy Minerals Manager, Field Operations (succes-
sor to Supervisor as used herein), so that the
initial participating area covers only the lands
which have been or will be developed from the exist-
ing Hondo A platform.  The Unit Operator shall submit
for approval a separate proposed participating area
for that westerly portion of the Hondo Reservoir to
be developed from another platform (Hondo B) prior to
commencement of production of Unitized Substances
from said Hondo B platform.  The two above described
participating areas shall be contiguous."

The word "royalty" shall be inserted between "retro-
active" and "adjustment" on the 2nd line of the last
paragraph.

5.  Section 8 of said Unit Agreement shall be amended
effective January 1, 1984 by deleting the last part of the
first paragraph commencing with the words "on an acreage
basis" on the 6th line and substituting the following:

"for royalty purposes on a gross acre-feet basis for
a participating area containing a productive siliceous
shale (Monterey) formation and a net acre-feet basis
for a participating area containing productive sand-
stone formations from the several tracts of Unitized
Land of the participating area established for such
production, and royalty shall be paid by Unit Operator.
Gross acre-feet and net acre-feet, respectively, shall
be established in accordance with Exhibit "C" to this
Unit Agreement, attached hereto and made a part hereof.
The Unit Operator shall submit for approval by the
Supervisor the schedule of allocation percentages
for establishment of any participating area(s) in
accordance with Section 7 hereof."

6.  This Amendment may be executed in any number of
counterparts and all such counterparts shall be deemed to con-
stitute a single agreement and the execution of one counter-
part by any party hereto shall have the same force and effect
as if it had signed all of the other counterparts.

IN WITNESS WHEREOF, the parties have executed this
Amendment to the Santa Ynez Unit Agreement as of the day and
year first above written.


EXXON CORPORATION                    CHEVRON U.S.A. INC.

By _____         By _____

Title   Attorney-in-Fact            Title   Assistant Secretary


SHELL OIL COMPANY

By _____

Title _____

Exhibit B

35

effective January 1, 1984, for approval by the Deputy Minerals Manager, Field Operations (successor to Supervisor as used herein), so that the initial participating area covers only the lands which have been or will be developed from the existing Hondo A platform.  The Unit Operator shall submit for approval a separate proposed participating area for that westerly portion of the Hondo Reservoir to be developed from another platform (Hondo B) prior to commencement of production of Unitized Substances from said Hondo B platform.  The two above described participating areas shall be contiguous."

The word "royalty" shall be inserted between "retro-active" and "adjustment" on the 2nd line of the last paragraph.

5.  Section 8 of said Unit Agreement shall be amended effective January 1, 1984 by deleting the last part of the first paragraph commencing with the words "on an acreage basis" on the 6th line and substituting the following:

"for royalty purposes on a gross acre-feet basis for a participating area containing a productive siliceous shale (Monterey) formation and a net acre-feet basis for a participating area containing productive sandstone formations from the several tracts of Unitized Land of the participating area established for such production, and royalty shall be paid by Unit Operator. Gross acre-feet and net acre-feet, respectively, shall be established in accordance with Exhibit "C" to this Unit Agreement, attached hereto and made a part hereof. The Unit Operator shall submit for approval by the Supervisor the schedule of allocation percentages for establishment of any participating area(s) in accordance with Section 7 hereof."

6.  This Amendment may be executed in any number of counterparts and all such counterparts shall be deemed to constitute a single agreement and the execution of one counterpart by any party hereto shall have the same force and effect as if it had signed all of the other counterparts.

IN WITNESS WHEREOF, the parties have executed this Amendment to the Santa Ynez Unit Agreement as of the day and year first above written.


EXXON CORPORATION                    CHEVRON U.S.A. INC.

By _____         By _____

Title    Attorney-in-Fact            Title _____


SHELL OIL COMPANY

By _____

Title  Division Land Manager


Exhibit B
36

<u>APPROVAL</u>

     Pursuant to the authority vested in the Secretary of the Interior under the Act approved August 7, 1953, 67 Stat. 462, 43 U.S.C. 1331, et seq., as amended, and delegated to the Director of the Minerals Management Service and redelegated to the Regional Manager, Pacific OCS Region, I do hereby approve this Amendment to the Santa Ynez Unit Agreement to be effective as of October 1, 1982 except for the amendment of Section 8 of the Unit Agreement which is to be effective January 1, 1984.


_William F. Brent_        Date: _11/1/82_
Reid T. Stone
Regional Manager
Pacific OCS Region
Minerals Management Service



Contract No. 14-08-0001-8979

AMENDMENT NO. 2

SANTA YNEZ UNIT AGREEMENT
CHANNEL ISLANDS AREA
OUTER CONTINENTAL SHELF, OFFSHORE CALIFORNIA

This Amendment No. 2 to the Unit Agreement for the Exploration, Development and Production Operations on the Santa Ynez Unit Area, Channel Islands Area, Outer Continental Shelf, Offshore California, approved November 12, 1970, and amended effective October 1, 1982, hereinafter referred to as the "Santa Ynez Unit Agreement", by and between the parties subscribing, ratifying and consenting hereto, and herein referred to as the "parties hereto";

WITNESSETH:

WHEREAS, the parties hereto, or their predecessors in interest, entered into that certain Santa Ynez Unit Agreement; and

WHEREAS, the parties hereto desire to eliminate lease segregation as to any lands excluded from the Santa Ynez Unit Agreement;

NOW THEREFORE, in consideration of the mutual covenants and promises of the parties hereto and other good and valuable consideration, the parties hereto agree as follows:

1.    Section 11 of the Santa Ynez Unit Agreement is hereby amended as follows:

The words "All 1/4 1/4 blocks of land" in the first paragraph shall be deleted and replaced with the words "Any lease(s)".

The words "all 1/4 1/4 blocks of land" in the second paragraph shall be deleted and replaced with the words "any lease(s)".

The last paragraph shall be deleted in its entirety and replaced with the following:

"If a lease is no longer subject to this Agreement in accordance with the provisions of this Section, that lease shall only be maintained and continued in force and effect in accordance with the terms and provisions contained in the Act, regulations, and the lease."

2.    Except as amended herein the Santa Ynez Unit Agreement remains in full force and effect.

3.    This Amendment may be executed in any number of counterparts and all such counterparts shall be deemed to constitute a single agreement and the execution of one counterpart by any party hereto shall have the same force and effect as if it had signed all of the other counterparts.

Exhibit B
38

Amendment No. 2
Santa Ynez Unit Agreement
Page 2


IN WITNESS WHEREOF, the parties hereto have executed this Amendment No. 2 to the Santa Ynez Unit Agreement on the dates written below but effective upon approval by the Secretary of the Interior or his duly authorized representative.

EXXON CORPORATION

By _____

Title _Attorney-in-fact_____

Date _October 15, 1987_____

CHEVRON U.S.A. INC.

By _____

Title _____

Date _____

SHELL WESTERN E&P INC.

By _____

Title _____

Date _____

Amendment No. 2
Santa Ynez Unit Agreement
Page 2


IN WITNESS WHEREOF, the parties hereto have executed this Amendment No. 2 to the Santa Ynez Unit Agreement on the dates written below but effective upon approval by the Secretary of the Interior or his duly authorized representative.

EXXON CORPORATION

By_____

Title_____

Date_____

CHEVRON U.S.A. INC.

By _J. P. Harrington_____

Title_____

Date_____February 1988_____

SHELL WESTERN E&P INC.

By_____

Title_____

Date_____

Exhibit B
40

Amendment No. 2
Santa Ynez Unit Agreement
Page 2


IN WITNESS WHEREOF, the parties hereto have executed this Amendment No. 2 to the Santa Ynez Unit Agreement on the dates written below but effective upon approval by the Secretary of the Interior or his duly authorized representative.


EXXON CORPORATION

By_____

Title_____

Date_____


CHEVRON U.S.A. INC.

By_____

Title_____

Date_____


SHELL WESTERN E&P INC.

By_____
    Rick A. Goenner

Title____Attorney-in-Fact_____

Date_____2/17/88_____

Amendment No. 2
Santa Ynez Unit Agreement
Page 3


### APPROVAL

Pursuant to the authority vested in the Secretary of the Interior under the Outer Continental Shelf Lands Act, approved August 7, 1953, 67 Stat. 462, 43 U.S.C. 1331, et seq., as amended, and delegated to the Regional Director, Pacific OCS Region, Minerals Management Service, I do hereby approve this Amendment No. 2 to the Santa Ynez Unit Agreement to be effective as of the date written below.


*James W. Sutherland*
_for_
Regional Director
Pacific OCS Region
Minerals Management Service

Date _6-20-88_

Contract No. 14-08-0001-8979

AMENDMENT NO. 3

SANTA YNEZ UNIT AGREEMENT
CHANNEL ISLANDS AREA
OUTER CONTINENTAL SHELF, OFFSHORE CALIFORNIA

This Amendment No. 3 to the Unit Agreement for the Exploration, Development and Production Operations on the Santa Ynez Unit Area, Channel Islands Area, Outer Continental Shelf, Offshore California approved November 12, 1970 (first amended effective October 1, 1982 and with proposed Amendment No. 2), hereinafter referred to as the "Santa Ynez Unit Agreement", by and between the parties subscribing, ratifying and consenting hereto, and herein referred to as the "parties hereto";

WITNESSETH:

WHEREAS, the parties hereto, or their predecessors in interest, entered into that certain Santa Ynez Unit Agreement; and

WHEREAS, the parties hereto desire to revise the rental and royalty terms of the Santa Ynez Unit Agreement to bring them in conformance with current regulations;

NOW THEREFORE, in consideration of the mutual covenants and promises of the parties hereto and other good and valuable consideration, the parties hereto agree as follows:

1.    Section 10 of the Santa Ynez Unit Agreement is hereby amended as follows:

      The words "Unitized Acreage which is not" in Paragraph A shall be deleted and replaced with the words "leases no part of which is".

      The words "unitized acreage" in Paragraph B shall be deleted and replaced with the words "leases any part of which is".

2.    Except as amended herein the Santa Ynez Unit Agreement remains in full force and effect.

3.    This Amendment may be executed in any number of counterparts and all such counterparts shall be deemed to constitute a single agreement and the execution of one counterpart by any party hereto shall have the same force and effect as if it had signed all of the other counterparts.

IN WITNESS WHEREOF, the parties hereto have executed this Amendment No. 3 to the Santa Ynez Unit Agreement on the dates written below but effective upon approval by the Secretary of the Interior or his duly authorized representative.

Amendment No. 3
Santa Ynez Unit Agreement
Page 2

EXXON CORPORATION

By _____

Title _Western Division Manager_

Date __December 04, 1987__


CHEVRON U.S.A. INC.

By_____

Title_____

Date_____


SHELL WESTERN E&P INC.

By_____

Title_____

Date_____

Amendment No. 3
Santa Ynez Unit Agreement
Page 2


EXXON CORPORATION

By_____

Title_____

Date_____



CHEVRON U.S.A. INC.

By_____*J. P. Harrington*_____

Title_____ASSISTANT SECRETARY_____

Date_____4/26/88_____



SHELL WESTERN E&P INC.

By_____

Title_____

Date_____

Amendment No. 3
Santa Ynez Unit Agreement
Page 2


EXXON CORPORATION

By_____

Title_____

Date_____


CHEVRON U.S.A. INC.

By_____

Title_____

Date_____


SHELL WESTERN E&P INC.

By_____
              Rick A. Goennel
Title_____Attorney-in-Fact_____

Date_____2/17/88_____

Amendment No. 3
Santa Ynez Unit Agreement
Page 3

<u>APPROVAL</u>

Pursuant to the authority vested in the Secretary of the Interior under the
Outer Continental Shelf Lands Act, approved August 7, 1953, 67 Stat. 462,
43 U.S.C. 1331, et seq., as amended, and delegated to the Regional Director,
Pacific OCS Region, Minerals Management Service, I do hereby approve this
Amendment No. 3 to the Santa Ynez Unit Agreement to be effective as of the
date written below.

_____    Date _____6-20-88_____
Regional Director
Pacific OCS Region
Minerals Management Service         Contract No. 14-08-0001-8979

SIGNATURE PAGE

WORKING INTEREST OWNER

ATTACHED TO AND MADE A PART OF THE
SANTA YNEZ UNIT AGREEMENT
CHANNEL ISLANDS AREA
OUTER CONTINENTAL SHELF, OFFSHORE CALIFORNIA

The Santa Ynez Unit Agreement is hereby executed.

Date:_____

Address:  461 South Boylston St.
          Los Angeles
          California 90017

WORKING INTEREST OWNER
UNION OIL COMPANY OF CALIFORNIA

By_____

Its Attorney in Fact

[Attach Acknowledgement]

Exhibit B
48

SIGNATURE PAGE

WORKING INTEREST OWNER

ATTACHED TO AND MADE A PART OF THE
SANTA YNEZ UNIT AGREEMENT
CHANNEL ISLANDS AREA
OUTER CONTINENTAL SHELF, OFFSHORE CALIFORNIA

The Santa Ynez Unit Agreement is hereby executed.

WORKING INTEREST OWNER
STANDARD OIL COMPANY OF CALIFORNIA

Date: SEP 2 9 1970

By _____
Contract Agent

Address: 225 Bush Street
San Francisco
California 94120

By _____
Assistant Secretary

State of California        )
City and County of San Francisco  ) ss

On September 29 1970 before me, Edmond Lee Kelly, a Notary
Public in and for said City and County and State, residing therein, duly
commissioned and sworn, personally appeared A. J. JACOBS and J. P. BOWMAN known to me
to be CONTRACT AGENT and ASSISTANT SECRETARY, respectively, of STANDARD OIL COMPANY
OF CALIFORNIA the Corporation described in and that executed the within instrument,
and also known to me to be the persons who executed it on behalf of the said
Corporation therein named, and they acknowledged to me that such Corporation
executed the same.

IN WITNESS WHEREOF, I have hereunto set my hand and affixed my Official
Seal, at my office in the City and County and State aforesaid the day and year in
this certificate above written.

EDMOND LEE KELLY
NOTARY PUBLIC · CALIFORNIA
CITY AND COUNTY OF
SAN FRANCISCO
My Commission Expires January 22, 1972

_____ 19.1
Notary Public in and for said City and
County of San Francisco, State of California

[Attach Acknowledgement]

Exhibit B
49

SIGNATURE PAGE

WORKING INTEREST OWNER

ATTACHED TO AND MADE A PART OF THE
SANTA YNEZ UNIT AGREEMENT
CHANNEL ISLANDS AREA
OUTER CONTINENTAL SHELF, OFFSHORE CALIFORNIA

The Santa Ynez Unit Agreement is hereby executed.

Date: *September 17, 1970*

Address:  1008 West Sixth Street
          Los Angeles
          California 90017

WORKING INTEREST OWNER
SHELL OIL COMPANY

By *R. F. Karshner*

Its Attorney in Fact

[Attach Acknowledgement]

Exhibit B
50

STATE OF CALIFORNIA     )
                          ) ss.
COUNTY OF LOS ANGELES )

On this 2nd day of September, 1970, before me, the undersigned, a
Notary Public in and for said County and State, personally appeared
HARRY PISTOLE, known to me to be the Vice President, and W. R. GARDNER,
known to me to be the Assistant Secretary, of HUMBLE OIL & REFINING
COMPANY, the corporation that executed the within instrument, known
to me to be the persons who executed the within instrument on behalf of
the corporation herein named, and acknowledged to me that such corporation
executed the within instrument pursuant to its by-laws or a resolution
of its board of directors.

WITNESS my hand and official seal.

OFFICIAL SEAL
VIRGINIA M. LYONS
NOTARY PUBLIC, CALIFORNIA
PRINCIPAL OFFICE IN
LOS ANGELES COUNTY
My Commission Expires Sept. 24, 1973

Virginia M. Lyons,
Notary Public in and for said
County and State

RATIFICATION, CONSENT AND JOINDER
SANTA YNEZ UNIT AGREEMENT
AND
UNIT OPERATING AGREEMENT
CHANNEL ISLANDS AREA
OUTER CONTINENTAL SHELF, OFFSHORE CALIFORNIA

RECITALS

1.  The Santa Ynez Unit Agreement and Unit Operating
Agreement, executed by Humble Oil & Refining Company,
Shell Oil Company and Standard Oil Company of California,
were approved by the Regional Oil and Gas Supervisor,
United States Geological Survey, on November 12, 1970, and
became effective as of the same date.

2.  Pursuant to letter agreement dated November 12,
1970, a copy of which was filed in the offices of the Geolo-
gical Survey on the same date, Union Oil Company of Califor-
nia assigned to Humble Oil & Refining Company all of its
right, title and interest in and to lease OCS-P 0192, reser-
ving unto itself an overriding royalty of 12 1/2% of all
Unitized Substances allocated to said lease pursuant to the
Santa Ynez Unit Operating Agreement.

3.  The assignment of the above-described interest
has been filed with and approved by the Bureau of Land
Management, United States Department of the Interior.

NOW, THEREFORE, in consideration of the foregoing
and of the mutual and interdependent terms and stipulations
set forth in the Santa Ynez Unit Agreement and Unit Operating
Agreement (by this reference incorporated herein and made a
part hereof the same as though fully set forth), Humble Oil &
Refining Company hereby ratifies, consents to and joins in
said Agreements to the same extent and with the same effect

Exhibit B
52

as if executing the originals thereof, hereby committing all of its oil and gas interests in lands (i.e., lease OCS-P 0192) within the Santa Ynez Unit Area not previously committed to said Agreements.

IN WITNESS WHEREOF, Humble Oil & Refining Company has executed this Ratification, Consent and Joinder as of this 1st day of February, 1971.

WORKING INTEREST OWNER

HUMBLE OIL & REFINING COMPANY

Address:

1800 Avenue of the Stars
Los Angeles
California 90067

By _Harry Pistole_

Vice-President

By _W. R. Gardner_

Assistant Secretary

TO 448 C
(Corporation)

STATE OF CALIFORNIA

COUNTY OF _Los Angeles_ } SS.

On _March 3, 1971_ before me, the undersigned, a Notary Public in and for said State, personally appeared _Harry Pistole_ known to me to be the _Vice_ President, and _W. R. Gardner_ known to me to be _Assistant_ Secretary of the corporation that executed the within Instrument, known to me to be the persons who executed the within Instrument on behalf of the corporation therein named, and acknowledged to me that such corporation executed the within instrument pursuant to its by-laws or a resolution of its board of directors.

WITNESS my hand and official seal.

Signature _Regna Lowthorp_

REGNA LOWTHORP

Name (Typed or Printed)

OFFICIAL SEAL
REGNA LOWTHORP
NOTARY PUBLIC, CALIFORNIA
PRINCIPAL OFFICE IN
LOS ANGELES COUNTY
My Commission Expires January 14, 1973

(This area for official notarial seal)

Exhibit B
53

RATIFICATION, CONSENT AND JOINDER
SANTA YNEZ UNIT AGREEMENT
CHANNEL ISLANDS AREA
OUTER CONTINENTAL SHELF, OFFSHORE CALIFORNIA

Union Oil Company of California, a corporation, in consideration of the mutual and interdependent terms and stipulations set forth in the Santa Ynez Unit Agreement, hereby ratifies, consents to and joins in the execution of said Unit Agreement to the same extent and with the same effect as if it had executed the original thereof.

Union Oil Company of California hereby acknowledges receipt of a copy of said Santa Ynez Unit Agreement (including latest revisions of Exhibits A and B thereto), which said Agreement by this reference is incorporated herein and made a part hereof the same as though fully set forth.

IN WITNESS WHEREOF, Union Oil Company of California has executed this Ratification, Consent and Joinder as of this 1st day of February, 1971.

OVERRIDING ROYALTY
INTEREST OWNER

UNION OIL COMPANY OF CALIFORNIA

By _____

Its Attorney in Fact

Address:

461 South Boylston Street
Los Angeles
California 90054

STATE OF CALIFORNIA,

COUNTY OF _____     } ss.

ON _____ February 26 _____ 19 71
before me, the undersigned, a Notary Public in and for said State, personally appeared
HERBERT S. HARRY
known to me to be the person whose name is subscribed to the within Instrument, as the
Attorney-in-Fact of _____ UNION OIL COMPANY OF CALIFORNIA
and acknowledged to me that ___ he subscribed the name of _____

thereto as principal ___ and h___ own name as Attorney-in-Fact.
WITNESS my hand and official seal.

_____
Notary Public in and for said State.

OFFICIAL SEAL
_____ YOUNG
PUBLIC-CALIFORNIA
LOS ANGELES COUNTY
My Commission Expires July 20, 1974

ACKNOWLEDGMENT—Attorney-in-Fact—Blank Co.—Wolcotts Form 218—Rev. 3-64
A SUBSIDIARY OF AMERICAN STATIONERY PRODUCTS CORP.

Exhibit B
54

STATE OF CALIFORNIA )
                    )  ss.
COUNTY OF LOS ANGELES)

On this 17th day of September, 1970, before me_____

_____ Joan T. Buckbee _____, a Notary Public in and for said County

and State, residing therein, duly commissioned and sworn, personally

appeared R. F. Karshner, known to me to be the person whose name is

subscribed to the within instrument as the Attorney In Fact of

Shell Oil Company, and acknowledged to me that he subscribed the

name of Shell Oil Company thereto as principal, and his own name

as Attorney In Fact.

IN WITNESS WHEREOF, I have hereunto set my hand and

affixed my official seal, at my office, in said County and State,

the day and year in this certificate first above written.

Joan T. Buckbee
Notary Public in and for
said County and State

```
OFFICIAL SEAL
JOAN T. BUCKBEE
NOTARY PUBLIC - CALIFORNIA
PRINCIPAL OFFICE IN
LOS ANGELES COUNTY
My Commission Expires June 1, 1974
1008 West 6th St., Los Angeles, Calif. 90054
```

Exhibit B
55

LIST OF TRACTS AND SERIAL NUMBERS OF
FEDERAL LEASES INCLUDED IN THE UNIT

| ① | OCS-P 0180 | ⑫ | OCS-P 0191 |
| ② | OCS-P 0181 | ⑬ | OCS-P 0192 |
| ③ | OCS-P 0182 | ⑭ | OCS-P 0193 |
| ④ | OCS-P 0183 | ⑮ | OCS-P 0194 |
| ⑤ | OCS-P 0187 | ⑯ | OCS-P 0195 |
| ⑥ | OCS-P 0188 | ⑰ | OCS-P 0378 |
| ⑩ | OCS-P 0189 | ㉑ | OCS-P 0378 |
| ⑪ | OCS-P 0190 | ㉒ | OCS-P 0461 |

EXXON MEANS EXXON CORPORATION
CHEVRON MEANS CHEVRON U.S.A. INC.

⎯⎯⎯⎯⎯⎯⎯⎯⎯  UNIT AREA BOUNDARY

FIFTH REVISED

EXHIBIT "A"
TO

# SANTA YNEZ UNIT AGREEMENT

AS PER

OUTER CONTINENTAL SHELF LEASING MAP NO. 6A
CHANNEL ISLANDS AREA, CALIFORNIA

CALIFORNIA STATE COORDINATE SYSTEM, ZONE 6

SCALE : 1" = 10,000'

TOTAL IN UNIT 76,289 ACS.
REVISED APRIL 1, 1991

Exhibit B
56

41 / Revised

EXHIBIT "B"

to

SANTA YNEZ UNIT AGREEMENT
CHANNEL ISLANDS AREA
OUTER CONTINENTAL SHELF, CALIFORNIA

SCHEDULE SHOWING OWNERSHIP OF OIL AND GAS INTERESTS

| Tract Number | Description of Land as Per Official Leasing Map Channel Islands Area Map No. 6A | Number of Acres | Serial Number of Lease | Expiration Date of Lease | Basic Royalty and Ownership Percentage | Lessee of Record and Working Interest Owner and Percentage | Overriding Royalty and Percentage |
|---|---|---|---|---|---|---|---|
| 1 | Block 52N 74W | 5760 | OCS-P 0180 | HBU | USA 16 2/3% | Exxon Corporation 100% | None |
| 2 | Block 52N 75W | 5760 | OCS-P 0181 | HBU | USA 16 2/3% | Exxon Corporation 100% | None |
| 3 | Block 52N 77W | 5760 | OCS-P 0182 | HBU | USA 16 2/3% | Exxon Corporation 50% Chevron U.S.A. Inc. 50% | None |
| 4 | Block 52N 78W | 5760 | OCS-P 0183 | HBU | USA 16 2/3% | Exxon Corporation 100% | None |
| 8 | Block 53N 73W All those portions lying seaward of a line 3 geographical miles distant from the coastline of California (as said coastline is defined in the Submerged Lands Act of 1953) | 4946 | OCS-P 0187 | HBU | USA 16 2/3% | Exxon Corporation 100% | None |

(Tract number 5 eliminated from Unit as a result of relinquishment of Lease No. OCS-P 0184 on January 8, 1991)

(Tract number 6 eliminated from Unit as a result of relinquishment of Lease No. OCS-P 0185 on February 4, 1991)

(Tract number 7 eliminated from Unit as a result of relinquishment of Lease No. OCS-P 0186 on October 2, 1972)

Revised 4/1/91

Exhibit B
57

EXHIBIT "B"

to

SANTA YNEZ UNIT AGREEMENT
CHANNEL ISLANDS AREA
OUTER CONTINENTAL SHELF, CALIFORNIA

SCHEDULE SHOWING OWNERSHIP OF OIL AND GAS INTERESTS

| Tract Number | Description of Land as Per Official Leasing Map Channel Islands Area Map No. 6A | Number of Acres | Serial Number of Lease | Expiration Date of Lease | Basic Royalty and Ownership Percentage | Lessee of Record and Working Interest Owner and Percentage | Overriding Royalty and Percentage |
|---|---|---|---|---|---|---|---|
| 9 | Blocks 53N 74W; 54N 74W All those portions lying seaward of a line 3 geographical miles distant from the coastline of California (as said coastline is defined in the Submerged Lands Act of 1953) | 5681 | OCS-P 0188 | HBU | USA 16 2/3% | Exxon Corporation 100% | None |
| 10 | N 1/2 Block 53N 75W; Block 54N 75W All those portions lying seaward of a line 3 geographical miles distant from the coastline of California (as said coastline is defined in the Submerged Lands Act of 1953) | 3840 | OCS-P0189 | HBU | USA 16 2/3% | Exxon Corporation 50% Chevron U.S.A. Inc 50% | None |
| 11 | S 1/2 Block 53N 75W | 2880 | OCS-P 0190 | HBU | USA 16 2/3% | Exxon Corporation 100% | None |
| 12 | Block 53N 76W | 5760 | OCS-P 0191 | HBU | USA 16 2/3% | Exxon Corporation 66 2/3% Chevron U.S.A. Inc. 33 1/3% | None |

4/11/91

Exhibit B
58

EXHIBIT "B"

to

SANTA YNEZ UNIT AGREEMENT
CHANNEL ISLANDS AREA
OUTER CONTINENTAL SHELF, CALIFORNIA

SCHEDULE SHOWING OWNERSHIP OF OIL AND GAS INTERESTS

| Tract Number | Description of Land as Per Official Leasing Map Channel Islands Area Map No. 6A | Number of Acres | Serial Number of Lease | Expiration Date of Lease | Basic Royalty and Ownership Percentage | Lessee of Record and Working Interest Owner and Percentage | Overriding Royalty and Percentage |
|---|---|---|---|---|---|---|---|
| 13 | N 1/2 Block 53N 77W; Block 54N 77W All those portions lying seaward of a line 3 geographical miles distant from the coastline of California (as said coastline is defined in the Submerged Lands Act of 1953) | 3851 | OCS-P 0192 | HBU | USA 16 2/3% | Exxon Corporation 50% Chevron U.S.A. Inc. 50% | Union Oil Company of California 12 1/2% |
| 14 | N 1/2 Block 53N 78W; Block 54N 78W All those portions lying seaward of a line 3 geographical miles distant from the coastline of California (as said coastline is defined in the Submerged Lands Act of 1953) | 3316 | OCS-P 0193 | HBU | USA 16 2/3% | Exxon Corporation 50% Chevron U.S.A. Inc. 50% | None |
| 15 | S 1/2 Block 53N 78W | 2880 | OCS-P 0194 | HBU | USA 16 2/3% | Exxon Corporation 50% Chevron U.S.A. Inc. 50% | None |

4/1/91

Exhibit B
59

EXHIBIT "B"

to

SANTA YNEZ UNIT AGREEMENT
CHANNEL ISLANDS AREA
OUTER CONTINENTAL SHELF, CALIFORNIA

SCHEDULE SHOWING OWNERSHIP OF OIL AND GAS INTERESTS

| Tract Number | Description of Land as Per Official Leasing Map Channel Islands Area Map No. 6A | Number of Acres | Serial Number of Lease | Expiration Date of Lease | Basic Royalty and Ownership Percentage | Lessee of Record and Working Interest Owner and Percentage | Overriding Royalty and Percentage |
|---|---|---|---|---|---|---|---|
| 16 | Blocks 53N 79W; 54N 79W All those portions lying seaward of a line 3 geographical miles distant from the coastline of California (as said coast-line is defined in the Submerged Lands Act of 1953) | 5695 | OCS-P 0195 | HBU | USA 16 2/3% | Exxon Corporation 50% Chevron U.S.A. Inc. 50% | None |
| 19 | S 1/2 Block 53N 77W | 2880 | OCS-P 0326 | HBU | USA- Sliding Scale | Chevron U.S.A. Inc. 100% | None |
| 20 | Block 52N 76W | 5760 | OCS-P 0329 | HBU | USA- Sliding Scale | Exxon Corporation 100% | None |
| 21 | Block 52N 73W | 5760 | OCS-P 0461 | HBU | USA 12 1/2% | Exxon Corporation 100% | None |

Totals: Federal Lands    76,289 acres
        Other Lands      None

(Tract numbers 17 and 18 eliminated from Unit as a result of relinquishment of Lease Nos. OCS-P 0196 and OCS-P 0197, respectively, on January 8, 1991)

4/1/91

Exhibit B
60

EXHIBIT "C"
SANTA YNEZ UNIT AGREEMENT
CHANNEL ISLANDS AREA
OUTER CONTINENTAL SHELF, OFFSHORE CALIFORNIA
METHOD OF ESTABLISHING AND REVISING ALLOCATION PERCENTAGES
FOR PARTICIPATING AREAS

Prior to commencement of production of Unitized Sub-
stances from a participating area(s) or effective as of
January 1, 1984 for participating area(s) established prior
to January 1, 1984, the schedule of tract allocation percent-
ages shall be calculated in accordance with the procedure
set forth in this Exhibit C.

For a participating area containing a siliceous shale
(Monterey) formation, each Tract in the participating area
shall be assigned an allocation percentage, equivalent to
the gross acre-feet of such formation containing Unitized
Substances in paying quantities originally in place within
such Tract divided by the total gross acre-feet of such
formation containing Unitized Substances in such paying
quantities originally in place within all Tracts in such
participating area. For purposes of this calculation,
one acre-foot of gas cap gas (formation in the interval
between the original gas-oil interface and top of zone)
originally in place shall be considered equivalent to 0.9
acre-feet of such formation originally containing oil. All
gross acre-feet of such formation containing Unitized
Substances originally in place in such paying quantities and
in pressure and hydrocarbon communication shall be counted.

For a participating area containing sandstone formations,
each Tract in the participating area shall be assigned an
allocation percentage equivalent to the net acre-feet of
such formation containing Unitized Substances in paying
quantities originally in place within such Tract divided
by the total net acre-feet of such formation containing
Unitized Substances in such paying quantities originally in
place within all Tracts in such participating area. For pur-
poses of this calculation, consideration shall be given to
the relative sand quality and relative gas-oil value of each
sandstone formation in accordance with the formula and
schedule contained in Exhibit C of the Santa Ynez Unit
Operating Agreement dated November 3, 1970.

Exhibit B
61

The schedule of tract allocation percentages for each such participating area shall be revised annually during the four-year period following the commencement of production of Unitized Substances from said participating area or until the completion of development drilling from the first platform in the participating area, whichever occurs first, and thereafter biennially. The schedule of tract allocation percentages shall be revised by the affected working interest owners and submitted by the Unit Operator for approval by the Supervisor. Revisions to the schedule of tract allocation percentages shall be discontinued when so agreed by the affected working interest owners and approved by the Supervisor. For consideration of each proposed revision, the Unit Operator shall furnish to the Supervisor maps, cross-sections, and tables prepared by the working interest owner Geological and Reservoir Engineering Committees as deemed appropriate for purposes of calculating tract allocation percentages and as specified in Exhibit C of the Santa Ynez Unit Operating Agreement dated November 3, 1970. There shall not be any retroactive adjustments of royalty as a result of said revisions to the schedule of tract allocation percentages.



# United States Department of the Interior

MINERALS MANAGEMENT SERVICE
Pacific OCS Region
770 Paseo Camarillo
Camarillo, California 93010-6064

IN REPLY REFER TO:    7100

March 27, 2003

Ms. Peggy L. Carr
Staff Land Representative
ExxonMobil Production Company
U.S. East
P.O. Box 61707
New Orleans, Louisiana 70161-1707

Re:    Amendment No. 4
       Santa Ynez Unit Agreement
       Santa Ynez Unit
       Contract Number 14-08-0001-8979
       Offshore California

Dear Ms. Carr:

We received your letter dated March 11, 2003, requesting that the Minerals Management Service approve Amendment No. 4 to the Santa Ynez Unit Agreement. We approve your request as outlined below.

Exxon Mobil Corporation acquired 100% of the working interest ownership in the Santa Ynez Unit, which was approved by MMS on December 20, 2002. On January 20, 2003, MMS approved ExxonMobil's proposed tract allocation percentages for the Sacate Field, Participating Area II. Amendment No. 4 provides for the consolidation of Participating Areas IA, IB, II and III into one participating area and executes other administrative changes. According to Section 7 of the SYU Agreement, "any two or more participating areas so established may be combined into one, on approval of the Supervisor."

We have determined that approval of Amendment No. 4 to the Santa Ynez Unit Agreement is in the best interest of the government, and it will streamline the regulatory burden on Exxon Mobil Corporation. Pursuant to Section 7 of the SYU Agreement, MMS hereby approves Amendment No. 4 and Exhibits "A" , "B" and "C" to the Santa Ynez Unit Agreement, as amended, to reflect the requested PA consolidation, effective April 1, 2003. Amendment No.4 will be attached to and made part of the Santa Ynez Unit Agreement.



Exhibit B
63

Furthermore, government revenue from royalty payments to MMS will not be affected by consolidation now or in the future without proper justification and approval from MMS. The approved metering, measurement and allocation plan will not be affected by this change.

If you have any questions, please contact Mr. Allan Shareghi at (805) 389-7704 or via e-mail at Allan.Shareghi@mms.gov.

Sincerely,

Maher A.H. Ibrahim
Regional Supervisor
Office of Production, Development, and Resource Evaluation

cc:    MRM, Wendy Krebs

Enclosure

bcc:   File   1703-02(a)(1)- Santa Ynez Unit-Gen. Corres. (w/copy)
              1703-02(a)(1)- Santa Ynez Unit Agreement (w/orig)


      RD
      Chron
      RS, OPDRE
      RS, OEE
      RS, OFO
      DS, CAM
      C, PDRAS     (w/enclosure)
      A.Shareghi    (w/enclosure)
      K.Piper       (w/enclosure)

OPDRE:/EAS:word/hdata/mydocument/SYUAmend#4/3/11/03

Amendment No. 4

## AMENDMENT NO. 4

### SANTA YNEZ UNIT AGREEMENT
### CHANNEL ISLANDS AREA
### OUTER CONTINENTAL SHELF, OFFSHORE CALIFORNIA

This Amendment No. 4 to the Unit Agreement for the Exploration, Development and Production Operations on the Santa Ynez Unit Area, Channel Islands Area, Outer Continental Shelf, Offshore California approved November 12, 1970 (first amended effective October 1, 1982; subsequently amended effective June 20, 1988, with Amendments No. 2 and No. 3), hereinafter referred to as the "Santa Ynez Unit Agreement", by Exxon Mobil Corporation (individually and as successor in interest to non-operators ownership), now herein referred to as "ExxonMobil".

**WITNESSETH:**

WHEREAS, ExxonMobil (successor to Humble Oil & Refining Company), and others entered into that certain Santa Ynez Unit Agreement; and

WHEREAS; ExxonMobil hereto desires to revise the Santa Ynez Unit Agreement to reflect the current interests under this agreement and provide for the consolidation and expansion of all participating areas within the Santa Ynez Unit.

NOW THEREFORE, in consideration of the mutual covenants and promises of the parties hereto and other good and valuable consideration, the parties hereto agree as follows:

1. Exhibit "A" of the Santa Ynez Unit Agreement is hereby amended to reflect current ownership of the leases as shown on Exhibit "A", attached hereto and made a part thereof.

2. Exhibit "B" of the Santa Ynez Unit Agreement is hereby amended to reflect the present interests of ExxonMobil hereto as shown on Exhibit "B", attached hereto and made a part hereof.

3. Exhibit "C" of the Santa Ynez Unit Agreement is hereby amended to reflect that Participating Areas 1A, 1B, II and III are hereby consolidated into one participating area. The perimeter of the one participating area extends to the outer boundary of the Santa Ynez Unit. Moreover, the requirement of tract allocation revisions are deemed satisfied and no further adjustments will be made. Royalty payments will continue as constituted prior to the effective date of this amendment.

4. Except as amended herein, the Santa Ynez Unit Agreement remains in full force and effect.

IN WITNESS WHEREOF, ExxonMobil hereto has executed this Amendment No. 4 to the Santa Ynez Unit Agreement on the date written below but effective upon approval by the Secretary of the Interior or his duly authorized representative.

**EXXON MOBIL CORPORATION**

By _____
Charles E. Arnold

Title _A Horney in Fact_

Date _3-11-03_

Exhibit B
66

Amendment No. 4

## APPROVAL

Pursuant to the authority vested in the Secretary of the Interior under the Outer Continental Shelf Lands Act, approved August 7, 1953, 67 Stat. 462, 43 U.S.C. 1331, et seq., as amended, and delegated to the Regional Director, Pacific OCS Region, Minerals Management Service, I do hereby approve this Amendment No. 4 to the Santa Ynez Unit Agreement to be effective as of the date written below.

_J. Lisle Reed_                              Date: _3/28/03_

**Regional Director**
**Pacific OCS Region**                                    **Contract No. 14-08-0001-8979**
**Minerals Management Service**

*MC/Carr/SantaYnezUnitAgrAttA*

Exhibit B
67

EXHIBIT "B"

to

SANTA YNEZ UNIT AGREEMENT
CHANNEL ISLANDS AREA
OUTER CONTINENTAL SHELF, CALIFORNIA

SCHEDULE SHOWING OWNERSHIP OF OIL AND GAS INTERESTS

| Tract Number | Description of Land as Per Official Leasing Map Channel Islands Area Map No. 6A | Number of Acres | Serial Number of Lease | Expiration Date of Lease | Basic Royalty and Ownership Percentage | Lessee of Record and Working Interest Owner and Percentage | Overriding Royalty and Percentage |
|---|---|---|---|---|---|---|---|
| 1 | Block 52N 74W | 5760 | OCS-P 0180 | HBU | USA 16 2/3% | Exxon Mobil Corporation 100% | None |
| 2 | Block 52N 75W | 5760 | OCS-P 0181 | HBU | USA 16 2/3% | Exxon Mobil Corporation 100% | None |
| 3 | Block 52N 77W | 5760 | OCS-P 0182 | HBU | USA 16 2/3% | Exxon Mobil Corporation 100% | None |
| 4 | Block 52N 78W | 5760 | OCS-P 0183 | HBU | USA 16 2/3% | Exxon Mobil Corporation 100% | None |
| 8 | Block 53N 73W. All those portions lying seaward of a line 3 geographical miles distant from the coastline of California (as said coastline is defined in the Submerged Lands Act of 1953) | 4946 | OCS-P 0187 | HBU | USA 16 2/3% | Exxon Mobil Corporation 100% | None |

(Tract number 5 eliminated from Unit as a result of relinquishment of Lease No. OCS-P 0184 on January 8, 1991)

(Tract number 6 eliminated from Unit as a result of relinquishment of Lease No. OCS-P 0185 on February 4, 1991)

(Tract number 7 eliminated from Unit as a result of relinquishment of Lease No. OCS-P 0186 on October 2, 1972)

Revised 11/18/02

Exhibit B
68

EXHIBIT "B"

to

SANTA YNEZ UNIT AGREEMENT
CHANNEL ISLANDS AREA
OUTER CONTINENTAL SHELF, CALIFORNIA

SCHEDULE SHOWING OWNERSHIP OF OIL AND GAS INTERESTS

| Tract Number | Description of Land as Per Official Leasing Map Channel Islands Area Map No. 6A | Number of Acres | Serial Number of Lease | Expiration Date of Lease | Basic Royalty and Ownership Percentage | Lessee of Record and Working Interest Owner and Percentage | Overriding Royalty and Percentage |
|---|---|---|---|---|---|---|---|
| 9 | Blocks 53N 74W; 54N 74W All those portions lying seaward of a line 3 geographical miles distant from the coastline of California (as said coastline is defined in the Submerged Lands Act of 1953) | 5681 | OCS-P 0188 | HBU | USA 16 2/3% | Exxon Mobil Corporation 100% | None |
| 10 | N 1/2 Block 53N 75W; Block 54N 75W All those portions lying seaward of a line 3 geographical miles distant from the coastline of California (as said coastline is defined in the Submerged Lands Act of 1953) | 3840 | OCS-P 0189 | HBU | USA 16 2/3% | Exxon Mobil Corporation 100% | None |
| 11 | S 1/2 Block 53N 75W | 2880 | OCS-P 0190 | HBU | USA 16 2/3% | Exxon Mobil Corporation 100% | None |
| 12 | Block 53N 76W | 5760 | OCS-P 0191 | HBU | USA 16 2/3% | Exxon Mobil Corporation 100% | None |

EXHIBIT "B"

to

SANTA YNEZ UNIT AGREEMENT
CHANNEL ISLANDS AREA
OUTER CONTINENTAL SHELF, CALIFORNIA

SCHEDULE SHOWING OWNERSHIP OF OIL AND GAS INTERESTS

| Tract Number | Description of Land as Per Official Leasing Map Channel Islands Area Map No. 6A | Number of Acres | Serial Number of Lease | Expiration Date of Lease | Basic Royalty and Ownership Percentage | Lessee of Record and Working Interest Owner and Percentage | Overriding Royalty and Percentage |
|---|---|---|---|---|---|---|---|
| 13 | N 1/2 Block 53N 77W; Block 54N 77W All those portions lying seaward of a line 3 geographical miles distant from the coastline of California (as said coastline is defined in the Submerged Lands Act of 1953) | 3851 | OCS-P 0192 | HBU | USA 16 2/3% | Exxon Mobil Corporation 100% | None |
| 14 | N 1/2 Block 53N 78W; Block 54N 78W All those portions lying seaward of a line 3 geographical miles distant from the coastline of California (as said coastline is defined in the Submerged Lands Act of 1953) | 3316 | OCS-P 0193 | HBU | USA 16 2/3% | Exxon Mobil Corporation 100% | None |
| 15 | S 1/2 Block 53N 78W | 2880 | OCS-P 0194 | HBU | USA 16 2/3% | Exxon Mobil Corporation 100% | None |

EXHIBIT "B"

to

SANTA YNEZ UNIT AGREEMENT
CHANNEL ISLANDS AREA
OUTER CONTINENTAL SHELF, CALIFORNIA

SCHEDULE SHOWING OWNERSHIP OF OIL AND GAS INTERESTS

| Tract Number | Description of Land as Per Official Leasing Map Channel Islands Area Map No. 6A | Number of Acres | Serial Number of Lease | Expiration Date of Lease | Basic Royalty and Ownership Percentage | Lessee of Record and Working Interest Owner and Percentage | Overriding Royalty and Percentage |
|---|---|---|---|---|---|---|---|
| 16 | Blocks 53N 79W; 54N 79W All those portions lying seaward of a line 3 geographical miles distant from the coastline of California (as said coastline is defined in the Submerged Lands Act of 1953) | 5695 | OCS-P 0195 | HBU | USA 16 2/3% | Exxon Mobil Corporation 100% | None |
| 19 | S 1/2 Block 53N 77W | 2880 | OCS-P 0326 | HBU | USA- Sliding Scale | Exxon Mobil Corporation 100% | None |
| 20 | Block 52N 76W | 5760 | OCS-P 0329 | HBU | USA- Sliding Scale | Exxon Mobil Corporation 100% | None |
| 21 | Block 52N 73W | 5760 | OCS-P 0461 | HBU | USA 12 1/2% | Exxon Mobil Corporation 100% | None |

Totals:  Federal Lands   76,289 acres
Other Lands   None

(Tract numbers 17 and 18 eliminated from Unit as a result of relinquishment of Lease No. OCS-P 0196 and OCS-P 0197, respectively, on January 8, 1991)

Exhibit B
71



**LIST OF TRACTS AND SERIAL NUMBERS OF FEDERAL LEASES INCLUDED IN THE UNIT**

| | |
|---|---|
| (1) OCS-P 0180 | (12) OCS-P 0191 |
| (2) OCS-P 0181 | (13) OCS-P 0192 |
| (3) OCS-P 0182 | (14) OCS-P 0193 |
| (4) OCS-P 0183 | (15) OCS-P 0194 |
| (8) OCS-P 0187 | (16) OCS-P 0195 |
| (9) OCS-P 0188 | (19) OCS-P 0326 |
| (10) OCS-P 0189 | (20) OCS-P 0329 |
| (11) OCS-P 0190 | (21) OCS-P 0461 |

EXXON MEANS EXXON MOBIL CORPORATION

UNIT AREA BOUNDARY

SIXTH REVISED

**EXHIBIT "A"**

TO

## SANTA YNEZ UNIT AGEEMENT

AS PER

OUTER CONTINENTAL SHELF LEASING MAP NO. 6A
CHANNEL ISLANDS AREA, CALIFORNIA

CALIFORNIA STATE COORDINATE SYSTEM, ZONE 6

SCALE: 1" =10,000'

0 5,000' 10,000' 15,000' 20,000'

TOTAL UNIT 76,289 ACS.

REVISED OCTOBER 30, 2002

# SANTA YNEZ UNIT AREA EFFECTIVE APRIL 2, 1991



UNIT AREA

PARTICIPATING AREA

Exhibit B

73





EXXON PROPRIETARY



EXXON COMPANY USA
WESTERN PRODUCTION DIVISION

SANTA YNEZ UNIT
SANTA BARBARA CHANNEL
PROPOSED PARTICIPATING AREA II

MIKE MISHLER          FEBRUARY 19, 1991

EXXON PROPRIE.ARY



PLAN OF OPERATION

SANTA YNEZ UNIT
LEASES OCS-P 0180, 0187, 0188, 0190
AND 0461

JUNE/1992 - JUNE/1993



Planned activities for the Hondo Platform for the upcoming year include:

- Maintaining active reservoir management
  - Well testing
  - API gravity tests
  - Watercut analysis
  - Pressure monitoring
  - Production logs

- Gas-lift-gas usage optimization

- Improve capacity utilization and availability by conducting selective workovers (eg., adding perforations, mud acid stimulations)

- Complete installation and commissioning of the upgraded fire water deluge system

- Install supplemental yoke hinges on SALM/OS&T

- Install second water injection pump


Planned activities for the SYU Expansion Project include:

- Complete fabrication and installation of Harmony and Heritage topsides

- Commence Harmony and Heritage hook-up

- Perform tie-ins of 12" and 14" pipelines to Hondo platform


Date prepared:  June 16, 1992

UNITED STATES
DEPARTMENT OF THE INTERIOR
MINERALS MANAGEMENT SERVICE

**DESIGNATION OF UNIT OPERATOR**

The undersigned identified below, on the records of the Minerals Management Service, is a working
interest owner of:

Unit Name:              Santa Ynez Unit
Unit Agreement No.:     14-08-0001-8979
Regional Office:        Pacific OCS Region

and hereby designates

Name:                   Exxon Corporation
Address:                P.O. Box 5025
                        Thousand Oaks, California 91359

as his operator and local agent, with full authority to act in his behalf in complying with the terms of the
Unit Agreement and regulations applicable thereto and on whom the Regional Supervisor or his
representative may serve written or oral instructions in securing compliance with the Operating
Regulations with respect to the aforementioned unit.

It is understood that this designation of operator does not relieve the working interest owner of
responsibility for compliance with the terms of the Unit Agreement, laws, and regulations applicable to the
area.  It is also understood that this designation of operator does not constitute an assignment of any
interest in the unit.  The unit operator will submit plans of operations and other documents or reports
required under the terms of the Unit Agreement.

In case of default on the part of the designated operator, the working interest owner will make full and
prompt compliance with all regulations, Unit Agreement, or orders of the Secretary of the Interior or his
representative.

The working interest owner will notify the Regional Supervisor promptly of any change in the designated
operator.

APR 0 2 1996
_____
(Date)

Nuevo Energy Company
(Working Interest Owner)

By: _____
Name:    Sue Ann Craddock
Title:    Vice President

c:\joan\ogle\desiguo.doc

Exhibit B
79

## RATIFICATION AND JOINDER OF UNIT AGREEMENT

In consideration of the execution of the Unit Agreement for Outer Continental Shelf Exploration, Development, and Production Operations on the Santa Ynez Unit, Offshore California, effective November 12, 1970, in a form approved on behalf of the Secretary of the Interior, the undersigned hereby expressly joins said Unit Agreement and ratifies, approves, adopts and confirms said Unit Agreement as fully as though the undersigned had executed the original agreement.

This Ratification and Joinder of Unit Agreement shall be effective as to the undersigned's interest in any lands and leases, or interest therein, and royalties presently held or which may arise under existing option agreements or other interests in unitized substances, covering any lands within the Unit Area in which the undersigned may be found to have an oil or gas interest.

This Ratification and Joinder of Unit Agreement shall be binding upon the undersigned, its assigns or successors in interest.

Executed this 2nd day of April, 1996.

NUEVO ENERGY COMPANY

By _____
Sue Ann Craddock
Vice President

c:\joan\ogle\ratifua.doc

Exhibit B
80

## RATIFICATION AND JOINDER OF UNIT OPERATING AGREEMENT

In consideration of the execution of the Unit Operating Agreement for Outer Continental Shelf Exploration, Development, and Production Operations on the Santa Ynez Unit, Offshore California, effective November 3, 1970, in a form approved on behalf of the Secretary of the Interior, the undersigned hereby expressly joins said Unit Operating Agreement and ratifies, approves, adopts and confirms said Unit Operating Agreement as fully as though the undersigned had executed the original agreement.

This Ratification and Joinder of Unit Operating Agreement shall be effective as to the undersigned's interest in any lands and leases, or interest therein, and royalties presently held or which may arise under existing option agreements or other interests in unitized substances, covering any lands within the Unit Area in which the undersigned may be found to have an oil or gas interest.

This Ratification and Joinder of Unit Operating Agreement shall be binding upon the undersigned, its assigns or successors in interest.

Executed this 2nd day of April, 1996.

NUEVO ENERGY COMPANY

By

Sue Ann Craddock
Vice President

c:\joan\ogle\ratifuoa.doc

Exhibit B
81

EXHIBIT "A"

# SANTA YNEZ UNIT AGREEMENT
## Outer Continental Shelf, California
## Ownership of Oil and Gas Interests



- - - - - Unit Boundary
①   Tract Number

1 MILE

REVISED DATE
MARCH 31, 1996



Exhibit B

82

REVISED
EXHIBIT "B"

## SANTA YNEZ UNIT AGREEMENT
Outer Continental Shelf, California
Ownership of Oil and Gas Interests

| Tract Number | Description of Land | Number of Acres | Lease Serial Number | Basic Royalty Ownership | Lessee Interests | | ORR and Net Profits |
|---|---|---|---|---|---|---|---|
| 1 | Block 52N 74W | 5760 | OCS-P 0180 | USA 16 2/3% | Exxon Corporation | 100.00000% | |
| 2 | Block 52N 75W | 5760 | OCS-P 0181 | USA 16 2/3% | Exxon Corporation | 100.00000% | |
| 3 | Block 52N 77W | 5760 | OCS-P 0182 | USA 16 2/3% | Exxon Corporation<br>Nuevo Energy Company | 50.00000%<br>50.00000% | |
| 4 | Block 52N 78W | 5760 | OCS-P 0183 | USA 16 2/3% | Exxon Corporation | 100.00000% | |
| 5 | Eliminated from Unit as a result of relinquishment of Lease No. OCS-P 0184 on January 8, 1991. | N/A | OCS-P 0184 | N/A | N/A | | |
| 6 | Eliminated from Unit as a result of relinquishment of Lease No. OCS-P 0185 on Febreuary 4, 1991. | N/A | OCS-P 0185 | N/A | N/A | | |
| 7 | Eliminated from Unit as a result of relinquishment of Lease No. OCS-P 0186 on October 2, 1972. | N/A | OCS-P 0186 | N/A | N/A | | |

1

Exhibit B

| Tract Number | Description of Land | Number of Acres | Lease Serial Number | Basic Royalty Ownership | Lessee Interests | | ORR and Net Profits |
|---|---|---|---|---|---|---|---|
| 8 | Block 53N 73W All those portions lying seaward of a line 3 geographical miles distant from the coastline (as said coastline is defined in the Submerged Lands Act of 1953) | 4946 | OCS-P 0187 | USA 16 2/3% | Exxon Corporation | 100.00000% | |
| 9 | Block 53N 74W; 54N 74W All those portions lying seaward of a line 3 geographical miles distant from the coastline (as said coastline is defined in the Submerged Lands Act of 1953) | 5681 | OCS-P 0188 | USA 16 2/3% | Exxon Corporation | 100.00000% | |
| 10 | N/2 Block 53N 75W; Block 54N 75W - All those portions lying seaward of a line 3 geographical miles distant from the coastline (as said coastline is defined in the Submerged Lands Act of 1953) | 3840 | OCS-P 0189 | USA 16 2/3% | Nuevo Energy Co. Exxon Corporation | 50.00000% 50.00000% | |
| 11 | S/2 Block 53N 75W | 2880 | OCS-P 0190 | USA 16 2/3% | Exxon Corporation | 100.00000% | |
| 12 | Block 53N 76W | 5760 | OCS-P 0191 | USA 16 2/3% | Chevron USA. Inc. Exxon Corporation | 33.33333% 66.66667% | |

2

Exhibit B

| Tract Number | Description of Land | Number of Acres | Lease Serial Number | Basic Royalty Ownership | Lessee Interests | | ORR and Net Profits |
|---|---|---|---|---|---|---|---|
| 13 | N/2 Block 53N 77W: Block 54N 77W - All those portions lying seaward of a line 3 geographical miles distant from the coastline (as said coastline is defined in the Submerged Lands Act of 1953) | 3851 | OCS-P 0192 | USA 16 2/3% | Exxon Corporation Nuevo Energy Company | 50.00000% 50.00000% | 12.5% Nuevo |
| 14 | N/2 Block 53N 78W; Block 54N 78W - All those portions lying seaward of a line 3 geographical miles distant from the coastline (as said coastline is defined in the Submerged Lands Act of 1953) | 3316 | OCS-P 0193 | USA 16 2/3% | Exxon Corporation Nuevo Energy Company | 50.00000% 50.00000% | |
| 15 | S/2 Block 53N 78W | 2880 | OCS-P 0194 | USA 16 2/3% | Exxon Corp. Nuevo Energy Company | 50.00000% 50.00000% | |
| 16 | Blocks 53N 79W; 54N 79W - All those portions lying seaward of a line 3 geographical miles distant from the coastline of California (as said coastline is defined in the Submerged Lands Act of 1953) | 5695 | OCS-P 0195 | USA 16 2/3% | Exxon Corporation Nuevo Energy Company | 50.00000% 50.00000% | |

3

Exhibit B

| Tract Number | Description of Land | Number of Acres | Lease Serial Number | Basic Royalty Ownership | Lessee Interests | | ORR and Net Profits |
|---|---|---|---|---|---|---|---|
| 17 | Eliminated from Unit as a result of relinquishment of lease no. OCS-P 0196 on January 8, 1991. | N/A | OCS-P 0196 | N/A | N/A | | |
| 18 | Eliminated from Unit as a result of relinquishment of lease no. OCS-P 0197 on January 8, 1991. | N/A | OCS-P 0197 | N/A | N/A | | |
| 19 | S/2 Block 53N 77W | 2880 | OCS-P 0326 | USA Sliding Scale | Nuevo Energy Company | 100.00000% | |
| 20 | Block 52N 76W | 5760 | OCS-P 0329 | USA Sliding Scale | Exxon Corporation | 100.00000% | |
| 21 | Block 52N 73W | 5760 | OCS-P 0461 | USA 12 1/2 % | Exxon Corporation | 100.00000% | |
| | TOTAL | 76,289 | | | | | |

c:/joan/ogle/ynezcht.doc

EXHIBIT "A"

# SANTA YNEZ UNIT OPERATING AGREEMENT
## Outer Continental Shelf, California
## Ownership of Oil and Gas Interests



- - - - - -  Unit Boundary

① Tract Number

1 MILE

REVISED DATE
MARCH 31, 1996



Exhibit B
87

# SANTA YNEZ UNIT OPERATING AGREEMENT
## Outer Continental Shelf, California
## Ownership of Oil and Gas Interests

| Tract Number | Description of Land | Number of Acres | Lease Serial Number | Basic Royalty Ownership | Lessee Interests | | ORR and Net Pr |
|---|---|---|---|---|---|---|---|
| 1 | Block 52N 74W | 5760 | OCS-P 0180 | USA 16 2/3% | Exxon Corporation | 100.00000% | |
| 2 | Block 52N 75W | 5760 | OCS-P 0181 | USA 16 2/3% | Exxon Corporation | 100.00000% | |
| 3 | Block 52N 77W | 5760 | OCS-P 0182 | USA 16 2/3% | Exxon Corporation<br>Nuevo Energy Company | 50.00000%<br>50.00000% | |
| 4 | Block 52N 78W | 5760 | OCS-P 0183 | USA 16 2/3% | Exxon Corporation | 100.00000% | |
| 5 | Eliminated from Unit as a result of relinquishment of Lease No. OCS-P 0184 on January 8, 1991. | N/A | OCS-P 0184 | N/A | N/A | | |
| 6 | Eliminated from Unit as a result of relinquishment of Lease No. OCS-P 0185 on February 4, 1991. | N/A | OCS-P 0185 | N/A | N/A | | |
| 7 | Eliminated from Unit as a result of relinquishment of Lease No. OCS-P 0186 on October 2, 1972. | N/A | OCS-P 0186 | N/A | N/A | | |

| Tract Number | Description of Land | Number of Acres | Lease Serial Number | Basic Royalty Ownership | Lessee Interests | | ORR and Net Profits |
|---|---|---|---|---|---|---|---|
| 8 | Block 53N 73W All those portions lying seaward of a line 3 geographical miles distant from the coastline (as said coastline is defined in the Submerged Lands Act of 1953) | 4946 | OCS-P 0187 | USA 16 2/3% | Exxon Corporation | 100.00000% | |
| 9 | Block 53N 74W; 54N 74W All those portions lying seaward of a line 3 geographical miles distant from the coastline (as said coastline is defined in the Submerged Lands Act of 1953) | 5681 | OCS-P 0188 | USA 16 2/3% | Exxon Corporation | 100.00000% | |
| 10 | N/2 Block 53N 75W; Block 54N 75W - All those portions lying seaward of a line 3 geographical miles distant from the coastline (as said coastline is defined in the Submerged Lands Act of 1953) | 3840 | OCS-P 0189 | USA 16 2/3% | Nuevo Energy Co.<br>Exxon Corporation | 50.00000%<br>50.00000% | |
| 11 | S/2 Block 53N 75W | 2880 | OCS-P 0190 | USA 16 2/3% | Exxon Corporation | 100.00000% | |
| 12 | Block 53N 76W | 5760 | OCS-P 0191 | USA 16 2/3% | Chevron USA. Inc.<br>Exxon Corporation | 33.33333%<br>66.66667% | |

2

Exhibit B

| Tract Number | Description of Land | Number of Acres | Lease Serial Number | Basic Royalty Ownership | Lessee Interests | | ORR and Net Profits |
|---|---|---|---|---|---|---|---|
| 13 | N/2 Block 53N 77W: Block 54N 77W - All those portions lying seaward of a line 3 geographical miles distant from the coastline (as said coastline is defined in the Submerged Lands Act of 1953) | 3851 | OCS-P 0192 | USA 16 2/3% | Exxon Corporation<br>Nuevo Energy Company | 50.00000%<br>50.00000% | 12.5% Nuevo |
| 14 | N/2 Block 53N 78W; Block 54N 78W - All those portions lying seaward of a line 3 geographical miles distant from the coastline (as said coastline is defined in the Submerged Lands Act of 1953) | 3316 | OCS-P 0193 | USA 16 2/3% | Exxon Corporation<br>Nuevo Energy Company | 50.00000%<br>50.00000% | |
| 15 | S/2 Block 53N 78W | 2880 | OCS-P 0194 | USA 16 2/3% | Exxon Corp.<br>Nuevo Energy Company | 50.00000%<br>50.00000% | |
| 16 | Blocks 53N 79W; 54N 79W - All those portions lying seaward of a line 3 geographical miles distant from the coastline of California (as said coastline is defined in the Submerged Lands Act of 1953) | 5695 | OCS-P 0195 | USA 16 2/3% | Exxon Corporation<br>Nuevo Energy Company | 50.00000%<br>50.00000% | |

3

Exhibit B

| Tract Number | Description of Land | Number of Acres | Lease Serial Number | Basic Royalty Ownership | Lessee Interests | | ORR and Net Profits |
|---|---|---|---|---|---|---|---|
| 17 | Eliminated from Unit as a result of relinquishment of lease no. OCS-P 0196 on January 8, 1991. | N/A | OCS-P 0196 | N/A | N/A | | |
| 18 | Eliminated from Unit as a result of relinquishment of lease no. OCS-P 0197 on January 8, 1991. | N/A | OCS-P 0197 | N/A | N/A | | |
| 19 | S/2 Block 53N 77W | 2880 | OCS-P 0326 | USA Sliding Scale | Nuevo Energy Company | 100.00000% | |
| 20 | Block 52N 76W | 5760 | OCS-P 0329 | USA Sliding Scale | Exxon Corporation | 100.00000% | |
| 21 | Block 52N 73W | 5760 | OCS-P 0461 | USA 12 1/2 % | Exxon Corporation | 100.00000% | |
| | TOTAL | 76,289 | | | | | |

c:/joan/ogle/ynezcht.doc

4

Exhibit B
91

*Final Approval*

7100

March 27, 2003

Ms. Peggy L. Carr
Staff Land Representative
ExxonMobil Production Company
U.S. East
P.O. Box 61707
New Orleans, Louisiana 70161-1707

                              Re:    Amendment No. 4
                                     Santa Ynez Unit Agreement
                                     Santa Ynez Unit
                                     Contract Number 14-08-0001-8979
                                     Offshore California

Dear Ms. Carr:

We received your letter dated March 11, 2003, requesting that the Minerals Management Service approve Amendment No. 4 to the Santa Ynez Unit Agreement. We approve your request as outlined below.

Exxon Mobil Corporation acquired 100% of the working interest ownership in the Santa Ynez Unit, which was approved by MMS on December 20, 2002. On January 20, 2003, MMS approved ExxonMobil's proposed tract allocation percentages for the Sacate Field, Participating Area II. Amendment No. 4 provides for the consolidation of Participating Areas IA, IB, II and III into one participating area and executes other administrative changes. According to Section 7 of the SYU Agreement, "any two or more participating areas so established may be combined into one, on approval of the Supervisor."

We have determined that approval of Amendment No. 4 to the Santa Ynez Unit Agreement is in the best interest of the government, and it will streamline the regulatory burden on Exxon Mobil Corporation. Pursuant to Section 7 of the SYU Agreement, MMS hereby approves Amendment No. 4 and Exhibits "A" , "B" and "C" to the Santa Ynez Unit Agreement, as amended, to reflect the requested PA consolidation, effective April 1, 2003. Amendment No.4 will be attached to and made part of the Santa Ynez Unit Agreement.

Furthermore, government revenue from royalty payments to MMS will not be affected by consolidation now or in the future without proper justification and approval from MMS. The approved metering, measurement and allocation plan will not be affected by this change.

If you have any questions, please contact Mr. Allan Shareghi at (805) 389-7704 or via e-mail at Allan.Shareghi@mms.gov.

Sincerely,

Maher AH Ibrahim
Maher A.H. Ibrahim
Regional Supervisor
Office of Production, Development,
and Resource Evaluation

cc:    MRM, Wendy Krebs

Enclosure

Exhibit B
93

bcc:    File  ✓1703-02(a)(1)- Santa Ynez Unit-Gen. Corres. (w/copy)
            1703-02(a)(1)- Santa Ynez Unit Agreement (w/orig)


        RD
        Chron
        RS, OPDRE
        RS, OEE
        RS, OFO
        DS, CAM
        C, PDRAS        (w/enclosure)
        A.Shareghi      (w/enclosure)
        K.Piper         (w/enclosure)

OPDRE:/EAS:word/hdata/mydocument/SYUAmend#4/3/11/03

**ExxonMobil Production Comp&**
U.S. East
P.O. Box 61707
New Orleans, Louisiana 70161-1707



March 11, 2003

Amendment No. 4
Santa Ynez Unit Agreement
Channel Island Area
Offshore California

Minerals Management Service
Pacific OCS Region
770 Paseo Camarillo
Camarillo, California  93010

Attention:  Mr. Maher A. H. Ibrahim
            Regional Supervisor

Gentlemen:

Pursuant to discussions between Exxon Mobil Corporation and your office, ExxonMobil submits the attached Amendment No. 4 for your approval.  Likewise attached is the schedule of interests per OCS lease number for tract allocations throughout the Santa Ynez Unit.  This consolidation into one participating area will not affect current royalty calculations.

Please contact the undersigned if you have any questions.

Very truly yours,

Peggy L. Carr
Staff Land Representative
(504) 561-3322

Attachment

*Ltr MMS Amend No 4*



Page 1
Amendment No. 4

## AMENDMENT NO. 4

### SANTA YNEZ UNIT AGREEMENT
### CHANNEL ISLANDS AREA
### OUTER CONTINENTAL SHELF, OFFSHORE CALIFORNIA

This Amendment No. 4 to the Unit Agreement for the Exploration, Development and Production Operations on the Santa Ynez Unit Area, Channel Islands Area, Outer Continental Shelf, Offshore California approved November 12, 1970 (first amended effective October 1, 1982; subsequently amended effective June 20, 1988, with Amendments No. 2 and No. 3), hereinafter referred to as the "Santa Ynez Unit Agreement", by Exxon Mobil Corporation (individually and as successor in interest to non-operators ownership), now herein referred to as "ExxonMobil".

**WITNESSETH:**

WHEREAS, ExxonMobil (successor to Humble Oil & Refining Company), and others entered into that certain Santa Ynez Unit Agreement; and

WHEREAS; ExxonMobil hereto desires to revise the Santa Ynez Unit Agreement to reflect the current interests under this agreement and provide for the consolidation and expansion of all participating areas within the Santa Ynez Unit.

NOW THEREFORE, in consideration of the mutual covenants and promises of the parties hereto and other good and valuable consideration, the parties hereto agree as follows:

1. Exhibit "A" of the Santa Ynez Unit Agreement is hereby amended to reflect current ownership of the leases as shown on Exhibit "A", attached hereto and made a part thereof.

2. Exhibit "B" of the Santa Ynez Unit Agreement is hereby amended to reflect the present interests of ExxonMobil hereto as shown on Exhibit "B", attached hereto and made a part hereof.

3. Exhibit "C" of the Santa Ynez Unit Agreement is hereby amended to reflect that Participating Areas 1A, 1B, II and III are hereby consolidated into one participating area. The perimeter of the one participating area extends to the outer boundary of the Santa Ynez Unit. Moreover, the requirement of tract allocation revisions are deemed satisfied and no further adjustments will be made. Royalty payments will continue as constituted prior to the effective date of this amendment.

4. Except as amended herein, the Santa Ynez Unit Agreement remains in full force and effect.

IN WITNESS WHEREOF, ExxonMobil hereto has executed this Amendment No. 4 to the Santa Ynez Unit Agreement on the date written below but effective upon approval by the Secretary of the Interior or his duly authorized representative.

**EXXON MOBIL CORPORATION**

By _____
    Charles E. Arnold

Title _Attorney in Fact_____

Date _3-11-03_____

Exhibit B
96

Page 2
Amendment No. 4

## APPROVAL

Pursuant to the authority vested in the Secretary of the Interior under the Outer Continental Shelf Lands Act, approved August 7, 1953, 67 Stat. 462, 43 U.S.C. 1331, et seq., as amended, and delegated to the Regional Director, Pacific OCS Region, Minerals Management Service, I do hereby approve this Amendment No. 4 to the Santa Ynez Unit Agreement to be effective as of the date written below.


_____        Date: _____3/28/03_____
**Regional Director**
**Pacific OCS Region**                                       **Contract No. 14-08-0001-8979**
**Minerals Management Service**


*MC/Carr/SantaYnezUnitAgrAttA*

EXHIBIT "B"

to

SANTA YNEZ UNIT AGREEMENT
CHANNEL ISLANDS AREA
OUTER CONTINENTAL SHELF, CALIFORNIA

SCHEDULE SHOWING OWNERSHIP OF OIL AND GAS INTERESTS

| Tract Number | Description of Land as Per Official Leasing Map Channel Islands Area Map No. 6A | Number of Acres | Serial Number of Lease | Expiration Date of Lease | Basic Royalty and Ownership Percentage | Lessee of Record and Working Interest Owner and Percentage | Overriding Royalty and Percentage |
|---|---|---|---|---|---|---|---|
| 1 | Block 52N 74W | 5760 | OCS-P 0180 | HBU | USA 16 2/3% | Exxon Mobil Corporation 100% | None |
| 2 | Block 52N 75W | 5760 | OCS-P 0181 | HBU | USA 16 2/3% | Exxon Mobil Corporation 100% | None |
| 3 | Block 52N 77W | 5760 | OCS-P 0182 | HBU | USA 16 2/3% | Exxon Mobil Corporation 100% | None |
| 4 | Block 52N 78W | 5760 | OCS-P 0183 | HBU | USA 16 2/3% | Exxon Mobil Corporation 100% | None |
| 8 | Block 53N 73W All those portions lying seaward of a line 3 geographical miles distant from the coastline of California (as said coastline is defined in the Submerged Lands Act of 1953) | 4946 | OCS-P 0187 | HBU | USA 16 2/3% | Exxon Mobil Corporation 100% | None |

(Tract number 5 eliminated from Unit as a result of relinquishment of Lease No. OCS-P 0184 on January 8, 1991)

(Tract number 6 eliminated from Unit as a result of relinquishment of Lease No. OCS-P 0185 on February 4, 1991)

(Tract number 7 eliminated from Unit as a result of relinquishment of Lease No. OCS-P 0186 on October 2, 1972)

Revised 11/18/02

EXHIBIT "B"

to

SANTA YNEZ UNIT AGREEMENT
CHANNEL ISLANDS AREA
OUTER CONTINENTAL SHELF, CALIFORNIA

SCHEDULE SHOWING OWNERSHIP OF OIL AND GAS INTERESTS

| Tract Number | Description of Land as Per Official Leasing Map Channel Islands Area Map No. 6A | Number of Acres | Serial Number of Lease | Expiration Date of Lease | Basic Royalty and Ownership Percentage | Lessee of Record and Working Interest Owner and Percentage | Overriding Royalty and Percentage |
|---|---|---|---|---|---|---|---|
| 9 | Blocks 53N 74W; 54N 74W All those portions lying seaward of a line 3 geographical miles distant from the coastline of California (as said coastline is defined in the Submerged Lands Act of 1953) | 5681 | OCS-P 0188 | HBU | USA 16 2/3% | Exxon Mobil Corporation 100% | None |
| 10 | N 1/2 Block 53N 75W; Block 54N 75W All those portions lying seaward of a line 3 geographical miles distant from the coastline of California (as said coastline is defined in the Submerged Lands Act of 1953) | 3840 | OCS-P 0189 | HBU | USA 16 2/3% | Exxon Mobil Corporation 100% | None |
| 11 | S 1/2 Block 53N 75W | 2880 | OCS-P 0190 | HBU | USA 16 2/3% | Exxon Mobil Corporation 100% | None |
| 12 | Block 53N 76W | 5760 | OCS-P 0191 | HBU | USA 16 2/3% | Exxon Mobil Corporation 100% | None |

EXHIBIT "B"

to

SANTA YNEZ UNIT AGREEMENT
CHANNEL ISLANDS AREA
OUTER CONTINENTAL SHELF, CALIFORNIA

SCHEDULE SHOWING OWNERSHIP OF OIL AND GAS INTERESTS

| Tract Number | Description of Land as Per Official Leasing Map Channel Islands Area Map No. 6A | Number of Acres | Serial Number of Lease | Expiration Date of Lease | Basic Royalty and Ownership Percentage | Lessee of Record and Working Interest Owner and Percentage | Overriding Royalty and Percentage |
|---|---|---|---|---|---|---|---|
| 13 | N 1/2 Block 53N 77W; Block 54N 77W All those portions lying seaward of a line 3 geographical miles distant from the coastline of California (as said coastline is defined in the Submerged Lands Act of 1953) | 3851 | OCS-P 0192 | HBU | USA 16 2/3% | Exxon Mobil Corporation 100% | None |
| 14 | N 1/2 Block 53N 78W; Block 54N 78W All those portions lying seaward of a line 3 geographical miles distant from the coastline of California (as said coastline is defined in the Submerged Lands Act of 1953) | 3316 | OCS-P 0193 | HBU | USA 16 2/3% | Exxon Mobil Corporation 100% | None |
| 15 | S 1/2 Block 53N 78W | 2880 | OCS-P 0194 | HBU | USA 16 2/3% | Exxon Mobil Corporation 100% | None |

EXHIBIT "B"

to

SANTA YNEZ UNIT AGREEMENT
CHANNEL ISLANDS AREA
OUTER CONTINENTAL SHELF, CALIFORNIA

SCHEDULE SHOWING OWNERSHIP OF OIL AND GAS INTERESTS

| Tract Number | Description of Land as Per Official Leasing Map Channel Islands Area Map No. 6A | Number of Acres | Serial Number of Lease | Expiration Date of Lease | Basic Royalty and Ownership Percentage | Lessee of Record and Working Interest Owner and Percentage | Overriding Royalty and Percentage |
|---|---|---|---|---|---|---|---|
| 16 | Blocks 53N 79W; 54N 79W All those portions lying seaward of a line 3 geographical miles distant from the coastline of California (as said coastline is defined in the Submerged Lands Act of 1953) | 5695 | OCS-P 0195 | HBU | USA 16 2/3% | Exxon Mobil Corporation 100% | None |
| 19 | S 1/2 Block 53N 77W | 2880 | OCS-P 0326 | HBU | USA- Sliding Scale | Exxon Mobil Corporation 100% | None |
| 20 | Block 52N 76W | 5760 | OCS-P 0329 | HBU | USA- Sliding Scale | Exxon Mobil Corporation 100% | None |
| 21 | Block 52N 73W | 5760 | OCS-P 0461 | HBU | USA 12 1/2% | Exxon Mobil Corporation 100% | None |

Totals:  Federal Lands    76,289 acres
Other Lands     None

(Tract numbers 17 and 18 eliminated from Unit as a result of relinquishment of Lease No. OCS-P 0196 and OCS-P 0197, respectively, on January 8, 1991)





LIST OF TRACTS AND SERIAL NUMBERS OF FEDERAL LEASES INCLUDED IN THE UNIT

| | | | |
|---|---|---|---|
| 1 | OCS-P 0180 | 12 | OCS-P 0191 |
| 2 | OCS-P 0181 | 13 | OCS-P 0192 |
| 3 | OCS-P 0182 | 14 | OCS-P 0193 |
| 4 | OCS-P 0183 | 15 | OCS-P 0194 |
| 8 | OCS-P 0187 | 16 | OCS-P 0195 |
| 9 | OCS-P 0188 | 19 | OCS-P 0326 |
| 10 | OCS-P 0189 | 20 | OCS-P 0329 |
| 11 | OCS-P 0190 | 21 | OCS-P 0461 |

EXXON MEANS EXXON MOBIL CORPORATION

UNIT AREA BOUNDARY

SIXTH REVISED

EXHIBIT "A"

TO

SANTA YNEZ UNIT AGEEMENT

AS PER

OUTER CONTINENTAL SHELF LEASING MAP NO. 6A
CHANNEL ISLANDS AREA, CALIFORNIA

CALIFORNIA STATE COORDINATE SYSTEM, ZONE 6

SCALE: 1" =10,000'

0 5,000' 10,000' 15,000' 20,000'

TOTAL UNIT 76,289 ACS.

REVISED OCTOBER 30, 2002

Exhibit B

# United States Department of the Interior
BUREAU OF SAFETY AND ENVIRONMENTAL ENFORCEMENT
Pacific OCS Region
760 Paseo Camarillo, Suite 102
Camarillo, CA 93010-6064

05/22/2024

J. Caldwell Flores
President
Sable Offshore Corp.
845 Texas Avenue, Suite 2920
Houston, Texas 77002

Re:    Amendment No. 5, Santa Ynez Unit, Offshore California

Dear Mr. Flores:

The Bureau of Safety and Environment Enforcement (BSEE) approved Sable Offshore Corp. (Sable) as the successor Unit Operator for the Santa Ynez Unit on May 22, 2024. The supporting documentation dated May 22, 2024 included Amendment No. 5 to the Santa Ynez Unit Agreement.

Pursuant to Section 7 of the Santa Ynez Unit, BSEE hereby approves Amendment No. 5, Exhibits "A" and "B" (attached) to the Santa Ynez Agreement, as amended to reflect the current lease plat, component leases and ownership interest. Amendment No. 5 will be attached to and made part of the Santa Ynez Unit Agreement.

If you have any questions, please contact Mr. Nathan Sinkula at (805) 384-6366.

Sincerely,

ROBERT KURTZ

Digitally signed by ROBERT KURTZ
Date: 2024.05.22 19:02:07 -07'00'

Bobby Kurtz, Regional Supervisor
Office of Production and Development

## AMENDMENT NO. 5

### SANTA YNEZ UNIT AGREEMENT
### CHANNEL ISLANDS AREA
### OUTER CONTINENTAL SHELF, OFFSHORE CALIFORNIA

This Amendment No. 5 to the Unit Agreement for the Exploration, Development and Production Operations on the Santa Ynez Unit Area, Channel Islands Area, Outer Continental Shelf, Offshore California approved November 12, 1970 (first amended effective October 1, 1982; subsequently amended effective June 20, 1988 with Amendments No. 2 and No. 3; and subsequently amended effective March 28, 2003) hereinafter referred to as the "Santa Ynez Unit Agreement".

WHEREAS, Exxon Mobil Corporation (hereinafter "Exxon") and others entered into the Santa Ynez Unit Agreement;

WHEREAS, Exxon held all of the oil and gas interests in the unit area subject to the Santa Ynez Unit Agreement;

WHEREAS, Exxon recently transferred to Sable Offshore Corp. (hereinafter 'Sable") all of Exxon's right, title and interest within the Santa Ynez Unit Area via Assignments of Record Title Interest in Federal OCS Oil and Gas Lease all dated February 14, 2024, and which cover the following leases: OCS-P 0180, OCS-P 0181, OCS-P 0182, OCS-P 0183, OCS-P 0187, OCS-P 0188, OCS-P 0189, OCS-P 0190, OCS-P 0191, OCS-P 0192, OCS-P 0193, OCS-P 0194, OCS-P 0195, OCS-P 0326, OCS-P 0329 and OCS-P 0461 (collectively, the "Santa Ynez Unit Leases");

WHEREAS, Sable desires to revise the Santa Ynez Unit Agreement to reflect the current interests under the agreement.

NOW THEREFORE, in consideration of the mutual covenants and promises of the parties hereto and other good and valuable consideration, the parties hereto agree as follows:

1. Exhibit "A" of the Santa Ynez Unit Agreement is hereby amended to reflect current ownership of the leases as shown on Exhibit "A' attached hereto and made a part hereof.

2. Exhibit "B" of the Santa Ynez Unit Agreement is hereby amended to reflect the present interests of Sable as shown on Exhibit "B" attached hereto and made a part hereof.

3. Except as amended herein, the Santa Ynez Unit Agreement remains in full force and effect.

IN WITNESS WHEREOF, Sable hereto has executed this Amendment No. 5 to the Santa Ynez Unit Agreement on the date written below but effective upon approval by the Secretary of the Interior or his duly authorized representative.

Sable Offshore Corp.

By: _____

J. Caldwell Flores
President
Date: May 22, 2024

## APPROVAL

Pursuant to the authority vested in the Secretary of the Interior under the Outer Continental Shelf Lands Act, approved August 7, 1953, 67 Stat. 462, 43 U.S.C. 1331, et seq., as amended, and delegated to the Regional Supervisor, Office of Production and Development, Pacific OCS Region, Bureau of Safety and Environmental Enforcement, I do hereby approve this Amendment No. 5 to the Santa Ynez Unit Agreement to be effective as of the date written below.

ROBERT KURTZ    Digitally signed by ROBERT KURTZ
                 Date: 2024.05.22 17:40:18
                 -07'00'
_____          Date: _____
Regional Supervisor                              May 22, 2024
Office of Production and Development              Contract No. 14-08-0001-8979
Pacific OCS Region
Bureau of Safety and Environmental Enforcement

Exhibit B
105



EXHIBIT "A"
TO
SANTA YNEZ UNIT AGREEMENT
AS PER
OUTER CONTINENTAL SHELF LEASING MAP NO. 6A
CHANNEL ISLANDS AREA, CALIFORNIA
CALIFORNIA STATE COORDINATE SYSTEM, ZONE 6
SCALE; 1" =10,000

TOTAL UNIT 76,289 ACS.
REVISED MARCH 12,2024

SABLE MEANS SABLE OFFSHORE CORP.

UNIT AREA BOUNDARY

LIST OF TRACTS AND SERIAL NUMBERS OF
FEDERAL LEASE INCLUDED IN THE UNIT

1 OCS-P0180    12 OCS-P0191
2 OCS-P0181    13 OCS-P0192
3 OCS-P0182    14 OCS-P0193
4 OCS-P0183    15 OCS-P0194
8 OCS-P0187    16 OCS-P0195
9 OCS-P0188    19 OCS-P0326
10 OCS-P0189   20 OCS-P0329
11 OCS-P0190   21 OCS-P0461

EXHIBIT "B"

to

SANTA YNEZ UNIT AGREEMENT
CHANNEL ISLANDS AREA
OUTER CONTINENTAL SHELF, CALIFORNIA

SCHEDULE SHOWING OWNERSHIP OF OIL AND GAS INTERESTS

| Tract Number | Description of Land as Per Official Leasing Map Channel Island Area Map No. 6A | Number of Acres | Serial Number of Lease | Expiration Date of Lease | Basic Royalty and Ownership Percentage | Lessee of Record and Working Interest Owner and Percentage | Overriding Royalty and Percentage |
|---|---|---|---|---|---|---|---|
| 1 | Block 52N 74W | 5760 | OCS-P 0180 | HBU | USA 16 2/3% | Sable Offshore Corp. 100% | None |
| 2 | Block 52N 75W | 5760 | OCS-P 0181 | HBU | USA 16 2/3% | Sable Offshore Corp. 100% | None |
| 3 | Block 52N 77W | 5760 | OCS-P 0182 | HBU | USA 16 2/3% | Sable Offshore Corp. 100% | None |
| 4 | Block 52N 78W | 5760 | OCS-P 0183 | HBU | USA 16 2/3% | Sable Offshore Corp. 100% | None |
| 8 | Block 52N 73W All those portions lying seaward of a line 3 geographical miles distant from the coastline of California (as said coastline is defined in the Submerged Lands Act of 1953) | 4946 | OCS-P 0187 | HBU | USA 16 2/3% | Sable Offshore Corp. 100% | None |

(Tract number 5 eliminated from Unit as a result of relinquishment of Lease No. OCS-P 0184 on January 8, 1992)

(Tract number 6 eliminated from Unit as a result of relinquishment of Lease No. OCS-P 0185 on February 4, 1991)

(Tract number 7 eliminated from Unit as a result of relinquishment of Lease No. OCS-P 0186 on January 8, 1992)

**EXHIBIT "B"**

to

**SANTA YNEZ UNIT AGREEMENT**
**CHANNEL ISLANDS AREA**
**OUTER CONTINENTAL SHELF, CALIFORNIA**

**SCHEDULE SHOWING OWNERSHIP OF OIL AND GAS INTERESTS**

| Tract Number | Description of Land as Per Official Leasing Map Channel Island Area Map No. 6A | Number of Acres | Serial Number of Lease | Expiration Date of Lease | Basic Royalty and Ownership Percentage | Lessee of Record and Working Interest Owner and Percentage | Overriding Royalty and Percentage |
|---|---|---|---|---|---|---|---|
| 9 | Blocks 53N 74W; 54N 74W All those portions lying seaward of a line 3 geographical miles distant from the coastline of California (as said coastline is defined in the Submerged Lands Act of 1953) | 5681 | OCS-P 0188 | HBU | USA 16 2/3% | Sable Offshore Corp. 100% | None |
| 10 | N 1/2 Block 53N 75W; Block 54N 74W All those portions lying seaward of a line 3 geographical miles distant from the coastline of California (as said coastline is defined in the Submerged Lands Act of 1953) | 3840 | OCS-P 0189 | HBU | USA 16 2/3% | Sable Offshore Corp. 100% | None |
| 11 | S 1/2 Block 53N 75W | 2880 | OCS-P 0190 | HBU | USA 16 2/3% | Sable Offshore Corp. 100% | None |
| 12 | Block 53N 76W | 5760 | OCS-P 0191 | HBU | USA 16 2/3% | Sable Offshore Corp. 100% | None |

EXHIBIT "B"

to

SANTA YNEZ UNIT AGREEMENT
CHANNEL ISLANDS AREA
OUTER CONTINENTAL SHELF, CALIFORNIA

SCHEDULE SHOWING OWNERSHIP OF OIL AND GAS INTERESTS

| Tract Number | Description of Land as Per Official Leasing Map Channel Island Area Map No. 6A | Number of Acres | Serial Number of Lease | Expiration Date of Lease | Basic Royalty and Ownership Percentage | Lessee of Record and Working Interest Owner and Percentage | Overriding Royalty and Percentage |
|---|---|---|---|---|---|---|---|
| 13 | N 1/2 Block 53N 77W; Block 54N 77W All of those portions lying seaward of a line 3 geographical miles distant from the coastline of California (as said coastline is defined in the Submerged Lands Act of 1953) | 3851 | OCS-P 0192 | HBU | USA 16 2/3% | Sable Offshore Corp. 100% | None |
| 14 | N 1/2 Block 53N 78W; Block 54N 78W All those portions lying seaward of a line 3 geographical miles distant from the coastline of California (as said coastline is defined in the Submerged Lands Act of 1953) | 3316 | OCS-P 0193 | HBU | USA 16 2/3% | Sable Offshore Corp. 100% | None |
| 15 | S 1/2 Block 53N 78W | 2280 | OCS-P 0194 | HBU | USA 16 2/3% | Sable Offshore Corp. 100% | None |

EXHIBIT "B"

to

SANTA YNEZ UNIT AGREEMENT
CHANNEL ISLANDS AREA
OUTER CONTINENTAL SHELF, CALIFORNIA

SCHEDULE SHOWING OWNERSHIP OF OIL AND GAS INTERESTS

| Tract Number | Description of Land as Per Official Leasing Map Channel Island Area Map No. 6A | Number of Acres | Serial Number of Lease | Expiration Date of Lease | Basic Royalty and Ownership Percentage | Lessee of Record and Working Interest Owner and Percentage | Overriding Royalty and Percentage |
|---|---|---|---|---|---|---|---|
| 16 | Blocks 53N 79W; 54N 79W All those portions lying seaward of a line 3 geographical miles distant from the coastline of California (as said coastline is defined in the Submerged Lands Act of 1953) | 5695 | OCS-P 0195 | HBU | USA 16 2/3% | Sable Offshore Corp. 100% | None |
| 19 | S 1/2 Block 53N 77W | 2880 | OCS-P 0326 | HBU | USA 16 2/3% | Sable Offshore Corp. 100% | None |
| 20 | Block 52N 76W | 5760 | OCS-P 0329 | HBU | USA 16 2/3% | Sable Offshore Corp. 100% | None |
| 21 | Block 52N 73W | 5760 | OCS-P 0461 | HBU | USA 12 1/2% | Sable Offshore Corp. 100% | None |

Totals: Federal Lands  76,289 acres
Other Lands  None

(Tract numbers 17 and 18 eliminated from Unit as a result of relinquishment of Lease No. OCS-P 0196 and OCS-G 197, respectively, on January 8, 1991)