# EXHIBIT F



# United States Department of the Interior
BUREAU OF SAFETY AND ENVIRONMENTAL ENFORCEMENT
Pacific OCS Region
760 Paseo Camarillo, Suite 102
Camarillo, California 93010

## Categorical Exclusion Review

***BSEE proposed federal action***:  The proposed BSEE federal action is to approve an extension request of an existing suspension of operations approval for more than 180 days to resume lease-holding operations under 30 CFR 250.180(e) submitted by the Exxon Mobil Corporation dated October 19, 2023, for the Santa Ynez Unit (SYU).

***Proposed action***:  Per 30 CFR 250.180(e), ExxonMobil is requesting an additional 365 days beyond the original 180 (and subsequent 365-day extensions) afforded by 30 CFR 250.180(d) to resume operations on their leases that have continued beyond their primary term. On December 16, 2015, BSEE performed its NEPA review of the proposed action, concluding the action was categorically excluded from further NEPA analysis, and covered this action from December 16, 2015, to December 15, 2016. Upon annual renewal of the request for extension of the approved suspension of operations, NEPA consistency reviews were conducted and subsequently granted from 2016 to present. The current approved extension expires on December 14, 2023. This categorical exclusion review covers the proposed action from December 14, 2023 to December 13, 2024.

***Proposed CE***:  516 DM 15.4 (C)(6), Approval of suspensions of operations and suspensions of production.

***Background***:  The SYU consists of sixteen leases: OCS-P 0180, OCS-P 0181, OCS-P 0182, OCS-P 0183, OCS-P 0187, OCS-P 0188, OCS-P 0189, OCS-P 0190, OCS-P 0191, OCS-P 0192, OCS-P 0193, OCS-P 0194, OCS-P 0195, OCS-P 0326, OCS-P 0329, and OCS-P 0461 (Leases). The Leases were awarded to Humble Oil & Refining Company (Humble) et al. in 1968. They were placed in the SYU on November 12, 1970, and Humble was designated as the operator. The SYU began producing in 1981. Exxon Mobil Corporation, successor in interest to Humble, acquired the working interest in the SYU on December 20, 2002. The Leases in the SYU have all continued beyond their primary term based on production in paying quantities from existing infrastructure. All the wells in the SYU were shut-in on June 16, 2015, after Plains Pipeline, LP's All American Pipeline (PAAPL) Line 901 -which is used to transport the relevant production - and PAAPL Line 903 - which accepts oil transported by Line 901 - were taken out-of-service as a consequence of the May 19, 2015, oil spill from Line 901, and Exxon Mobile Corporation's onshore storage tanks became filled to capacity.

In August 2017, PAAPL submitted a permit application with the Santa Barbara County, Planning and Development Organization (SBC P&D) to replace Pipelines 901 and 903. In September

1

2017, ExxonMobil submitted an interim trucking permit application with SBC P&D. While all parties agree that pipelines are the permanent crude transport option, an interim trucking permit was sought to enable phased restart of production from the Santa Ynez Unit until an option to transport SYU production via pipeline becomes available. That permit request was denied by the Santa Barbara County Planning Commission on March 8, 2022. A federal lawsuit followed on May 11, 2022, which upheld the denial.

On October 14, 2022, pipeline ownership was transferred from PAAPL to Pacific Pipeline Company ("PPC"), an indirectly wholly owned subsidiary of ExxonMobil. Subsequently the pipeline was renamed the "Las Flores Pipeline."

According to the suspension extension request, ExxonMobil and PPC have conducted extensive inspections and testing of the existing Las Flores Pipeline since acquiring to define any additional maintenance needs to safely return the pipeline to service. Application has been made to Office of the State Fire Marshall (OSFM) for a State Waiver, a requirement under the Consent Decree to resume transportation. Stringent pipeline maintenance, repair, and testing actions required by the Consent Decree have been completed and those remaining will be completed and aligned with OSFM, the agency tasked with the exclusive jurisdiction over pipeline safety and operations, prior to restart.

**BSEE prepared this CER to**: (1) Determine whether the action proposed is within the category of actions categorically excluded in 516 DM 15.4 (C)(6); and (2) determine whether there are extraordinary circumstances associated with the proposed action such that application of the categorical exclusion is inappropriate (Attachment 1).

***Proposed CE applies to the proposed action***: The proposed action, authorized under 30 CFR 250.180(e), is approval of a request for more than the 180 days afforded by 30 CFR 250.180(d) to resume operations on leases that have continued beyond their primary term. An approval of a request under 30 CFR 250.180(e) results in an extension of the lease or leases. The proposed categorical exclusion referenced above (516 DM 15.4 (C)(7)), applies to the approval of lease extensions. Therefore, the proposed action is in the category of action categorically excluded in 516 DM 15.4 (C)(7).

***Extraordinary Circumstances***: Attached (Attachment 1) is a list of extraordinary circumstances from 43 CFR 46.215 that, if present, preclude categorically excluding the proposed action from NEPA analysis. If the proposed action triggers a "yes" answer, then an Environmental Assessment (EA) or an Environmental Impact Statement (EIS) must be developed prior to implementation of the proposed action. This extraordinary circumstance review is necessary before use of the categorical exclusion.

***Concluding remarks for the decision maker***: Based upon the information in this document and the October 19, 2023 Request for Extension to Resume Operations submitted by ExxonMobil, the approval of ExxonMobil's request for more than 180 days to resume leaseholding operations under 30 CFR 250.180(e) is categorically excluded from further NEPA analysis pursuant to 516 DM 15.4 (C)(7). No extraordinary circumstance exists to preclude use of this categorical exclusion.

_____  
James J. Salmons  
Regional Environmental Officer  
Office of the Regional Director

11/09/2023  
Date

## Attachment 1: Extraordinary Circumstance Review

| Will the proposed activities: | Answer: |
|---|---|
| (a)…have significant impacts on public health or safety? | No:  Allowing the extension of the present suspension of operations (proposed activities) should have no impacts on public health or safety because there will be no active oil and gas operations during the approved extension period, and BSEE will continue to require the applicant institute – and BSEE will oversee its adherence to – the ongoing preservation plan for safe and environmentally protective maintenance and oversight of the facilities while idled. |
| (b)…have significant impacts on such natural resources and unique geographic characteristics as historic or cultural resources; park, recreation or refuge lands; wilderness areas; wild or scenic rivers; national natural landmarks; sole or principal drinking water aquifers; prime farmlands; wetlands (EO 11990); floodplains (EO 11988); national monuments; migratory birds; and other ecologically significant or critical areas? | No:  Proposed activities should have no impacts on the referenced natural resources, unique geographic characteristics, or ecologically significant or critical areas.  The proposed activities will allow active oil and gas operations to remain idled during the approved extension period, and BSEE will continue to require the applicant institute – and BSEE will oversee its adherence to – the ongoing preservation plan for safe and environmentally protective maintenance and oversight of the facilities while idled. |
| (c)…have highly controversial environmental effects or involve unresolved conflicts concerning alternative uses of available resources [NEPA section 102(2)(E)]? | No:  Controversial environmental effects or unresolved conflicts over available resources are not expected for this proposed activity.  The proposed action involves approving an extension of suspension of operations during which active oil and gas operations will be idled and the facilities maintained pursuant to preservation plans to ensure safety and environmental protection.  There are no unresolved conflicts concerning alternative uses of the available resources. |
| (d)…have highly uncertain and potentially significant environmental effects or involve unique or unknown environmental risks? | No:  The proposed action involves approving an extension of suspension of operations during which active oil and gas operations will be idled and the facilities maintained pursuant to preservation plans to ensure safety and mitigate or eliminate environmental effects or risks. There are no unique, uncertain, or unknown environmental effects or risks associated with such activity. |
| (e)…establish a precedent for future action or represent a decision in principle about future actions with potentially significant environmental effects? | No:  The proposed activity is authorized by regulation and does not set precedent for future actions.  To the extent it is viewed as precedent for future actions, they are not actions with potentially significant environmental effects, for the reasons addressed herein. |
| (f)…have a direct relationship to other actions with individually insignificant but cumulatively significant environmental effects? | No:  Any cumulative effects from ongoing future production, in the event that production is ultimately restored, have already been examined through prior NEPA analyses.  The proposed action represents a temporary suspension in those previously examined activities. The proposed activity should temporarily reduce or eliminate any cumulative environmental effects potential during the period of suspension of operations. |
| (g)…have significant impacts on properties listed, or eligible for listing, on the National Register of Historic Places as determined by the bureau? | No:  The proposed activity will not impact properties listed, or eligible for listing, on the National Register of Historic Places.   The proposed action involves approving an extension of suspension of operations during which active OCS oil and gas operations will be idled and the facilities maintained pursuant to preservation plans to ensure safety and environmental protection, including appropriate protection against impacts to any listed or eligible properties. |

| | |
|---|---|
| (h)…have significant impacts on species listed, or proposed to be listed, on the List of Endangered or Threatened Species or have significant impacts on designated Critical Habitat for these species? | No: The proposed activity will not have significant impacts on listed species or critical habitat. The proposed action involves approving an extension of suspension of operations during which active oil and gas operations will be idled and the OCS facilities maintained pursuant to preservation plans to ensure safety and environmental protection, including appropriate protection of listed or proposed species or their habitat. |
| (i)…violate a federal law, or a State, local, or tribal law or requirement imposed for the protection of the environment? | No: The proposed activities will be conducted in compliance with all applicable laws imposed for the protection of the environment. |
| (j)…have a disproportionately high and adverse effect on low income or minority populations (EO 12898)? | No: The proposed activity will not disproportionately affect low income or minority populations. |
| (k)…limit access to and ceremonial use of Indian sacred sites on Federal lands by Indian religious practitioners or significantly adversely affect the physical integrity of such sacred sites (EO 13007)? | No: The proposed activity involves a temporary pause in operations on the OCS. It will not limit access to or ceremonial use of Indian sacred sites or affect the physical integrity of such sites. |
| (l)…contribute to the introduction, continued existence, or spread of noxious weeds or non-native invasive species known to occur in the area or actions that may promote the introduction, growth, or expansion of the range of such species (Federal Noxious Weed Control Act (FNWCA) and EO 11122)? | No: The proposed activity will not contribute to the introduction, existence, or spread of noxious weeds or non-native invasive species. The facilities at issue have been present on the OCS since the 1980s, and the proposed action will result in reduced levels of activities at and transit to and from such facilities. |