LATHAM & WATKINS LLP
Daniel P. Brunton (Bar No. 218615)
Email: daniel.brunton@lw.com
12670 High Bluff Drive
San Diego, CA 92130
Tel.: (858) 523-5400
Fax: (858) 523-5450

Benjamin J. Hanelin (Bar No. 237595)
Email: benjamin.hanelin@lw.com
355 South Grand Avenue, Suite 100
Los Angeles, California 90071-1560
Tel.: (213) 485-1234
Fax: (213) 891-8763

Janice M. Schneider (*Pro Hac Vice*)
Email: janice.schneider@lw.com
Devin M. O'Connor (*Pro Hac Vice*)
Email: devin.o'connor@lw.com
555 Eleventh Street, NW, Suite 1000
Washington, D.C. 20004-1304
Tel.: (202) 637-2200
Fax: (202) 637-2201

*Attorneys for Intervenor-Defendant
Sable Offshore Corp.*

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

# WESTERN DIVISION

| | |
|---|---|
| CENTER FOR BIOLOGICAL DIVERSITY, et al.,<br><br>　　　　　*Plaintiffs*,<br><br>　　v.<br><br>DEBRA HAALAND, et al.,<br><br>　　　　　*Defendants*,<br><br>　　and<br><br>SABLE OFFSHORE CORP.,<br><br>　　　　　*Intervenor-Defendant*. | CASE NO. 2:24-cv-05459-MWC-MAA<br><br>**SABLE OFFSHORE CORP.'S OPPOSITION TO PLAINTIFFS' MOTION FOR LEAVE TO FILE FIRST SUPPLEMENTAL AND AMENDED COMPLAINT**<br><br><u>Hearing</u><br>Date: February 7, 2025<br>Time: 1:30 p.m.<br>Judge: Hon. Michelle Williams Court<br>Courtroom: 6A |

# **TABLE OF CONTENTS**

Page

I.    INTRODUCTION ...................................................................................1

II.   BACKGROUND .....................................................................................2

    A.    Approval of Oil and Gas Production in the Santa Ynez Unit Was Subject to Stringent Review Under OCSLA and NEPA ..........................................................................................2

    B.    BSEE Appropriately Relied on a Categorical Exclusion for the Minor Work Conducted in the Applications for Permit to Modify .................................................................4

    C.    Procedural History ....................................................................7

III.  STANDARD OF REVIEW ....................................................................7

IV.   ARGUMENT ..........................................................................................8

    A.    Plaintiffs' Proposed Third Claim Is Futile ..............................8

        1.    Plaintiffs Have Not Adequately Plead Standing With Respect to Their Request for Vacatur of the APMs ..............................................................................8

        2.    Plaintiffs' Proposed Third Cause of Action Is Moot ..............................................................................9

    B.    Plaintiffs' Proposed Fourth Claim Is Futile .........................11

        1.    Plaintiffs Have Not Plead Final Agency Action ....................12

        2.    Plaintiffs Have Not Pled a Duty to Supplement Under NEPA ....................................................................14

        3.    Plaintiffs' Proposed Fourth Claim Is Not Ripe....................15

    C.    Plaintiffs' Undue Delay and the Undue Prejudice to Sable Weigh in Favor of Denying Plaintiffs' Motion........................16

V.    CONCLUSION.....................................................................................18

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

### CASES

*Acosta v. Austin Elec. Servs. LLC*,
  325 F.R.D. 325 (D. Ariz. 2018) .................................................................8

*Already, LLC v. Nike, Inc.*,
  568 U.S. 85 (2013) ......................................................................................9

*Amber Res. Co. v. United States*,
  68 Fed. Cl. 535 (2005), *aff'd*, 538 F.3d 1358 (Fed. Cir. 2008) ............................4

*Ariz. Libertarian Party v. Reagan*,
  798 F.3d 723 (9th Cir. 2015) ....................................................................5

*Ascon Properties, Inc. v. Mobil Oil Co.*,
  866 F.2d 1149 (9th Cir. 1989) .................................................................17

*Ashley Creek Phosphate Co. v. Norton*,
  420 F.3d 934 (9th Cir. 2005) ..................................................................12

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007).................................................................................11

*Bennett v. Spear*,
  520 U.S. 154 (1997)..........................................................................12, 13

*Bonin v. Calderon*,
  59 F.3d 815 (9th Cir. 1995) ......................................................................8

*California v. Neville Chem. Co.*,
  213 F. Supp. 2d 1142 (C.D. Cal. 2002) ....................................................8

*Cent. Delta Water Agency v. U.S. Fish & Wildlife Serv.*,
  653 F. Supp. 2d 1066 (E.D. Cal. 2009) ..................................................16

*Cmty. Health Ctr. All. for Patient Access v. Baass*,
  No. 2:20-CV-02171, 2023 WL 4564798 (E.D. Cal. July 17, 2023),
  *aff'd sub nom. Avenal Cmty. Health Ctr. v. Baass*, No. 23-16109,
  2024 WL 4441430 (9th Cir. Oct. 8, 2024) ..............................................11

*Concerned Citizens & Retired Miners Coal. v. U.S. Forest Serv.*,
    279 F. Supp. 3d 898 (D. Ariz. 2017) ......................................................12

*Conservation Force v. Salazar*,
    646 F.3d 1240 (9th Cir. 2011) ...............................................................11

*Deutsche Bank Nat. Trust Co. v. Fed. Deposit Ins. Corp.*,
    744 F.3d 1124 (9th Cir. 2014) ...............................................................10

*Duran v. Cal. Dep't of Forestry & Fire Prot.*,
    No. 23-16155, 2024 WL 3565266 (9th Cir. July 29, 2024) ...................8

*Env't Prot. Info. Ctr. v. U.S. Fish & Wildlife Serv.*,
    No. C 04-04647, 2005 WL 3021939 (N.D. Cal. Nov. 10, 2005) ...........14

*Foman v. Davis*,
    371 U.S. 178 (1962) ...........................................................................7, 16

*Friends of the Clearwater v. Dombeck*,
    222 F.3d 552 (9th Cir. 2000) .................................................................13

*Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*,
    528 U.S. 167 (2000) .................................................................................8

*Guan v. Mercedes-Benz USA, LLC*,
    No. 20-CV-05719, 2022 WL 17089817 (N.D. Cal. May 17, 2022) .......11

*Hells Canyon Pres. Council v. U.S. Forest Serv.*,
    593 F.3d 923 (9th Cir. 2010) .................................................................12

*Idaho Rivers United v. U.S. Army Corps of Eng'rs*,
    No. 14-cv-1800, 2016 WL 498911 (W.D. Wash. Feb. 9, 2016) ...........10

*Lujan v. Defs. of Wildlife*,
    504 U.S. 555 (1992) .................................................................................8

*M. Westland, LLC v. Cal. Dep't of Transp.*,
    No. SACV 19-1661, 2020 WL 1652551 (C.D. Cal. Feb. 12, 2020) .......15

*Mobil Oil Expl. & Producing Se., Inc. v. United States*,
    530 U.S. 604 (2000) .................................................................................4

*Nat'l Park Hosp. Ass'n v. Dep't of the Interior*,
    538 U.S. 803 (2003) ...............................................................................15

LATHAM&WATKINS LLP
ATTORNEYS AT LAW

iii

CASE NO. 2:24-CV-05459-MWC-MAA
SABLE'S OPPOSITION TO MOTION
FOR LEAVE TO AMEND COMPLAINT

*Native Vill. of Nuiqsut v. Bureau of Land Mgmt.*,
   9 F.4th 1201 (9th Cir. 2021) ...............................................................10

*Native Village of Point Hope v. Salazar*,
   680 F.3d 1123 (9th Cir. 2012) .............................................................9

*Navajo Nation v. Dep't of the Interior*,
   876 F.3d 1144 (9th Cir. 2017) .............................................................9

*Norton v. S. Utah Wilderness All.*,
   542 U.S. 55 (2004)......................................................................14, 15

*Novak v. United States*,
   795 F.3d 1012 (9th Cir. 2015) .............................................................8

*Ohio Forestry Ass'n, Inc. v. Sierra Club*,
   523 U.S. 726 (1998).........................................................................15

*Oksner v. Blakey*,
   347 F. App'x 290 (9th Cir. 2009) .......................................................11

*Pac. Coast Fed'n of Fishermen's Ass'ns v. Raimondo*,
   Nos. 1:20-cv-00431, 1:20-cv-00426, 2021 WL 5811885 (E.D. Cal.
   Dec. 7, 2021)...................................................................................8

*Pappy's Barber Shops, Inc. v. Farmers Grp., Inc.*,
   491 F. Supp. 3d 738 (S.D. Cal. 2020)..................................................8

*Rainey v. Fed. Deposit Ins. Corp.*,
   No. CV 10-05940, 2011 WL 13273076 (C.D. Cal. Sept. 28, 2011) .................10

*Rattlesnake Coal. v. U.S. Env't. Prot. Agency*,
   509 F.3d 1095 (9th Cir. 2007) .............................................................9

*S.C. Coastal Conservation League v. U.S. Army Corps of Eng'rs*,
   789 F.3d 475 (4th Cir. 2015) .............................................................11

*Shenbaum v. City of Manhattan Beach*,
   2024 WL 5185384 (C.D. Cal. Nov. 26, 2024) ...................................17

*Sierra Club v. U.S. Army Corps of Eng'rs*,
   277 F. App'x 170 (3rd Cir. 2008)........................................................10

*Steinle v. City & County of S.F.,*
 919 F.3d 1154 (9th Cir. 2019) ............................................................3

*Stevens v. U.S. Army Corps of Eng'rs,*
 No. 2:21-CV-01423, 2024 WL 3106226 (W.D. Wash. June 24,
 2024) ..................................................................................................10

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.,*
 551 U.S. 308 (2007)............................................................................2

*Texas v. U.S.,*
 523 U.S. 296 (1998)............................................................................15

*Tri-Valley CAREs v. U.S. Dep't of Energy,*
 671 F.3d 1113 (9th Cir. 2012) ............................................................16

*Whitewater Draw Nat. Res. Conservation Dist. v. Mayorkas,*
 5 F.4th 997 (9th Cir. 2021) ................................................................12

**STATUTES**

5 U.S.C.
 § 704.....................................................................................................12
 § 706(1) ................................................................................12, 13, 14, 16
 § 706(2) ................................................................................12, 13, 14
 § 706(2)(A) ...........................................................................................12
 § 706(2)(A), and (D) .............................................................................13

42 U.S.C.
 § 4336.....................................................................................................6
 § 4336(a)(2) ...........................................................................................13

43 U.S.C.
 § 1332(3)................................................................................................17
 § 1351.....................................................................................................3
 § 1351(c) ...............................................................................................5

**RULES**

Fed. R. Evid. 201(b).....................................................................................5

L.R. 11-6.1 ..................................................................................................20

# REGULATIONS

30 C.F.R. pt. 250 ...................................................................................................... 3

30 C.F.R.
   § 250.410(b) ....................................................................................................... 5
   § 250.465 ............................................................................................................. 5
   § 250.620 ............................................................................................................. 5
   §§ 550.241-550.262 ............................................................................................ 3

33 C.F.R. pt. 146 ...................................................................................................... 3

40 C.F.R.
   § 1501.3(a) ........................................................................................................ 15
   § 1501.3(a)(4) ................................................................................................... 13
   §§ 1501.3(a)(4), 1501.4(b) ................................................................................. 6
   § 1501.3(c) .......................................................................................................... 6
   § 1501.4(b) ...................................................................................................... 6, 7
   § 1501.4(b)(1) ..................................................................................................... 6
   § 1502.9(d)(1) ................................................................................................... 14

43 C.F.R.
   § 46.205 .............................................................................................................. 6
   § 46.215 ........................................................................................................... 6, 7

# OTHER AUTHORITIES

89 Fed. Reg. 35442 .................................................................................................. 6

89 Fed. Reg. 35577 .................................................................................................. 6

# I.    INTRODUCTION

On the heels of the Federal Defendants' Motion for Voluntary Remand, Dkt. 37, Plaintiffs seek to expand this case by filing a Motion for Leave to File a First Supplemental and Amended Complaint, Dkt. 38 (the "Motion").  Plaintiffs now propose to add a new third claim under the National Environmental Policy Act ("NEPA") challenging the Bureau of Safety and Environmental Enforcement's ("BSEE") use of a categorical exclusion ("CatEx") to support approval of two applications for permits to modify ("APMs") previously existing wells for certain well re-working activities already conducted consistent with Intervenor-Defendant Sable Offshore Corp.'s ("Sable") rights and obligations under the leases and Unit Agreement (the "Third Claim"), and a new fourth claim under NEPA challenging BSEE's alleged failure to supplement prior NEPA analyses for undefined future activities (the "Fourth Claim").  Plaintiffs' proposed additional claims are futile and the Court should deny their Motion.

Plaintiffs' proposed Third Claim is futile because Plaintiffs lack standing with respect to their request for vacatur of the APMs.  Plaintiffs must demonstrate each element of standing—including redressability—separately for each form of relief sought.  But the well re-working activities that are subject to the challenged APMs have already been completed; that work cannot be undone, is not redressable by this Court, and Plaintiffs lack standing to seek the remedy of vacatur.  Plaintiffs' proposed Third Claim is also futile because it is moot for the same reasons—i.e., Plaintiffs' proposed Third Claim does not seek any relief the Court could grant that would undo the limited work Sable already performed pursuant to the APMs.

Plaintiffs' proposed Fourth Claim is futile for other reasons, including the following:  (1) Plaintiffs fail to allege any final agency action that can be challenged under the Administrative Procedure Act ("APA"); (2) Plaintiffs did not

1  adequately allege that BSEE has a duty to supplement its prior NEPA analyses;

2  and (3) Plaintiffs' Fourth Claim is not ripe.

3       Oil and gas operations at the Santa Ynez Unit have been conducted for

4  decades, and Sable has committed close to $1 billion to purchase, repair, maintain,

5  and upgrade the Santa Ynez Unit assets.  Plaintiffs' attack on minor actions

6  associated with operations authorized long ago should be rejected.  Accordingly,

7  Sable respectfully requests that Plaintiffs' Motion to add new claims be denied.

8  **II.    BACKGROUND**

9       The statutory and regulatory context associated with leasing and

10  development of the Santa Ynez Unit under the Outer Continental Shelf Lands Act

11  ("OCSLA"), as well as Sable's significant interests in this matter, is set forth in

12  greater detail in Dkt. 18 and 39.

13       **A.    Approval of Oil and Gas Production in the Santa Ynez Unit Was**

14            **Subject to Stringent Review Under OCSLA and NEPA**

15       The Santa Ynez Unit consists of 16 offshore oil and gas leases in the Outer

16  Continental Shelf in the Santa Barbara Channel and associated equipment,

17  including three oil and gas platforms.  Dkt. 38-1, Plaintiffs' Proposed First

18  Supplemental and Amended Complaint ("Proposed AC") ¶¶ 1, 3, 27.[1]

19       Development and production of oil and gas in the Santa Ynez Unit was

20  studied in depth under OCSLA and NEPA.  For example, in 1975, the Department

21  of the Interior prepared an environmental impact statement for "Oil and Gas

22  Development in the Santa Barbara Channel, Outer Continental Shelf off

23  California."  Proposed AC ¶ 131.  In 1984, the Department of the Interior issued an

24

25  [1] Because proposed amendments to a complaint are futile if they cannot survive a motion to dismiss, and because courts deciding a motion to dismiss generally consider only facts pled by plaintiffs or facts that are judicially noticeable or relied on in the complaint, *see Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007), these facts are taken from Plaintiffs' Proposed AC, matters relied on in the Proposed AC, and judicially noticeable materials.  Sable reserves the right to file a motion to dismiss Plaintiffs' claims, if necessary.

26

27

28

1  environmental impact statement for the Santa Ynez Unit development and

2  production plans. *Id.* ¶ 132. Based on that detailed environmental review, the

3  Department approved the development and production plan. Proposed AC ¶ 132;

4  Declaration of Daniel P. Brunton in Support of Sable's Opposition to Plaintiffs'

5  Motion for Leave to File First Supplemental and Amended Complaint ("Brunton

6  Decl.") ¶ 2 & Exs. A (CatEx Review for Sable Offshore Well HE-23 –

7  Reperforations), B (CatEx Review for Sable Offshore Well HE-28 –

8  Reperforations) (discussing development and production plan).[2] The approved

9  development and production plans expressly authorize development and

10  operational activities for oil and gas production.

11      Under OCSLA, the development and production plan must comply with

12  detailed safety and environmental requirements. *See* 43 U.S.C. § 1351; 30 C.F.R.

13  §§ 550.241-550.262 (regulations for development and production plans). BSEE's

14  regulations also prescribe platform design, testing, and inspection standards, 30

15  C.F.R. Part 250, including requiring oil and gas owners and operators to "design,

16  install, use, maintain, and test production safety equipment in a manner to ensure

17  the safety and protection of the human, marine, and coastal environments," under

18  BSEE's oversight. *Id*. § 250.800. BSEE's regulations further require safety

19  training with regulatory oversight of training materials and plans, *id*. § 250.1503,

20  and the U.S. Coast Guard also oversees and regulates aspects of offshore facilities,

21  including at the Santa Ynez Unit. *See* 33 C.F.R. Part 146 (Operations)

22

23  [2] The Proposed AC refers extensively to the development and production plans and
   the CatEx's for Wells HE-23 and HE-28—indeed, those documents form the basis
24  of the new claims. *E.g.*, Proposed AC ¶¶ 115-118, 119 (allegations regarding
   development and production plans), 120-28, 165, 166 (allegations related to
25  categorical exclusions), 167-170. As such, the Court can treat those documents as
   part of the Proposed AC. *E.g., Steinle v. City & County of S.F.*, 919 F.3d 1154,
26  1162-63 (9th Cir. 2019) (incorporation by reference doctrine permits a court to
   consider a document as part of complaint "if the plaintiff refers extensively to the
27  document or the document forms the basis of the plaintiff's claim.") (citation
   omitted).

28

(establishing safety and reporting requirements for Outer Continental Shelf facilities).

Oil and gas production at the Santa Ynez Unit was conducted consistent with the contractual rights afforded to the lessee beginning in 1981. Proposed AC ¶ 67; *see also Mobil Oil Expl. & Producing Se., Inc. v. United States*, 530 U.S. 604, 607-08 (2000) (describing OSCLA lessee contractual rights); *Amber Res. Co. v. United States*, 68 Fed. Cl. 535, 544-48 (2005), *aff'd*, 538 F.3d 1358 (Fed. Cir. 2008) (same).

In 2015, there was a leak of an onshore pipeline owned by a third party that necessitated the Santa Ynez Unit being shut in, and production from the Santa Ynez Unit temporarily ceasing. Proposed AC ¶¶ 70, 72. Then-owner of the Santa Ynez Unit facilities, ExxonMobil, requested an additional year to resume operations under its leases, and BSEE approved that request. *Id.* ¶ 73. Each year since then, ExxonMobil requested and BSEE granted an extension as repairs to the onshore pipeline are completed.[3] *Id.* On October 19, 2023, Exxon requested a one-year extension of time to resume operations on its leases in the Santa Ynez Unit, which BSEE approved on November 9, 2023 ("2023 Extension"). AR17026; Second Rusch Decl., Ex. F.

In February 2024, Sable acquired the Santa Ynez Unit leases and associated equipment from ExxonMobil. *Id.* ¶ 73.

**B.    BSEE Appropriately Relied on a Categorical Exclusion for the Minor Work Conducted in the Applications for Permit to Modify**

On September 19, 2024, Sable submitted to two applications for permits to modify (APMs) existing Well HE-23 and existing Well HE-28. Proposed AC

---

[3] Additional detail regarding the current status of the Santa Ynez Unit facilities, the preservation plan that is in place, and the November 2023 extension at issue in Plaintiffs' operative Complaint is discussed in Sable's Response to Federal Defendants' Motion for Voluntary Remand, Dkt. 39 at 7-11.

1    ¶ 113.  Under OCSLA, the development and production plans are the main

2    authorization for development and production.  *E.g.*, 43 U.S.C. § 1351(c)

3    (development and production plan includes "the specific work to be performed," "a

4    description of all facilities and operations located on the outer Continental Shelf,"

5    "the environmental safeguards to be implemented," and other requirements).  In

6    contrast, more routine activities, such as drilling a well—which must be consistent

7    with the already approved development and production plan—require a lessee to

8    receive approval to drill ("APD").  30 C.F.R. § 250.410(b).  If a lessee revises a

9    drilling plan, it must submit an APM to BSEE.  30 C.F.R. § 250.465.  On

10   September 20, 2024, BSEE issued a NEPA CatEx for each of the APMs.  Proposed

11   AC ¶ 116.  The APMs for Well HE-23 and Well HE-28 were for "[r]eperforating

12   and adding new perforations to an existing downhole completion" which is

13   "normal well-reworking operations" and "[r]outine reservoir maintenance."

14   Brunton Decl. ¶ 2 & Exs. A, B; *see also* 30 C.F.R. § 250.620 (wireline perforating

15   operations).  BSEE approved the APMs on September 25, 2024.  Dkt. 40-1 at 21-

16   24.[4]  Brunton Decl. ¶ 3 & Exs. C, D.

17         BSEE assesses the appropriate level of NEPA review by determining

18   whether a proposed action:  (a) is appropriately "categorically excluded"; (b) is not

19   likely to have significant effects or the significance of the effects is unknown and

20   is therefore appropriate for study in an environmental assessment; or (c) is likely to

21   have significant effects and therefore requires a more detailed environmental

22

23   _____

24   [4] Sable requests that the Court take judicial notice of the APMs, which are available on BSEE's website.  Available at https://www.bsee.gov/stats-facts/ocs-regions/pacific/pacific-region-completed-applications-for-permit-to-modify-apm.

25   Judicial notice is appropriate because APMs are "not subject to reasonable dispute because it . . . can be accurately and readily determined from sources whose

26   accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b); *Ariz. Libertarian Party v. Reagan*, 798 F.3d 723, 727 n.3 (9th Cir. 2015) ("We may take judicial

27   notice of 'official information posted on a governmental website, the accuracy of which [is] undisputed.'") (citation omitted).

28

impact statement.  40 C.F.R. § 1501.3(c);[5] *see also* 43 C.F.R. § 46.205.  Council
on Environmental Quality guidance recognizes that: "Categorical Exclusions are
not exemptions or waivers of NEPA review; they are simply one type of NEPA
review."[6]  Congress amended NEPA in the Fiscal Responsibility Act in June 2023
seeking to streamline a process that has been heavily criticized for unnecessary
paperwork.  There, Congress expressly provided that "[a]n agency is not required
to prepare an environmental document with respect to a proposed agency action if-
(1) the proposed agency action is not a final agency action within the meaning of
[the APA]; [or] the proposed agency action is excluded pursuant to one of the
agency's categorical exclusions."  42 U.S.C. § 4336; *see also* 40 C.F.R.
§§ 1501.3(a)(4), 1501.4(b).

If BSEE determines that a CatEx covers a proposed action, then the agency
evaluates the action for "extraordinary circumstances."  40 C.F.R. § 1501.4(b); 43
C.F.R. § 46.215.  Even if an "extraordinary circumstance" is present, BSEE "may
apply the categorical exclusion if the agency conducts an analysis and determines
that the proposed action does not in fact have the potential to result in significant
effects notwithstanding the extraordinary circumstance, or the agency modifies the
action to avoid the potential to result in significant effects."  40 C.F.R.
§ 1501.4(b)(1); *see also* 43 C.F.R. § 46.215 ("Applicability of extraordinary
circumstances to categorical exclusions is determined by the Responsible
Official").

---

[5] BSEE's decision to approve the APMs postdates amendments to the NEPA
regulations promulgated in May 2024.  Therefore the 2024 regulations apply to
BSEE's 2024 APM decision.  *See* 89 Fed. Reg. 35442, 35577 (May 1, 2024)
(stating effective date of revised regulations is July 1, 2024).

[6] Memorandum for Heads of Federal Departments and Agencies from N. Sutley,
Chair of the Council on Environmental Quality "Establishing, Applying and
Revising Categorical Exclusions under the National Environmental Policy Act"
(Nov. 23, 2010),  https://ceq.doe.gov/docs/ceq-regulations-and-
guidance/NEPA_CE_Guidance_Nov232010.pdf.

1    Here BSEE determined that each APM approval Plaintiffs now seek to

2    challenge was categorically excluded from further NEPA analysis under 516 DM

3    § 15.4(C)(12)—which covers an application for permit to drill (and thus

4    necessarily covers a modification of permit to drill).  Proposed AC ¶¶ 162-170; *see*

5    *also* 40 C.F.R. § 1501.4(b); 43 C.F.R. § 46.215.

6    On October 9, 2024, Sable completed well-reworking operations on existing

7    Well HE-23, approved by BSEE.  Dkt. 39-1, Declaration of Steven P. Rusch in

8    Support of Sable Offshore Corp.'s Response to Federal Defendants' Motion for

9    Voluntary Remand ("Second Rusch Decl.") ¶ 19 & Ex. E (Email from Nathan

10   Sinkula, BSEE, to Lakeisha Douglas, BOEM (Oct. 22, 2024)).  Sable completed

11   additional BSEE-approved well-reworking operations on existing Well HE-28 on

12   December 9, 2024.  *Id.* ¶ 10.

13   **C.    Procedural History**

14   On June 27, 2024, Plaintiffs filed their Complaint challenging solely the

15   2023 Extension.  Dkt. 1.  Sable was granted intervention on December 3, 2024, and

16   has filed an Answer.  Dkts. 18-3, 35.  On December 20, 2024, Federal Defendants

17   filed a Motion for voluntary remand without vacatur.  Dkt. 37.  On January 3,

18   2025—over six months after filing their complaint and in a clear attempt to avoid a

19   voluntary remand—Plaintiffs filed their Motion for Leave to File a First

20   Supplemental and Amended Complaint, which Sable now opposes.  Dkt. 38; see

21   also Dkt 41.

22   **III.   STANDARD OF REVIEW**

23   In evaluating a request for leave to amend or supplement a complaint, courts

24   consider several factors, including "undue delay, bad faith or dilatory motive on

25   the part of the movant, repeated failure to cure deficiencies by amendments

26   previously allowed, undue prejudice to the opposing party by virtue of allowance

27   of the amendment [and] futility of the amendment[.]"  *Foman v. Davis*, 371 U.S.

28

178, 182 (1962).[7]  A court can deny leave to amend or supplement a pleading based solely on the factor of futility of the proposed amendment.  *See, e.g.*, *Novak v. United States*, 795 F.3d 1012, 1020 (9th Cir. 2015); *Bonin v. Calderon*, 59 F.3d 815, 845 (9th Cir. 1995); *Pac. Coast Fed'n of Fishermen's Ass'ns v. Raimondo*, Nos. 1:20-cv-00431, 1:20-cv-00426, 2021 WL 5811885, at *2 (E.D. Cal. Dec. 7, 2021).  A proposed amendment is futile if the new claim could be defeated by a motion to dismiss.  *See, e.g.*, *Pappy's Barber Shops, Inc. v. Farmers Grp., Inc.*, 491 F. Supp. 3d 738, 739 (S.D. Cal. 2020); *California v. Neville Chem. Co.*, 213 F. Supp. 2d 1142, 1144-45 (C.D. Cal. 2002).

## IV.    ARGUMENT

### A.    Plaintiffs' Proposed Third Claim Is Futile

#### 1.    Plaintiffs Have Not Adequately Plead Standing With Respect to Their Request for Vacatur of the APMs

Plaintiffs' request to supplement their Complaint to seek vacatur of the 2024 APMs as a remedy for their proposed Third Claim[8] should be denied because such amendment would be futile due to lack of standing.  Plaintiffs "must demonstrate standing separately for each form of relief sought."  *Duran v. Cal. Dep't of Forestry & Fire Prot.*, No. 23-16155, 2024 WL 3565266, at *1 (9th Cir. July 29, 2024) (quoting *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 185 (2000)).  Among other requirements for standing, a plaintiff must show it is likely the alleged injury will be redressed by a favorable decision.  *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992).

The 2024 APMs authorized only limited perforation activities for two already existing wells.  *See* Proposed AC ¶ 9.  The authorized well re-working

---

[7] The standards for supplementing and amending a complaint are the same.  *See, e.g.*, *Acosta v. Austin Elec. Servs. LLC*, 325 F.R.D. 325, 330 (D. Ariz. 2018).

[8] *See* Proposed AC at Request for Relief ("6. *Vacate and* remand the September 2024 APMs for the Santa Ynez Unit") (emphasis added).

operations at Well HE-23 were completed as of October 9, 2024 and the operations at Well HE-28 were completed as of December 9, 2024—indeed this work was completed *before* Plaintiffs Proposed AC was filed on January 3, 2025.[9]  *See supra* Section II.B; Second Rusch Decl. ¶¶ 10, 19 & Ex. E.  Plaintiffs cannot establish redressability for the proposed remedy of vacatur for the 2024 APMs because vacatur would not result in the completed work being undone.  Accordingly, it would be futile to allow Plaintiffs to amend the Complaint to seek the remedy of vacatur of the 2024 APMs because Plaintiffs would not be able to establish redressability from such vacatur for their alleged injuries, *see* Proposed AC ¶¶ 120-29, even taken as true because the work cannot be undone.  *See, e.g., Rattlesnake Coal. v. U.S. Env't. Prot. Agency*, 509 F.3d 1095, 1103 (9th Cir. 2007) ("The Coalition's injuries cannot be redressed now that the [project] is complete . . . ."); *Navajo Nation v. Dep't of the Interior*, 876 F.3d 1144, 1174 (9th Cir. 2017) (upholding denial of leave to amend because plaintiff did not demonstrate standing with respect to NEPA claims).

2.    <u>Plaintiffs' Proposed Third Cause of Action Is Moot</u>

Plaintiffs' proposed Third Claim is moot in its entirety.  "A case becomes moot—and therefore no longer a 'Case' or 'Controversy' for purposes of Article III—'when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome.'"  *Already, LLC v. Nike, Inc.*, 568 U.S. 85, 91 (2013) (citations omitted).  In determining mootness, a court considers "whether there is a present controversy as to which effective relief can be granted."  *Native Village of Point Hope v. Salazar*, 680 F.3d 1123, 1131 (9th Cir. 2012).

As explained, Sable completed well reworking operations at Well HE-23 as of October 9, 2024 and Sable completed well reworking operations at Well HE-28

---

[9] BSEE approvals of Sable APMs have been publicly available on the Internet since at least October 12, 2024.  Brunton Decl. ¶ 4.

as of December 9, 2024.  *See supra* Section II.B; Second Rusch Decl. ¶ 19 & Ex.
E.  Accordingly, there is no effective relief the Court could order because the
operations are now complete.  Therefore, Plaintiffs' proposed Third Claim is moot.
The completed work unquestionably extends the leases until December 9, 2025,
and Sable plans to begin production well before that time.  Thus, the exception to
mootness where an action is "capable of repetition yet evading review" does not
apply.  *See Native Vill. of Nuiqsut v. Bureau of Land Mgmt.*, 9 F.4th 1201, 1209
(9th Cir. 2021) (citation omitted).[10]

Even if Plaintiffs' proposed Third Claim were not technically moot—which
it is—then the Court should exercise its discretion and find the Third Claim
prudentially moot.  "The central inquiry as to prudential mootness is whether a
court should exercise its discretion by finding a case moot because the Court
cannot grant meaningful relief." *Rainey v. Fed. Deposit Ins. Corp.*, No. CV 10-
05940, 2011 WL 13273076, at \*9 (C.D. Cal. Sept. 28, 2011) (citation omitted); *see
also Deutsche Bank Nat. Trust Co. v. Fed. Deposit Ins. Corp.*, 744 F.3d 1124, 1135
(9th Cir. 2014) (Prudential mootness "permits a court to dismiss [a case] not
technically moot if circumstances [exist]. . . that forestall any occasion for a
meaningful relief[.]").  Courts have recognized prudential mootness for NEPA
claims, including instances where a challenged activity was complete (as is the
case here for the 2024 APMs) so there was no effective relief the court could grant.
*See, e.g.*, *Idaho Rivers United v. U.S. Army Corps of Eng'rs,* No. 14-cv-1800, 2016
WL 498911, at \*9 (W.D. Wash. Feb. 9, 2016); *Stevens v. U.S. Army Corps of
Eng'rs*, No. 2:21-CV-01423, 2024 WL 3106226, at \*5 (W.D. Wash. June 24,
2024); *Sierra Club v. U.S. Army Corps of Eng'rs*, 277 F. App'x 170, 172 (3rd Cir.

---

[10] "[U]nder the 'capable of repetition' prong of the exception to the mootness
doctrine, the plaintiffs have the burden of showing that there is a reasonable
expectation that they will once again be subjected to the challenged activity."
*Native Vill. of Nuiqsut*, 9 F.4th at 1208.

2008) (dismissing NEPA claim as prudentially moot because wetlands had already

been substantially filled); *see also Guan v. Mercedes-Benz USA, LLC*, No. 20-CV-

05719, 2022 WL 17089817, at *5 (N.D. Cal. May 17, 2022) (denying leave to

amend with respect to claim held prudentially moot).

As discussed *supra* Section IV.A.1, the Proposed AC does not seek any

relief the Court could grant that could undo the limited well re-working operations

Sable already performed pursuant to the APMs.  Even if the 2024 APMs were

vacated, that would not change the fact that Sable already completed the

perforation activities on their leases.  Accordingly, Plaintiffs' proposed Third

Claim is moot and amendment is therefore futile.  *See Guan*, 2022 WL 17089817,

at *5; *Oksner v. Blakey*, 347 F. App'x 290, 292-93 (9th Cir. 2009) ("it is clear []

that [claim held moot] could not be saved by any amendment"); *S.C. Coastal

Conservation League v. U.S. Army Corps of Eng'rs*, 789 F.3d 475, 484 (4th Cir.

2015) ("Because the district court's mootness ruling is sound and the League has

offered no additional basis for standing, the district court did not abuse its

discretion in denying, on the ground of futility, the League's motion seeking leave

to amend its First Amended Complaint.").

### B.    Plaintiffs' Proposed Fourth Claim Is Futile

Plaintiffs' request to add their proposed Fourth Claim alleging failure to

supplement NEPA analysis should be denied because such an amendment would

be futile due to failure to adequately plead a claim.  A complaint must contain

sufficient factual matter, accepted as true, to "state a claim to relief that is plausible

on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  But with

respect to Plaintiffs' proposed Fourth Claim, there is a "lack of a cognizable legal

theory" and "the absence of sufficient facts alleged under a cognizable legal

theory." *Conservation Force v. Salazar*, 646 F.3d 1240, 1242 (9th Cir. 2011);

*Cmty. Health Ctr. All. for Patient Access v. Baass*, No. 2:20-CV-02171, 2023 WL

4564798, at *19 (E.D. Cal. July 17, 2023), *aff'd sub nom. Avenal Cmty. Health Ctr. v. Baass*, No. 23-16109, 2024 WL 4441430 (9th Cir. Oct. 8, 2024) ("because the court has concluded that all of plaintiffs' claims [including claims under the APA] fail to allege a cognizable legal theory, it appears clear that granting leave to amend under these circumstances . . . would be futile").

Specifically, Plaintiffs' Fourth Claim is futile because: (1) Plaintiffs have not pled a final agency action under the APA, 5 U.S.C. § 706(2); (2) Plaintiffs have not pled that BSEE had a duty sufficient to "compel agency action unlawfully withheld or unreasonably delayed" under the APA, 5 U.S.C. § 706(1); and (3) Plaintiffs claims under 5 U.S.C. § 706(1) are not ripe.

### 1.    Plaintiffs Have Not Plead Final Agency Action

NEPA does not provide a private right of action, and therefore a court's jurisdiction to hear NEPA claims can only arise under the APA. *Ashley Creek Phosphate Co. v. Norton*, 420 F.3d 934, 939 (9th Cir. 2005). Only "final agency action" can be challenged under 5 U.S.C. § 706(2). *See* 5 U.S.C. § 704; *Hells Canyon Pres. Council v. U.S. Forest Serv.*, 593 F.3d 923, 930 (9th Cir. 2010) ("To bring a claim under 5 U.S.C. § 706(2), plaintiffs must identify a final agency action upon which the claim is based."); *Concerned Citizens & Retired Miners Coal. v. U.S. Forest Serv.*, 279 F. Supp. 3d 898, 910 (D. Ariz. 2017) (Under 5 U.S.C. § 706(2), a "court may set aside *a final agency action* under the [APA] only if the action is 'arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law.'") (emphasis added) (quoting 5 U.S.C. § 706(2)(A)). To constitute a final agency action under the APA, the action must: (a) "mark the 'consummation' of the agency's decision making process and must not be of a merely tentative or interlocutory nature" and (b) be "one by which rights or obligations have been determined," or "from which legal consequences will flow." *Bennett v. Spear*, 520 U.S. 154, 177-78 (1997) (cleaned up); *see also Whitewater*

1  *Draw Nat. Res. Conservation Dist. v. Mayorkas*, 5 F.4th 997, 1008 (9th Cir. 2021)

2  (same).

3        Plaintiffs' allegations in the proposed Fourth Claim under 5 U.S.C.

4  § 706(2)(A), and (D) fail to state a claim because they do not allege any final

5  agency action. *See* Proposed AC ¶ 178. More specifically, Plaintiffs allege that

6  BSEE cannot continue to rely on prior NEPA analyses "to approve oil and gas

7  development and production" without supplementing or preparing new NEPA

8  analysis, and they argue that "BSEE's reliance on outdated NEPA documents in

9  taking such actions" violates NEPA and the APA. *Id.* But these vague references

10  are not "final agency action" that marks the consummation of an agency

11  decision—let alone one from which legal consequences flow or which rights and

12  obligations are determined. *See Bennett*, 520 U.S. at 177-78. Indeed, Plaintiffs'

13  Proposed AC does not even allege that BSEE has stated that it will not conduct any

14  further NEPA analyses. *See id.* ¶¶ 146, 171-78. To the contrary, Plaintiffs allege

15  that "BSEE's permitting of oil and gas activities at the Santa Ynez Unit is ongoing

16  and incomplete; there remains a federal action to occur." Proposed AC ¶ 174.

17        Furthermore, it is axiomatic that Plaintiffs cannot state a cognizable claim

18  under 5 U.S.C. § 706(2) that supplemental environmental review is required under

19  NEPA. *See, e.g., Friends of the Clearwater v. Dombeck*, 222 F.3d 552, 560 (9th

20  Cir. 2000) ("An action to compel an agency to prepare an SEIS [supplemental

21  environmental impact statement], however, is not a challenge to a final agency

22  decision, but rather an action arising under 5 U.S.C. § 706(1), to compel agency

23  action unlawfully withheld or unreasonably delayed.") (cleaned up). Congress

24  could not be clearer: "[a]n agency is not required to prepare an environmental

25  document with respect to a proposed agency action if . . . the proposed agency

26  action is not a final agency action." 42 U.S.C. § 4336(a)(2); *see also* 40 C.F.R.

27  § 1501.3(a)(4). Therefore, it would be futile to permit Plaintiffs to amend their

28

1  Complaint with respect to their Fourth Claim under 5 U.S.C. § 706(2).  *See*
2  Proposed AC ¶ 178.

3             2.    Plaintiffs Have Not Pled a Duty to Supplement Under NEPA

4       In the proposed Fourth Claim Plaintiffs also assert that "BSEE's failure to
5  prepare a supplemental NEPA analysis constitutes agency action that is
6  'unlawfully withheld' and/or 'unreasonably delayed' under the APA.  5 U.S.C.
7  § 706(1)."  *See* Proposed AC ¶ 177.  But "a claim under § 706(1) can proceed only
8  where a plaintiff asserts that an agency failed to take a *discrete* agency action that
9  it is *required to take*."  *Norton v. S. Utah Wilderness All.*, 542 U.S. 55, 64 (2004)
10 (emphasis original).  Plaintiffs have alleged no such duty in the Proposed AC.  As
11 Plaintiffs acknowledge in their Proposed AC (at ¶¶ 62, 173), agencies are only
12 required to supplement NEPA analyses "if a major Federal action is incomplete or
13 ongoing" and other conditions are met.  40 C.F.R. § 1502.9(d)(1).  There is no duty
14 to supplement NEPA analyses unless "*there remains major Federal action to*
15 *occur*, as that term is used in [42 U.S.C.] § 4332(2)(C)."  *Norton*, 542 U.S. at 72-
16 73 (cleaned up) (emphasis added).

17      Plaintiffs vaguely claim that "BSEE's permitting of oil and gas activities at
18 the Santa Ynez Unit is ongoing and incomplete" but they do not identify any
19 specific future action they claim is a major federal action requiring a supplemental
20 NEPA analysis.  Proposed AC ¶¶ 145, 174; *see, e.g., Norton*, 542 U.S. at 73
21 (dismissing failure to supplement claim where "[t]here is no ongoing 'major
22 Federal action' that could require supplementation"); *Env't Prot. Info. Ctr. v. U.S.*
23 *Fish & Wildlife Serv.*, No. C 04-04647, 2005 WL 3021939, at *6 (N.D. Cal. Nov.
24 10, 2005) ("federal agency's [] management activities" did not constitute a "major
25 federal action" in light of already approved conservation plan and take permit).
26 Plaintiffs admit that the Santa Ynez Unit's development and production plan was
27 already evaluated in an environmental impact statement and approved by the
28

CASE NO. 2:24-CV-05459-MWC-MAA
SABLE'S OPPOSITION TO MOTION
FOR LEAVE TO AMEND COMPLAINT

1    agency.  *See* Proposed AC ¶¶ 117, 156.  Plaintiffs fail to recognize that any

2    remaining actions that might trigger NEPA review would be subject to categorical

3    exclusions, and thus additional NEPA review in the form of an environmental

4    assessment or environmental impact statement would not be required.  *See* 40

5    C.F.R. § 1501.3(a).  Thus, Plaintiffs have not and cannot plead that BSEE has a

6    specific duty to prepare a supplemental NEPA analysis, *see Norton*, 542 U.S. at 64,

7    and this claim is futile.

8                    3.    Plaintiffs' Proposed Fourth Claim Is Not Ripe

9         A court will not exercise jurisdiction over claims that are not "ripe" for

10   judicial review.  *See Nat'l Park Hosp. Ass'n v. Dep't of the Interior*, 538 U.S. 803,

11   807-08 (2003).  Evaluating ripeness in the context of a challenge to an agency

12   decision requires considering:  "(1) whether delayed review would cause hardship

13   to the plaintiffs; (2) whether judicial intervention would inappropriately interfere

14   with further administrative action; and (3) whether the courts would benefit from

15   further factual development of the issues presented."  *Ohio Forestry Ass'n, Inc. v.*

16   *Sierra Club*, 523 U.S. 726, 733 (1998).  "A claim is not ripe for adjudication if it

17   rests upon contingent future events that may not occur as anticipated, or indeed

18   may not occur at all."  *Texas v. U.S.*, 523 U.S. 296, 300 (1998) (cleaned up).  All of

19   these factors demonstrate that Plaintiffs' Fourth Claim is not ripe.

20        First, delayed review will not cause hardship because Plaintiffs' Proposed

21   AC does not allege a specific action requiring supplemental NEPA review.  *See*

22   *supra* Sections IV.B.1 & IV.B.2; *see also M. Westland, LLC v. Cal. Dep't of*

23   *Transp.*, No. SACV 19-1661, 2020 WL 1652551, at *8 (C.D. Cal. Feb. 12, 2020)

24   (claim for failure to supplement EIS regarding construction of road was not ripe

25   where the agency had not yet issued the plans that plaintiffs claimed triggered

26   supplemental NEPA review).

27

28

Second, Plaintiffs' Fourth Claim is not fit for review because BSEE is not at an "administrative resting place" and judicial intervention would therefore interfere with further administrative action. *Cent. Delta Water Agency v. U.S. Fish & Wildlife Serv.*, 653 F. Supp. 2d 1066, 1072, 1087-88 (E.D. Cal. 2009) ("ongoing development and preliminary environmental review" regarding conservation plan held not to be "at a resting place," which "weigh[ed] heavily against assertion of jurisdiction over Plaintiffs' NEPA claim"). Rather, the federal government has already moved for voluntary remand to reconsider certain decisions. Dkt. 37. Thus, there is no question the administrative process before the agency is ongoing in some way.

Third, with respect to Plaintiffs' Fourth Claim under 5 U.S.C. § 706(1), the Court would surely benefit from further factual development of the issues presented because it is unclear what agency action Plaintiffs are arguing requires supplemental NEPA review, *see supra* Sections IV.B.1 & IV.B.2. "Whether new information requires [NEPA] supplemental analysis is a classic example of a factual dispute the resolution of which implicates substantial agency expertise." *Tri-Valley CAREs v. U.S. Dep't of Energy*, 671 F.3d 1113, 1130 (9th Cir. 2012) (citation omitted). To Sable's knowledge, BSEE has not yet responded to Plaintiffs' allegations in the Fourth Claim in the ordinary course outside of this litigation and should be given the opportunity to do so.

As such, Plaintiffs' Fourth Claim is not ripe and amendment is thus futile.

## C. Plaintiffs' Undue Delay and the Undue Prejudice to Sable Weigh in Favor of Denying Plaintiffs' Motion

The additional factors of undue delay and undue prejudice to Sable if Plaintiffs' Motion is granted both weigh in favor of denying the Motion. *Foman*, 371 U.S. at 182.

1      Plaintiffs' Fourth Claim challenges the NEPA review for undefined future

2  actions related to return to production.  *E.g.*, Proposed AC ¶¶ 177-78.  But

3  Plaintiffs have known since 2015 that the leaseholder was attempting to return to

4  production, and indeed sought extensions "to resume operations."  *Id.* at 73.  There

5  was no reason Plaintiffs could not have brought their Fourth Claim at least with

6  their initial complaint, if not years earlier.  *E.g., Shenbaum v. City of Manhattan

7  Beach*, 2024 WL 5185384, at *6 (C.D. Cal. Nov. 26, 2024) (finding that undue

8  delay supported denial of motion to amend complaint, noting that "late

9  amendments to assert new theories are not reviewed favorably when the facts and

10  the theory have been known to the party seeking amendment since the inception of

11  the cause of action") (citation omitted).

12      And finally, the granting Plaintiffs' Motion would prejudice Sable, which

13  weighs strongly against granting Plaintiffs' Motion.  *E.g., Ascon Properties, Inc. v.

14  Mobil Oil Co.*, 866 F.2d 1149, 1161 (9th Cir. 1989) (amendment would prejudice

15  defendant "through the time and expense of continued litigation on a new theory").

16  Sable relied on the status of the leases when it purchased the Santa Ynez Unit

17  assets.  Second Rusch Decl. ¶ 15.  And under the Purchase Agreement Sable

18  entered into for the Santa Ynez Unit, if Sable does not successfully return the

19  offshore facilities to production before 2026, Exxon has the right to take over the

20  Santa Ynez Unit assets and rights at no cost.  Second Rusch Decl. ¶ 18.  Sable has

21  valid contract rights, and in reliance on the leases, Sable has obligated close to $1

22  billion associated with the purchase, repair, maintenance, and upgrades of the

23  Santa Ynez Unit assets.  *Id.* ¶ 16.

24      Additionally, in enacting OCLSA, Congress explicitly found that oil and gas

25  development on the "outer Continental Shelf is a vital national resource" "which

26  should be made available for expeditious and orderly development," to support a

27  critical "national need," consistent with OCSLA's statements of policy.  43 U.S.C.

28

1  § 1332(3).  Plaintiffs are attempting to use this lawsuit to undermine the clear

2  Congressional purpose and Sable's contract rights and to prejudice Sable.  Indeed,

3  Plaintiffs make no secret of their "campaign" to end offshore oil and gas.[11]

4  Plaintiffs request should be denied.

5  **V.    CONCLUSION**

6          Sable respectfully requests that this Court deny Plaintiffs' Motion for Leave

7  to Supplement and Amend their Complaint.

8

Dated:  January 17, 2025                    Respectfully submitted,

9                                           LATHAM & WATKINS LLP

10
                                           By: /s/ *Daniel P. Brunton*
11                                             Daniel P. Brunton (Bar No. 218615)
                                               Email: daniel.brunton@lw.com
12                                             12670 High Bluff Drive
                                               San Diego, CA 92130
13                                             Tel.: (858) 523-5400
                                               Fax: (858) 523-5450
14
                                               Benjamin Hanelin (Bar No. 237595)
15                                             Email: benjamin.hanelin@lw.com
                                               355 South Grand Avenue, Suite 100
16                                             Los Angeles, California 90071-1560
                                               Tel.: (213) 485-1234
17                                             Fax: (213) 891-8763

18                                             Janice M. Schneider
                                               (*Pro Hac Vice*)
19                                             Email: janice.schneider@lw.com
                                               Devin M. O'Connor
20                                             (*Pro Hac Vice*)
                                               Email: devin.o'connor@lw.com
21                                             555 Eleventh Street, NW, Suite 1000
                                               Washington, D.C. 20004-1304
22                                             Tel.: (202) 637-2200
                                               Fax: (202) 637-2201

23
                                               *Attorneys for Intervenor-Defendant*
24                                             *Sable Offshore Corp.*

25

26  [11] Center for Biological Diversity, Stopping Offshore Drilling's Assault on Our
    Oceans, available at
27  https://www.biologicaldiversity.org/campaigns/stopping_trumps_assault_on_ca_co
    ast/index.html (last visited Jan. 17, 2024).

28

**CERTIFICATE OF COMPLIANCE**

The undersigned, counsel of record for Intervenor-Defendant Sable Offshore Corp., certifies that this brief contains 5,051 words, which complies with the word limit of L.R. 11-6.1.

Dated:  January 17, 2025                    By: /s/ *Daniel P. Brunton*
                                                    Daniel P. Brunton (Bar No. 218615)