Kristen Monsell (CA Bar No. 304793)
Email: kmonsell@biologicaldiversity.org
Miyoko Sakashita (CA Bar No. 239639)
Email: miyoko@biologicaldiversity.org
Julie Teel Simmonds (CA Bar No. 208282)
Email: jteelsimmonds@biologicaldiversity.org
Center for Biological Diversity
1212 Broadway Suite 800
Oakland, CA 94612
Phone: (510) 844-7137
Facsimile: (510) 844-7150

*Attorneys for Plaintiffs*

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA
# WESTERN DIVISION

| | |
|---|---|
| CENTER FOR BIOLOGICAL DIVERSITY, et al., <br><br> *Plaintiffs*, <br><br> v. <br><br> DEBRA HAALAND, et al., <br><br> *Defendants*, <br><br> SABLE OFFSHORE CORP., <br><br> *Intervenor-Defendant*. | No. 2:24-cv-05459-MWC-MAA <br><br> **PLAINTIFFS' REPLY IN SUPPORT OF THEIR MOTION FOR LEAVE TO FILE FIRST SUPPLEMENTAL AND AMENDED COMPLAINT** <br><br> Date: February 7, 2025 <br> Time: 1:30 p.m. <br> Judge: Hon. Michelle Williams Court <br> Courtroom: 6A |

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................ ii

INTRODUCTION ..............................................................................................1

ARGUMENT ......................................................................................................1

    I.    Plaintiffs Have Adequately Pled Standing for Their Third Claim ...................................................................................3

    II.   Plaintiffs' Third Claim Is Not Moot ........................................6

    III.  Plaintiffs' Fourth Claim Is Not Futile .....................................8

    IV.  Sable Fails to Satisfy Its Burden to Show Undue Delay or Prejudice ...............................................................12

CONCLUSION ................................................................................................12

# TABLE OF AUTHORITIES

**Cases**

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) ...................................................................................... 2

*Cantrell v. City of Long Beach*,
  241 F.3d 674 (9th Cir. 2001) ......................................................................... 6

*Chafin v. Chafin*,
  568 U.S. 165 (2013) ...................................................................................... 6

*Citizens for Clean Energy v. U.S. Dep't of Interior*,
  384 F. Supp. 3d 1264 (D. Mont. 2019) ......................................................... 9

*Cobell v. Norton*,
  240 F.3d 1081 (D.C. Cir. 2001) .................................................................. 11

*Ctr. for Biological Diversity v. U.S. Fish & Wildlife Serv.*,
  807 F.3d 1031 (9th Cir. 2015) ................................................................. 3, 5

*Duran v. Cal. Dep't of Forestry*,
  No. 23-16155, 2024 WL 3565266 (9th Cir. July 29, 2024) ..................... 4, 5

*Envt'l Def. Ctr. v. Bureau of Ocean Energy Mgmt.*,
  36 F.4th 850 (9th Cir. 2022) ......................................................................... 7

*Env'tl Prot. Info. Ctr. v. U.S. Fish & Wildlife Serv.*,
  No. C-04-04647, 2005 WL 3021939 (N.D. Cal. Nov. 10, 2005) .............. 10

*Erickson v. Pardus*,
  551 U.S. 89 (2007) ........................................................................................ 9

*Estate of Gaither ex rel. Gaither v. District of Columbia*,
  272 F.R.D. 248 (D.D.C. 2011) ................................................................... 12

*Forest Guardians v. Johanns*,
  450 F.3d 455 (9th Cir. 2006) ........................................................................ 7

*Fort Sill Apache Tribe v. Nat'l Indian Gaming Comm'n*,
  103 F.Supp.3d 113 (D.D.C. 2015) .............................................................. 11

*Hall v. Norton*,
  266 F.3d 969 (9th Cir. 2001) ...................................................................... 11


*Idaho Rivers United v. U.S. Army Corps of Eng'rs*,
  No. 14-cv-1800, 2016 WL 498911 (W.D. Wash. Feb. 9, 2016)..........8

*In re Vitamins Antitrust Litig.*,
  217 F.R.D. 30 (D.D.C. 2003)..........12

*Keith v. Volpe*,
  858 F.2d 467 (9th Cir. 1988)..........1

*Lee v. Yonja*,
  No. 2:23-cv-10677-MCS-E, 2024 WL 5185315 (C.D. Cal. Dec. 17, 2024).........2

*Marsh v. Or. Nat. Res. Council*,
  490 U.S. 360 (1989)..........9

*Meese v. Keene*,
  481 U.S. 465 (1987)..........3

*Miller v. Rykoff-Sexton, Inc.*,
  845 F.2d 209 (9th Cir. 1988)..........1

*Nat'l Wildlife Fed'n v. Johanns*,
  No. C04-2169Z, 2005 WL 1189583 (W.D. Wash. May 19, 2005)..........11

*Navajo Nation v. Dep't of the Interior*,
  876 F.3d 1144 (9th Cir. 2017)..........6

*Neighbors of Cuddy Mtn. v. Alexander*,
  303 F.3d 1059 (9th Cir. 2002)..........6, 7

*Norton v. So. Utah Wilderness All.*,
  542 U.S. 55 (2004)..........8, 10

*Ocean Advocates v. U.S. Army Corps of Eng'rs*,
  402 F.3d 846 (9th Cir. 2005)..........4

*Ohio Forestry Ass'n, Inc. v. Sierra Club*,
  523 U.S. 726 (1998)..........11

*Or. Nat. Desert Ass'n v. U.S. Forest Serv.*,
  465 F.3d 977 (9th Cir. 2006)..........11

*Rattlesnake Coal. v. EPA*,
  509 F.3d 1095 (9th Cir. 2007)..........5

*Robert Bosch Healthcare Sys., Inc. v. Express MD Solutions, LLC*,
  No. C-12-00068 JW, 2012 WL 12920766 (N.D. Cal. May 10, 2012)..........2

*Rosenberg Bros. & Co. v. Arnold*,
   283 F.2d 406 (9th Cir. 1960) ..................................................................................1

*Ryan v. Foster & Marshall, Inc.*,
   556 F.2d 460 (9th Cir. 1977) ................................................................................11

*S.C. Coastal Conservation League v. U.S. Army Corps of Eng'rs*,
   789 F.3d 475 (4th Cir. 2015) ..................................................................................8

*Sierra Club v. U.S. Army Corps of Eng'rs*,
   277 F. App'x 170 (3rd Cir 2008) ...........................................................................7

*Stevens v. U.S. Army Corps of Eng'rs*,
   No. 2:21-CV-01423, 2024 WL 3106226 (W.D. Wash. June 24, 2024) ................8

*Tri-Valley CAREs v. U.S. Dep't of Energy*,
   671 F.3d 1113 (9th Cir. 2012) ..............................................................................11

*Vietnam Veterans of Am. v. CIA*,
   811 F.3d 1068 (9th Cir. 2016) ................................................................................9

*Weber v. Dep't of Veterans Affairs*,
   521 F.3d 1061 (9th Cir. 2008) ................................................................................2

*West v. Sec'y of Dep't of Transp.*,
   206 F.3d 920 (9th Cir. 2000) ..................................................................................7

*WildEarth Guardians v. U.S. Dep't of Agric.*,
   795 F.3d 1148 (9th Cir. 2015) ...........................................................................3, 4

**Statutes**

5 U.S.C. § 706(1) ..........................................................................................................8

5 U.S.C. § 706(2) ........................................................................................................11

**Regulations**

30 C.F.R. § 250.172(b)–(d) ...........................................................................................5

30 C.F.R. § 250.410 ......................................................................................................5

30 C.F.R. § 250.465 ......................................................................................................5

# INTRODUCTION

Plaintiffs have sought leave to file a first supplemental and amended complaint to add two claims against Federal Defendants the Bureau of Safety and Environmental Enforcement, et al. (collectively, BSEE), related to BSEE's recent rubber-stamping of yet more oil and gas activity at the Santa Ynez Unit. *See* Mot. to Supp. and Amend, ECF No. 38. Intervenor-Defendant Sable Offshore Corp. (Sable)—and not BSEE—opposes Plaintiffs' routine procedural request. Sable Opp'n, ECF No. 43.

Sable's opposition is unfounded. Its objections regarding the alleged futility of Plaintiffs' new claims mischaracterize the relevant legal tests. And Sable fails to demonstrate any prejudice from the addition of Plaintiffs' claims. In short, none of Sable's protests overcome the direction from both the Federal Rules and Ninth Circuit that supplemental and amended complaints should generally be allowed as a matter of course. The Court should grant Plaintiffs' Motion.

# ARGUMENT

Sable provides no valid reason why the Court should deny Plaintiffs' Motion. *See Keith v. Volpe*, 858 F.2d 467, 473–74 (9th Cir. 1988) (discussing how Federal Rule of Civil Procedure 15(d) "is a tool of judicial economy and convenience" and that "[i]ts use is therefore favored"); *Rosenberg Bros. & Co. v. Arnold*, 283 F.2d 406, 406 (9th Cir. 1960) (noting "the extreme liberality generally in favoring amendments to pleadings under the Federal Rules of Civil Procedure").

Sable bases its opposition to Plaintiffs' Motion primarily on its mistaken belief that the proposed new claims are futile. But "a proposed amendment is futile only if no set of facts can be proved under the amendment to the pleadings that would constitute a valid and sufficient claim or defense." *Miller v. Rykoff-Sexton, Inc.*, 845 F.2d 209, 214 (9th Cir. 1988). As such, "[d]enial of leave to amend on [the ground of futility] is rare." *Robert Bosch Healthcare Sys., Inc. v. Express MD Solutions, LLC*, No. C-12-00068 JW, 2012 WL 12920766, at *2 (N.D. Cal. May

10, 2012) (citation omitted) (second alteration in original). "If it is 'not clear that amendment of [a] complaint would be futile[,]' a district court should permit a party to amend its complaint rather than deny leave to amend on the ground of futility." *Id.* (citation omitted) (first alteration in original); *see also Lee v. Yonja*, No. 2:23-cv-10677-MCS-E, 2024 WL 5185315, at *2 (C.D. Cal. Dec. 17, 2024) (explaining that "[o]rdinarily, courts will defer consideration of challenges to the merits of a proposed amended pleading until after leave to amend is granted and the amended pleading is filed" (citation omitted)).[1]

      Here, however, it is clear that amendment would *not* be futile. Sable's contrary position misapprehends the relevant legal standards. Application of the correct tests shows that (1) Plaintiffs have standing for their proposed third claim because a favorable decision would redress Plaintiffs' injuries; (2) Plaintiffs' proposed third claim is not moot because effective relief remains available; and (3) Plaintiffs' fourth claim properly alleges a failure to act that is ripe for review.

      Sable also incorrectly asserts that Plaintiffs delayed filing their proposed fourth claim and makes vague statements about prejudice by irrelevantly pointing to its decision to acquire the Santa Ynez Unit from ExxonMobil and the terms of that agreement. The pertinent question is not whether Sable's economic interests would be harmed if Plaintiffs ultimately obtain the relief they seek, but whether allowing the amendments would unduly prejudice Sable by preventing or otherwise impeding it from mounting an effective defense in this litigation. Granting Plaintiffs' Motion—which Plaintiffs filed within the Court's deadline for any amendments of the pleadings—would do no such thing. Indeed, Sable fails to even suggest as much in its opposition.

---

[1] "[A] complaint need not contain detailed factual allegations." *Weber v. Dep't of Veterans Affairs*, 521 F.3d 1061, 1065 (9th Cir. 2008). Rather, a complaint need only plead "enough facts to state a claim to relief that is plausible on its face." *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

## I. Plaintiffs Have Adequately Pled Standing for Their Third Claim

Plaintiffs' proposed third claim for relief challenges BSEE's issuance of two permits (known as Applications for Permits to Modify or APMs) to enhance oil and gas production at the Santa Ynez Unit—and thereby facilitate a restart of this long-dormant drilling operation—without complying with the National Environmental Policy Act (NEPA). Prop. Am. Compl. ¶¶ 162–70, ECF No. 38-1. To demonstrate standing for this claim, Plaintiffs must show that their members have (1) "an injury-in-fact" that is (2) "fairly traceable" to BSEE's actions and (3) "likely to be redressed by a favorable court decision." *Ctr. for Biological Diversity v. U.S. Fish & Wildlife Serv.*, 807 F.3d 1031, 1043 (9th Cir. 2015). Plaintiffs have adequately pled each of these elements. *See* Prop. Am. Compl. ¶¶ 19–33.

Sable does not dispute that Plaintiffs have sufficiently alleged injury-in-fact or causation. *See* Sable Opp'n 8–9. Rather, Sable erroneously asserts that Plaintiffs cannot establish redressability because Sable has already completed the work under the permits, and, thus, vacating the permits will not redress Plaintiffs' injuries from their issuance. *See* Sable Opp'n 8–9. This myopic view is not the correct application of the redressability analysis. "The relevant inquiry is instead whether a favorable *ruling* could redress the challenged cause of the injury." *WildEarth Guardians v. U.S. Dep't of Agric.*, 795 F.3d 1148, 1157 (9th Cir. 2015) (emphasis added). And it is axiomatic that partial relief qualifies as redress for standing purposes. *Meese v. Keene*, 481 U.S. 465, 476–77 (1987). Moreover, in cases alleging a procedural violation, such as the failure to comply with NEPA, "the causation and redressability requirements are relaxed." *WildEarth Guardians*, 795 F.3d at 1154 (citation omitted). "Plaintiffs alleging procedural injury must show only that they have a procedural right that, if exercised, *could* protect their concrete interests." *Id.* (citation omitted).

Plaintiffs have demonstrated as much here. Plaintiffs have alleged that BSEE's issuance of the APMs without complying with NEPA harms Plaintiffs'

1  members' recreational, aesthetic, and cultural interests in the Santa Barbara
2  Channel. *See, e.g.*, Prop. Am. Compl. ¶¶ 21–23, 28–33. To redress these injuries,
3  Plaintiffs have not only asked for vacatur of the APMs, but also for (1) a
4  declaration that BSEE's issuance of these permits in reliance on a categorical
5  exclusion to evade environmental review violates NEPA; (2) an order that BSEE
6  complete additional NEPA analysis; and (3) an order prohibiting BSEE from
7  approving any additional oil and gas activity at the Santa Ynez Unit unless and
8  until it completes that analysis. *See id*. at pp. 48–49 (Request for Relief).

Granting this relief would redress Plaintiffs' injuries. BSEE's completion of a NEPA analysis on the environmental impacts of a restart of production "*could* influence" BSEE's decisions regarding oil and gas activity at the Santa Ynez Unit. *WildEarth Guardians*, 795 F.3d at 1156. BSEE could, for example, require enhanced monitoring to detect oil spills or methane leaks, develop and adopt an alternative to permitting a restart, or require Sable to cease production within a certain timeframe. *See Ocean Advocates v. U.S. Army Corps of Eng'rs*, 402 F.3d 846, 860–61, 871 (9th Cir. 2005) (finding redressability where construction of a project was completed because, if the agency conducted a NEPA analysis, "the [agency's] decision could be influenced by the environmental considerations that NEPA requires an agency to study," such as by "impos[ing] restrictions on the [project's] operation" to mitigate its environmental harms (citation omitted)). Nothing more is required to demonstrate redressability.

None of the cases on which Sable relies dictate otherwise. In *Duran v. California Department of Forestry*—a case that did not involve a procedural injury—the plaintiffs challenged a "testing policy adopted by the [defendants] during the height of the COVID-19 pandemic," a policy that ended before the plaintiffs filed their case. No. 23-16155, 2024 WL 3565266, at *1 (9th Cir. July 29, 2024). The court held that the plaintiffs failed to demonstrate redressability for their second claim for relief because it sought an injunction mandating that the

defendants "try to get Color, a COVID-19 testing service that [was] not a party to th[e] case, to take various actions," even though Color had no duty to abide by an injunction directed at the defendants and the plaintiffs did not put forth any evidence that the defendants could "force Color to do anything." *Id.* Here, in contrast, Sable can only undertake oil and gas activities at the Santa Ynez Unit because of permission it has received from BSEE, and it is BSEE's behavior that Plaintiffs seek to alter. *See Ctr. for Biological Diversity*, 807 F.3d at 1044 (finding injury redressable where the agency could impose more stringent mitigation measures to guide third-party behavior following compliance with legally required procedure).

And in *Rattlesnake Coalition v. EPA*, the court held that the plaintiffs' NEPA claims were not redressable where EPA had dispersed a grant to a city, the city had spent the entirety of the grant, and there was no ongoing federal involvement in the project. 509 F.3d 1095, 1102–03 (9th Cir. 2007). The court based its findings on the "intrinsically" local nature of the project at issue and the fact that, for NEPA to apply to such projects, the federal government "must maintain decisionmaking authority over the local plan." *Id.* at 1102. Because "the federal funds [had been] expended" and EPA did not maintain any control over the project, there was no way for EPA to mitigate any of the harm caused by the project following a more in-depth NEPA analysis. *Id.* at 1102–03. Here, in contrast, BSEE permits oil and gas drilling at the Santa Ynez Unit, and it has ongoing authority over activities. *See, e.g.*, 30 C.F.R. §§ 250.410, 250.465 (requiring approval of permits to drill a well or to modify an existing permit), 250.172(b)–(d) (allowing BSEE to order a suspension of oil and gas operations when necessary to protect "the marine, coastal, or human environment" from "a threat of serious, irreparable, or

immediate harm or damage;" to install "environmental protection equipment;" or "[w]hen necessary to carry out the requirements of NEPA").[2]

## II. Plaintiffs' Third Claim Is Not Moot

For similar reasons, Plaintiffs' proposed third claim for relief is not moot. "[D]efendants in NEPA cases face a particularly heavy burden in establishing mootness." *Cantrell v. City of Long Beach*, 241 F.3d 674, 678 (9th Cir. 2001). A claim "becomes moot only when it is impossible for a court to grant any effectual relief whatever to the prevailing party." *Chafin v. Chafin*, 568 U.S. 165, 172 (2013) (citation omitted). "As long as the parties have a concrete interest, however small, in the outcome of the litigation, the case is not moot." *Id.* (citation omitted). As such, "completion of activity is not the hallmark of mootness." *Neighbors of Cuddy Mtn. v. Alexander*, 303 F.3d 1059, 1065 (9th Cir. 2002).

Here, while Sable states that it has completed the well perforations permitted by the APMs, Sable Opp'n 9–10, it has not completed its oil and gas activities at the Santa Ynez Unit. And Plaintiffs' injuries are not confined to the act of Sable's perforating of wells; they also include injuries from restarting and prolonged oil and gas production at the Unit. Several forms of effective relief to remedy these injuries remain. For example, "if required to undertake additional environmental review, … [BSEE] could consider alternatives to" allowing Sable to restart production at the Santa Ynez Unit or "develop ways to mitigate" environmental harm in the event a restart occurs. *Cantrell*, 241 F.3d at 678–79; *see also West v.*

---

[2] *Navajo Nation v. Department of the Interior* is also inapposite. 876 F.3d 1144 (9th Cir. 2017). In that case, the plaintiff sought post-judgment "relief under Federal Rule of Civil Procedure 60(b)(6), seeking to re-open the proceedings so that it could amend its pleadings"—a much higher standard than "the 'freely give[n]' dispensation to amend in Rule 15." *Id.* at 1173 (citation omitted) (alteration in original). The court denied the plaintiff's request after the plaintiff previously amended its complaint twice, "had ample opportunity at those junctures to address the deficiencies in its pleadings," and failed to explain "how it would amend its pleading to overcome its standing problems." *Id.* at 1174.

*Sec'y of Dep't of Transp.*, 206 F.3d 920, 925–26 (9th Cir. 2000) (holding NEPA challenge to an approval of a two-stage highway interchange project was not mooted by completion of the first phase because the court's "remedial powers would include remanding for additional environmental review and, conceivably, ordering the interchange closed or taken down."); *Neighbors of Cuddy Mtn.*, 303 F.3d at 1065–66 (similar). Moreover, a declaration that BSEE's actions violated NEPA would also be effective relief given the ongoing nature of the project and the agency's history of violating NEPA in approving oil and gas activity at the Santa Ynez Unit. *See Forest Guardians v. Johanns*, 450 F.3d 455, 462–63 (9th Cir. 2006) (holding declaratory relief effective where it "could help … ensure that similar violations would not occur in the future"); *see also Envt'l Def. Ctr. v. Bureau of Ocean Energy Mgmt.*, 36 F.4th 850, 863–64 (9th Cir. 2022) (holding BSEE violated NEPA and other laws in approving well stimulation treatments at all active oil and gas leases off California). Plaintiffs' proposed third claim is therefore not constitutionally moot.

      The Court should also decline Sable's invitation to find this claim prudentially moot. The cases on which Sable relies are inapposite. For example, in *Sierra Club v. U.S. Army Corps of Engineers*, which involved a challenge to a permit allowing the dredging and filling of 7.69 acres of wetlands, the underlying permit required "the preservation and enhancement of over 600-acres of wetlands to mitigate the loss." 277 F. App'x 170, 172, 173, n.3 (3rd Cir 2008). The plaintiffs had not requested "further mitigation" or "that the existing structure be removed," but instead wanted "the 7.69 acres … [to] be preserved." *Id*. Because the wetlands could not be preserved once filled, the court held the nearly complete filling of the wetlands mooted the plaintiffs' case. *Id.* at 172–73.

      Similarly, *in South Carolina Coastal Conservation League v. U.S. Army Corps of Engineers*, the court held the plaintiffs' case moot because the harm the plaintiffs sought to prevent—the intrusion of brackish water into freshwater

impoundments—had already occurred and the project at issue would not make that water any more saline. 789 F.3d 475, 483–84 (4th Cir. 2015).

And in *Stevens v. U.S. Army Corps of Engineers*, the court ruled that the plaintiff's case was moot where the plaintiff failed to demonstrate any ongoing harm to its interests from a completed wetland filling that the agency could mitigate, especially where the project operator had also completed "extensive mitigation efforts." No. 2:21-CV-01423, 2024 WL 3106226, at *1, 3, 5 (W.D. Wash. June 24, 2024); *see also Idaho Rivers United v. U.S. Army Corps of Eng'rs*, No. 14-cv-1800, 2016 WL 498911, at *9 (W.D. Wash. Feb. 9, 2016) (similar). Here, in contrast, oil and gas production at the Santa Ynez Unit is not complete and BSEE has not even analyzed the environmental harms from restarting production, let alone required any mitigation.

### III. Plaintiffs' Fourth Claim Is Not Futile

Plaintiffs' proposed fourth claim for relief is also not futile. This claim challenges BSEE's failure to supplement decades-old NEPA analyses completed in the 1970s and 80s on oil and gas production at the Santa Ynez Unit. Prop. Am. Compl. ¶¶ 171–78. Specifically, Plaintiffs' proposed fourth claim alleges that BSEE's failure to supplement these old NEPA analyses constitutes an agency action unlawfully withheld or unreasonably delayed under the Administrative Procedure Act (APA), 5 U.S.C. § 706(1).

Sable states that a claim seeking to compel a supplemental NEPA analysis should be pled as a failure to act under section 706(1) of the APA, Sable Opp'n 13, and concedes that a court may compel an agency to act under this provision when the agency has "failed to take a *discrete* agency action that it is *required to take*," *id.* at 14 (quoting *Norton v. So. Utah Wilderness All.*, 542 U.S. 55, 64 (2004) (*SUWA*)). Both prongs of this test are satisfied here.

First, Plaintiffs have pled a discrete action—the preparation of a supplemental NEPA analysis. *See, e.g., Citizens for Clean Energy v. U.S. Dep't of*

*Interior*, 384 F. Supp. 3d 1264, 1281 (D. Mont. 2019) ("[T]he NEPA process proves to be a 'discrete agency action'…." (citation omitted)); *see also Vietnam Veterans of Am. v. CIA*, 811 F.3d 1068, 1076, 1078–79 (9th Cir. 2016) (holding Army's ongoing "duty to warn" research volunteers about the risks of their participation constituted a discrete action under section 706(1) of the APA and *SUWA*).

Second, Plaintiffs have adequately alleged a legally required duty. The Supreme Court has held that supplemental NEPA is required when "there remains 'major Federal actio[n]' to occur" and "new information is sufficient to show that the remaining action will 'affec[t] the quality of the human environment' in a significant manner or to a significant extent not already considered." *Marsh v. Or. Nat. Res. Council*, 490 U.S. 360, 374 (1989) (citation omitted).

Plaintiffs' proposed complaint alleges a multitude of new information and changed circumstances revealing significant environmental effects from oil and gas production at the Santa Ynez Unit not previously considered. This includes, for example, new information regarding (1) a worst-case oil spill from the Santa Ynez Unit, (2) the risks of relying on aging infrastructure, (3) the toxic air pollution caused by oil and gas production at the Unit, and (4) climate change impacts from oil and gas activities. *See, e.g.*, Prop. Am. Compl. ¶¶ 135, 137, 142, 143.

Plaintiffs' proposed complaint also alleges that a major federal action is ongoing and incomplete because Sable "plans to restart oil and gas production at the Santa Ynez Unit in 2025; BSEE has issued permits that facilitate such a restart; and BSEE will continue to issue approvals for oil and gas operations at the Santa Ynez Unit." *Id.* ¶ 145; *contra* Sable Opp'n 14–15. Plaintiffs are not required to plead more specific examples. *See Erickson v. Pardus*, 551 U.S. 89, 93 (2007). Rather, the complaint "need only give the defendant fair notice of what the … claim is and the grounds upon which it rests." *Id.* (cleaned up) (citation omitted). That is precisely what Plaintiffs' proposed complaint does.

This case is therefore unlike those in which courts found an ongoing major federal action lacking. *See* Sable Opp'n 14 (citing cases). In *SUWA*, for example, while the Court recognized that "in certain circumstances an [environmental impact statement] must be supplemented," it held that the situation presented in that case did not qualify because the federal government's only ongoing action was monitoring off-road vehicle use for compliance with a previously issued land use plan. 542 U.S. at 72–73. Similarly, in *Environmental Protection Information Center v. U.S. Fish and Wildlife Service*, the court found that there was no ongoing or incomplete major federal action where the agency had previously issued a conservation plan, and its only remaining involvement was to monitor an activity for compliance with that plan and take adaptive management measures if necessary. No. C-04-04647, 2005 WL 3021939, at *6 (N.D. Cal. Nov. 10, 2005) (*EPIC*). Both decisions were also based on policy considerations—namely, that if monitoring and adaptive management could constitute ongoing major federal actions, then agencies would be incentivized to abandon these types of requirements in issuing their decisions to avoid triggering supplemental NEPA obligations. *See id.*; *SUWA*, 542 U.S. at 71–72.

Here, in contrast, Plaintiffs' allegations regarding an ongoing or incomplete major federal action are not tied to agency monitoring but to BSEE's permitting of additional oil and gas activity at the Santa Ynez Unit. Moreover, the policy concerns expressed in *SUWA* and *EPIC* are absent. It is the permitting of the restart of oil and gas production following a massive oil spill without adequately examining the harms that would constitute a "detriment [to] sound environmental management." *EPIC*, 2005 WL 3021939, at *6 (citing *SUWA*, 542 U.S. at 71–72).

Sable's assertion that Plaintiffs' claim is not ripe also fails. *See* Sable Opp'n 15–16. A failure to act claim is ripe once "a plaintiff asserts that an agency failed to take a discrete agency action that it is required to take," which Plaintiffs have done here. *See SUWA*, 542 U.S. at 64 (emphasis omitted); *see also Nat'l Wildlife Fed'n*

*v. Johanns*, No. C04-2169Z, 2005 WL 1189583, at *10 (W.D. Wash. May 19, 2005) (obligation to allege discrete, legally required action is a "variant on the ripeness doctrine"). Any other approach would allow agencies to "effectively prevent judicial review … by simply refusing to take agency action." *Cobell v. Norton*, 240 F.3d 1081, 1095 (D.C. Cir. 2001); *see also Fort Sill Apache Tribe v. Nat'l Indian Gaming Comm'n*, 103 F.Supp.3d 113, 119 (D.D.C. 2015) ("For actions involving delay of an administrative action, the lack of a final order by the agency, which might otherwise engender a question about ripeness, does not preclude [a] court's jurisdiction." (cleaned up) (citation omitted)).[3]

Plaintiffs' fourth claim also alleges arbitrary agency decisionmaking—a violation of section 706(2) of the APA. 5 U.S.C. § 706(2). *See* Prop. Am. Compl. ¶ 178. It is well-accepted that "a pleader can assert alternative claims even if the claims are inconsistent." *Ryan v. Foster & Marshall, Inc.*, 556 F.2d 460, 463 (9th Cir. 1977). Plaintiffs' alternative 706(2) claim is based on BSEE's determination in issuing the APMs that the existing 1984 environmental impact statement on oil and gas production at the Santa Ynez Unit adequately analyzes the impacts of the permits. Such a determination satisfies the test for final agency action: it "amounts to a definitive statement of the agency's position" and allows the activity permitted under the APMs to proceed without further NEPA review. *See Or. Nat. Desert Ass'n v. U.S. Forest Serv.*, 465 F.3d 977, 982, 984–85 (9th Cir. 2006) (citation omitted). Indeed, the Ninth Circuit has expressly held that an agency's "decision not to prepare an [environmental impact statement] is a final agency action." *Hall v. Norton*, 266 F.3d 969, 975, n.5 (9th Cir. 2001); *see also Ohio Forestry Ass'n, Inc. v. Sierra Club*, 523 U.S. 726, 737 (1998) (holding that a plaintiff challenging a

---

[3] Sable's reliance on *Tri-Valley CAREs v. U.S. Department of Energy* is misplaced. Sable Opp'n 16. That case involved a decision on the merits of the supplementation claim at issue, not whether the court had jurisdiction to hear the claim in the first instance. *Tri-Valley CAREs*, 671 F.3d 1113, 1130 (9th Cir. 2012).

failure to comply with NEPA's procedural requirements "may complain of that failure at the time the failure takes place, for the claim can never get riper").

### IV. Sable Fails to Satisfy Its Burden to Show Undue Delay or Prejudice

Sable's claims of delay and prejudice are baseless. *See* Sable Opp'n 16–17. Plaintiffs did not unduly delay seeking to bring their fourth claim—they sought to supplement and amend their complaint only six months after initiating this lawsuit, within three weeks after receiving documents related to BSEE's issuance of the APMs, and within the Court's deadline for amendments of pleadings. *See* Mot. to Supp. and Amend 6. And while Plaintiffs could have brought the fourth claim in their original complaint, "the mere passage of time does not preclude amendment—the delay must result in some prejudice to the judicial system or the opposing party." *Estate of Gaither ex rel. Gaither v. District of Columbia*, 272 F.R.D. 248, 252 (D.D.C. 2011).

Sable has failed to show how it would be prejudiced by the new claims. While it suggests economic harm, Sable Opp'n 17, such injuries will only materialize if Plaintiffs ultimately prevail in this case and receive all relief they seek; these hypothetical harms have no bearing on the instant Motion. Rather, Sable "must show that it was unfairly disadvantaged or deprived of the opportunity to present facts or evidence which it would have offered had the amendments been timely." *In re Vitamins Antitrust Litig.*, 217 F.R.D. 30, 32 (D.D.C. 2003) (citation omitted); *see also id.* ("In essence, to show prejudice, the non-movant must show unfairness in procedure or timing preventing the non-movant from properly responding."). Sable has not even attempted to make such a showing.

### CONCLUSION

The Court should grant Plaintiffs' Motion.

1 | Respectfully submitted this 24th day of January, 2025,

/s/ *Kristen Monsell*

Kristen Monsell (CA Bar No. 304793)
Email: kmonsell@biologicaldiversity.org
Miyoko Sakashita (CA Bar No. 239639)
Email: miyoko@biologicaldiversity.org
Julie Teel Simmonds (CA Bar No. 208282)
Email: jteelsimmonds@biologicaldiversity.org
CENTER FOR BIOLOGICAL DIVERSITY
1212 Broadway, Suite 800
Oakland, CA 94612
Phone: (510) 844-7137
Fax: (510) 844-7150

*Attorneys for Plaintiffs*