UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

Case No.   LA CV24-05459-MWC (MAAx)                             Date: January 29, 2025

Title   Center for Biological Diversity *et al.* v. Debra Haaland *et al.*

Present: The Honorable:   Michelle Williams Court, United States District Judge

| T. Jackson | No Reporter |
|---|---|
| Deputy Clerk | Court Reporter / Recorder |

Attorneys Present for Plaintiffs: N/A          Attorneys Present for Defendants: N/A

**Proceedings: (IN CHAMBERS) The Court GRANTS Plaintiff's motion for leave to file first supplemental and amended complaint (Dkt. # 38)**

Before the Court is a motion for leave to file first supplemental and amended complaint filed by Plaintiffs Center for Biological Diversity and Wishtoyo Foundation (collectively, "Plaintiffs"). Dkt. # 38 ("*Mot.*"). Defendants Debra Haaland, Bureau of Safety and Environmental Enforcement, and Bruce Hesson (collectively, "BSEE") did not oppose. However, Intervenor-Defendant Sable Offshore Corp. ("Sable") did oppose. Dkt. # 43 ("*Opp.*"). Plaintiffs replied. Dkt. # 44 ("*Reply*"). The Court finds the matter appropriate for decision without oral argument. *See* Fed. R. Civ. P. 78; L.R. 7-15. Having considered the moving and opposing papers, the Court **GRANTS** Plaintiff's motion for leave to file first supplemental and amended complaint.

I.     Background

This environmental litigation stems from a 2015 oil spill involving an onshore pipeline that transported oil produced in the Santa Ynez Unit (located in the Santa Barbara Channel). Dkt. # 1 ("*Compl.*"), ¶ 2. Since the spill, the federal government, through BSEE, has authorized extensions of 16 offshore oil and gas leases in the Santa Ynez Unit. *Id.* ¶ 3. Plaintiffs allege that in extending these oil and gas leases, BSEE failed to conduct meaningful reviews as required by law. *Id.* ¶ 1. Specifically, in a complaint filed on June 27, 2024, Plaintiffs sued BSEE for failing to comply with the Outer Continental Shelf Lands Act (OCSLA), 43 U.S.C. §§ 1331–1356c, 1801–1866, the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

Case No.  LA CV24-05459-MWC (MAAx)                          Date: January 29, 2025

Title   Center for Biological Diversity *et al.* v. Debra Haaland *et al.*

National Environmental Policy Act (NEPA), 42 U.S.C. §§ 4321–4347, and the Administrative Procedure Act (APA), 5 U.S.C. §§ 551–559, 701–706.  *See generally id.*

Plaintiffs are two non-profit groups—a conservation organization focused on marine ecosystems that "seeks to ensure [] imperiled species such as marine mammals, sea turtles, and fish are properly protected," and a Native-led California public-interest organization with a mission "to preserve, protect, and restore Chumash culture, the culture of indigenous peoples, and the environment all people depend upon." *Id.* ¶¶ 13–17.  As pleaded by Plaintiffs, BSEE includes Debra Haaland (the [former] Secretary of the United States Department of the Interior), the Bureau of Safety and Environmental Enforcement (a federal agency within the Department of the Interior charged with permitting drilling in federal waters and ensuring such activities comply with regulations), and Bruce Hesson (the Regional Director of the Bureau of Safety and Environmental Enforcement).  *Id.* ¶¶ 27–29.  Sable, the Intervenor-Defendant, is the owner and operator of the relevant oil and gas platforms and the acquirer of the oil and gas permits at issue.  *Id.* ¶ 57; *Mot.* 2:4–13.

In their initial complaint, Plaintiffs brought two claims for relief:  (1) violation of OCSLA and the APA for unlawful national interest determination, and (2) violation of NEPA and the APA for unlawful use of categorical exclusion.  *Compl.* ¶¶ 90–103.

However, after Plaintiffs filed this lawsuit, Sable received two additional permits from BSEE in September 2024, both of which will facilitate the resumption of oil and gas production at the Santa Ynez Unit.  *Mot.* 2:11–13; Dkt. # 38-3, Ex. 1 ("*Permits*") (permits dated September 25, 2024).  The new permits allow Sable to perforate two wells, for the primary purpose of enhancing production.  *Mot.* 2:13–14.  Plaintiffs allege that BSEE approved the permits within four business days of receiving the requests and failed to examine the environmental impacts of the permits under NEPA.  *Id.* 2:15–16.  Instead, BSEE allegedly "relied on a categorical exclusion that is ill-suited to the unique situation of issuing permits that facilitate the restart of oil and gas drilling platforms that have been dormant for nearly a decade after a major onshore pipeline rupture and spill." *Id.* 2:17–21 (citations omitted).  Plaintiffs also assert that BSEE "cannot continue to rely on" decades-old environmental impact statements ("EIS") to approve oil and gas development, without supplementing the existing NEPA analyses or preparing new NEPA analyses taking into account recent developments and information.  Dkt. # 38-1 ("*Redlined FAC*"), ¶¶ 173–78.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.   LA CV24-05459-MWC (MAAx)                                   Date: January 29, 2025

Title   Center for Biological Diversity *et al.* v. Debra Haaland *et al.*

      Thus, on January 3, 2025, Plaintiffs filed this motion seeking to amend their Complaint to encompass BSEE's approval of Sable's Applications for Permits to Modify ("APMs"). *Mot.* 2:22–23. Plaintiffs propose adding a third cause of action for violation of NEPA and the APA for unlawful reliance on categorical exclusion to approve applications for permits to modify. *Redlined FAC* ¶¶ 162–70. And Plaintiffs propose adding a fourth cause of action for violation of NEPA and the APA for failure to supplement environmental analysis. *Id.* ¶¶ 171–80.

      Plaintiffs also seek to add the following forms of relief: (1) Declare that BSEE's September 2024 approval of the APMs for the Santa Ynez Unit violates NEPA, its implementing regulations, and the APA; (2) Declare that BSEE's failure to supplement the 1975 Santa Barbara Channel EIS and the 1984 Santa Ynez Unit EIS, and its continued reliance on these EISs violates NEPA, its implementing regulations, and the APA; (3) vacate and remand the September 2024 APMs for the Santa Ynez Unit; (4) Order BSEE to complete the required NEPA analysis by a date certain; and (5) prohibit BSEE from authorizing APMs for development and production, or any other restart authorizations for the Santa Ynez Unit unless and until it complies with OCSLA, NEPA, and the APA. *Id.* 48:14–49:10.

      Plaintiffs have not previously sought leave to amend or supplement their complaint. *Mot.* 3:6–7. BSEE has not opposed Plaintiffs' motion, but Sable has opposed. *See generally Opp.*

II.    Legal Standard

      Pursuant to Federal Rule of Civil Procedure ("Rule") 15(a)(2), a party may amend its pleading with the court's leave. "The court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). In light of the federal policy favoring the determination of cases on their merits, the policy of granting leave is to be applied with "extreme liberality." *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1051 (9th Cir. 2003); *Owens v. Kaiser Found. Health Plan, Inc.*, 244 F.3d 708, 712 (9th Cir. 2001). Factors that may justify denying a Rule 15(a)(2) motion include undue delay, bad faith, dilatory motive, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of the allowance of the amendment, and futility of amendment. *Foman v. Davis*, 371 U.S. 178, 182 (1962). "Absent prejudice, or

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.  LA CV24-05459-MWC (MAAx)                              Date: January 29, 2025

Title   Center for Biological Diversity *et al.* v. Debra Haaland *et al.*

a strong showing of any of the remaining factors, there exists a presumption in favor of granting leave to amend." *Eminence Capital*, 316 F.3d at 1052 (emphasis omitted).

III.   Discussion

Sable's opposition to Plaintiffs' motion relies on arguments of futility. *Opp.* 1:13–14. Sable argues: (1) Plaintiffs' proposed third claim is futile because Plaintiffs lack standing and the claim is moot; and (2) Plaintiffs' proposed fourth claim is futile because Plaintiffs fail to allege any "final agency action," Plaintiffs did not adequately allege that BSEE has a duty to supplement, and the claim is not ripe. The Court addresses each argument below. *Id.* 8:12–16:21.

IV.   Plaintiffs' Proposed Third Claim

With its third proposed claim, Plaintiffs seek to challenge BSEE's issuance of the APMs, specifically BSEE's reliance on a categorical exclusion under NEPA and its failure to consider significant environmental impacts. *Redlined FAC* ¶¶ 162–70. Sable contends that Plaintiffs' proposed third claim is futile because Plaintiffs lack standing with respect to their request for vacatur of the APMs. *Opp.* 8:14–9:15. Sable explains that "the challenged APMs have already been completed; that work cannot be undone, is not redressable by this Court, and [thus] Plaintiffs lack standing to seek the remedy of vacatur." *Id.* 1:15–21.

"[T]o satisfy Article III's standing requirements, a plaintiff must show (1) it has suffered an 'injury in fact' . . . (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Friends of the Earth, Inc. v. Laidlaw Env. Servs. (TOC), Inc.*, 528 U.S. 167, 180–81 (2000). "[A] plaintiff must demonstrate standing separately for each form of relief sought." *Id.* at 185. However, when plaintiffs bring NEPA claims seeking to enforce a procedural requirement, the redressability is "relaxed." *See WildEarth Guardians v. U.S. Dept. of Agriculture*, 795 F.3d 1148, 1154 (9th Cir. 2015) (explaining the relaxed standard). "Plaintiffs alleging procedural injury must show only that they have a procedural right that, if exercised, *could* protect their concrete interests." *Id.* (citing *Salmon Spawning & Recovery All. v. Gutierrez*, 545 F.3d 1220, 1225 (9th Cir. 2008)). Although "[t]his is not a high bar to meet," "the redressability

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.  LA CV24-05459-MWC (MAAx)                                    Date: January 29, 2025

Title     Center for Biological Diversity *et al.* v. Debra Haaland *et al.*

requirement is not toothless in procedural injury cases." *Salmon Spawning*, 545 F.3d at 1227.

      Here, Plaintiffs seek various remedies related to their third claim, including vacatur and remand, a declaration that BSEE violated NEPA, an order that BSEE complete additional NEPA analysis, and an order prohibiting BSEE from approving additional oil and gas activity at the Santa Ynez Unit until it completes the correct NEPA analysis. *Mot.* 4:2–8. Sable focuses its standing deficiency argument on one of those requests: vacatur. *See Opp.* 8:12–9:15. Sable argues that even if the Court ordered BSEE to vacate its decision regarding well perforation, the wells cannot now be un-perforated. *See id.* 9:6. As an initial matter, Sable does not explain why Plaintiffs' other requested forms of relief, which do not contemplate vacatur, cannot justify leave to amend. *See Reply* 4:2–8 ("Plaintiffs have not only asked for vacatur . . . ."); *Nissan Motor Co., Ltd. v. Nissan Computer Corp.*, 204 F.R.D. 460, 463 (N.D. Cal. 2001) ("[T]he burden of persuading the court that leave should not be granted rests with the nonmoving party." (citing *DCD Programs, Ltd. v. Leighton*, 833 F.2d 183, 186 (9th Cir. 1987))).

      Furthermore, even in solely analyzing Plaintiffs' request for vacatur (specifically, Plaintiffs request the Court to "[v]acate and remand the September 2024 APMs"), it is not clear that Plaintiffs cannot establish redressability. *See Redlined FAC* 49:3. Plaintiffs explain that if they succeed in having the BSEE decision vacated and remanded, it is possible that under a corrected NEPA analysis, the BSEE might "require enhanced monitoring to detect oil spills or methane leaks, develop and adopt an alternative to permitting a restart, or require Sable to cease production within a certain timeframe." *See Reply* 4:12–15. In light of the policy of allowing leave to amend with "extreme liberality," the Court determines that Sable has not, at this stage, met its burden of convincing the Court that Plaintiffs' third proposed claim is futile. *See Eminence Capital*, 316 F.3d at 1051.

      Mirroring its redressability argument, Sable also argues that Plaintiffs' proposed third claim is moot because "the operations are now complete" and "there is no effective relief the Court could order." *Opp.* 10:2–3. However, Sable again, for the reasons discussed above, has not convinced the Court that Plaintiffs' third claim is moot at this early stage. *See Sierra Club v. U.S. Army Corps of Eng'rs*, 803 F.3d 31, 43 (D.C. Cir. 2015) (deciding the case was not moot even though construction was finished because "were this court to hold that the agencies' NEPA analysis was inadequate . . . they 'would

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.   LA CV24-05459-MWC (MAAx)                              Date: January 29, 2025

Title   Center for Biological Diversity *et al.* v. Debra Haaland *et al.*

have to correct the decision-making process'" and the court "could order that the [pipeline] be closed or impose restrictions on its use'").

V.    Plaintiffs' Proposed Fourth Claim

Plaintiffs' proposed fourth claim seeks to challenge BSEE's failure to supplement decades-old NEPA analyses (EISs completed in the 1970s and 1980s).  *See Redlined FAC* ¶¶ 171–78 ("Agencies have a continuing obligation to comply with NEPA.").  Sable argues that adding this proposed fourth claim would be futile because:  (1) Plaintiffs have not alleged a "final agency action;" (2) Plaintiffs have not alleged that BSEE had a duty sufficient to "compel agency action unlawfully withheld or unreasonably delayed" under the APA; and (3) Plaintiffs' claim is not ripe.  *Opp.* 12:6–10.  The Court will analyze each argument opposing the proposed fourth claim in turn.

A.    Final Agency Action

Sable contends that Plaintiffs have not met the 5 USC § 706(2) requirement for "final agency action."  *Id.* 13:3–14.  Sable argues Plaintiff has merely made "vague references" to "BSEE's reliance on outdated NEPA documents" when BSEE took actions like "approv[ing] oil and gas development and production," which cannot meet the "final agency action" standard.  *Id.* 13:3–14.  Plaintiffs respond that their claim regarding failure to supplement the outdated NEPA analyses constitutes "an agency action unlawfully *withheld* or unreasonably delayed" under § 706(1), not a claim for unlawful agency action under § 706(2).  *Reply* 8:17–20 (italics added).  Plaintiff explains that their reference to § 706(2) in the proposed amended complaint is an "alternative" theory and "is based on BSEE's determination in issuing the APMs."  *Id.* 11:14–19.

5 U.S.C. § 706 has two subsections.  Under 5 U.S.C. § 706(1), a reviewing court can "compel agency action unlawfully withheld or unreasonably delayed."  In other words, under § 706(1), a plaintiff could "compel an agency to act in the first instance."  *Friends of the Clearwater v. Dombeck*, 222 F.3d 552, 560 (9th Cir. 2000).  For instance, courts have determined that "[a]n action to compel an agency to prepare a[] [supplemental environmental impact statement] . . . is not a challenge to a final agency decision, but rather an action arising under 5 U.S.C. § 706(1), to 'compel agency action unlawfully withheld or unreasonably delayed.'"  *Id.*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.   LA CV24-05459-MWC (MAAx)                                           Date: January 29, 2025

Title   Center for Biological Diversity *et al.* v. Debra Haaland *et al.*

Under 5 U.S.C. § 706(2), a reviewing court can "hold unlawful and set aside agency action, findings, and conclusions." To bring a § 706(2) claim, a plaintiff must challenge a "final agency action." *Oregon Natural Desert Ass'n v. U.S. Forest Serv.*, 465 F.3d 977, 982 (9th Cir. 2006) (analyzing § 706(2)). "For an agency action to be final, the action must (1) 'mark the consummation of the agency's decisionmaking process' and (2) 'be one by which rights or obligations have been determined, or from which legal consequences will flow.'" *Id.* (citation omitted). "[T]he core question is whether the agency has completed its decisionmaking process, and whether the result of that process is one that will directly affect the parties." *Id.* (citations omitted). For example, the Ninth Circuit has found that annual operating instructions, which were issued to AMP-holders and provided long-term instructions regarding livestock grazing, can constitute "final agency action." *See id.* at 990 ("The record supports the conclusion that an [annual operating instruction] is a discrete, site-specific action representing the Forest Service's last word from which binding obligations flow.").

Here, Plaintiffs propose to bring their fourth claim under both § 706(1) (for action unlawfully withheld) and § 706(2) (for unlawful action). And as Sable acknowledges, "[a]n action to compel an agency to prepare [a supplemental EIS] . . . [is] an action arising under 5 U.S.C. § 706(1), to compel agency action unlawfully withheld or unreasonably delayed." *See Opp.* 13:20–23 (quoting *Friends of the Clearwater*, 222 F.3d at 560). Thus, Sable does not meet its burden to establish futility of amendment by merely arguing that Plaintiffs may fail under one of Plaintiffs' two alternate theories. *See Nissan*, 204 F.R.D. at 463 ("[T]he burden of persuading the court that leave should not be granted rests with the nonmoving party." (citation omitted)); *Eminence Capital*, 316 F.3d at 1052 ("Absent prejudice, or a strong showing of any of the remaining factors [like futility], there exists a presumption in favor of granting leave to amend." (emphasis omitted)). Even putting aside Plaintiffs' alternative theory under § 706(1), Sable fails to convince the Court that Plaintiffs have not alleged facts (such as the BSEE granting APMs) that are enough to support a finding of a "final agency action," especially on this motion to amend that must be reviewed with "extreme liberality" and must be reviewed before full factual development of the case. *See Oregon Natural*, 465 F.3d at 979–90 (diving into the administrative record's detailed facts to determine that the Forest Service's issuance of annual operating instructions did constitute "final agency action"); *Foman*, 371 U.S. at 182 ("If the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits."); *Opp.* 16:11–15 (acknowledging "the Court would surely

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.  LA CV24-05459-MWC (MAAx)                           Date: January 29, 2025

Title      Center for Biological Diversity *et al.* v. Debra Haaland *et al.*

benefit from further factual development of the issues presented" including on the issue of agency actions needing supplemental review).

      B.      Duty to Supplement

For a § 706(1) claim to proceed, a plaintiff must "assert[] that an agency failed to take a discrete agency action that it is required to take," which generally rules out "broad programmatic attack[s]." *Norton v. Southern Utah Wilderness Alliance*, 542 U.S. 55, 64 (2004) (italics omitted).  Moreover, an agency must prepare a supplemental EIS "[i]f there remains 'major Federal action[n]' to occur, and if the new information is sufficient to show that the remaining action will 'affec[t] the quality of the human environment' in a significant manner or to a significant extent not already considered." *Marsh v. Oregon Natural Resources Council*, 490 U.S. 360, 374 (1989) (citation omitted).

Sable attacks Plaintiffs' proposed fourth claim (this time, Plaintiffs' § 706(1) theory) for lack of duty to supplement.  *Opp.* 14:4–10.  Sable asserts that Plaintiffs only "vaguely claim[ed]" that "BSEE's permitting of oil and gas activities at the Santa Ynez Unit is ongoing and incomplete" but failed to "identify a specific future action" that would require a supplemental NEPA analysis.  *Id.* 14:17–20.

However, Plaintiffs do assert that BSEE will take future major federal action in the form of "continu[ing] to issue approvals for oil and gas operations at the Santa Ynez Unit" as oil and gas production at the Santa Ynez Unit is only now restarting.  *See Reply* 9:20–28; *Redlined FAC* ¶ 145 ("BSEE's permitting of oil and gas activities at the Santa Ynez Unit is ongoing . . . . For example, Sable has indicated to investors that it plans to restart oil and gas production at the Santa Ynez Unit in 2025; BSEE has issued permits that facilitate such a restart; and BSEE will continue to issue approvals for oil and gas operations at the Santa Ynez Unit.").  Moreover, the recent developments that spurred Plaintiffs to amend their Complaint further evidence this ongoing federal action.  *See Mot.* 1:5–14 ("At issue in this case is BSEE's extension of oil and gas leases in federal waters off California . . . . BSEE issued the most recent extensions in November 2023 . . . . After Plaintiffs filed this lawsuit [in June 2024], Sable received two permits [in September 2024] from BSEE that will help facilitate the resumption of oil and gas production at the Santa Ynez Unit.").

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| | | |
|---|---|---|
| Case No. | LA CV24-05459-MWC (MAAx) | Date: January 29, 2025 |
| Title | Center for Biological Diversity *et al.* v. Debra Haaland *et al.* | |

Accordingly, at this motion to amend stage, Sable has not persuaded the Court that Plaintiffs' claim is clearly futile due to failure to plead major federal action.

    C.    Ripeness

Sable argues Plaintiffs' proposed fourth claim is not ripe for various reasons. First, Sable argues delayed review would not cause hardship for Plaintiffs because Plaintiffs do not allege a specific action requiring supplemental NEPA review. *Opp.* 15:20–26. However, as addressed above, Plaintiffs' have pleaded actions requiring supplemental review.

Second, Sable argues that BSEE "is not at an 'administrative resting place' and judicial intervention would therefore interfere with further administrative action," citing that the "federal government has already moved for voluntary remand." *Id.* 16:1–10. The Court, however, has not yet ruled on the motion for remand, and the parties stipulated to continue the remand motion until the Court resolved this motion for leave to amend. *See* Dkt. # 41; Dkt. # 42 (taking the remand motion off calendar pending this motion for leave to amend). Thus, Sable has not established that merely providing leave to amend will interfere with further administrative action.

And last, Sable argues that "the Court would surely benefit from further factual development of the issues presented because it is unclear what agency action Plaintiffs are arguing requires supplemental review." *Opp.* 16:11–20. Sable is correct that the Court would benefit from further factual development of all of the issues in this case, but the need for factual development does not establish that Plaintiffs should not have an opportunity to amend their Complaint. *See Foman*, 371 U.S. at 182 ("If the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits.").

VI.    Undue Delay and Prejudice

Sable argues that Plaintiffs should have brought these new proposed claims earlier, stating "[t]here was no reason Plaintiffs could not have brought their Fourth Claim at least with their initial complaint, if not years earlier." *Opp.* 17:1–11. Yet, as Plaintiffs point out, "they sought to supplement and amend their complaint only six months after initiating this lawsuit, [and] within three weeks after receiving documents related to

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| | |
|---|---|
| Case No.  LA CV24-05459-MWC (MAAx) | Date: January 29, 2025 |
| Title  Center for Biological Diversity *et al.* v. Debra Haaland *et al.* | |

BSEE's issuance of APMs." *Reply* 12:4–8.  And notably, Plaintiffs brought this motion on January 3, 2025, within the Court's deadline for amendments of pleadings.  *See* Dkt. # 36, 3 (ordering a deadline of January 4, 2025).  The Court does not find that Plaintiffs engaged in undue delay.

As to prejudice, Sable argues that Plaintiffs' proposed amendments will prejudice it because "if Sable does not successfully return the offshore facilities to production before 2026, [the previous owner] has the right to take over the . . . assets" and that "Sable has obligated close to $1 billion associated with the purchase, repair, maintenance, and upgrades of the Santa Ynez unit assets."  *Opp.* 17:12–23.  However, Sable's argument fails to explain how allowing an amended complaint would lead to undue prejudice—instead, Sable merely reveals it might face adverse consequences if Plaintiffs ultimately prevail on the merits of the lawsuit.  *See Foman*, 371 U.S. at 182 (noting that on a motion for leave to amend, a court should evaluate whether there is "undue prejudice to the opposing party *by virtue of allowance of the amendment*" (emphasis added)).

Accordingly, Sable fails to demonstrate that amending the pleading would result in undue delay or undue prejudice.

VII.  Conclusion

For the foregoing reasons, the Court **GRANTS** Plaintiffs' motion for leave to file first supplemental and amended complaint.

**IT IS SO ORDERED.**

| | : |
|---|---|
| **Initials of Preparer** | TJ |