ADAM R.F. GUSTAFSON
Acting Assistant Attorney General
United States Department of Justice
Environment and Natural Resources Division

DANIEL C. LUECKE (CA Bar No. 326695)
Trial Attorney, Natural Resources Section
Ben Franklin Station, P.O. Box 7611
Washington, D.C. 20044-7611
Telephone:   (202) 598-7863
Email:        daniel.luecke@usdoj.gov

*Counsel for Federal Defendants*

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT CALIFORNIA
## WESTERN DIVISION

| | |
|---|---|
| CENTER FOR BIOLOGICAL DIVERSITY; WISHTOYO FOUNDATION,<br><br>　　　　*Plaintiffs*,<br><br>　　v.<br><br>DOUG BURGUM, et al.,<br><br>　　　　*Federal Defendants*<br><br>　　and<br><br>SABLE OFFSHORE CORP.,<br><br>　　　　*Intervenor-Defendant.* | Case No. 2:24-cv-05459-MWC-MAA<br><br>**REPLY IN SUPPORT OF FEDERAL DEFENDANTS' MOTION FOR VOLUNTARY REMAND**<br><br><br>Honorable Michelle Williams Court<br>United States District Judge |

# INTRODUCTION

Staying this case while the Bureau of Safety and Environmental Enforcement ("BSEE") revisits its 2023 lease extension decision on remand is the most efficient way to proceed in this matter. BSEE has identified substantial and legitimate concerns that justify remand and, despite Plaintiffs' suggestions to the contrary, it need not go further than that by confessing error. BSEE's analysis on remand is also likely to resolve Plaintiffs' original claims and, at the very least, substantially change the context for Plaintiffs' new claims. Finally, Plaintiffs have not explained how they would face any greater prejudice if the Court granted Federal Defendants' Motion than under the status quo. The Court should therefore grant voluntary remand and stay this case.

# ARGUMENT

## I.    Federal Defendants Have Identified Substantial and Legitimate Concerns That Support Voluntary Remand.

As Federal Defendants explained in their opening brief, courts may grant voluntary remand where, as here, the agency has expressed its "intention to reconsider its previous position *without confessing error*[.]" *Am. Fed'n of Tchrs. v. Cardona*, No. 20-CV-00455-EJD, 2022 WL 1471388, at *2 (N.D. Cal. May 10, 2022) (citing *SKF USA Inc. v. United States*, 254 F.3d 1022, 1027 (Fed. Cir. 2001) (emphasis added); *see also Ctr. for Biological Diversity v. U.S. Bureau of Land Mgmt.*, No. CV 21-2507-GW-ASx, 2022 WL 4233648, at *3 (C.D. Cal. Sept. 13, 2022); *N. Coast Rivers All. v. U.S. Dep't of the Interior*, No. 116-CV-00307-LJO-MJS, 2016 WL 8673038, at *5 (E.D. Cal. Dec. 16, 2016). Despite this, Plaintiffs insist that granting remand is unwarranted because BSEE has not conclusively "acknowledge[d] the impropriety" of the challenged 2023 extension decision. Opp'n 17, ECF No. 40.

This is not the standard. An agency may seek remand based on "substantial

1

1    and legitimate" concerns. *Ctr. for Biological Diversity*, 2022 WL 4233648, at *4

2    (quoting *SKF USA*, 254 F.3d at 1029). Indeed, "[e]ven in the absence of new

3    evidence or intervening events, voluntary remand may be appropriate where an

4    'agency requests a remand (without confessing error) in order to reconsider its

5    previous position.'" *Code v. McHugh*, 139 F. Supp. 3d 465, 468 (D.D.C. 2015)

6    (quoting *SKF USA*, 254 F.3d at 1029). The agency need not, as Plaintiffs implicitly

7    assert, reach a final determination that the decision was legally incorrect. Such a

8    requirement would greatly reduce the utility of voluntary remand as a tool for

9    agencies to revisit decisions without prematurely disavowing them.

10         The Court should therefore grant voluntary remand because BSEE has

11   expressed "substantial and legitimate" concerns about the support and reasoning

12   for the 2023 extension decision. *See id*. Plaintiffs' own complaint alleges that

13   BSEE violated the National Environmental Policy Act ("NEPA") because its

14   categorical exclusion analysis did not consider that "production could resume

15   during the extension period" and thus result in "impacts to public health,

16   ecologically critical areas, cultural resources, access to sacred sites, threatened and

17   endangered species." Compl. ¶¶ 96-103, ECF No.1. The Declaration of Bruce

18   Hesson supporting Federal Defendants' Motion specifically acknowledges that

19   BSEE's prior analysis "lacks sufficient discussion and support regarding

20   potentially applicable extraordinary circumstances and relies on overly conclusory

21   statements, including regarding the infrastructure remaining idle." Decl. of Bruce

22   Hesson Decl. ("Hesson Decl.") ¶ 9, ECF No. 37-1. To remedy this issue, on

23   remand BSEE would "reconsider in more detail, for example, whether granting an

24   extension may significantly impact public health, listed or endangered species, and

25   surrounding ecologically significant or critical areas, and will not assume that oil

26   and gas operations will be idled during an extension period[.]" *Id.* at ¶ 9. In other

27   words, BSEE intends to address the issues Plaintiffs have raised under NEPA.

In opposition to Federal Defendants' motion, Plaintiffs also present evidence supporting their contentions about possible impacts from air pollution, climate change, and oil spill risk. *See* Decl. of Kristen Monsell, ECF No. 40-1. The attached Supplemental Declaration of Bruce Hesson responds to these concerns by providing more detail about BSEE's analysis on remand.[1] As Mr. Hesson explains, BSEE's analysis will specifically address potential impacts of resuming production at the Santa Ynez Unit related to "air quality, oil spill risk, and protected species and areas" and include a "cumulative effects analysis of resuming oil and gas production" at the Unit. Supp. Decl. of Bruce Hesson ¶ 3. BSEE is working with the Bureau of Ocean Energy Management to analyze these issues by preparing an Environmental Assessment ("EA"). *Id.* at ¶ 2.

Plaintiffs' objections to granting remand and staying this case are thus misplaced. Plaintiffs cite *Keltner v. United States* for the principle that "remand is not appropriate 'simply so that the [agency] can bolster its reasons for' issuing its decision and thereby 'have a higher chance of withstanding subsequent judicial scrutiny.'" Opp'n 18 (quoting 148 Fed. Cl. 552, 564-65 (2020)). But in *Keltner* the government requested remand to "expound upon its rationale for denying plaintiff's request" for disability retirement pay and benefits. 148 Fed. Cl. at 564. Here, BSEE wants to revisit its decision in light of a more robust, detailed analysis of the issues Plaintiffs raise, not merely to "expound on" preexisting reasons for granting the extension. Hesson Decl. ¶¶ 9, 10. *Keltner* is therefore inapposite.

And, to the extent Plaintiffs believe BSEE must commit to reaching a different outcome or concede every issue the complaint alleges, Opp'n 17, they are mistaken. "The suitability of voluntary remand hinges on whether the agency has

---

[1] Local Rule 7-10 permits a party to file "declaration or other rebuttal evidence" with a reply memorandum. *See Est. of Robert Graham v. Sotheby's Inc.*, No. CV 11-8604-MWF (FFMX), 2019 WL 13551289, at *1 (C.D. Cal. Nov. 19, 2019).

1  committed to revisiting 'the original agency decision on review,' not whether the

2  agency will address every manner in which a party claims that decision was

3  erroneous." *N. Alaska Env't Ctr. v. Haaland*, No. 3:20-CV-00187-SLG, 2022 WL

4  1556028, at *4 (D. Alaska May 17, 2022) (quoting *Limnia, Inc. v. United States*

5  *Dep't of Energy*, 857 F.3d 379, 386 (D.C. Cir. 2017)); *see also Code*, 139 F. Supp.

6  3d at 470 (allowing voluntary remand where agency planned to address some, but

7  not all, of the "material errors" alleged by the plaintiff). By committing to consider

8  many of the issues raised in this lawsuit, BSEE has met that threshold.

9  **II.    Granting Voluntary Remand Would Increase Efficiency.**

10          Granting voluntary remand and issuing a stay remains the most efficient

11  means of resolving this dispute. *See N. Coast Rivers All.*, 2016 WL 8673038, at

12  *13 ("District courts have the authority to stay court proceedings and retain

13  jurisdiction over cases even when an agency's request for a voluntary remand is

14  granted." (quoting *XP Vehicles, Inc. v. U.S. Dep't of Energy*, 156 F. Supp. 3d 185,

15  193 (D.D.C. 2016) (reversed on other grounds))). Plaintiffs' amended complaint

16  asserts two new NEPA claims that will require new administrative records and

17  additional merits briefing. *See* First Supp. & Am. Compl. ¶¶ 162–178, ECF No.

18  38-2. Yet both claims rest on the same fundamental contention as Plaintiffs'

19  original NEPA claim—that BSEE needs to analyze the impacts of potentially

20  resuming production at the Santa Ynez Unit in an EA or EIS. *Compare id.* at ¶¶

21  157–61 (describing grounds for original NEPA claim) *with id.* at ¶¶ 165–70, 176–

22  78 (describing grounds for new NEPA claims). BSEE's intent is to conduct this

23  analysis in its reconsideration of the 2023 extension decision on remand, which

24  may moot or at least substantially alter the context for CBD's new claims.[2]

25  _____

26  [2] Federal Defendants maintain that BSEE properly relied on a categorical exclusion
   to approve Sable's APMs given the limited scope of anticipated work and therefore

27

1    Staying this case during remand will thus save judicial resources by

2    potentially disposing of all Plaintiffs' claims without the need for further litigation

3    over analysis that will soon be superseded. Indeed, even if a stay were denied, it is

4    entirely possible that BSEE would complete its EA before the Court issued a

5    merits decision. This would be a wasteful outcome. *See Oregon Nat. Desert Ass'n*

6    *v. Freeborn*, No. CV 06-1311-MO, 2007 WL 9658100, at *1 (D. Or. June 19,

7    2007) (observing that "significant judicial resources would be wasted" if

8    proceedings continued and BLM's reconsideration of challenged decisions

9    "ultimately reversed them or altered them in a way that addressed at least some of

10   plaintiffs' objections").

11   Finally, the possibility that Plaintiffs could find inadequacies in BSEE's

12   analysis and decision on remand is no reason to deny the Federal Defendants'

13   motion. *See* Opp'n 20–21. While Plaintiffs cite an anecdotal example of BSEE and

14   BOEM's analysis on remand being subsequently held deficient, Opp'n 20, there is

15   no basis for assuming the same would occur here. To the contrary, agencies are

16   entitled to a "presumption of regularity," and their actions must be presumed valid

17   unless proved otherwise.  *See San Luis & Delta-Mendota Water Auth. v. Jewell*,

18   747 F.3d 581, 601 (9th Cir. 2014).

19   Whether BSEE undertakes additional analysis on its own accord or pursuant

20   to a Court order on the merits, Plaintiffs may nonetheless bring another legal

21   challenge if BSEE ultimately concludes that an extension is appropriate. Rather

22   than speculate about the likelihood of future litigation, the Court should grant the

23

24   _____

     that remand of Plaintiffs' third claim is not warranted. Federal Defendants also
25   maintain that Plaintiffs' fourth claim is legally defective for failing to identify an
     ongoing federal action. Federal Defendants therefore do not seek voluntary remand
26   of Plaintiffs' new claims. Nonetheless, for the reasons explained above, BSEE's
27   analysis on remand is highly relevant to all of claims in this case.

Federal Defendants' motion based on the manifest efficiency of staying this case while BSEE addresses the issues Plaintiffs raise in their complaint.

### III.    Granting Voluntary Remand Would Not Prejudice Plaintiffs.

In light of the efficiency of granting voluntary remand, Plaintiffs have not identified sufficient prejudice to warrant denying Federal Defendants' Motion. Sable's efforts to resume production at the Santa Ynez Unit remain in flux. And, even if a restart does become imminent, staying this case will not alter Plaintiffs' ability to protect their interests.

There still remain several hurdles for Sable to overcome before it can resume production of oil and gas at the Santa Ynez Unit. First, while Plaintiffs are correct that Sable has obtained a waiver from the Office of the State Fire Marshal, that office has not yet issued its final approval of Sable's startup plan.[3] Second, Sable is currently embroiled in a dispute with the California Coastal Commission over the need for additional permits from the Commission related to Sable's pipeline. *See Sable Offshore Corp v. Calif. Coast. Comm.*, No. 25CV00974 (Cal. Super. Ct. Santa Barbara Feb. 18, 2025).[4] Sable's lawsuit seeks declaratory and injunctive relief to prevent the Commission from bringing further enforcement actions that could stop Sable from operating its pipelines. In the meantime, though,

---

[3] A breakdown of the Office of the State Fire Marshal's requirements to approve a startup is available on its website. *See Pathways for Restarting CA-324 and CA-325*, OFSFM (Dec. 23, 2024), https://osfm.fire.ca.gov/what-we-do/pipeline-safety-and-cupa/pathways-for-restarting-pipelines.

[4] The following link contains a filing by Sable with the Securities and Exchange Commission regarding its state court case: https://d18rn0p25nwr6d.cloudfront.net/CIK-0001831481/b6d24d38-db32-42f1-a5fc-959aba9cda8b.pdf. This is a publicly available document and is therefore an appropriate subject for judicial notice. *See Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001) ("[U]nder Fed. R. Evid. 201, a court may take judicial notice of 'matters of public record.'" (quoting *Mack v. South Bay Beer Distrib.*, 798 F.2d 1279, 1282 (9th Cir.1986))).

the Commission could such steps to prevent Sable from resuming operations.

Because any harm related to a restart is not ongoing or presently imminent, this case is distinct from other cases in which the agency requesting remand agreed to halt implementation of a challenged decision. Each of the cases Plaintiffs cite in this context involved an action approving operations that would change the status quo. *See N. Alaska Env't Ctr.*, 2022 WL 1556028, at *1(suspension of right-of-way permits necessary to construct new road); *Or. Nat. Desert Ass'n*, 2007 WL 9658100, at *2 (stipulation not to implement "several" aspects of grazing decision); *Pac. Coast Fed'n of Fishermen's Associations v. Raimondo*, No. 120-CV-00426-DAD-EPG, 2022 WL 789122, at *12 (E.D. Cal. Mar. 11, 2022) (agreement to modify operations while reevaluating BiOp); Opp'n 15–16. Here, in contrast, the challenged decision did not approve a specific project and involves no implementation at all. Instead, the 2023 lease extension decision maintained the status quo—Exxon held lease rights before BSEE granted the extension and continued to hold them afterward. Even if the Court were to vacate the 2023 decision, the leases themselves would not terminate. *See* Hesson Decl. ¶ 12.

The Court should follow the approach of *North Coast Rivers Alliance v. United States Department of the Interior*, which stayed proceedings during remand and "permit[ed] continued implementation of the Interim Contracts despite the agency's admission that the NEPA document covering those contracts [was] flawed." 2016 WL 8673038, at *13  Like in *North Coast*, Sable has explained that a suspension of operations on the Santa Ynez Unit would have disruptive consequences and may lead to Sable's loss of the leases altogether. *See* Sable Offshore Corp.'s Resp. to Fed. Defs.' Mot. for Vol. Remand 18–19, ECF No. 39.

On the other hand, if the Court stays this case while BSEE conducts its review, Plaintiffs will be left in largely the same position to protect their interests. Even if a restart did occur in the near future, as Plaintiffs suggest, allowing this

7

case to proceed toward a decision on the merits months from now would not protect Plaintiffs from harm. *See Pac. Coast Fed'n*, 2022 WL 789122, at *12 (rejecting argument that plaintiff would be prejudiced solely "because it will not be able to challenge the BiOps on their merits"); *see also Am. Forest Res. Council v. Ashe*, 946 F. Supp. 2d 1, 44 (D.D.C. 2013). Nor have Plaintiffs shown urgency to push this case toward a decision on the merits, opting to amend their complaint to add new claims that would inevitably prolong this litigation's lifespan. So, whether the Court stays the case or not, Plaintiffs would have the same tools at their disposal to seek relief from the Court. Granting Federal Defendants' request for voluntary remand and a stay therefore poses a minimal risk of harm to Plaintiffs.

## CONCLUSION

For the above reasons, the Court should grant Federal Defendants' Motion.

Dated: March 7th, 2025              ADAM R.F. GUSTAFSON
Acting Assistant Attorney General
U.S. Department of Justice
Environment and Natural Resources Division

*/s/ Daniel C. Luecke*
DANIEL C. LUECKE
Trial Attorney (CA Bar 326695)
Natural Resources Section
P.O. Box 7611, Ben Franklin Station
Washington, D.C. 20044
(202) 598-7863 | (202) 305-0506 (fax)
daniel.luecke@usdoj.gov

*Counsel for Federal Defendants*

8