# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA
# WESTERN DIVISION

| | |
|---|---|
| CENTER FOR BIOLOGICAL DIVERSITY, et al., | Case No. 2:24-cv-05459-MWC-MAA |
| *Plaintiffs*, | **DECLARATION OF PETER GALVIN** |
| v. | |
| DOUG BURGUM, et al., | |
| *Defendants*, | |
| SABLE OFFSHORE CORP., | |
| *Intervenor-Defendant.* | |

I, Peter Galvin, hereby declare as follows.

1. I have personal knowledge of the statements in this declaration and if called as a witness could and would competently testify to these matters under oath.

2. I co-founded the Center for Biological Diversity (Center) over thirty years ago and currently serve as its Director of Programs. The Center's members, including myself, depend on the Center to represent our interests in protecting and

1

preserving imperiled species and their habitats, including those within and surrounding the Santa Barbara Channel.

3. The Center is a 501(c)(3) organization incorporated in the State of California. The Center works to ensure the long-term health and viability of plant and animal communities across the United States and elsewhere, and to protect the habitat these species need to survive. The Center believes the health and vigor of human societies and the integrity and wildness of the natural environment are closely linked.

4. I work with our legal and scientific staff and other organizations to advance the Center's goal of wildlife and habitat protection through administrative actions and reform, scientific research, and the judicial process. In my capacity at the Center, I am familiar with the Center's work and activities in California, including the Santa Barbara Channel and surrounding coastal areas.

5. The Center's Oceans Program is extensively involved in efforts to ensure offshore oil and gas drilling activities do not harm imperiled species or their habitats, public health, water quality, or the climate. One of the Ocean Program's top priorities is the full implementation of existing environmental laws to reduce impacts to endangered species and coastal ecosystems. We also aim to address climate change and help spur the transition from a fossil fuel-dependent society to a clean energy future.

6. The Center works on behalf of its members, who rely on the organization to advocate for their interests before state, local, and federal agencies—including the Bureau of Safety and Environmental Enforcement (BSEE)—and the courts. The Center has more than 93,500 members, including over 18,000 who live in California. These and many other Center members are negatively affected by BSEE's approval of the lease extensions and permits for the Santa Ynez Unit and count on the Center to represent their interests on this issue.

7. This case seeks to enforce laws meant to protect sensitive species; air and water quality; coastal habitat; and other environmental resources—goals that are central to the Center's mission. Our staff and members have deep and abiding interests in the species, habitats, air quality, water quality, and other resources that are harmed by oil and gas production from the Santa Ynez Unit and by BSEE's failure to adequately examine these impacts before authorizing the associated lease extensions and permits.

8. Achieving our mission and protecting the interests of our members depends in large part on proper compliance with environmental laws like the Outer Continental Shelf Lands Act (OCSLA) and the National Environmental Policy Act (NEPA). OCSLA contains important environmental safeguards and requires a proper national interest determination before allowing operators more than a year to resume idled operations. NEPA is designed to ensure public transparency and informed decisionmaking. To fulfill these statutory functions, agencies must prepare timely and adequate analyses. BSEE's failure to do so here for the restart-related lease extensions and permits threatens air and water quality, imperiled species and habitat, the climate, and other environmental resources and the Center's interests in protecting them.

9. If BSEE had considered the relevant OCSLA and NEPA factors and properly followed their procedures, the agency would have more fully identified, disclosed and analyzed the impacts of the lease extensions and permits on air quality, water quality, sensitive species, and other resources. This may well have resulted in measures to reduce or avoid these impacts or led BSEE to deny the applications altogether. A favorable decision finding BSEE failed to comply with NEPA and OCSLA, vacating Defendants' decisions, and requiring the agency to conduct adequate analyses before moving forward with lease extensions and other approvals for the Santa Ynez Unit would redress the injuries I have described.

1 | I declare under penalty of perjury under the laws of the United States of America
2 | that the foregoing is true and correct.
3
4 | Executed on May 1, 2025

*[signature]*
_____
Peter Galvin