ADAM R.F. GUSTAFSON
Acting Assistant Attorney General
United States Department of Justice
Environment and Natural Resources Division

DANIEL C. LUECKE (CA Bar No. 326695)
Trial Attorney, Natural Resources Section
Ben Franklin Station, P.O. Box 7611
Washington, D.C. 20044-7611
Telephone:   (202) 598-7863
Email:   daniel.luecke@usdoj.gov

*Counsel for Federal Defendants*

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT CALIFORNIA
# WESTERN DIVISION

CENTER FOR BIOLOGICAL DIVERSITY; WISHTOYO FOUNDATION,

   *Plaintiffs*,

v.

DOUG BURGUM, *et al.*,

   *Federal Defendants,*

and

SABLE OFFSHORE CORP.,

   *Intervenor-Defendant.*

Case No. 2:24-cv-05459-MWC-MAA

**FEDERAL DEFENDANTS' REPLY IN SUPPORT OF CROSS-MOTION FOR SUMMARY JUDGMENT**

Hearing Date: July 11, 2025
Hearing Time: 1:30 p.m.
Courtroom: 6A

Honorable Michelle Williams Court
United States District Judge

# TABLE OF CONTENTS

INTRODUCTION ...................................................................................................1

ARGUMENT .........................................................................................................1

    I.    Plaintiffs' Claims Are Moot................................................................1

    II.    BSEE's National Interest Determination is not Subject to Review and, in Any Event, was Sufficient under OCSLA ...............................5

    III.    BSEE's Reliance on Categorical Exclusions in 2023 and 2024 was Permissible ...................................................................................9

    IV.    BSEE is not Required to Perform Supplemental NEPA Analysis .....12

CONCLUSION.....................................................................................................12

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Alaska Ctr. for Env't. v. U.S. Forest Service*,
  189 F.3d 851 (9th Cir. 1999) ...................................................................... 10

*Anderson v. U.S. Dep't of Hous. & Urb. Dev.*,
  731 F. Supp. 3d 19 (D.D.C. 2024) ................................................................ 2

*Bartell Ranch LLC v. McCullough*,
  No. 321-CV-00080-MMD-CLB, 2023 WL 1782343 (D. Nev. Feb. 6, 2023) ...... 5

*Bundorf v. Jewell*,
  142 F. Supp. 3d 1138 (D. Nev. 2015) ......................................................... 12

*California v. Watt*,
  683 F.2d 1253 (9th Cir. 1982) ...................................................................... 6

*Center for Biological Diversity v. Salazar*,
  706 F.3d 1085 (9th Cir. 2013) .................................................................... 12

*Ctr. For Biological Diversity v. Lohn*,
  511 F.3d 960 (9th Cir. 2007) ........................................................................ 2

*Ctr. for Biological Diversity v. U.S. Bureau of Land Management*,
  698 F.3d 1101 (9th Cir. 2012) ...................................................................... 8

*Defs. of Wildlife v. U. S. Army Corps of Eng'rs*,
  No. CV-15-14-GF-BMM, 2017 WL 1405732 (D. Mont. Apr. 19, 2017) ............ 2

*DeMille v. Belshe*,
  No. C-94-0726-VRW, 1995 WL 23636 (N.D. Cal. Jan. 12, 1995) ..................... 4

*Dep't of Com. v. New York*,
  588 U.S. 752 (2019) ...................................................................................... 7

*Forest Guardians v. U.S. Forest Serv.*,
  329 F.3d 1089 (9th Cir. 2003) ...................................................................... 2

*Massachusetts v. Clark*,
  594 F. Supp. 1373 (D. Mass. 1984) .............................................................. 6

*Metcalf v. Daley*,
  214 F.3d 1135 (9th Cir. 2000) ...................................................................... 4

*Mickelsen Farms, LLC v. Animal & Plant Health Inspection Services*,
  2018 WL 1413183 (D. Idaho Mar. 20, 2018) ...................................................... 2, 3

*Mountain Cmtys. For Fire Safety v. Elliott*,
  25 F.4th 667 (9th Cir. 2022) ..................................................................................... 9

*Mountain Cmtys. for Fire Safety v. Elliott*,
  No. 2:19-CV-6539-CAS-AFMx, 2020 WL 2733807 (C.D. Cal. May 26, 2020) . 9, 10

*Nat. Res. Def. Council, Inc. v. U. S. Nuclear Regul. Comm'n*,
  680 F.2d 810 (D.C. Cir. 1982) .................................................................................. 4

*Or. Nat. Res. Council v. Thomas*,
  92 F.3d 792 (9th Cir. 1996) ....................................................................................... 8

*Pit River Tribe v. U.S. Forest Service*,
  469 F.3d 768 (9th Cir. 2006) ..................................................................................... 3

*Poursina v. United States Citizenship & Immigr. Servs.*,
  936 F.3d 868 (9th Cir. 2019) ..................................................................................... 6

*Seven Cnty. Infrastructure Coal. v. Eagle Cnty., Colorado*,
  145 S. Ct. 1497 (2025) ........................................................................... 1, 4, 5, 9, 11

*Sierra Club v. Bosworth*,
  465 F. Supp. 2d 931 (N.D. Cal. 2006) .................................................................... 12

*Village of Akutan v. Hodel*,
  869 F.2d 1185 (9th Cir. 1988) ................................................................................... 6

*Washington v. U. S. Dep't of the Navy*,
  No. 19-CV-1059-RAJ, 2023 WL 5670963 (W.D. Wash. Sept. 1, 2023) ................. 5

*Webster v. Doe*,
  486 U.S. 592 (1988) .................................................................................................. 7

**Statutes**

42 U.S.C. § 4336b ........................................................................................................ 12

43 U.S.C. § 1331 ............................................................................................................ 7

43 U.S.C. § 1334(a)(1) ............................................................................................... 6, 7

43 U.S.C. § 1345(c) ....................................................................................................... 6

43 U.S.C. §§ 1332(3) ..................................................................................................... 7

**Regulations**

30 C.F.R. § 250.180(d) ............................................................................................3, 10

30 C.F.R. § 250.180(e) ..............................................................................................6, 7

# INTRODUCTION

Plaintiffs' claims turn on whether the Bureau of Safety and Environmental Enforcement ("BSEE") was required to analyze the impacts of restarting oil and gas operations on the Santa Ynez Unit ("Unit"). Now BSEE has conducted such an analysis and affirmed its original extension decision. Yet Plaintiffs ask the Court to ignore reality and vacate the challenged (and now superseded) lease extension decision and the two approved Applications for Permit Modification ("APM"). This flies in the face of justiciability principles and the Supreme Court's recent call for a common sense "course correction" in National Environmental Policy Act ("NEPA") jurisprudence. *Seven Cnty. Infrastructure Coal. v. Eagle Cnty., Colorado*, 145 S. Ct. 1497, 1514 (2025). The Court should reject Plaintiffs' request to order that BSEE conduct an analysis it has already completed.

Even if the Court considers Plaintiffs' claims on the merits, BSEE's actions were permissible under the Administrative Practice Act ("APA"), the Outer Continental Shelf Lands Act ("OCSLA"), and NEPA. Plaintiffs' attack on BSEE's 2023 national interest determination fails because the Court lacks a meaningful standard by which to judge that decision, which was reasonable in any event. Moreover, BSEE's reliance on categorical exclusions to approve the 2023 extension request and 2024 APMs was appropriate given the scope of activities and existing NEPA analyses. The Court should thus deny Plaintiffs' motion and grant summary judgment to Federal Defendants.

# ARGUMENT

## I. Plaintiffs' Claims Are Moot.

BSEE's 2023 decision to grant Exxon's extension request—the subject of Plaintiffs' first two claims—has now been superseded by a new decision based on new analysis. And, because Sable's well reworking is complete and BSEE has conducted the NEPA analysis Plaintiffs seek in all of their NEPA claims, no

1

effective relief remains. The Court should thus deny Plaintiffs' claims as moot.

"If an event occurs during the pendency of the appeal that renders the case moot, [the court] lack[s] jurisdiction." *Ctr. For Biological Diversity v. Lohn*, 511 F.3d 960, 963 (9th Cir. 2007). "[W]hen one agency action supersedes another, prospective challenges to the superseded agency action generally become moot" because "[t]he new agency action, not the old one, is what injures the plaintiff going forward." *Anderson v. U.S. Dep't of Hous. & Urb. Dev.*, 731 F. Supp. 3d 19, 31 (D.D.C. 2024) (citations omitted). Consequently, a claim that "necessarily rises or falls with the validity of" an environmental document that has been replaced by a new environmental review is moot. *Forest Guardians v. U.S. Forest Serv.*, 329 F.3d 1089, 1096 (9th Cir. 2003).

In *Forest Guardians*, the Ninth Circuit held that the plaintiff's challenge to grazing permits under the Endangered Species Act became moot when the biological opinion that supported the claims had been superseded. *Id.* That precedent also applies where, as here, the plaintiffs have raised NEPA claims. For example, in *Mickelsen Farms, LLC v. Animal & Plant Health Inspection Services*, the court held that the plaintiffs' NEPA challenge to a final rule regarding crop fumigation was moot because, after the complaint was filed, the agency issued a new environmental assessment ("EA") and finding of no significant impact ("FONSI") for the rule. No. 115CV00143EJLCWD, 2018 WL 1413183, at *9–10 (D. Idaho Mar. 20, 2018) (citing Ninth Circuit precedent finding mootness based on superseding biological opinion). Because the original EAs were "no longer the operative documents governing the [plaintiffs'] claims," there was no "live controversy" or possibility of "effective relief." *Id.* at 10; *see also, e.g., Defs. of Wildlife v. U. S. Army Corps of Eng'rs*, No. CV-15-14-GF-BMM, 2017 WL 1405732, at *5 (D. Mont. Apr. 19, 2017) (holding NEPA claims moot where "the 2016 EIS and 2016 ROD have superseded the prior EA and FONSI").

2

1    Here, Plaintiffs' claims challenging the 2023 extension decision are moot
2 because that decision has been superseded. BSEE's May 2025 Decision did not
3 approve "new lease extensions," as Plaintiffs suggest. Pls.' Opp'n 2. Indeed, Sable
4 has not requested and does not need new extensions now that it has resumed
5 operations at the Unit. 30 C.F.R. § 250.180(d). Rather, BSEE affirmed the 2023
6 decision based on a "reevaluat[ion]" of its 2023 approval of the October 2023
7 extension request "from Exxon Mobil Corporation." BSEE Decision Letter ("2025
8 Dec. Ltr.") 1, ECF No. 75-5. Plaintiffs' attempt to compare this case to *Pit River*
9 *Tribe v. U.S. Forest Service* is therefore misguided, as the extensions in that case
10 were issued for separate and distinct periods of time. 469 F.3d 768, 777–78 (9th
11 Cir. 2006) (describing approval of 5-year extension in 1998 and 40-year extension
12 in 2002). Here, vacating the 2023 extension decision would have no effect since
13 BSEE's 2025 Decision affirming that extension would still be in place.

14    Plaintiffs' NEPA claims challenging BSEE's categorical exclusion analysis
15 supporting the 2023 extension decision and 2024 APM approvals is also moot
16 because BSEE's EA and FONSI provide a new operative NEPA analysis that
17 considers the impacts associated with a restart of operations at the Unit. As in
18 *Forest Guardians*, *Mickelsen Farms*, and *Defenders of Wildlife*, Plaintiffs cannot
19 continue to assert claims that are based on the 2023 categorical exclusion, which
20 has been superseded. *See* Lease Extension EA ("EA") 3, ECF No. 75-3 (explaining
21 that the EA "serves to provide a more in-depth analysis of the environmental
22 impacts associated with the lease extension request" from Exxon). Any challenge
23 to the EA's analysis would require a new lawsuit. *See Mickelsen Farms*, 2018 WL
24 1413183, at *12 (declining to analyze new EA and FONSI, any challenge to which
25 "must be raised as provided for by the APA").

26    And while BSEE did not directly reconsider its 2024 APM approvals, its EA
27 nonetheless analyzes the "potential environmental impacts of near-term actions

3

necessary to support a return to production, including use and maintenance of existing infrastructure, associated pipeline repair and span remediation efforts, completing regulatory inspections, and well maintenance activities." EA 10. In other words, BSEE analyzed the effects that Plaintiffs claim make the APMs "unique" —i.e., that they "enable[d] the resumption of production after a 10-year shutdown." Pls.' Opp'n 17. Because BSEE has completed the environmental review that Plaintiffs assert must precede any future approvals, and because Sable has completed the well-reworking associated with the 2024 APMs, the vacatur and injunctive relief that Plaintiffs seek would no longer provide effective relief. *See DeMille v. Belshe*, No. C-94-0726-VRW, 1995 WL 23636, at *1 (N.D. Cal. Jan. 12, 1995) ("Corrective action by an agency is one type of subsequent development that can moot a previously justiciable issue." (quoting *Nat. Res. Def. Council, Inc. v. U. S. Nuclear Regul. Comm'n*, 680 F.2d 810, 814 (D.C. Cir. 1982))).

Rather than acknowledge the 2025 Decision, Plaintiffs ask the Court to preemptively invalidate BSEE's new analysis as untimely based on *Metcalf v. Daley*, 214 F.3d 1135 (9th Cir. 2000). Pls.' Opp'n 4–5. But this case bears no similarity to *Metcalf*, where the Ninth Circuit held that NEPA was not satisfied because the agency completed its review "after already having signed two agreements binding them to support the Tribe's proposal." 214 F.3d at 1142. Here, BSEE completed the EA and FONSI *before* issuing the 2025 Decision affirming the 2023 lease extensions. To the extent Plaintiffs argue that an agency cannot conduct additional NEPA analysis for an action that has not been vacated, they are at odds with the Supreme Court's observation mere weeks ago. *Seven Cnty.*, 145 S. Ct. at 1514 ("Even if an EIS falls short in some respects, that deficiency may not necessarily require a court to vacate the agency's ultimate approval of a project, at least absent reason to believe that the agency might disapprove the project if it added more to the EIS."). Indeed, courts in this circuit have repeatedly

4

acknowledged that an agency can conduct corrective NEPA without vacatur of the related action. *See, e.g., Washington v. U. S. Dep't of the Navy*, No. 19-CV-1059-RAJ, 2023 WL 5670963, at *5 (W.D. Wash. Sept. 1, 2023); *Bartell Ranch LLC v. McCullough*, No. 321-CV-00080-MMD-CLB, 2023 WL 1782343, at *23–24 (D. Nev. Feb. 6, 2023).

Finally, Plaintiffs insist that BSEE's EA and FONSI are "immaterial" because "the harms of the 2023 extensions remain." Pls.' Opp'n 7. But this misunderstands the nature of NEPA, which *Seven County* repeatedly stresses is a "*purely procedural statute*," 145 S. Ct. at 1507, 1510, 1511, 1514. To prevent this "modest procedural requirement" from continuing to serve as a "blunt and haphazard tool employed by project opponents," the Court explained that "[a] course correction of sorts is appropriate to bring judicial review under NEPA back in line with the statutory text and common sense." *Id.* at 1513-14. By analyzing the impacts of an extension leading to a restart, BSEE has completed the procedural analysis that Plaintiffs seek in their Amended Complaint. Am. Compl. ¶¶ 154–78, ECF No. 38-2. Plaintiffs seemingly assert that ongoing *development* at the Unit is enough on its own to avoid dismissal on mootness grounds, but under this flawed theory only a shut-in or termination of the Unit leases could remedy Plaintiffs' harm. That would go far beyond the requirements of NEPA, which "imposes no *substantive* constraints on the agency's ultimate decision to build, fund, or approve a proposed project." *Seven Cnty,*,145 S. Ct. at 1511 (emphasis in original). BSEE has now fulfilled the procedural requirements underlying Plaintiffs' claims in this case, rendering their claims moot.

**II.     BSEE's National Interest Determination is not Subject to Review and, in Any Event, was Sufficient under OCSLA.**

Plaintiffs' first claim asks this Court to determine whether BSEE's 2023 extension approval was sufficiently rooted in the national interest. But neither

OCSLA nor its implementing regulations describe what BSEE's national interest analysis must consider in this context, *see* 43 U.S.C. § 1334(a)(1); 30 C.F.R. § 250.180(e), and the Ninth Circuit has recognized that the term "national interest" is "a core example of a consideration that lacks a judicially manageable standard of review." *Poursina v. United States Citizenship & Immigr. Servs.*, 936 F.3d 868, 871 (9th Cir. 2019). Absent more guidance, the Court simply does not have a legal standard by which to judge whether BSEE considered the right issues, struck the right balance, or included sufficient detail in its decision.

      Tellingly, Plaintiffs cite no cases finding that a statutory directive to base a decision on the "national interest"—without elaboration—provides a standard for judicial review. Plaintiffs instead point to several cases that supposedly show how courts have "regularly reviewed" whether "a particular action taken under OCSLA was in the 'national interest.'" Pls.' Br. 11–12. But those cases—*Tribal Village of Akutan v. Hodel*, 869 F.2d 1185, 1190 (9th Cir. 1988), *California v. Watt*, 683 F.2d 1253, 1268–69 (9th Cir. 1982), and *Massachusetts v. Clark*, 594 F. Supp. 1373, 1387 (D. Mass. 1984), *see* Pls.' Opp'n 12—all reviewed decisions under 43 U.S.C. § 1345(c), which is a different provision of OCSLA that provides *exactly* the statutory guidance that is missing here. Section 1345(c) requires the Secretary to accept state and local recommendations regarding lease sales if they "provide for a reasonable balance between the national interest and the well-being of the citizens of the affected State." 43 U.S.C. § 1345(c). The provision further states that, "*[f]or purposes of this subsection, a determination of the national interest shall be based on the desirability of obtaining oil and gas supplies in a balanced manner and on the findings, purposes, and policies of this subchapter*." *Id.* (emphasis added). This demonstrates that Congress recognized the discretionary nature of the term "national interest" and provided a specific standard for assessing the national interest where it intended to curb the agency's discretion. Congress notably

6

declined to include such language in 43 U.S.C. § 1334(a)(1) and did not define the term "national interest" in OCSLA generally. *See* 43 U.S.C. § 1331.

While Plaintiffs are correct that the Supreme Court has "generally limited" the exception in § 701(a)(2) to "certain categories of administrative decisions that courts traditionally have regarded as committed to agency discretion," *Dep't of Com. v. New York*, 588 U.S. 752, 772 (2019) (quotation omitted), the fundamental question remains whether "the statute is drawn so that a court would have no meaningful standard against which to judge the agency's exercise of discretion," *Webster v. Doe*, 486 U.S. 592, 600 (1988) (quotation omitted). Here, the provisions of OCSLA that Plaintiffs point to as providing guidance—43 U.S.C. §§ 1332(3), 1802(2)—do not even refer to the "national interest." Pls.' Opp'n 13. And while Plaintiffs argue that 30 C.F.R. § 250.180(e) describes "concrete, reviewable criteria," *id.* at 12, that provision offers no elaboration on how the agency must consider the "national interest." Instead, § 250.180(e) states that the agency must *also* determine whether an extension "conserves resources, prevents waste, or protects correlative rights."

Plaintiffs' reliance on BSEE's reconsideration of its 2023 decision has no effect on the legal conclusion that OCSLA provides no standard for judging BSEE's decision. Pls.' Opp'n 13. BSEE's willingness to consider the "concerns" Plaintiffs identified in their February 2023 letter does not make those concerns judicially enforceable under the statute. Hesson Decl. ¶ 12, ECF No. 37-1. And although Plaintiffs ironically point to BSEE's statements in its 2025 Decision (the same Decision they elsewhere argue is "immaterial," Pls.' Opp'n 7), Plaintiffs ignore BSEE's acknowledgement on the same page that "[t]he National Interest determination is committed to the Secretary's sound discretion." 2025 Dec. Ltr. 7. That the Secretary, through the delegated authority of the Regional Supervisor, § 250.180(e), chose to consider OCSLA's statutory purposes to guide the analysis

7

does not mean those purposes constitute a mandatory set of factors.

If BSEE's national interest determination is justiciable at all, APA review is limited to whether BSEE provided a reasonable basis for its decision. As explained in Federal Defendants' opening brief, BSEE did so here by stating that an extension would "help meet the Nation's energy needs without the impacts associated with new infrastructure installations or exploration and development of unproven fields." AR_0000424. Plaintiffs insist that BSEE failed to look at an "important aspect of the problem" by not considering the effects of "greenhouse gas pollution from restarting oil and gas production." Pls.' Opp'n 15. But "[w]hether an agency has overlooked 'an important aspect of the problem,' . . . turns on what a relevant substantive statute makes 'important.'" *Or. Nat. Res. Council v. Thomas*, 92 F.3d 792, 798 (9th Cir. 1996). Plaintiffs identify no OCSLA provision stating that BSEE must consider greenhouse gas emissions or any other specific environmental issue when considering a lease extension.

Plaintiffs rely on *Center for Biological Diversity v. U.S. Bureau of Land Management* to argue that "scientific studies and other information in the administrative record" determine the scope of issues an agency must consider. Pls.' Opp'n 15 (citing 698 F.3d 1101, 1122–23 (9th Cir. 2012)). That is incorrect. *Center for Biological Diversity* involved regulations under the Endangered Species Act that placed the "burden . . . on the Federal agency to show the absence of likely, adverse effects to listed species or critical habitat" from a proposed project. 698 F.3d at 1122. Obviously, the agency had to consider factual materials to analyze that issue. *Id.* at 1123. But this has no bearing on what issues an agency must consider in the first place under the statute or regulations. Here, Plaintiffs freight the term "national interest" with a level of specificity that has no foundation in OCSLA or its implementing regulations. Their challenge based on BSEE's national interest determination thus fails.

III. **BSEE's Reliance on Categorical Exclusions in 2023 and 2024 was Permissible.**

Although BSEE's 2025 EA provides new operative NEPA analysis for restarting operations at the Unit, BSEE's use of categorical exclusions to approve the 2023 extension and 2024 APMs was nonetheless valid. Agency decisionmaking under NEPA is entitled to "substantial deference" and should be upheld as long as it "fall[s] within a broad zone of reasonableness." *Seven Cnty.*, 145 S. Ct. at 1513. This "substantial deference" extends to the "application of [the agency's] own categorical exclusions." *Mountain Cmtys. for Fire Safety v. Elliott*, No. 2:19-CV-6539-CAS-AFMx, 2020 WL 2733807, at *5 (C.D. Cal. May 26, 2020), *aff'd*, 25 F.4th 667 (9th Cir. 2022).

BSEE's 2023 reliance on a categorical exclusion to approve Exxon's extension request meets this generous standard. Plaintiffs argue that BSEE's determination that "oil and gas operations [would] be idled during the approved extension period" was inconsistent with its conclusion elsewhere that cumulative effects from any "future production" had already been analyzed. AR_0000429; *see also* Pls.' Opp'n 16. But BSEE's discussion of future production made sense in the context of the particular criterion it was addressing, which asked whether the extension would "have a direct relationship to other actions with . . . cumulatively significant environmental effects." AR_0000429. It was reasonable for BSEE to address the possibility of production resuming eventually while simultaneously concluding that production would not resume within the year-long extension period given Exxon's difficulties securing a means of transporting oil and gas from the Unit. AR_0000427; AR_0000442–44. Indeed, this assessment proved correct.

BSEE's 2024 use of categorical exclusions to approve Sable's APMs was likewise permissible under NEPA and the APA. Plaintiffs continue to argue that BSEE's categorical exclusion for "[a]pproval of an Application for Permit to Drill

9

(APD) an offshore oil and gas exploration or development well," 516 DM 15.4(C)(12), was not applicable in this "unique situation" involving the resumption of operations at the Unit. Pls.' Opp'n 17. But BSEE's regulations have long provided that resuming operations through drilling or well-reworking have the effect of extending a lease that is beyond its primary term. 30 C.F.R. § 250.180(d). Nor was BSEE wrong to conclude that the Unit's Development and Production Plan includes "appropriate mitigation measures," 516 DM 15.4(C)(12), for the "normal well-reworking Operations" that Sable proposed. AR_0000037; AR_0000040; *see* AR_0024946–52. (describing environmental impact mitigation measures). In short, the Court should reject Plaintiffs' invitation to create an amorphous exception to the application of a categorical exclusion that otherwise applies based on its plain language. *See Mountain Cmtys.*, 2020 WL 2733807, at *5 (an agency's "interpretation of the meaning of its own categorical exclusion should be given controlling weight unless plainly erroneous or inconsistent with the terms used in the regulation." (quoting *Alaska Ctr. for Env't. v. U.S. Forest Service*, 189 F.3d 851, 857-58, 859 (9th Cir. 1999))).[1]

Finally, Plaintiffs are also incorrect to argue that BSEE's categorical exclusion review was inadequate. As Federal Defendants noted in the opening brief, the APMs at issue proposed a discrete, limited activity: adding 115 and 181 feet of perforations to two wells on a single platform in the Unit. AR_0000043; AR_0000050. While this work was performed to enhance future production, AR_0000023; AR_0000030, the relevant wells were completed years earlier and

---

[1] Despite acknowledging in its opening brief that "on their face" the APMs "fit within the categorical exclusions for approval of an 'Application for Permit to Drill' or 'Sundry Notices,'" Pls.' Br. 15, Plaintiffs now suggest that the former "does not expressly apply to APMs." Pls.' Opp'n 17. This is unpersuasive, as BSEE is well within its discretion to interpret the categorical exclusion for drilling *new* wells to apply to adding perforations to an existing well.

already "contain[] produced fluids." AR_0000043; AR_0000050. Thus, BSEE's analysis of the proposed activity's effects was properly limited to the "normal well-reworking operations" that Sable proposed, not effects from other potential operations in the future. AR_0000037; AR_0000040.

BSEE also properly concluded that, insofar as the proposed work had a "direct relationship to other actions," any "reasonably foreseeable oil and gas development" had been evaluated in past NEPA reviews. AR_0000038; AR_0000041. As Federal Defendants pointed out in the opening brief, the EIS for the Unit analyzed impacts from air emissions and the effects, possibility, and severity of oil spills. AR_0019324–40; AR_0019457–69; AR_0019541–43. Plaintiffs raise the 2015 spill from the onshore pipeline, but the EIS considered effects of severe spills from pipeline ruptures. AR_0019541–43; *see also* AR_0016154 (observing that "by 2017 many of the resources and habitats were exhibiting signs of recovery" from 2015 spill). And while Plaintiffs point to emissions from the Unit in Santa Barbara County, Pls.' Opp'n 19, the onshore processing facilities are geographically separate, outside BSEE's jurisdiction, and may or may not ultimately process oil and gas from these particular wells. *See Seven Cnty.*, 145 S. Ct. at 1517 ("A relatively modest infrastructure project should not be turned into a scapegoat for everything that ensues from upstream oil drilling to downstream refinery emissions."). To the extent Plaintiffs raise concerns about more recently listed endangered species, Pls.' Opp'n 19, BSEE has analyzed effects of drilling and well reworking on the humpback whale, black abalone, and California steelhead in a more recent (though unpublished) environmental review. AR_0016058–60; AR_0016065; AR_0016083; AR_0016086; AR_0016090–95. In short, given the scope of work proposed by the APMs, BSEE's basis for applying categorical exclusions was sound.

## IV. BSEE is not Required to Perform Supplemental NEPA Analysis

Plaintiffs' arguments in support of their fourth claim—that BSEE must supplement the NEPA analysis for the Unit—add little value. First, Plaintiffs concede that 42 U.S.C. § 4336b does not apply here because the 1984 EIS for the Unit is not programmatic. Pls.' Opp'n 21.

Second, Plaintiffs distort the holding of *Center for Biological Diversity v. Salazar*, 706 F.3d 1085, 1095 (9th Cir. 2013), which did not turn on whether the recent activity related to the relevant mine constituted "major federal action" (indeed, the court never questioned that the agency's approval of a permit for the extraction of gravel qualified as such). *Id.* at 1096. Rather, *Salazar* held that "none of th[e] actions" that BLM had recently undertaken related to the mine "affected the validity or completeness of the 1988 approval of the Arizona 1 Mine's plan of operations" or "prevent[ed] [the company] from mining under that plan." *Id.* at 1095. The same logic is squarely applicable here. Plaintiffs' reliance on non-binding cases involving distinguishable contexts does not change this outcome. *See Bundorf v. Jewell*, 142 F. Supp. 3d 1138, 1151 (D. Nev. 2015) (action remained where right-of-way had "not yet been issued"); *Sierra Club v. Bosworth*, 465 F. Supp. 2d 931, 939 (N.D. Cal. 2006) (timber sales contracts required further agency approval before logging could commence). BSEE was thus not required to supplement the Unit's EIS before approving the 2023 extensions and 2024 APMs.

## CONCLUSION

For the above reasons, the Court should deny Plaintiffs' motion for summary judgment and grant summary judgment to Federal Defendants. In the event the Court finds a violation, remand without vacatur is appropriate for the reasons explained in Federal Defendants' opening brief.

Respectfully submitted this 27th day of June, 2025.

ADAM R.F. GUSTAFSON
Acting Assistant Attorney General
Environment & Natural Resources
Division
U.S. Department of Justice

*/s/ Daniel C. Luecke*
DANIEL C. LUECKE
Trial Attorney, Natural Resources Section
Ben Franklin Station, P.O. Box 7611
Washington, D.C. 20044-7611
Telephone: (202) 598-7863
Email:       daniel.luecke@usdoj.gov

*Counsel for Federal Defendants*

**CERTIFICATE OF COMPLIANCE**

The undersigned, counsel of record for Federal Defendants, certifies that this brief is 12 pages long, which complies with the page limit set by the Court's Standing Order, ECF No. 34.

Dated: June 27, 2025                    */s/ Daniel C. Luecke*
                                         Daniel C. Luecke