LATHAM & WATKINS LLP
Daniel P. Brunton (Bar No. 218615)
Email: daniel.brunton@lw.com
12670 High Bluff Drive
San Diego, CA 92130
Tel.: (858) 523-5400
Fax: (858) 523-5450

Michael G. Romey (Bar No. 137993)
Email: michael.romey@lw.com
355 South Grand Avenue, Suite 100
Los Angeles, CA 90071-1560
Tel.: (213) 485-1234
Fax: (213) 891-8763

Janice M. Schneider (*Pro Hac Vice*)
Email: janice.schneider@lw.com
Devin M. O'Connor (*Pro Hac Vice*)
Email: devin.o'connor@lw.com
555 Eleventh Street, NW, Suite 1000
Washington, D.C. 20004-1304
Tel.: (202) 637-2200
Fax: (202) 637-2201

*Attorneys for Intervenor-Defendant Sable Offshore Corp.*

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**WESTERN DIVISION**

CENTER FOR BIOLOGICAL DIVERSITY, et al.,

*Plaintiffs*,

v.

DOUG BURGUM, et al.,

*Defendants*,

and

SABLE OFFSHORE CORP.,

*Intervenor-Defendant*.

CASE NO. 2:24-cv-05459-MWC-MAA

**REPLY IN SUPPORT OF SABLE OFFSHORE CORP.'S CROSS-MOTION FOR SUMMARY JUDGMENT**

Hearing

Date: July 11, 2025
Time: 1:30 p.m.
Judge: Hon. Michelle Williams Court
Courtroom: 6A

LATHAM&WATKINS LLP
ATTORNEYS AT LAW

CASE NO. 2:24-CV-05459-MWC-MAA
SABLE'S REPLY IN SUPPORT OF
CROSS-MOT. FOR SUMM. J.


**TABLE OF CONTENTS**

**Page**

I. INTRODUCTION ..... 1

II. ARGUMENT ..... 1

A. All of Plaintiffs' Claims Are Moot ..... 1

B. BSEE's CatEx and National Interest Determination For the 2023 Extension Were Reasonable ..... 6

C. BSEE's CatExs For the Two APMs Complied With NEPA ..... 7

D. BSEE Appropriately Considered Prior NEPA Review ..... 9

E. There Is No Ongoing Federal Action Triggering NEPA Review ..... 9

F. Vacatur of BSEE's Decisions Is Not Warranted ..... 11

III. CONCLUSION ..... 12

LATHAM&WATKINS LLP
ATTORNEYS AT LAW

i

CASE NO. 2:24-CV-05459-MWC-MAA
SABLE'S REPLY IN SUPPORT OF
CROSS-MOT. FOR SUMM. J.

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*All. for the Wild Rockies v. Burman*, 499 F. Supp. 3d 786 (D. Mont. 2020) .....5

*All. for the Wild Rockies v. U.S. Dep't of Agric.*, 772 F.3d 592 (9th Cir. 2014) .....5

*Bundorf v. Jewell*, 142 F. Supp. 3d 1138 (D. Nev. 2015) .....10

*Cape Cod Hosp. v. Sebelius*, 630 F.3d 203 (D.C. Cir. 2011) .....4

*Citizens for Better Forestry v. U.S. Dep't of Agric.*, 481 F. Supp. 2d 1059 (N.D. Cal. 2007) .....8

*Cmtys. Against Toxics v. EPA*, 688 F.3d 989 (9th Cir. 2012) .....12

*Ctr. for Biological Diversity v. Salazar*, 706 F.3d 1085 (9th Cir. 2013) .....3, 10

*Ctr. for Biological Diversity v. U.S. Bureau of Land Mgmt.*, No. 23-3624, 2025 WL 1669344 (9th Cir. June 13, 2025) .....12

*Ctr. for Cmty. Action & Env't Justice v. FAA*, 18 F.4th 592 (9th Cir. 2021) .....6

*Defs. of Wildlife v. U.S. Army Corps of Eng'rs*, No. CV-15-14-GF-BMM, 2017 WL 1405732 (D. Mont. Apr. 19, 2017) .....2

*Dep't of Homeland Sec. v. Regents of the Univ. of Cal.*, 591 U.S. 1 (2020) .....4

*Desert Citizens Against Pollution v. Bisson*, 231 F.3d 1172 (9th Cir. 2000) .....12

LATHAM&WATKINS LLP ATTORNEYS AT LAW

ii

CASE NO. 2:24-CV-05459-MWC-MAA SABLE'S REPLY IN SUPPORT OF CROSS-MOT. FOR SUMM. J.

*Diné Citizens Against Ruining Our Env't v. Jewell*, 312 F. Supp. 3d 1031 (D.N.M. 2018)....4

*Earth Island Inst. v. Muldoon*, 82 F.4th 624 (9th Cir. 2023)....6

*Env't Def. Ctr. v. Bureau of Ocean Energy Mgmt.*, 36 F.4th 850 (9th Cir. 2022)....4, 8

*Friends of the Inyo v. U.S. Forest Serv.*, 103 F.4th 543 (9th Cir. 2024)....8

*Gen. Chem. Corp. v. United States*, 817 F.2d 844 (D.C. Cir. 1987)....6

*Hayes v. Osage Mins. Council*, 699 F. App'x 799 (10th Cir. 2017)....2

*Idaho Conservation League v. Bonneville Power Admin.*, 826 F.3d 1173 (9th Cir. 2016)....10

*Idaho Rivers United v. U.S. Army Corps of Eng'rs*, No. 14-cv-1800, 2016 WL 498911 (W.D. Wash. Feb. 9, 2016)....4

*Lands Council v. Powell*, 395 F.3d 1019 (9th Cir. 2005)....9

*Metcalf v. Daley*, 214 F.3d 1135 (9th Cir. 2000)....2, 3

*Muckleshoot Indian Tribe v. U.S. Forest Serv.*, 177 F.3d 800 (9th Cir. 1999)....7

*N. Plains Res. Council, Inc. v. Surface Transp. Bd.*, 668 F.3d 1067 (9th Cir. 2011)....9

*Nat. Res. Def. Council v. Haaland*, 102 F.4th 1045 (9th Cir. 2024)....6

*Native Ecosystems Council v. Weldon*, 697 F.3d 1043 (9th Cir. 2012)....7

LATHAM&WATKINS LLP
ATTORNEYS AT LAW

iii

CASE NO. 2:24-CV-05459-MWC-MAA
SABLE'S REPLY IN SUPPORT OF
CROSS-MOT. FOR SUMM. J.

*Native Vill. of Nuiqsut v. Bureau of Land Mgmt.*,
9 F.4th 1201 (9th Cir. 2021) ....................2, 4

*Or. Nat. Desert Ass'n v. Freeborn*,
458 F. App'x 605 (9th Cir. 2011) ....................4

*Pit River Tribe v. U.S. Forest Serv.*,
469 F.3d 768 (9th Cir. 2006) ....................2, 3

*Pollinator Stewardship Council v. EPA*,
806 F.3d 520 (9th Cir. 2015) ....................12

*Prutehi Litekyan: Save Ritidian v. U.S. Dep't of Airforce*,
128 F.4th 1089 (9th Cir. 2025) ....................2, 3

*S. Utah Wilderness All. v. Smith*,
110 F.3d 724 (10th Cir. 1997) ....................2

*S. Utah Wilderness All. v. U.S. Dep't of the Interior*,
250 F. Supp. 3d 1068 (D. Utah 2017)....................2

*Safari Club Int'l v. Haaland*,
31 F.4th 1157 (9th Cir. 2022) ....................11

*San Luis & Delta-Mendota Water Auth. v. Locke*,
776 F.3d 971 (9th Cir. 2014) ....................5

*Seven Cnty. Infrastructure Coal. v. Eagle Cnty., Colo.*,
145 S. Ct. 1497 (2025)....................3, 5, 6, 7, 8, 11

*Sierra Club v. Bosworth*,
465 F. Supp. 2d 931 (N.D. Cal. 2006)....................10

*Slockish v. U.S. Dep't of Transp.*,
No. 21-35220, 2021 WL 5507413 (9th Cir. Nov. 24, 2021)....................5

*Solar Energy Indus. Ass'n v. FERC*,
80 F.4th 956 (9th Cir. 2023) ....................11

*West v. Sec'y of Dep't of Transp.*,
206 F.3d 920 (9th Cir. 2000) ....................8

LATHAM&WATKINS LLP
ATTORNEYS AT LAW

iv

CASE NO. 2:24-CV-05459-MWC-MAA
SABLE'S REPLY IN SUPPORT OF
CROSS-MOT. FOR SUMM. J.

## STATUTES

42 U.S.C.
§ 4336(a)(2) .... 11
§ 4336(b) .... 9

## REGULATIONS

30 C.F.R.
§ 250.180(e) .... 5
§ 550.202 .... 8
§§ 550.241-550.262 .... 8

43 C.F.R.
§ 46.120(a) .... 9
§ 46.120(b) .... 9

LATHAM & WATKINS LLP
ATTORNEYS AT LAW

v

CASE NO. 2:24-CV-05459-MWC-MAA
SABLE'S REPLY IN SUPPORT OF
CROSS-MOT. FOR SUMM. J.

## I. INTRODUCTION

Plaintiffs insist that the Bureau of Safety and Environmental Enforcement's ("BSEE") Environmental Assessment ("EA"), Finding of No Significant Impact ("FONSI"), and new decision re-affirming the 2023 extension of time to resume operations ("2023 Extension") do not moot their claims. But this additional analysis is the relief that Plaintiffs seek in their first, second, and fourth claims, and these superseding approvals render each claim moot. Similarly, Plaintiffs' third claim challenging categorical exclusions ("CatExs") for applications for permits to modify ("APMs") two existing wells is moot because these narrow approvals do not involve ongoing activities, contrary to Plaintiffs' assertions. Additionally, the 2023 Extension was not necessary to obtain the APMs, and the challenged approvals were not necessary to restart the Santa Ynez Unit's ("SYU") production. Oil and gas operations at the SYU were approved previously as reflected in the Development and Production Plan ("DPP") and Unit Agreement. Plaintiffs ask this Court to ignore these inconvenient facts and second-guess BSEE in a way the U.S. Supreme Court unequivocally rejected in its recent *Seven County* decision. Given the narrow scope of the challenged approvals—an extension of time and approval to conduct nominal well reworking, the record before the agency, and the substantial deference to which BSEE is entitled, Plaintiffs' challenges under the National Environmental Policy Act ("NEPA"), the Outer Continental Shelf Lands Act ("OCSLA"), and the Administrative Procedure Act ("APA") fail.

## II. ARGUMENT

### A. All of Plaintiffs' Claims Are Moot

In arguing the first, second, and fourth claims are not moot, Plaintiffs ignore that approximately one month ago BSEE relied on a new EA and issued a superseding decision on the 2023 Extension. Where agencies conduct superseding NEPA analyses and issue superseding decisions, courts consistently find

LATHAM&WATKINS LLP
ATTORNEYS AT LAW

1

CASE NO. 2:24-CV-05459-MWC-MAA
SABLE'S REPLY IN SUPPORT OF
CROSS-MOT. FOR SUMM. J.

challenges to the preceding reviews and approvals moot.  *See* Sable's Opp'n to Pls.' Mot. for Summ. J. & Cross-Mot. for Summ. J., Dkt. 76-1 at §§ IV.A.1 & IV.A.2; *Native Vill. of Nuiqsut v. Bureau of Land Mgmt.*, 9 F.4th 1201, 1210 (9th Cir. 2021) ("[W]hen the environmental report at issue 'has been superseded, and the federal agencies will rely' on a new and different report 'for the near future,' the case is moot.") (citation omitted).[1]  The EA analyzed the issues raised by Plaintiffs' February 2023 letter, including effects from "the reasonably foreseeable action of the three SYU platforms . . . fully producing oil from existing wells." Dkt. 76-3 at 25, 39-61, 69-80.  After finding it would have no significant impacts, BSEE approved the 2023 Extension in a superseding decision.  Dkt. 76-4.

Because Plaintiffs received "the precise relief sought," via more detailed NEPA analysis and a new national interest determination, those claims are now moot.  Dkt. 76-1 at 10.  Plaintiffs' mischaracterization (at Dkt. 78 at 4-9) of BSEE's decisions as "post-hoc" has no bearing on mootness because "mootness concerns events occurring *after* the alleged violation."  *See S. Utah Wilderness All. v. Smith*, 110 F.3d 724, 729 (10th Cir. 1997).  Thus, these decisions "can be considered in determining whether the relief . . . has already been obtained."  *Id.*

Plaintiffs' cited cases are inapposite.  In *Pit River Tribe v. U.S. Forest Serv.*, 469 F.3d 768 (9th Cir. 2006), *Metcalf v. Daley*, 214 F.3d 1135 (9th Cir. 2000), and *Prutehi Litekyan: Save Ritidian v. U.S. Dep't of Airforce*, 128 F.4th 1089 (9th Cir. 2025), the agencies failed to conduct *any* environmental review prior to taking the challenged action.  Unlike here, *Pit River* (and the cases discussed therein) did not involve an already existing operation approved and developed *after* an extensive NEPA process with valid lease rights.  In *Pit River*, the Court found that an

---

[1] *See also Defs. of Wildlife v. U.S. Army Corps of Eng'rs*, No. CV-15-14-GF-BMM, 2017 WL 1405732, at *5 (D. Mont. Apr. 19, 2017) ("Ninth Circuit case law counsels that any claims based on the superseded [NEPA documents] now prove moot."); *Hayes v. Osage Mins. Council*, 699 F. App'x 799, 803 (10th Cir. 2017) (NEPA claims moot); *S. Utah Wilderness All. v. U.S. Dep't of the Interior*, 250 F. Supp. 3d 1068, 1087-88 (D. Utah 2017) (challenge to applications for permit to drill moot where agency replaced them after additional analysis).

LATHAM&WATKINS LLP
ATTORNEYS AT LAW

2

CASE NO. 2:24-CV-05459-MWC-MAA
SABLE'S REPLY IN SUPPORT OF
CROSS-MOT. FOR SUMM. J.

Environmental Impact Statement ("EIS") prepared subsequently for a geothermal power plant after the agency already extended the leases twice to support the plant could not "compensate for the nonexistent earlier review" or whether the area "should be developed for energy at all." 469 F.3d at 785, 787; *see also id*. at 786 (subsequent EIS failed to review "whether the leases should have been extended" and thus could not remedy the earlier violation). Similarly, in *Metcalf*, the federal agency bound itself in writing to support the resumption of hunting of gray whales by the Makah Tribe before any NEPA review was conducted. 214 F.3d at 1145. In *Prutehi*, the agency undertook to dispose of hazardous waste without any NEPA review. 128 F.4th at 1104.

Unlike in these cases, here BSEE conducted NEPA reviews in the form of CatExs and did look before it leaped in granting the extension of time and APMs based on the lengthy record before it.[2] *See Ctr. for Biological Diversity v. Salazar*, 706 F.3d 1085, 1096 (9th Cir. 2013) ("*Salazar*") ("categorical exclusion is not an exemption from NEPA; rather, it is a form of NEPA compliance"). This record includes the plain language of the Unit Agreement which independently maintains the leases, along with the preservation plan in place when the extension of time was granted, and a multitude of BSEE inspections. Dkt. 76-1 at 2, 5-7, 11-15, 18-22. Plaintiffs ignore the Unit Agreement and DPP and thus are wrong as a matter of law when they argue (at 1, 4, 7) that Sable was only able to obtain APMs at Platform Heritage and restart Platform Harmony because of the challenged 2023 Extension. Contrary to Plaintiffs' argument (at 3-4, 6), the "irreversible commitment of resources" for oil and gas operation at the SYU occurred when the DPP was approved, *after* extensive NEPA review, not when BSEE approved the 2023 Extension, during which operations remained idle. And BSEE has now

[2] While the outcome in *Pit River* hinged on the court's "de novo review of the administrative record," 469 F.3d at 778 (citation omitted), the Supreme Court has made clear that "[t]he bedrock principle of judicial review in NEPA cases can be stated in a word: Deference." *Seven Cnty. Infrastructure Coal. v. Eagle Cnty., Colo.*, 145 S. Ct. 1497, 1515 (2025) ("*Seven County*").

evaluated an EA "for BSEE to review and either approve or deny" the extension request, which included denial of the extension as an alternative, Dkt. 76-3 at 5, 37-38, and a new national interest determination, Dkt. 76-4, which unquestionably supersedes and moots the earlier decision.[3] Because "circumstances have changed since the beginning of litigation that forestall any occasion for meaningful relief," Plaintiffs' claims are also prudentially moot. *See Idaho Rivers United v. U.S. Army Corps of Eng'rs*, No. 14-cv-1800, 2016 WL 498911, at *8 (W.D. Wash. Feb. 9, 2016); Dkt. 76-1 at 11-12.

With respect to Plaintiffs' third claim challenging the APMs, Plaintiffs do not dispute that well reworking activity at the two wells is complete. *See* Dkt. 78 at 9. Routine, minor perforation work was conducted under the challenged APMs hundreds of feet below ground, and this work cannot be undone. AR_0000023 (HE023 work 639 feet below mudline); AR_0000030 (HE028 work 575 feet below mudline); Dkt. 76-1 at 10-11. Plaintiffs attempt to distinguish *Nuiqsut* by arguing "Sable is seeking to restart full production at the Santa Ynez Unit by returning shut-in wells to production[.]" Dkt. 78 at 8. But the work under these two APMs at Platform Heritage was not needed for restart of production at Platform Harmony in May 2025 under existing approvals, *see* Dkt. 76-1 at 1, 6-7, 19, and the work under the challenged APMs cannot be undone. *See Nuiqsut*, 9 F.4th at 1209. Similarly, this challenge to the two APMs is distinguishable from the circumstances Plaintiffs rely on in *Diné Citizens* because Plaintiffs improperly conflate these two APMs with the effects of a broader "restart" of production. *See Diné Citizens Against Ruining Our Env't v. Jewell*, 312 F. Supp. 3d 1031, 1080

---

[3] The remainder of Plaintiffs' cases are irrelevant. *See, e.g., Env't Def. Ctr. v. Bureau of Ocean Energy Mgmt.*, 36 F.4th 850 (9th Cir. 2022) (does not address mootness); *Cape Cod Hosp. v. Sebelius*, 630 F.3d 203, 210 (D.C. Cir. 2011) (subsequent agency rule that did not compensate for underpayments did not moot case); *Or. Nat. Desert Ass'n v. Freeborn*, 458 F. App'x 605, 606 (9th Cir. 2011) (subsequent decisions left challenged conditions in effect); *Dep't of Homeland Sec. v. Regents of the Univ. of Cal.*, 591 U.S. 1 (2020) (does not address mootness).

(D.N.M. 2018), *aff'd in part, rev'd in part and remanded sub nom. Diné Citizens Against Ruining Our Env't v. Bernhardt*, 923 F.3d 831 (10th Cir. 2019).

Finally, there is no relief that Plaintiffs seek that either has not been provided in BSEE's recent analyses and decisions or that can be effectively given by this Court. Because the "precise relief sought by" Plaintiffs has been given by BSEE, their claims are moot. *See All. for the Wild Rockies v. U.S. Dep't of Agric.*, 772 F.3d 592, 601 (9th Cir. 2014). Plaintiffs argue that BSEE "could consider alternatives to" to the extension of time, Dkt. 78 at 10, which BSEE did by considering three alternatives: approval of the lease extension, denial of the lease extension, and "no action." Dkt. 76-3 at 5.[4] Plaintiffs also suggest (at 10) that BSEE could develop additional mitigation measures, but ignore that BSEE included a suite of mitigation measures in the 2025 FONSI and national interest determination. Dkt. 76-3 at 8-9; Dkt. 76-4 at 85-86. Finally, because the substantive remedies Plaintiffs request have been provided, their request for declaratory relief would be ineffective. *See, e.g., All. for the Wild Rockies v. Burman*, 499 F. Supp. 3d 786, 791 (D. Mont. 2020) (declaratory relief when agency has already undertaken administrative activities demanded in lawsuit "would result in an 'improper advisory opinion'") (citation omitted); *Slockish v. U.S. Dep't of Transp.*, No. 21-35220, 2021 WL 5507413, at *2 (9th Cir. Nov. 24, 2021) (claim for declaratory relief moot because "[d]eclaratory relief must correspond with a separate remedy that will redress Plaintiffs' injuries").[5]

---

[4] If Plaintiffs want BSEE to limit the scope of production from approved facilities (*e.g.*, abandon existing SYU assets) as part of its extension decision, 30 C.F.R. § 250.180(e) does not give BSEE authority to do so. Plaintiffs' new suggestion (which is not in the Complaint) cannot rely on an *ultra vires* action from BSEE.

[5] Plaintiffs ask this Court to assume the new EA/FONSI is inadequate because BSEE's objectivity "cannot be trusted." *See* Dkt. 78 at 22. But this new decision is not before the Court and the Supreme Court recently counseled that courts may not "excessively second-guess[]" an agency's discretion under NEPA. *Seven Cnty.*, 145 S. Ct. at 1512 ("The agency is better equipped to assess what facts are relevant to the agency's own decision than a court is."); *see also San Luis & Delta-Mendota Water Auth. v. Locke*, 776 F.3d 971, 994 (9th Cir. 2014) (presumption of regularity due to agency decisions).

LATHAM&WATKINS LLP
ATTORNEYS AT LAW

5

CASE NO. 2:24-CV-05459-MWC-MAA
SABLE'S REPLY IN SUPPORT OF
CROSS-MOT. FOR SUMM. J.

### B. BSEE's CatEx and National Interest Determination For the 2023 Extension Were Reasonable

Plaintiffs do not address the record evidence that BSEE considered in approving the 2023 Extension, including BSEE's national interest determination. *See* Dkt. 78 at 14-16; Dkt. 76-1 at 3-5, 12-18. Instead, Plaintiffs rely entirely on BSEE's statements in seeking remand to argue that the CatEx is flawed. *E.g.*, Dkt. 78 at 15. But notwithstanding federal concessions, perfection is not required. *See Seven Cnty.*, 145 S. Ct. at 1511; *Earth Island Inst. v. Muldoon*, 82 F.4th 624, 637 (9th Cir. 2023). Plaintiffs again argue (at 15) that BSEE failed to consider certain environmental factors in the national interest determination, but BSEE has broad discretion in making this determination and did consider relevant environmental factors based on the whole record before the agency. Dkt. 76-1 at 16-18. Plaintiffs have failed to meet their burden under the APA of showing that BSEE's decision was inadequate in light of the entire record. *See, e.g., Ctr. for Cmty. Action & Env't Justice v. FAA*, 18 F.4th 592, 599 (9th Cir. 2021) (plaintiff in APA case bears the burden); *Nat. Res. Def. Council v. Haaland*, 102 F.4th 1045, 1056 (9th Cir. 2024) (courts consider whole record).

Sable explained, with detailed citations to the extensive record, why BSEE's determination that there were no extraordinary circumstances was reasonable. Dkt. 76-1 at 3-5, 13-18. In response, Plaintiffs criticize BSEE's conclusion that "it was reasonable for the agency to assume operations would remain shut down given the representations ExxonMobil . . . made[.]" Dkt. 78 at 16. Plaintiffs continue to ignore the fact that not only was this assumption reasonable, it was accurate—the operations remained idle during the 2023 Extension period. Dkt. 76-1 at 14. BSEE's determination—which simply maintained the status quo—was reasonable under NEPA's deferential standard. *See Seven Cnty.*, 145 S. Ct. at 1511.[6]

---

[6] Plaintiffs' cases do not address the circumstance here where a CatEx is supported by an extensive record. *See Gen. Chem. Corp. v. United States,* 817 F.2d 844, 857

LATHAM&WATKINS LLP
ATTORNEYS AT LAW

6

CASE NO. 2:24-CV-05459-MWC-MAA
SABLE'S REPLY IN SUPPORT OF
CROSS-MOT. FOR SUMM. J.

### C. BSEE's CatExs For the Two APMs Complied With NEPA

BSEE's use of CatExs for the APMs was reasonable based on the record. *See Seven Cnty.*, 145 S. Ct. at 1511 (agency entitled to deference). Plaintiffs argue that the APMs "enable the resumption of production[.]" Dkt. 78 at 17. Not so. The SYU was permitted for oil-and-gas production after environmental review by multiple agencies and approval of the DPPs. Dkt. 76-1 at 3-5. Neither the APMs nor other federal approvals were required to resume production. The APMs were for activities at existing wells HE-23 and HE-28 located at Platform Heritage, and production has resumed on Platform Harmony. *Id.* at 6-7. Plaintiffs cite the Hesson Declaration, which states that the APMs "allow for increased flow and restoration of production to levels prior to the 2015 shut-in *once production is resumed*"—not that the APMs were necessary to resume production in the first instance. *See* Hesson Decl., Dkt. 37-1 ¶ 13 (emphasis added). BSEE found the APMs covered "normal well-reworking operations . . . consistent with those activities considered and evaluated in the original [DPP][.]" AR_0000037, 40. Plaintiffs have not shown that BSEE's determination was incorrect. *See Native Ecosystems Council v. Weldon*, 697 F.3d 1043, 1051 (9th Cir. 2012) (deference owed to agency's "scientific judgments and technical analyses" under NEPA).

Plaintiffs argue that the CatEx does not "apply to this unique situation[.]" Dkt. 78 at 17. But there is no "unique situation" exception for a CatEx under NEPA, and here the environmental effects and risks are well understood. Plaintiffs also suggest that the CatEx does not apply because none of the mitigation measures in the DPP "account for a restart of production" under Plaintiffs' misappraisal of the circumstances before BSEE. *Id.* But Plaintiffs do not grapple with any of the DPP's mitigation measures, let alone explain why existing mitigation is inadequate even under their theory. Dkt. 76-1 at 19. Plaintiffs ignore that the DPP provides

---

(D.C. Cir. 1987) (agency conclusion "not supported by substantial evidence on the record considered as a whole"); *Muckleshoot Indian Tribe v. U.S. Forest Serv.*, 177 F.3d 800, 814 (9th Cir. 1999) (agency did not analyze purchase of land).

LATHAM&WATKINS LLP
ATTORNEYS AT LAW

7

CASE NO. 2:24-CV-05459-MWC-MAA
SABLE'S REPLY IN SUPPORT OF
CROSS-MOT. FOR SUMM. J.

that oil-and-gas activities comply with OCSLA, are safe, and protective of the environment. *See* 30 C.F.R. §§ 550.202, 550.241-550.262. And critically, the scope of activities before BSEE was narrow when the agency evaluated the well reworking at two wells, and BSEE considered the age of the infrastructure and measures to ensure it remains safe. Dkt. 76-1 at 4, 15-16.

Plaintiffs' cases are not relevant because they involve situations where—unlike here—the agency applied a CatEx to an activity that did not fall within its scope. *See* Dkt. 78 at 18; *West v. Sec'y of Dep't of Transp.*, 206 F.3d 920, 929 (9th Cir. 2000) (CatEx inapplicable to freeway interchange by its terms); *Friends of the Inyo v. U.S. Forest Serv.*, 103 F.4th 543, 553 (9th Cir. 2024) ("no single [CatEx] could cover the proposed action alone"); *Citizens for Better Forestry v. U.S. Dep't of Agric.*, 481 F. Supp. 2d 1059, 1067, 1083, 1086 (N.D. Cal. 2007) (CatExs inapplicable). Here, BSEE did not "blindly apply" its CatEx or "select[] the wrong path," Dkt. 78 at 18; well reworking on an already existing well is a minor activity that has no significant impacts. *See* AR_0016030, 33, 42, 70, 72, 74-77, 82-96 (2018 Programmatic EA analyzing APDs and APMs' impacts and finding these activities are not likely to adversely affect air quality or listed species). Plaintiffs misleadingly suggest another agency found adverse effects from "oil and gas activity" but ignore the different scope of actions being evaluated by the government. Dkt. 78 at 20. The same holds true for their reliance on *Env't Def. Ctr.*, 36 F.4th at 879 (evaluating offshore fracking, which was not proposed or used for the APMs here). BSEE appropriately used CatExs for the APMs. *See Seven Cnty.*, 145 S. Ct. at 1513 (courts should not "micromanage" agency choices).

Plaintiffs argue that BSEE did not adequately consider impacts to endangered species and air emissions. Dkt. 78 at 19. But the APMs approved routine well reworking deep underground for an existing oil-and-gas operation. Even so, Plaintiffs ignore the 2024 Biological Opinion and the DPP's mitigation measures in place when the decisions were made. Dkt. 76-1 at 19, 21-22.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW

8

CASE NO. 2:24-CV-05459-MWC-MAA
SABLE'S REPLY IN SUPPORT OF
CROSS-MOT. FOR SUMM. J.

Plaintiffs cite their 2023 letter for the proposition that the SYU "was the County's largest facility source of several emissions, including greenhouse gas emissions." Dkt. 78 at 19. But Plaintiffs fail to show why these air emissions, which appear to be for the entire SYU and onshore processing facilities, could preclude BSEE from relying on CatExs for the minor perforation work on existing wells under the APMs. Plaintiffs fail to explain why BSEE could not properly consider prior NEPA analysis of air quality and climate change. Dkt. 76-1 at 3, 15, 21.

**D. BSEE Appropriately Considered Prior NEPA Review**

BSEE's use of CatExs for the 2023 Extension and two APMs was reasonable based on the full record before the agency. *Supra* Sections II.B & II.C; Dkt. 76-1 at 3-5. BSEE's consideration of prior NEPA reviews in these CatExs does not render those CatExs unlawful as Plaintiffs claim through reference to "outdated information." Dkt. 78 at 20-22. To the contrary, the Department of the Interior's NEPA regulations direct the use of existing NEPA analyses. 43 C.F.R. § 46.120(a); *id.* § 46.120(b) (agency "should use [] existing NEPA analyses and/or their underlying data and assumptions where feasible").[7] The cases Plaintiffs cite do not require an agency to ignore prior environmental review when preparing new NEPA analysis. *See N. Plains Res. Council, Inc. v. Surface Transp. Bd.*, 668 F.3d 1067, 1086 (9th Cir. 2011) (finding EIS could not rely on old aerial photographs in lieu of on-the-ground surveys); *Lands Council v. Powell*, 395 F.3d 1019, 1031 (9th Cir. 2005) (finding agency failed to use up-to-date evidence). In any event, the record demonstrates that BSEE conducted a contemporaneous evaluation in the CatExs based upon then-existing information. AR_0000037-42, 426-30.

**E. There Is No Ongoing Federal Action Triggering NEPA Review**

Plaintiffs also argue BSEE was obligated to prepare a supplemental EIS because "oil and gas activity at the Santa Ynez Unit is ongoing and incomplete

---

[7] Plaintiffs also concede that the underlying NEPA analyses are not "programmatic" and thus 42 U.S.C. § 4336b does not apply. *See* Dkt. 78 at 21.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
9
CASE NO. 2:24-CV-05459-MWC-MAA
SABLE'S REPLY IN SUPPORT OF CROSS-MOT. FOR SUMM. J.

such that there remains a major federal action to occur[.]" Dkt. 78 at 21-22. This is incorrect. Oil and gas activity at the SYU was previously approved in the DPP and Unit Agreement, after extensive NEPA review. Dkt. 76-1 at 2-5. "Decisions made as a part of the ongoing operation of a federal project must themselves 'rise to the level of major federal actions to warrant preparation of an EIS.' Requiring an agency to prepare an EIS every time it takes an action consistent with past conduct would grind agency decisionmaking to a halt." *Idaho Conservation League v. Bonneville Power Admin.*, 826 F.3d 1173, 1177 (9th Cir. 2016) (citations omitted) (changes in dam operation not a major federal action). Here, BSEE appropriately conducted NEPA review for the 2023 Extension and APMs through CatExs, and Plaintiffs fail to point to any *other* major federal actions triggering NEPA. Therefore, Plaintiffs' attempt to distinguish *Salazar*, 706 F.3d 1085, is misplaced. *See* Dkt. 78 at 21. There the Ninth Circuit held that, after a 17-year pause in mining, BLM's independent actions—issuing a gravel permit under a CatEx and updated reclamation bond—before restarting operations did not trigger supplementation of the operations plan's prior NEPA analysis. *Salazar*, 706 F.3d at 1094-96. The same is true here. To comply with NEPA, BSEE prepared CatExs for the 2023 Extension and APMs. The fact that BSEE has authority over ongoing operations at the facility, as Plaintiffs state (at 22), does not change the need for a statutory trigger for NEPA review: a new major federal action.

Plaintiffs' remaining authority does not support their claim. *See Sierra Club v. Bosworth*, 465 F. Supp. 2d 931, 939 (N.D. Cal. 2006) (agency had not approved "operating plan" for logging akin to approved SYU DPP at AR_0024713-25203); *Bundorf v. Jewell*, 142 F. Supp. 3d 1138, 1050-51 (D. Nev. 2015) (agency had not issued right-of-way for wind energy project). Unlike *Sierra Club* and *Bundorf*, Plaintiffs have failed to show "that a major federal action remains to occur" prior to restarting operations or otherwise. *See Bundorf,* 142 F. Supp. 3d at 1151. Indeed, the only approvals Plaintiffs challenge are for three discrete federal actions

LATHAM&WATKINS LLP
ATTORNEYS AT LAW

10

CASE NO. 2:24-CV-05459-MWC-MAA
SABLE'S REPLY IN SUPPORT OF
CROSS-MOT. FOR SUMM. J.

(the 2023 Extension and two 2024 APMs) that were taken after BSEE complied with NEPA by preparing CatExs for each. By definition, CatExs are for "actions that have been predetermined not to involve significant environmental impacts, and therefore require no further agency analysis absent extraordinary circumstances." *Safari Club Int'l v. Haaland,* 31 F.4th 1157, 1179 (9th Cir. 2022) (citations omitted). Under NEPA, an agency "is not required to prepare an environmental document [EIS or EA/FONSI] with respect to a proposed agency action if . . . the proposed agency action is excluded pursuant to one of the agency's categorical exclusions." 42 U.S.C. § 4336(a)(2).

**F. Vacatur of BSEE's Decisions Is Not Warranted**

Although Plaintiffs' claims fail, if the Court finds for Plaintiffs, then supplemental briefing is warranted to address the appropriate remedy because BSEE already completed the additional NEPA analysis that Plaintiffs seek and issued a new decision. Even if the 2023 Extension was vacated, BSEE's 2025 superseding decision would remain in place. Additionally, vacatur is no longer "the presumptive remedy for agency actions held contrary to law" as Plaintiffs argued. Dkt. 68 at 24. The Supreme Court recently clarified that a NEPA "deficiency may not necessarily require a court to vacate the agency's ultimate approval of a project." *Seven Cnty.*, 145 S. Ct. at 1514. Plaintiffs attempt to distinguish *Seven County* because the present case does not involve an EIS, Dkt. 78 at 24, but the Supreme Court's emphasis on judicial discretion and the distinction between reviewing an environmental *documen*t and an agency *decision* applies to all NEPA cases due to NEPA's "purely procedural" status. 145 S. Ct. at 1514.

Plaintiffs also misapply the "the two-factor balancing test," which requires courts considering vacatur of an agency's action to "weigh the seriousness of the agency's errors against 'the disruptive consequences of an interim change that may itself be changed.'" *Solar Energy Indus. Ass'n v. FERC*, 80 F.4th 956, 997 (9th Cir. 2023) (citations omitted). Plaintiffs incorrectly state that, to remand without

LATHAM&WATKINS LLP
ATTORNEYS AT LAW

11

CASE NO. 2:24-CV-05459-MWC-MAA
SABLE'S REPLY IN SUPPORT OF
CROSS-MOT. FOR SUMM. J.

vacatur, courts must determine that "there will be harm to the *environment* from vacatur." Dkt. 78 at 23 (emphasis in original). Although courts "have chosen to leave a rule in place when vacating would risk such harm," this is not the only basis. *See Pollinator Stewardship Council v. EPA*, 806 F.3d 520, 532 (9th Cir. 2015). As Plaintiffs' authority notes, courts "also look[] at whether the agency would likely be able to offer better reasoning or whether by complying with procedural rules, it could adopt the same [decision] on remand." *Id*. Here, the Court need not speculate whether BSEE *could* "offer better reasoning" for the challenged decisions. BSEE already has already done so for the 2023 Extension. And the challenged well reworking activity is complete and cannot be undone. Thus, neither the 2023 Extension nor the two APMs should be vacated.

Finally, Plaintiffs ignore that halting costly infrastructure projects and related jobs are precisely the type of "disruptive consequences" courts weigh when considering vacatur. *See, e.g., Cmtys. Against Toxics v. EPA*, 688 F.3d 989, 994 (9th Cir. 2012); *Ctr. for Biological Diversity v. U.S. Bureau of Land Mgmt.*, No. 23-3624, 2025 WL 1669344, at *24 (9th Cir. June 13, 2025) (declining to vacate decision for "a billion-dollar" oil and gas project "potentially employing upwards of 1,000 people," which would be "economically disastrous," notwithstanding "a NEPA deficiency in BLM's approval"). Plaintiffs instead ask the Court to ignore the nearly one billion dollars Sable could lose, *see* Dkt. 39-1 ¶ 16; Dkt. 78 at 24. *Desert Citizens Against Pollution v. Bisson*, 231 F.3d 1172 (9th Cir. 2000), relied on by Plaintiffs, is not relevant because the court did not consider remand without vacatur or examine "disruptive consequences". Regardless, Sable purchased the leases after prior extensions of time had been approved, without challenge since 2015, and well before Plaintiffs initiated this action.

## III. CONCLUSION

Sable respectfully requests that the Court deny Plaintiffs' Motion for Summary for Judgment and grant Sable's Cross-Motion for Summary Judgment.

Dated: June 27, 2025

Respectfully submitted,

LATHAM & WATKINS LLP

By: /s/ *Daniel P. Brunton*

Daniel P. Brunton (Bar No. 218615)
Email: daniel.brunton@lw.com
12670 High Bluff Drive
San Diego, CA 92130
Tel.: (858) 523-5400
Fax: (858) 523-5450

Michael G. Romey (Bar No. 137993)
Email: michael.romey@lw.com
355 South Grand Avenue, Suite 100
Los Angeles, CA 90071-1560
Tel.: (213) 485-1234
Fax: (213) 891-8763

Janice M. Schneider
(*Pro Hac Vice*)
Email: janice.schneider@lw.com
Devin M. O'Connor
(*Pro Hac Vice*)
Email: devin.o'connor@lw.com
555 Eleventh Street, NW, Suite 1000
Washington, D.C. 20004-1304
Tel.: (202) 637-2200
Fax: (202) 637-2201

*Attorneys for Intervenor-Defendant Sable Offshore Corp.*

LATHAM & WATKINS LLP
ATTORNEYS AT LAW

13

CASE NO. 2:24-CV-05459-MWC-MAA
SABLE'S REPLY IN SUPPORT OF
CROSS-MOT. FOR SUMM. J.

## CERTIFICATE OF COMPLIANCE

The undersigned, counsel of record for Intervenor-Defendant Sable Offshore Corp., certifies that this brief contains 12 pages, which complies with the page limit set by the Court's Standing Order (Dkt. 34).

Dated: June 27, 2025

By: /s/ *Daniel P. Brunton*
Daniel P. Brunton (Bar No. 218615)

LATHAM&WATKINS LLP
ATTORNEYS AT LAW

14

CASE NO. 2:24-CV-05459-MWC-MAA
SABLE'S REPLY IN SUPPORT OF
CROSS-MOT. FOR SUMM. J.