LATHAM & WATKINS LLP
Daniel P. Brunton (Bar No. 218615)
Email: daniel.brunton@lw.com
12670 High Bluff Drive
San Diego, CA 92130
Tel.: (858) 523-5400
Fax: (858) 523-5450

Michael G. Romey (Bar No. 137993)
Email: michael.romey@lw.com
355 South Grand Avenue, Suite 100
Los Angeles, CA 90071-1560
Tel.: (213) 485-1234
Fax: (213) 891-8763

Janice M. Schneider (*Pro Hac Vice*)
Email: janice.schneider@lw.com
Devin M. O'Connor (*Pro Hac Vice*)
Email: devin.o'connor@lw.com
555 Eleventh Street, NW, Suite 1000
Washington, D.C. 20004-1304
Tel.: (202) 637-2200
Fax: (202) 637-2201

*Attorneys for Intervenor-Defendant Sable Offshore Corp.*

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**WESTERN DIVISION**

| | |
|---|---|
| CENTER FOR BIOLOGICAL DIVERSITY, et al., <br><br> *Plaintiffs*, <br><br> v. <br><br> DOUG BURGUM, et al., <br><br> *Defendants*, <br><br> and <br><br> SABLE OFFSHORE CORP., <br><br> *Intervenor-Defendant*. | CASE NO. 2:24-cv-05459-MWC-MAA <br><br> **SUPPLEMENTAL BRIEF IN SUPPORT OF SABLE OFFSHORE CORP.'S CROSS-MOTION FOR SUMMARY JUDGMENT** <br><br><br> Judge: Hon. Michelle Williams Court <br> Courtroom: 6A |

LATHAM&WATKINS LLP
ATTORNEYS AT LAW

CASE NO. 2:24-CV-05459-MWC-MAA
SUPP. BRIEF ISO SABLE'S
CROSS-MOT. FOR SUMM. J.

# **TABLE OF CONTENTS**

**Page**

I. INTRODUCTION ...................................................................................................1

II. ARGUMENT .........................................................................................................2

    A. The 2025 Decision and EA are Beyond the Scope of this Action ..................................................................................................2

    B. Plaintiffs Have Not Shown the 2025 Decision and Environmental Assessment Are "Inherently Flawed" ..........................3

    C. Plaintiffs' Claims Are Moot ...............................................................10

III. CONCLUSION ....................................................................................................12

LATHAM&WATKINS LLP
ATTORNEYS AT LAW

i

CASE NO. 2:24-CV-05459-MWC-MAA
SUPP. BRIEF ISO SABLE'S
CROSS-MOT. FOR SUMM. J.

# TABLE OF AUTHORITIES

Page(s)

### CASES

*Akiak Native Cmty. v. U.S. Postal Serv.*,
 213 F.3d 1140 (9th Cir. 2000) ................................................................................3

*Aluminum Co. of Am. v. Adm'r, Bonneville Power Admin.*,
 175 F.3d 1156 (9th Cir. 1999) ...........................................................................5, 12

*Am. Cargo Transp., Inc. v. United States*,
 625 F.3d 1176 (9th Cir. 2010) ................................................................................4

*Bd. of Trs. of the Glazing Health & Welfare Trust v. Chambers*,
 941 F.3d 1195 (9th Cir. 2019) ................................................................................4

*Bering Strait Citizens for Responsible Res. Dev. v. U.S. Army Corps of Eng'rs*,
 524 F.3d 938 (9th Cir. 2008) ..................................................................................9

*Beverly Hills Unified School District v. Federal Transit Administration*,
 No. CV 12-9861-GW(SSX), 2016 WL 4650428 (C.D. Cal. Feb. 1, 2016) ......................................................................................................................9

*Camp v. Pitts*,
 411 U.S. 138 (1973) ................................................................................................3

*Charter Township of Huron, Michigan v. Richards*,
 997 F.2d 1168 (6th Cir. 1993) .........................................................................10, 12

*Citizens Advisory Comm. on Private Prisons, Inc. v. U.S. Department of Justice*,
 197 F. Supp. 2d 226 (W.D. Pa. 2001) ....................................................................8

*Ctr. for Biological Diversity v. Salazar*,
 706 F.3d 1085 (9th Cir. 2013) ................................................................................7

*Defs. of Wildlife v. U.S. Army Corps of Eng'rs*,
 No. CV-15-14-GF-BMM, 2017 WL 1405732 (D. Mont. Apr. 19, 2017) ......................................................................................................................5

LATHAM&WATKINS LLP
ATTORNEYS AT LAW

ii

CASE NO. 2:24-CV-05459-MWC-MAA
SUPP. BRIEF ISO SABLE'S
CROSS-MOT. FOR SUMM. J.

*Earth Island Inst. v. U.S. Forest Serv.*,
  87 F.4th 1054 (9th Cir. 2023) ....................................................................................2

*Gengler v. U.S. Through Dep't of Def. & Navy*,
  2006 WL 8458837 (E.D. Cal. Aug. 2, 2006) .............................................................3

*Greater Yellowstone Coal. v. Tidwell*,
  572 F.3d 1115 (10th Cir. 2009) ............................................................................5, 10

*Kern v. U.S. Bureau of Land Mgmt.*,
  284 F.3d 1062 (9th Cir. 2002) ..................................................................................10

*Metcalf v. Daley*,
  214 F.3d 1135 (9th Cir. 2000) ................................................................................6, 7

*Native Vill. of Nuiqsut v. Bureau of Land Mgmt.*,
  9 F.4th 1201 (9th Cir. 2021) ......................................................................................5

*Norton v. S. Utah Wilderness All.*,
  542 U.S. 55 (2004) .....................................................................................................6

*Oceana, Inc. v. Coggins*,
  2021 WL 1788516 (N.D. Cal. May 5, 2021) .............................................................3

*Pac. Rivers Council v. U.S. Forest Serv.*,
  942 F. Supp. 2d 1014 (E.D. Cal. 2013) .................................................................4, 9

*Pit River Tribe v. U.S. Forest Serv.*,
  469 F.3d 768 (9th Cir. 2006) ..................................................................................6, 7

*Pit River Tribe v. U.S. Forest Serv.*,
  615 F.3d 1069 (9th Cir. 2010) ....................................................................................8

*S. Utah Wilderness All. v. U.S. Dep't of the Interior*,
  250 F. Supp. 3d 1068 (D. Utah 2017) ........................................................................5

*San Luis & Delta-Mendota Water Auth. v. Jewell*,
  747 F.3d 581 (9th Cir. 2014) ......................................................................................3

*San Luis & Delta-Mendota Water Auth. v. Locke*,
  776 F.3d 971 (9th Cir. 2014) ..................................................................................2, 3

*Save the Yaak Comm. v. Block*,
  840 F.2d 714 (9th Cir. 1988) ......................................................................................6

LATHAM & WATKINS LLP
ATTORNEYS AT LAW

iii

CASE NO. 2:24-CV-05459-MWC-MAA
SUPP. BRIEF ISO SABLE'S
CROSS-MOT. FOR SUMM. J.

*Seven Cnty. Infrastructure Coal. v. Eagle Cnty., Colo.*,
  605 U.S. __, 145 S. Ct. 1497 (2025)...................................................................3

*Sierra Club v. Penfold*,
  857 F.2d 1307 (9th Cir. 1988) ..............................................................................4, 9

*The Fund for Animals v. Norton*,
  390 F. Supp. 2d 12 (D.D.C. 2005).........................................................................3

*United States v. Chem. Found.*,
  272 U.S. 1 (1926)....................................................................................................4

*Vance v. Block*,
  635 F. Supp. 163 (D. Mont. 1986).........................................................................7

*Vill. of False Pass v. Clark*,
  733 F.2d 605 (9th Cir. 1984) .................................................................................6

**STATUTES**

43 U.S.C. § 1351(e)(1)....................................................................................................6

**OTHER AUTHORITIES**

90 Fed. Reg. 10,610 (Feb. 25, 2025) ...............................................................................9

90 Fed. Reg. 29,498 (July 3, 2025)..................................................................................5

LATHAM&WATKINS LLP
ATTORNEYS AT LAW

iv

CASE NO. 2:24-CV-05459-MWC-MAA
SUPP. BRIEF ISO SABLE'S
CROSS-MOT. FOR SUMM. J.

## I. INTRODUCTION

In their First Amended Complaint ("Am. Compl."), Plaintiffs challenged the Bureau of Safety and Environmental Enforcement's ("BSEE") November 2023 decision to extend the amount of time for Sable Offshore Corp. ("Sable") to resume oil and gas operations at the Santa Ynez Unit ("SYU") ("2023 Extension"), BSEE's use of a Categorical Exclusion ("CatEx") for this decision, and BSEE's continued use of prior environmental impact statements ("EIS") for the SYU.

On May 29, 2025, BSEE voluntarily provided the very relief Plaintiffs seek in this lawsuit and issued a new decision re-affirming the 2023 Extension that directly responded to concerns raised by Plaintiffs in this litigation ("2025 Decision").  And rather than relying on a CatEx, BSEE based this 2025 Decision on a May 28, 2025, Environmental Assessment ("EA") and Finding of No Significant Impact ("FONSI"), which directly responded to the alleged shortcoming Plaintiffs claim in the CatEx.  On July 10, 2025, this Court requested supplemental briefing to "discuss Plaintiffs' theory of the facts as to whether BSEE's May 2025 Decision and [EA] was completed in bad faith, was improperly predetermined, was unreasonably slanted, and/or was substantively inadequate pursuant to the relevant case law."  Dkt. 84.  The cases are uniformly against Plaintiffs' theory, and, by making the argument, Plaintiffs invite this Court to err.

*First*, it would be improper for the Court to reach a determination regarding the adequacy of the 2025 Decision and EA because Plaintiffs have not challenged those decisions in their Amended Complaint and there is no administrative record upon which the Court could base such a determination.

*Second*, the 2025 Decision and EA/FONSI are entitled to a presumption of regularity and courts also presume that government actions that moot a case are taken in good faith.  Plaintiffs have failed to rebut either presumption.

LATHAM&WATKINS<sup>LLP</sup>
ATTORNEYS AT LAW

CASE NO. 2:24-CV-05459-MWC-MAA
SUPP. BRIEF ISO SABLE'S
CROSS-MOT. FOR SUMM. J.

1

*Third*, for mootness purposes, the relevant inquiry into the EA/FONSI and 2025 Decision is whether there remains any live or ongoing controversy with respect to the claims in Plaintiffs' Amended Complaint. Because these actions directly superseded the challenged actions and responded to Plaintiffs' alleged deficiencies regarding the prior decisions, there remains no live controversy.

## II. ARGUMENT

### A. The 2025 Decision and EA are Beyond the Scope of this Action

The Court should not reach a determination that the 2025 Decision and EA were completed in bad faith, improperly predetermined, unreasonably slanted, and/or were substantively inadequate because these claims were not raised in the Amended Complaint and there is no reviewable record to support these claims. Indeed, Supreme Court and Ninth Circuit caselaw preclude such a review.

Plaintiffs claim "the process by which BSEE issued its 2025 Decision and Environmental Assessment was fundamentally flawed," Supp. Br. at 2, and that "[t]he 2025 Decision and [EA] are substantively inadequate," *id*. at 9. But Plaintiffs "did not plead [these] claim[s] in [their] complaint" so they are "not properly before the district court, and fail[]." *See Earth Island Inst. v. U.S. Forest Serv.*, 87 F.4th 1054, 1073 (9th Cir. 2023).

Plaintiffs invite reversible error by urging the Court to evaluate the substance of the 2025 EA, Supp. Br. at 9-12, and by citing to a BSEE press release[1], arguing that it "demonstrat[es] the improperly skewed and predetermined nature of BSEE's decisionmaking," with respect to the EA, *id*. at 1-2. *See San Luis & Delta-Mendota Water Auth. v. Locke*, 776 F.3d 971, 993 (9th Cir. 2014) ("district court abused its discretion" by considering extra-record evidence). While these documents may be considered for mootness, both are extra-record evidence with respect to the Administrative Procedure Act ("APA") claims before the Court. The Court's review in an APA case is limited to the administrative record and

---

[1] The Monsell Declaration, Dkt. 85-1, is impermissible extra-record material.

there is no administrative record for the 2025 Decision and EA before the Court. The Court's "review is limited to the administrative record already in existence, not some new record made initially in the reviewing court." *San Luis & Delta-Mendota Water Auth. v. Jewell*, 747 F.3d 581, 602-04 (9th Cir. 2014).[2] That has been black-letter law for decades. *Camp v. Pitts*, 411 U.S. 138, 142-43 (1973) (same; reversible error to consider extra-record evidence "made initially in the reviewing court"). As a result, Plaintiffs' arguments fail. *See also Gengler v. U.S. Through Dep't of Def. & Navy*, 2006 WL 8458837, at *12 (E.D. Cal. Aug. 2, 2006) ("the current state of the record (e.g., no administrative record has been filed) does not permit a determination that the facts and law clearly favor the moving party"); *The Fund for Animals v. Norton*, 390 F. Supp. 2d 12, 15 (D.D.C. 2005) (new decision "based upon a different administrative record, including a new [EA] and [FONSI], which are not before the Court in this case" must be challenged in a "new lawsuit"); *Oceana, Inc. v. Coggins*, 2021 WL 1788516, at *5 (N.D. Cal. May 5, 2021) (same).

### B. Plaintiffs Have Not Shown the 2025 Decision and Environmental Assessment Are "Inherently Flawed"

Contrary to Plaintiffs' arguments, Supp. Br. at 2-3, like any agency action, the 2025 Decision and EA/FONSI are entitled to a presumption of regularity. *See San Luis*, 776 F.3d at 994 ("[T]he agency's action carries a presumption of regularity."); *Akiak Native Cmty. v. U.S. Postal Serv.*, 213 F.3d 1140, 1146 (9th Cir. 2000); *see also Seven Cnty. Infrastructure Coal. v. Eagle Cnty., Colo.*, 605 U.S. __, 145 S. Ct. 1497, 1511 (2025) ("[T]he central principle of judicial review in NEPA cases is deference."). Moreover, "[t]he law is clear that courts cannot assume that because an agency has failed to comply with NEPA in the past, it will

---

[2] There are narrow exceptions to this general rule; however, none apply, as discussed *infra* Section II.B (no bad faith), and, even if they did, it does not change the fact that, because the 2025 Decision and EA are not being challenged in this action, there is no basis for the Court to consider their adequacy.

fail to do so in the future." *Pac. Rivers Council v. U.S. Forest Serv.*, 942 F. Supp. 2d 1014, 1023 (E.D. Cal. 2013); *see also Sierra Club v. Penfold*, 857 F.2d 1307, 1319 (9th Cir. 1988) (same).  Therefore, even if BSEE's 2023 Extension and prior NEPA analysis were deficient in some aspect (which they were not), this would have no bearing on the sufficiency of the 2025 Decision and EA/FONSI or the presumption of regularity that attends them. *See United States v. Chem. Found.*, 272 U.S. 1, 14-15 (1926).

There is also a presumption that the government acts "in good faith" when it takes an action that moots a plaintiffs' claims. *Am. Cargo Transp., Inc. v. United States*, 625 F.3d 1176, 1180 (9th Cir. 2010) (in evaluating mootness, "unlike in the case of a private party, [courts] presume the government is acting in good faith"). It is "[t]he party challenging the presumption of mootness" that must show "a reasonable expectation of reenactment" that is "founded in the record. . . , rather than on speculation alone." *Bd. of Trs. of the Glazing Health & Welfare Trust v. Chambers*, 941 F.3d 1195, 1199 (9th Cir. 2019).  Here, there can be no "reasonable expectation" that BSEE will take a "substantially similar" action to those challenged in the Amended Complaint because BSEE has already completely redone its environmental review and issued a superseding 2025 Decision.[3]  There is no threat that BSEE will continue to rely exclusively on CatExs and allegedly "dated" NEPA reviews for future extensions (if necessary) when an updated EA/FONSI assessing these activities already exists.[4]

---

[3] Plaintiffs argue that the approval of two Applications for Permit to Modify ("APMs") are evidence that the 2025 Decision and EA are "inherently flawed" but ignore that those approvals were granted in September 2024, Dkt. 38-1, ¶ 9, months *before* the government filed its motion for voluntary remand or embarked on the new EA in December 2024. Dkt. 37.  BSEE did not issue any new APMs during its development of the 2025 EA.

[4] Plaintiffs note that BSEE has subsequently issued nine APMs for SYU wells in July 2025. *See* Supp. Br. at n. 1.  Plaintiffs do not reveal, however, that these APMs were not based on a CatEx but rather a "Determination of NEPA Adequacy" under the 2025 EA/FONSI.  *See, e.g.*, APM H015 (July 3, 2025), available at https://www.bsee.gov/sites/bsee.gov/files/2025-

BSEE acted well within its authority to prepare the EA/FONSI and issue the 2025 Decision.  Agencies routinely issue superseding decisions or conduct additional NEPA analysis when their prior actions are challenged, which renders the superseded decision and NEPA analysis moot.  *See Native Vill. of Nuiqsut v. Bureau of Land Mgmt.*, 9 F.4th 1201, 1210 (9th Cir. 2021) ("[W]hen the environmental report at issue 'has been superseded, and the federal agencies will rely' on a new and different report 'for the near future,' the case is moot.") (citation omitted); *Aluminum Co.*, 175 F.3d at 1163 (although agency did not prepare EIS before approving hydropower system operations, case was moot because an EIS was subsequently prepared and the court could "grant no relief that would 'undo' the operation of the [project] during the period between issuance of the [approval] and the final EIS"); *Defs. of Wildlife v. U.S. Army Corps of Eng'rs*, No. CV-15-14-GF-BMM, 2017 WL 1405732, at *5 (D. Mont. Apr. 19, 2017) ("Ninth Circuit case law counsels that any claims based on the superseded [NEPA documents] now prove moot."); *S. Utah Wilderness All. v. U.S. Dep't of the Interior*, 250 F. Supp. 3d 1068, 1087-88 (D. Utah 2017) (challenge to applications for permit to drill ("APD") mooted where, "[a]fter further environmental impact analysis, each of the APDs challenged by Plaintiffs will be replaced by 'a new decision'" covering each suspended APD); *Greater Yellowstone Coal. v. Tidwell*, 572 F.3d 1115, 1121 (10th Cir. 2009) ("no live controversy" where plaintiffs sought to "compel . . . environmental analyses" of elk feedgrounds and the agency "did exactly this" in subsequent NEPA analysis).

---

07/Sable%20Offshore%20Corp%2C%20Application%20for%20Permit%20to%20Modify%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.pdf/.  Since the 2025 EA was adopted, the Department of the Interior has substantively revised its NEPA regulations and procedures.  90 Fed. Reg. 29,498 (July 3, 2025); *see Native Vill. of Nuiqsut*, 9 F.4th at 1211 (new regulations governing level of required NEPA review "render the case [challenging prior NEPA review] moot because there is no 'reasonable expectation that the plaintiffs will be subjected to the challenged action again'") (citation omitted).  The significant changes in the NEPA regulatory landscape since Plaintiffs filed the Amended Complaint in January 2025 is further evidence that Plaintiffs' "complaints are stale," *see Aluminum Co. of Am. v. Adm'r, Bonneville Power Admin.*, 175 F.3d 1156, 1163 (9th Cir. 1999).

Plaintiffs attempt to analogize BSEE's subsequent actions to those taken by agencies that made an "irreversible and irretrievable commitment of resources" before "prepar[ing] a NEPA document[]." *See Metcalf v. Daley*, 214 F.3d 1135, 1143 (9th Cir. 2000); Supp. Br. at 2-6. But here, the decision to allow oil production in the SYU was made decades ago, after multiple rounds of environmental review. Here, the status quo is a permitted, fully constructed oil-and-gas operation that operated for decades, which is permitted to operate now. Dkt. 76-1 at 3-5; Dkt. 80 at 3-4. The extension of time to resume operations was not an "irreversible and irretrievable commitment of resources"—that occurred when the project Development and Production Plans were approved after environmental review decades ago. Dkt. 76-1 at 12-14; Dkt. 80 at 3-4. *Cf. Norton v. S. Utah Wilderness All.*, 542 U.S. 55, 72 (2004) (no ongoing major federal action); *see* 43 U.S.C. § 1351(e)(1) ("At least once the Secretary shall declare the approval of a development and production plan in any area . . . to be a major federal action."); *Vill. of False Pass v. Clark*, 733 F.2d 605, 609 (9th Cir. 1984) ("OCSLA's specific references to NEPA at the leasing and development and production stages . . . emphasize the discrete nature of each stage.").

As explained in Sable's Reply Brief, *Pit River Tribe v. U.S. Forest Serv.*, 469 F.3d 768 (9th Cir. 2006), and *Metcalf v. Daley*, 214 F.3d 1135 (9th Cir. 2000), are inapposite as those agencies failed to conduct *any* environmental review prior to taking the challenged action. *See* Dkt. 80 at 2-3. The same is true in *Save the Yaak Comm. v. Block*, 840 F.2d 714, 716, 718 (9th Cir. 1988) where firm commitments were entered into and construction began before any NEPA review was conducted. Plaintiffs claim "this is a distinction without a difference," Supp. Br. at 5, when this distinction is actually dispositive. As the central inquiry in these cases was whether the agency "engage[d] the NEPA process 'at the earliest possible time,'" *see Metcalf*, 214 F.3d at 1143, Plaintiffs cannot simply ignore that

1  BSEE engaged the NEPA process prior to the 2023 Extension, via CatEx[5], and
2  prior to production at the SYU, via robust EISs.  Dkt. 76-1 at 3-5, 6; Dkt. 80 at 3-4.
3        Moreover, in *Metcalf*, *Pit River* and *Save the Yaak* (and unlike here), the
4  plaintiffs directly challenged environmental documents as untimely and there was
5  therefore an administrative record upon which the court could examine whether the
6  documents were "slanted" or untimely.  *See Pit River*, 469 F.3d at 785 ("the EIS
7  was completed before the beginning of this litigation"); *Metcalf*, 214 F.3d at 1140
8  (complaint filed "the same day as the release of the FONSI"); *Vance v. Block*, 635
9  F. Supp. 163, 166 (D. Mont. 1986) (agency's "final decision" and "the associated
10 FONSI, announced one year prior to suit being filed"), *rev'd in part sub nom. Save*
11 *the Yaak Comm*., 840 F.2d 714.  In contrast, the Amended Complaint does not
12 reference the EA/FONSI or 2025 Decision and there is no administrative record on
13 which the Court could examine whether BSEE's actions were "slanted" or
14 otherwise improper under NEPA and the Outer Continental Shelf Lands Act
15 ("OCSLA") (which they were not).  *See* Section II.A, *supra*.  Plus, there is no
16 dispute that BSEE conducted NEPA review of the 2023 Extension and APMs via
17 CatEx *before* making a decision.  And, unlike those cases, there is no binding
18 agreement with the government to approve the extension of time to begin
19 operations, or irreversible or irretrievable commitment of resources in light of the
20 Unit Agreement and approved Development and Production Plans.
21       Plaintiffs also argue that BSEE's "process here was fatally flawed," because
22 BSEE did not "withdraw[] the offending decision or preserv[e] the status quo" and
23 "restart" and the issuance of APMs "could only occur because of the 2023 decision

---

[5] While Plaintiffs acknowledge that "BSEE did a categorical exclusion review for its lease extensions," they argue "that analysis assumed production would remain shut down" and therefore failed to consider the effects of restarting production. Supp. Br. at 5-6.  But this assumption was correct, as production did not restart during the lease extension. Dkt. 76-1 at 14.  Plaintiffs also claim reliance on the CatEx meant there was no analysis of alternatives. Supp. Br. at 6.  But an alternatives analysis is not required for a CatEx.  *See Ctr. for Biological Diversity v. Salazar*, 706 F.3d 1085, 1097 (9th Cir. 2013).  In any case, BSEE ultimately did provide this analysis in the superseding EA/FONSI.  *See* Dkt. 76-3 at 25-38.

to extend the leases, without which Sable's ability to develop the Santa Ynez Unit would have expired." Supp. Br. at 4-5. First, withdrawing the 2023 Extension is not a legal requirement prior to issuing a new decision, and, second, Plaintiffs' premise that the leases would expire is factually incorrect as the Unit Agreement independently maintained the leases, and the 2023 Extension merely preserved the status quo. *See* Dkt. 76-1 at 2-3, 11, 12; Dkt. 80 at 3. And even vacatur of the 2023 Extension would not terminate the leases or otherwise deprive Sable of its existing and ongoing rights to produce. *See Pit River Tribe v. U.S. Forest Serv.*, 615 F.3d 1069, 1080 (9th Cir. 2010) ("[W]e hold that a successful challenge to a lease extension results only in the undoing of the extension. The agency may properly reconsider its decision to extend the leases.").

*Citizens Advisory Comm. on Private Prisons, Inc. v. U.S. Department of Justice*, 197 F. Supp. 2d 226, 250 (W.D. Pa. 2001), *aff'd*, 33 F. App'x 36 (3d Cir. 2002), is inapposite for different reasons than Plaintiffs state. *See* Supp. Br. at 6. In *Citizens*, a case involving the contracting for and construction of a new prison on a wooded undeveloped area prior to NEPA review, the district court recognized an agency may "cure" its NEPA violations. It stated that, with respect to subsequently undertaken NEPA review, "[a]t a minimum, the Administrative Record must show that the agency made a good faith and objective effort to evaluate the relevant environmental criteria." *Citizens*, 197 F. Supp. 2d at 250. While the court in *Citizens* concluded the agency "did undertake the kind of objective and good faith analysis that NEPA requires," that conclusion came only after the court "scrutinize[d] the Administrative Record." *Id.* at 252. Again, because there is no administrative record to "scrutinize," there is no basis for the Court to evaluate BSEE's "good faith." *See* Section II.A, *supra*.

Plaintiffs argue BSEE "has done nothing" to show that it acted "objectively or in good faith". Supp. Br. at 7. But, as noted above, BSEE was under no legal obligation to "suspend operations" that were long ago approved while it conducted

LATHAM&WATKINS LLP
ATTORNEYS AT LAW

8

CASE NO. 2:24-CV-05459-MWC-MAA
SUPP. BRIEF ISO SABLE'S
CROSS-MOT. FOR SUMM. J.

1 additional NEPA review. That BSEE "permitted additional activity" is also not
2 evidence of bad faith. In fact, the only new approvals that BSEE issued after
3 Plaintiffs filed their Amended Complaint were APMs that expressly relied on the
4 new EA/FONSI, well after that analysis was completed. *See supra* note 4. Finally,
5 there is nothing in NEPA or the Department of the Interior's then-existing NEPA
6 regulations that required public comment on the 2025 EA issued by BSEE.[6] In
7 contrast to *Citizens*, Ninth Circuit law is clear: "courts cannot assume that because
8 an agency has failed to comply with NEPA in the past, it will fail to do so in the
9 future." *See, e.g.*, *Pac. Rivers Council*, 942 F. Supp. 2d at 1023; *Penfold*, 857 F.2d
10 at 1319.

11     *Beverly Hills Unified School District v. Federal Transit Administration*, No.
12 CV 12-9861-GW(SSX), 2016 WL 4650428, at *88 (C.D. Cal. Feb. 1, 2016),
13 demonstrates that a pre-existing generalized preference that is reflected in NEPA
14 analysis is not disqualifying evidence of a lack of good faith. There, the court
15 found, after extensively reviewing the administrative record, that the agency's
16 environmental review was not "predetermined," even when evidence in the record
17 showed that one subway station "location was preferred early on and that
18 subsequent analysis favored that preference." *Id*. at *89. Unlike *Beverly Hills*,
19 however, because Plaintiffs have not challenged the EA and 2025 Decision, there
20 is no record of BSEE's actions related to these decisions and thus no basis for the
21 Court to determine whether these approvals were predetermined (which they were
22 not). *See* Section II.A, *supra*.

---

[6] "[T]he circulation of a draft EA is not required in every case." *Bering Strait Citizens for Responsible Res. Dev. v. U.S. Army Corps of Eng'rs*, 524 F.3d 938, 952 (9th Cir. 2008). Recognizing that "the regulations governing public involvement in the preparation of EAs are general in approach," the Ninth Circuit attempted to standardize public involvement for an EA tied to the Council on Environmental Quality ("CEQ") regulations. *See Bering Strait*, 524 F.3d at 952-53. But when the EA/FONSI here was released, the CEQ NEPA-implementing regulations had been rescinded. 90 Fed. Reg. 10,610 (Feb. 25, 2025). Therefore, any suggestion that BSEE was required to circulate a draft EA is incorrect.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW

9

CASE NO. 2:24-CV-05459-MWC-MAA
SUPP. BRIEF ISO SABLE'S
CROSS-MOT. FOR SUMM. J.

Plaintiffs do not grapple with the key holding of *Greater Yellowstone*, which is that "no live controversy" existed where plaintiffs sought to "compel the Forest Service to undertake environmental analyses" of elk feedgrounds and the agency "did exactly this" in subsequent NEPA analysis. 572 F.3d at 1121. Instead, they argue that, unlike in *Greater Yellowstone*, Plaintiffs "also seek[] declaratory relief, vacatur, and an order that the agency issue new analyses." Supp. Br. at 7. This is irrelevant. Plaintiffs seek declaratory relief and vacatur regarding actions that have been superseded by the 2025 EA/FONSI and Decision and thus are no longer operative, meaning the Court cannot grant meaningful relief with respect to these actions, just as in *Greater Yellowstone*. Dkt. 76-1 at 7-12.

Plaintiffs' attempt to distinguish *Charter Township of Huron, Michigan v. Richards*, 997 F.2d 1168 (6th Cir. 1993), because the agency subsequently prepared an EIS that was subject to public comment and not an EA, is unavailing. *See* Supp. Br. at 9. BSEE's decision not to prepare an EIS after completing the EA was entirely within its discretion. *See Kern v. U.S. Bureau of Land Mgmt.*, 284 F.3d 1062, 1070 (9th Cir. 2002). If Plaintiffs believe BSEE abused that discretion with respect to the 2025 EA, they must actually raise this claim. *See* Section II.A, *supra*. Furthermore, the Sixth Circuit's conclusion that a NEPA case is moot where it "would be foolish" to "order a party to do that which it has already done," *see Charter Township*, 997 F.2d at 1175, supports summary judgment in favor of Sable, consistent with Ninth Circuit precedent discussed above, which has routinely held that NEPA challenges to superseded agency actions are moot.

### C. Plaintiffs' Claims Are Moot

Because they are outside Plaintiffs' Amended Complaint, the 2025 Decision and EA are relevant to this case only for the purpose of determining whether an actual or live controversy exists, or whether Plaintiffs' First, Second, and Fourth Claims are moot. They are each moot. *See* Dkt. 76-1 at 8-12; Dkt. 80 at 1-5.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW

10

CASE NO. 2:24-CV-05459-MWC-MAA
SUPP. BRIEF ISO SABLE'S
CROSS-MOT. FOR SUMM. J.

1   Plaintiffs' First Claim alleges that BSEE's 2023 Extension was unlawful because it considered "only the supposed benefits of resuming oil and gas production at the Santa Ynez Unit" and "ignored all the negative impacts of resuming offshore oil drilling at the Unit," like the risk of a potential spill. Am. Compl. ¶¶ 148-52. But in the 2025 Decision, "BSEE has . . . evaluated the associated risks of future production, including the risk of an oil spill." Dkt. 76-4 at 92. The 2025 Decision considers a "worst case" oil discharge, addresses Plaintiffs' concerns over the age of the SYU's infrastructure, and relies on the new EA's analysis of other environmental considerations like air quality, GHG lifecycle emissions, fish and essential fish habitat, accidental oil spills, water quality, and impacts to protected species. *Id.* at 92-96. And, the new EA specifically evaluates and responds to Plaintiffs' February 2023 letter to BSEE. *See id.* at 87; Dkt. 76-3 at 18-19; Am. Compl. ¶ 112. Because the 2025 Decision addresses Plaintiffs' First Claim, no actual or live controversy remains. Dkt. 76-1 at 9.

In their Second Claim, Plaintiffs allege that BSEE unlawfully used a CatEx when approving the 2023 Extension. *See* Am. Compl. ¶¶ 154-61; Mot. at 11-14. But for the 2025 Decision, which reaffirmed the 2023 Extension, BSEE did not rely on a CatEx and instead prepared a detailed EA analyzing the potential environmental impacts of BSEE's decision to "either approve or deny a lease extension request for leases in the SYU." Dkt. 76-3 at 5. Accordingly, Plaintiffs have received their requested relief: that a CatEx not be relied upon to support the 2023 Extension, *see* Am. Compl., Request for Relief at 48-49, and thus no live controversy remains. Dkt. 76-1 at 10.

In their Third Claim, Plaintiffs allege that BSEE unlawfully relied on CatExs to approve APMs for two wells. *See* Am. Compl. ¶¶ 162-170; Mot. at 15-20. As previously explained, Plaintiffs Third Claim is mooted—independent of the EA/FONSI—by the fact that this well reworking activity deep underground has already been completed; the Court "can grant no relief that would 'undo' the

LATHAM&WATKINS LLP
ATTORNEYS AT LAW

11

CASE NO. 2:24-CV-05459-MWC-MAA
SUPP. BRIEF ISO SABLE'S
CROSS-MOT. FOR SUMM. J.

operation." *Aluminum Co.*, 175 F.3d at 1163; Dkt. 80 at 4. But to the extent Plaintiffs seek to "[p]rohibit BSEE from authorizing additional . . . APMs for development and production . . . unless and until it complies with OCSLA, NEPA, and the APA," *see* Am. Compl., Request for Relief at 49, BSEE has done so via a new EA of the potential environmental impacts of restarting production at SYU.[7]

Plaintiffs' Fourth Claim alleges that BSEE violated NEPA by relying on EIS's prepared in 1975 and 1984. *See* Am. Compl. ¶¶ 171-178; Mot. at 23. The new EA/FONSI addresses Plaintiffs' concerns. *See* Dkt. 76-3 at 26-27 (required regulatory and structural integrity inspections of the SYU infrastructure); *id.* at 17 ("no indication that age of SYU infrastructure contributed to the 2015 oil spill or has contributed to recent oil spills in the region"); *id.* at 25 (Alternative A analyzed in EA/FONSI assumes permitting time to "fully return SYU to production"); *id.* at 29-33 and Appendix A (potential for oil spills); *id.* at 39-42 (greenhouse gas lifecycle emissions); *id.* at 8-9 (mitigation measures); *id.* at 37-38 ("no action" and denial of lease extension alternatives); *id.* at 45-59 (impacts on fish, marine mammals, sea turtles, birds, and other threatened and endangered species and habitat); *id.* at 34 (impacts to Chumash Heritage National Marine Sanctuary); *see also* Dkt. 76-4. Because BSEE addressed all of Plaintiffs' concerns by completing additional "NEPA analysis by a date certain," *see* Am. Compl., Request for Relief at 49, there remains no live controversy, and Plaintiffs' claims are moot. *See Charter Township*, 997 F.2d at 1175; Dkt. 76-1 at 10.

## III. CONCLUSION

Sable respectfully requests that Plaintiffs' Motion for Summary for Judgment be denied and Sable's Cross-Motion for Summary Judgment be granted.

---

[7] BSEE's approval of nine APMs demonstrates that Plaintiffs' claim is not capable of repetition as there is no evidence that BSEE will rely on categorical exclusions for any future routine APMs given the 2025 EA/FONSI. *See supra* note 4.

| | |
|---|---|
| Dated: August 8, 2025 | Respectfully submitted, |
| | LATHAM & WATKINS LLP |
| | By: /s/ *Daniel P. Brunton* |
| | Daniel P. Brunton (Bar No. 218615)<br>Email: daniel.brunton@lw.com<br>12670 High Bluff Drive<br>San Diego, CA 92130<br>Tel.: (858) 523-5400<br>Fax: (858) 523-5450 |
| | Michael G. Romey (Bar No. 137993)<br>Email: michael.romey@lw.com<br>355 South Grand Avenue, Suite 100<br>Los Angeles, CA 90071-1560<br>Tel.: (213) 485-1234<br>Fax: (213) 891-8763 |
| | Janice M. Schneider<br>(*Pro Hac Vice*)<br>Email: janice.schneider@lw.com<br>Devin M. O'Connor<br>(*Pro Hac Vice*)<br>Email: devin.o'connor@lw.com<br>555 Eleventh Street, NW, Suite 1000<br>Washington, D.C. 20004-1304<br>Tel.: (202) 637-2200<br>Fax: (202) 637-2201 |
| | *Attorneys for Intervenor-Defendant Sable Offshore Corp.* |

LATHAM&WATKINS LLP
ATTORNEYS AT LAW

13

CASE NO. 2:24-CV-05459-MWC-MAA
SUPP. BRIEF ISO SABLE'S
CROSS-MOT. FOR SUMM. J.

# CERTIFICATE OF COMPLIANCE

The undersigned, counsel of record for Intervenor-Defendant Sable Offshore Corp., certifies that this brief contains 12 pages, which complies with the page limit set by the Court's Standing Order (ECF No. 34).

Dated: August 8, 2025            By: /s/ *Daniel P. Brunton*
                                       Daniel P. Brunton (Bar No. 218615)

LATHAM&WATKINS LLP
ATTORNEYS AT LAW

14

CASE NO. 2:24-CV-05459-MWC-MAA
SUPP. BRIEF ISO SABLE'S
CROSS-MOT. FOR SUMM. J.