ADAM R.F. GUSTAFSON
Acting Assistant Attorney General
United States Department of Justice
Environment and Natural Resources Division

DANIEL C. LUECKE (CA Bar No. 326695)
Trial Attorney, Natural Resources Section
Ben Franklin Station, P.O. Box 7611
Washington, D.C. 20044-7611
Telephone: (202) 598-7863
Email: daniel.luecke@usdoj.gov

*Counsel for Federal Defendants*

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT CALIFORNIA**
**WESTERN DIVISION**

| | |
|---|---|
| CENTER FOR BIOLOGICAL DIVERSITY; WISHTOYO FOUNDATION, | Case No. 2:24-cv-05459-MWC-MAA |
| *Plaintiffs*, | **FEDERAL DEFENDANTS' SUPPLEMENTAL BRIEF** |
| v. | Honorable Michelle Williams Court |
| DOUG BURGUM, *et al.*, | United States District Judge |
| *Federal Defendants*, | |
| and | |
| SABLE OFFSHORE CORP., | |
| *Intervenor-Defendant.* | |

# TABLE OF CONTENTS

INTRODUCTION ..................................................................................................1

ARGUMENT ........................................................................................................2

    I.    BSEE's 2025 Decision is Presumptively Valid, so Plaintiffs' Factual Theory Would Require Prematurely Vacating an Agency Action ......................................................................................................2

    II.   BSEE's 2025 Decision and Analysis Were Not Predetermined ...........4

    III.  The 2025 Decision and Analysis Are Substantively Adequate ............9

CONCLUSION....................................................................................................12

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Alaska Indus. Dev. & Exp. Auth. v. Biden*,
  685 F. Supp. 3d 813 (D. Alaska 2023) ..................................................................2

*Alaska Wilderness League v. Jewell*,
  788 F.3d 1212, 1225 (9th Cir. 2015) ...................................................................11

*Aluminum Company of America v. Administrator, Bonneville Power Administration*,
  175 F.3d 1156 (9th Cir. 1999) ...............................................................................7

*Am. Bioscience, Inc. v. Thompson*,
  243 F.3d 579 (D.C. Cir. 2001) ...............................................................................4

*Assoc. of Pub. Agency Customers, Inc. v. Bonneville Power Admin.*,
  126 F.3d 1158 (9th Cir.1997) ................................................................................8

*Beverly Hills Unified Sch. Dist. v. Fed. Transit Admin.*,
  No. CV 12-9861-GW(SSX), 2016 WL 4650428 (C.D. Cal. Feb. 1, 2016) ...3, 8, 9

*Bitterroot Ridge Runners Snowmobile Club v. U.S. Forest Serv.*,
  329 F. Supp. 3d 1191 (D. Mont. 2018) ..................................................................3

*Bitterroot Ridge Runners Snowmobile Club v. U.S. Forest Serv.,*
  833 F. App'x 89 (9th Cir. 2020) .............................................................................3

*Cal. Wilderness Coal. v. U.S. Dep't of Energy*,
  631 F.3d 1072 (9th Cir. 2011) ...............................................................................5

*Charter Township of Huron, Michigan v. Richards,*
  997 F.2d 1168 (6th Cir. 1993) ................................................................................8

*Citizens to Pres. Overton Park, Inc. v. Volpe*,
  401 U.S. 402, (1971) ..............................................................................................4

*City & Cnty. of San Francisco v. United States*,
  130 F.3d 873 (9th Cir. 1997) ..................................................................................2

*Conservation Council for Hawaii v. Nat'l Marine Fisheries Serv.*,
  97 F. Supp. 3d 1210 (D. Haw. 2015) ...................................................................10

*Ctr. for Biological Diversity v. United States Bureau of Land Mgmt.*,
  141 F.4th 976 (9th Cir. 2025) ...............................................................................10

*Defs. of Wildlife v. United States Army Corps of Eng'rs*,
   No. CV-15-14-GF-BMM, 2017 WL 1405732 (D. Mont. Apr. 19, 2017) ............. 5

*Env't Def. Ctr. v. Bureau of Ocean Energy Mgmt.*,
   36 F.4th 850 (9th Cir. 2022) ................................................................................ 3, 4

*Env't Def. Ctr., Inc. v. U.S. EPA*,
   344 F.3d 832 (9th Cir. 2003) ................................................................................... 12

*Ethyl Corp. v. EPA*,
   541 F.2d 1 (D.C. Cir. 1976) ............................................................................. 2, 9, 11

*Greater Yellowstone Coalition v. Tidwell*,
   572 F.3d 1115 (10th Cir. 2009) ............................................................................... 7, 8

*Metcalf v. Daley*,
   214 F.3d 1135 (9th Cir. 2000) .......................................................................... 3, 5, 8

*Mickelsen Farms, LLC v. Animal & Plant Health Inspection Servs.*,
   No. 1:15-CV-00143-EJL-CWD, 2018 WL 1413183 (D. Idaho Mar. 20, 2018) 2, 5

*Oceana, Inc. v. Coggins*,
   No. 19-CV-03809-LHK, 2021 WL 1788516 (N.D. Cal. May 5, 2021) ................ 2

*Oregon Nat. Res. Council Action v. U.S. Forest Serv.*,
   59 F. Supp. 2d 1085 (W.D. Wash. 1999) ............................................................... 2

*Pit River Tribe v. U.S. Forest Serv.*,
   469 F.3d 768 (9th Cir. 2006) ................................................................................... 3

*Save the Yaak Comm. v. Block*,
   840 F.2d 714 (9th Cir. 1988) ................................................................................... 3

*Seven Cnty. Infrastructure Coal. v. Eagle Cnty., Colo*,
   145 S. Ct. 1497 (2025) ................................................................................ 4, 5, 8, 10

*Sierra Club v. FERC*,
   No. 24-1199, 2025 WL 2178519 (D.C. Cir. Aug. 1, 2025) ................................. 10

*Web Saigon US LLC v. U.S. Citizenship & Immigr. Servs.*,
   541 F. Supp. 3d 1160 (D. Or. 2021) .................................................................... 5, 7

**Statutes**

42 U.S.C. § 4332(C)(i) .................................................................................................. 11

43 U.S.C. § 1334(a) ......................................................................................................... 9

5 U.S.C. § 706(2) ........................................................................................................2

5 U.S.C. §§ 702 ..........................................................................................................3

**Regulations**

30 C.F.R. § 250.172(d) ..........................................................................................5, 6

30 C.F.R. 250.180(e) ..................................................................................................6

**Other Authorities**

90 Fed. Reg. 8353 (Jan. 20, 2025) .............................................................................9

90 Fed. Reg. 8433 (Jan. 20, 2025) .............................................................................9

As directed by the Court's July 10, 2025, Order, Dkt. No. 84, Federal Defendants Doug Burgum, in his official capacity as Secretary of the Interior; the Bureau of Safety and Environmental Enforcement ("BSEE"); and Bobby Kurtz, in his official capacity as BSEE's Acting Pacific Regional Director, hereby submit the following supplemental brief.

## INTRODUCTION

BSEE's 2025 Decision and related environmental assessment ("EA") are not improperly predetermined, rendered in bad faith, or substantively inadequate. Rather, BSEE's new Decision is a presumptively valid agency action that moots this case. BSEE reconsidered Exxon's 2023 request in much the same manner as it would any other extension request—by allowing the operator to maintain its rights as a leaseholder while BSEE decided whether to approve or deny the request. And the EA accompanying BSEE's decision satisfies the National Environmental Policy Act ("NEPA") by considering a reasonable range of alternatives and taking a hard look at the effects of restarting oil and gas production.

In response to the Court's request, Plaintiffs spend most of their supplemental brief rehashing their argument that the Court should disregard the 2025 Decision and analysis because they were prepared without vacatur of the 2023 extension decision or a self-injunction by BSEE. Pls.' Br. 2–9. But Plaintiffs do not demonstrate bad faith, and their expansion on prior arguments is unpersuasive. First, Plaintiffs cannot avoid the fact that their challenge to both the timing and substance of the 2025 Decision and EA amounts to a new claim that requires a new lawsuit and administrative record. Second, because BSEE issued a new decision and did not approve any new actions at the Unit while it reconsidered the 2023 lease extension, Plaintiffs fail to clear the high bar to prove the outcome of BSEE's reconsideration was predetermined. Finally, although any challenge to the EA's substance requires an administrative record, Plaintiffs fail to show that

1

BSEE's analysis falls outside the broad zone of reasonableness that governs judicial review in NEPA cases. The Court should therefore reject Plaintiffs' invitation to ignore or prejudge the 2025 Decision.

## ARGUMENT

### I. BSEE's 2025 Decision is Presumptively Valid, so Plaintiffs' Factual Theory Would Require Prematurely Vacating an Agency Action.

Plaintiffs' factual theory regarding the 2025 Decision would require the Court to invalidate an agency action without a corresponding claim or administrative record. This would contradict essential principles of administrative law. The APA states that a court may "set aside agency action" only after finding it "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law" based on "review the whole record or those parts of it cited by a party." 5 U.S.C. § 706(2). The "function of the district court" in an APA case is thus "to determine whether or not as a matter of law the evidence in the administrative record permitted the agency to make the decision it did." *City & Cnty. of San Francisco v. United States*, 130 F.3d 873, 877 (9th Cir. 1997). Until an agency action is properly challenged and the court makes such a finding, it remains "presumptively valid." *Oregon Nat. Res. Council Action v. U.S. Forest Serv.*, 59 F. Supp. 2d 1085, 1090 (W.D. Wash. 1999) (citing *Ethyl Corp. v. EPA*, 541 F.2d 1, 34 (D.C. Cir. 1976)).[1]

---

[1] *See also, e.g., Alaska Indus. Dev. & Exp. Auth. v. Biden*, 685 F. Supp. 3d 813, 855 (D. Alaska 2023) (limiting analysis to "the final agency action properly challenged in this suit"); *Oceana, Inc. v. Coggins*, No. 19-CV-03809-LHK, 2021 WL 1788516, at *5 (N.D. Cal. May 5, 2021) (new agency rule had to be challenged "based on its own administrative record"); *Mickelsen Farms, LLC v. Animal & Plant Health Inspection Servs.*, No. 1:15-CV-00143-EJL-CWD, 2018 WL 1413183, at *12 (D. Idaho Mar. 20, 2018) (determination of whether new EA and FONSI "cured the NEPA violations alleged to have been committed" in original EAs required bringing new action "as provided for by the APA").

        Consistent with these principles, any determination of whether BSEE's 2025 Decision was improperly predetermined or substantively inadequate would be premature. Plaintiffs' own citations demonstrate that they can only obtain judicial review of the 2025 Decision if they challenge it, consistent with 5 U.S.C. §§ 702, 704, 706, and the corresponding Federal Rules of Civil Procedure. For example, Plaintiffs rely on *Metcalf v. Daley*, but in that case the appellants filed a complaint identifying and challenging the EA in question. 214 F.3d 1135, 1140, 1143 (9th Cir. 2000). The same can be said of the other cases Plaintiffs cite to argue that BSEE's analysis was untimely; the courts in those cases did not invalidate an agency action as predetermined under NEPA absent a complaint challenging that action and its associated NEPA analysis. *See Pit River Tribe v. U.S. Forest Serv.*, 469 F.3d 768, 778 (9th Cir. 2006); *Save the Yaak Comm. v. Block*, 840 F.2d 714, 716–17 (9th Cir. 1988). In short, arguing that an agency action is "predetermined" does not excuse a plaintiff from the basic requirement to file a complaint challenging the relevant action for review on an administrative record. *See, e.g., Bitterroot Ridge Runners Snowmobile Club v. U.S. Forest Serv.*, 329 F. Supp. 3d 1191, 1199 (D. Mont. 2018), *aff'd*, 833 F. App'x 89 (9th Cir. 2020) (finding no predetermination "[a]fter reviewing the record"); *Beverly Hills Unified Sch. Dist. v. Fed. Transit Admin.*, No. CV 12-9861-GW(SSX), 2016 WL 4650428, at *89 (C.D. Cal. Feb. 1, 2016) (finding no "clear support in the record" for predetermination).

        Nor can Plaintiffs challenge the *substance* of the EA's analysis without a new claim and administrative record. Plaintiffs conclude their brief discussion of the EA's content by asserting that it "inappropriately 'offer[s] an analysis that [runs] counter to the evidence before the agency' and 'rel[ies] on incorrect assumptions and data.'" Pls.' Br. 12 (quoting *Env't Def. Ctr. v. Bureau of Ocean Energy Mgmt.*, 36 F.4th 850, 874 (9th Cir. 2022) (citation modified)). However, without an administrative record, neither the Court nor the parties *know* all the

evidence and data that was "before the agency." *Env't Def. Ctr.*, 36 F.4th at 874. Without the full record, the parties are left "merely speculating" about the basis for the agency's analysis and decision. *Am. Bioscience, Inc. v. Thompson*, 243 F.3d 579, 582 (D.C. Cir. 2001) (remanding matter to district court to determine "how best to proceed . . . in light of what the administrative record reveals"). In short, "review [of an agency action] must 'be based on the full administrative record that was before the [agency] at the time [it] made its decision.'" *Id.* (quoting *Citizens to Pres. Overton Park, Inc. v. Volpe*, 401 U.S. 402, 420, (1971)) (citation modified). No administrative record—or claim challenging the 2025 Decision—is before the Court here. The Court should thus refrain from preemptively invalidating BSEE's decision or overlooking its superseding effect on the 2023 lease extension decision.

## II. BSEE's 2025 Decision and Analysis Were Not Predetermined.

Even if the issue of predetermination was properly before the Court, Plaintiffs' arguments fail because the outcome of BSEE's reconsideration was not improperly slanted or predetermined. BSEE had authority to approve or reject Exxon's extension request in its new Decision, just as it did when Exxon originally submitted the request in 2023. BSEE's environmental review analyzed the very issues related to restarting production at the Unit that Plaintiffs highlighted in their complaint. Fed. Defs.' Mot. for Summ. J. 10, Dkt. No. 75. And, though an agency's NEPA analysis need not dictate its decision, *Seven Cnty. Infrastructure Coal. v. Eagle Cnty., Colo,*, 145 S. Ct. 1497, 1507 (2025), BSEE decided in this case to affirm the extension with new substantive protections regarding activities at the Unit. BSEE Decision Ltr. 4–5, Dkt. No. 75-5.

Plaintiffs cite no case holding that an agency action is *per se* predetermined when the agency resolved to reconsider its prior action, perform new NEPA analysis, and issue a new decision while the original decision was still in effect. To the contrary, the Supreme Court *just observed* that this can be appropriate even

4

when a court has found that an agency violated NEPA. *Seven Cnty.*, 145 S. Ct. at 1514; *see also, e.g.*, *Mickelsen Farms*, 2018 WL 1413183, at *9–10 (new NEPA analysis and decision mooted existing challenge); *Defs. of Wildlife v. United States Army Corps of Eng'rs*, No. CV-15-14-GF-BMM, 2017 WL 1405732, at *5 (D. Mont. Apr. 19, 2017) (same).

Plaintiffs acknowledge that the 2025 Decision distinguishes this case from *Metcalf*, 214 F.3d at 1140, where the agency completed new NEPA analysis but never issued a new decision regarding the Makah Tribe's authorization to resume whaling. Pls. Br. 5. While Plaintiffs insist that this is a "distinction without a difference," it is well established that "[a]gency action is presumed valid." *Web Saigon US LLC v. U.S. Citizenship & Immigr. Servs.*, 541 F. Supp. 3d 1160, 1165 (D. Or. 2021) (citing *Cal. Wilderness Coal. v. U.S. Dep't of Energy*, 631 F.3d 1072, 1084 (9th Cir. 2011)). Here, BSEE's EA, FONSI, and 2025 Decision revisited the 2023 extension decision based on a more thorough analysis, as Bruce Hesson described in his original declaration before this Court. *See* Dkt. No. 37-1. Plaintiffs have failed to adduce facts showing that this decision was meaningless or that it was made in bad faith. Indeed, while BSEE affirmed the extension of the Unit's leases, it included new mandatory conditions to minimize collisions between vessels and marine wildlife, avoid damage from vessel anchors, and increase reporting, among other things. BSEE Decision Ltr. 4–5.

Moreover, because lease extensions under 30 C.F.R. § 250.172(d) always serve to maintain the status quo, the absence of vacatur or a shut-in here was not a departure from BSEE's normal posture when considering an extension request. Plaintiffs assert that "without [the 2023 lease] extension, drilling at the Unit would have permanently ceased." Pls.' Br. 3. This is inaccurate. While BSEE's *denial* of Exxon's extension request could have led to termination of the Unit leases, the mere absence of a decision to extend the leases had no effect on the possibility of

5

drilling or production. *See Mobil Producing Texas & New Mexico, Inc.*, 99 IBLA 5 (Aug. 11, 1987). Rather, Exxon retained the same leaseholder rights before and after it submitted its request for an extension. For this reason, it makes little sense for Plaintiffs to analogize the approval of a lease extension with "an agency['s] deci[sion] to approve a project" in the first instance. Pls.' Br. 2.

And, contrary to Plaintiffs' suggestion, Pls.' Br. 3, it is not BSEE's practice to order a shut-in under 30 C.F.R. § 250.172(d) while it considers whether to grant a lease extension. Plaintiffs' argument that BSEE improperly "refused to ensure a restart of activities would not occur," Pls.' Br. 3, is at odds with the entire *purpose* of granting a lease extension, which is to continue the status quo so the operator has more time to facilitate a restart. 30 C.F.R. 250.180(e) ("You may ask the Regional Supervisor to allow you more than a year to resume operations on a lease continued beyond its primary term when operating conditions warrant.").

Nor are Plaintiffs correct to identify BSEE's approval of two APMs in 2024 as evidence of the agency failing to prevent a "restart of activities" while it conducted its reconsideration of the 2023 extension decision. Pls.' Br. 3. These APMs were approved in September 2024—months before BSEE decided to reconsider its approval of Exxon's extension request. Even more fundamentally, these APMs did not relate to the platform where Sable restarted production. AR_0000023; AR_0000030; *see also* Reply in Supp. of Sable Cross-Mot. for Summ. J. 4, Dkt. No. 80 (explaining that "the work under the[] two APMs at Platform Heritage was not needed for restart of production at Platform Harmony in May 2025 under existing approvals"). After BSEE decided to revisit that decision in December 2024, the agency did not approve any APMs or other actions until after its new decision was issued in May 2025.

Where, as here, the agency has conducted the NEPA analysis that the plaintiff sought in their complaint, case law recognizes that it is neither reasonable

nor consistent with justiciability principles to order the agency to start all over. In *Aluminum Company of America v. Administrator, Bonneville Power Administration*, for example, the Ninth Circuit considered an argument similar to the one Plaintiffs assert here: that the Bonneville Power Administration had "failed to prepare an environmental impact statement" before issuing a decision approving a new operations plan for the Federal Columbia River Power System. 175 F.3d 1156, 1158 (9th Cir. 1999). Yet the court determined that the plaintiffs' claims were "stale because a final EIS was prepared" and the court could "grant no relief that would 'undo' the operation of the [Federal Columbia River Power System] during the period between issuance of the 1995 ROD and the final EIS." *Id.* at 1163. Plaintiffs do not mention *Aluminum Company of America*, which applies here because "undoing" Sable's well reworking activities—which were completed in October 2024 and January 2025, Dkt. No. 75-2—is similarly impossible.

Case law from other circuits also supports Federal Defendants' position. In *Greater Yellowstone Coalition v. Tidwell*, the plaintiff sued the Forest Service for its alleged failure to "conduct environmental analyses of its eight feedgrounds and the test-and-slaughter program" for Wyoming elk. 572 F.3d 1115, 1119 (10th Cir. 2009). After the Forest Service "unilateral[ly]" analyzed these issues under NEPA in July 2008—several years *after* the lawsuit began—the Tenth Circuit found the related claims moot because the Service had done "exactly" what the petitioner asked for in the complaint. *Id.* at 1121. Plaintiffs attempt to distinguish *Greater Yellowstone* on the basis that they challenge "specific agency decisions" in this case, Pls.' Br. 7, but that was true in *Greater Yellowstone* as well, where the petitioner challenged the Service's "authorization of certain facilities for elk-feeding operations and the test-and-slaughter program." 572 F.3d at 1119. Under those circumstances, the court in *Greater Yellowstone* reasonably concluded that it was "impossible" for the Service to "return to its allegedly illegal conduct" of

allowing these operations to occur without NEPA analysis. *Id.* at 1121. The same logic applies here, as BSEE has now analyzed the impacts of resuming production at the Unit and will rely on that analysis in future decisions, as it did when it approved the recent APMs that Plaintiffs identify in their brief. Pls.' Br. 1 n.1.

The Sixth Circuit's decision in *Charter Township of Huron, Michigan v. Richards* similarly counsels in favor of finding mootness here. 997 F.2d 1168, 1175 (6th Cir. 1993). There, the Federal Aviation Administration responded to the petitioners' concerns by issuing a new EIS analyzing the effects of changes to landing and takeoff patterns at an airport. *Id.* at 1169, 1175. Under these circumstances, the court determined it would be "foolish" to order the agency to prepare a new analysis and would be against the public interest to require a return to the prior takeoff and landing procedures. *Id.* at 1175. This approach aligns well with the Supreme Court's recent call to "bring judicial review under NEPA back in line with the statutory text and common sense." *Seven Cnty.*, 145 S. Ct. at 1514. Here, where BSEE has now performed the analysis of restarting production that Plaintiffs asked for in their complaint, *Charter Township*'s approach is applicable.

Finally, BSEE's NEPA process on reconsideration was not predetermined even if the agency's preferred outcome was to approve the extension. "[A]n agency can formulate a proposal or even identify a preferred course of action before completing" its NEPA analysis. *Metcalf*, 214 F.3d at 1145 (quoting *Assoc. of Pub. Agency Customers, Inc. v. Bonneville Power Admin.*, 126 F.3d 1158 (9th Cir.1997)). In *Beverly Hills Unified School District v. Federal Transit Administration*, for example, a court in this district applied the "high standard to prove predetermination" to the Federal Transit Administration's review of a subway extension project. 2016 WL 4650428 at *89. Despite noting that it was "troubled" by how the agency preferred one option early on and conducted analysis that favored it, the court still held that the agency had not prematurely

made a "binding commitment" and thus did not violate NEPA. *Id.* at 88, 89.

BSEE likewise did not bind itself to approving Exxon's lease extension when it reconsidered the company's request in 2025. Nothing prevented BSEE from denying the extension this time around, as Plaintiffs themselves recognize. Pls.' Opp'n & Reply 22, Dkt. No. 77 ("Interior has broad authority over offshore oil and gas activity even after its initial approval," including the "authority to cancel a lease" (citing 43 U.S.C. § 1334(a), (a)(1)–(2))). The situation here is thus distinguishable from *Metcalf*, where the government had "signed two agreements binding them to support the Native American tribe's proposal." *Beverly Hills Unified*, 2016 WL 4650428 at *88.

Plaintiffs point to BSEE's July 25, 2025, press release and recent approval of additional APMs as evidence that BSEE's reconsideration process was slanted. Pls.' Br. 1–2. However, to the extent BSEE's statements in a post-decisional press release and APM approvals are relevant at all, they do not demonstrate predetermination. Instead, they simply show that BSEE had a policy preference consistent with President Trump's executive orders directing agencies to prioritize expansion of domestic energy production. *See* Executive Order ("E.O.") 14154, *Unleashing American Energy*, 90 Fed. Reg. 8353 (Jan. 20, 2025); E.O. 14156, *Declaring a National Energy Emergency*, 90 Fed. Reg. 8433 (Jan. 20, 2025). The Court should therefore reject Plaintiffs' argument that the outcome of BSEE's 2025 reconsideration process was improperly predetermined under NEPA.

### III. The 2025 Decision and Analysis Are Substantively Adequate.

Even if it were appropriate to prejudge the merits of BSEE's EA or 2025 Decision absent a related claim or administrative record, *supra* at 3–4, Plaintiffs fail to show that either is substantively defective. "In conducting NEPA analysis, [agencies] ha[ve] 'substantial discretion,' so [courts] 'should afford substantial deference' to 'agency choices' that 'fall within a broad zone of reasonableness.'"

9

1  *Sierra Club v. FERC*, No. 24-1199, 2025 WL 2178519, at *3 (D.C. Cir. Aug. 1,
2  2025) (quoting *Seven Cnty.*, 145 S. Ct. at 1512–13). This standard applies when
3  reviewing an agency's analysis of alternatives, as an agency "has significant
4  discretion to choose parameters that narrow its alternatives analysis." *Ctr. for*
5  *Biological Diversity v. United States Bureau of Land Mgmt.*, 141 F.4th 976, 998
6  (9th Cir. 2025). "Simply put, [a court's] 'only role' is 'to confirm' that the agency
7  has addressed feasible alternatives to the proposed project" given the purpose and
8  need for the action. *Id.* at 995 (quoting *Seven Cnty.*, 145 S. Ct. at 1511).

9        Here, BSEE considered three alternatives—approval of the lease extension
10 (Alternative A), denial of the lease extension (Alternative B), and a no-action
11 alternative (Alternative C). Sable Offshore Corp. Lease Ext. of Santa Ynez Unit
12 Env't Assesment ("EA") 10, 22–23, Dkt. No. 75-3. Plaintiffs complain that BSEE
13 assumed "the no-action alternative would also result in return to production" and
14 thus rendered a comparison to the action alternative "meaningless." Pls.' Br. 10.
15 But the EA explicitly states that "[the no-action alternative] would not have
16 impacts on the biological and physical resources listed in Section 2.2.2," which
17 describes the "[e]nvironmental resources potentially impacted by the proposed
18 Project." EA 19, 23. And the EA's description of the "Project Activities" that
19 would result from approving the action include "Return to Production," meaning
20 effects of resuming production would not occur under the no-action alternative. *Id.*
21 at 10, 13. Plaintiffs are thus incorrect to assert that the EA "assume[s] the
22 underlying activities would occur 'no matter what.'" Pls.' Br. 10 (quoting
23 *Conservation Council for Hawaii v. Nat'l Marine Fisheries Serv.*, 97 F. Supp. 3d
24 1210, 1236 (D. Haw. 2015)). To the contrary, the no-action alternative provides an
25 adequate baseline for comparison to the action alternative.

26       Plaintiffs also argue that Alternative B, under which BSEE would deny the
27 extension, fails to consider "the environmental benefits of ending oil and gas

production after several decades of activity." Pls.' Br. 11. This makes little sense since the Unit was shut in from 2015 until recently, as Plaintiffs know. In any event, BSEE did consider the environmental benefits if production did not resume by comparing the impacts of approving the extension with the no-action alternative, as described above. As for Alternative C, BSEE reasonably determined that this option would cause effects associated with "leaving existing infrastructure in-place and unmanned pending final decommissioning and removal"—a separate administrative action subject to its own NEPA analysis. EA 22.

Finally, Plaintiffs argue vaguely that BSEE drew "inadequate conclusions regarding the risks and impacts of oil spills," including with respect to the risk and impacts of an anchor causing a loss of containment from a pipeline. Pls.' Br. 11. However, despite Sable's brief reference to "significant vessel traffic" in its oil spill response plan, Monsell Decl., Ex. 2 at 2, Dkt. No. 85-1, the EA shows that none of the pipelines associated with the Santa Ynez Unit are located in a shipping lane. EA 4; *see also Alaska Wilderness League v. Jewell*, 788 F.3d 1212, 1225 (9th Cir. 2015) (explaining that BSEE "must approve" an oil spill response plan that meets criteria under 33 U.S.C. § 1321(j)(5)(D)). Plaintiffs are thus misguided to draw comparisons to the 2021 Beta Unit oil spill off Huntington Beach, Pls. Br. 11 n.5, which the EA explains was caused by "two container ships that repeatedly dragged their anchors across" the pipeline. EA 15. Given that the only significant oil spill in the Pacific Region caused by an anchor strike resulted from container ships, which would not traverse the area of Sable's pipelines, BSEE did not err by concluding that this was not a foreseeable effect of approving the extension.

Plaintiffs also fault BSEE for declining to analyze the environmental impacts of oil spills in the 50-to-1,000-barrel range. Pls.' Br. 11–12. NEPA only requires agencies to analyze the "reasonably foreseeable environmental effects of the proposed agency action." 42 U.S.C. § 4332(C)(i). In the oil spill risk

11

analysis attached to the EA, BSEE assesses the history of oil spills in the Pacific Region to determine the likelihood of a spill of less than 50 barrels of oil, between 50 and 1,000 barrels, and over 1,000 barrels in that region. EA 55–62. The EA determines that there is a 63% probability of one oil spill occurring in the 50-to-1,000-barrel range for the entire Southern California Planning Area, EA 56, not the Santa Ynez Unit specifically, as Plaintiffs suggest. Pls. Br. 11–12. Moreover, this numerical calculation was based on the region's oil spill history since 1963, during which there have only been six spills of between 50 and 1,000 barrels (and only two "extreme" spills in 1969 that exceeded 1,000 barrels). EA 56, 58–59. The calculation is also "conservative" because it does not account for other factors that lower the likelihood of a spill, including declining production, no installation of new platforms, and transportation of oil via pipeline rather than vessels. EA 59; *see also id.* at 15 (citing more stringent regulations and inspection programs to improve environmental safety). Given all this, BOEM reasonably concluded that a spill of this size was not a reasonably foreseeable effect of the action. *Id.* at 14.

Finally, BSEE utilized the estimates of recoverable oil in the original environmental review documents for the Santa Barbara Channel to reach its conclusion that roughly 0.2256 billion barrels of oil remain to be recovered at the Unit. EA 60. Plaintiffs are incorrect that BSEE was instead required to rely on claims in Sable's briefing regarding the Unit's remaining reserves. Pls.' Br. 12; *see Env't Def. Ctr., Inc. v. U.S. EPA*, 344 F.3d 832, 869 (9th Cir. 2003) (agency's determination is entitled to "great deference" when evaluating "complex scientific data within the agency's technical expertise" (citations omitted)). Plaintiffs thus fail to demonstrate that BSEE's EA is substantively inadequate under NEPA.

## CONCLUSION

For the above reasons, the Court should grant summary judgment to Federal Defendants and deny Plaintiffs' motion for summary judgment.

Respectfully submitted this 8th day of August, 2025.

>ADAM R.F. GUSTAFSON
Acting Assistant Attorney General
Environment & Natural Resources Division
U.S. Department of Justice

>*/s/ Daniel C. Luecke*
DANIEL C. LUECKE
Trial Attorney, Natural Resources Section
Ben Franklin Station, P.O. Box 7611
Washington, D.C. 20044-7611
Telephone: (202) 598-7863
Email:    daniel.luecke@usdoj.gov

>*Counsel for Federal Defendants*

**CERTIFICATE OF COMPLIANCE**

The undersigned, counsel of record for Federal Defendants, certifies that this brief contains 12 pages, which complies with the page limit set by the Court's Order dated July 10, 2025, ECF No. 84.

Dated: August 8, 2025                    /s/ *Daniel C. Luecke*
                                          Daniel C. Luecke