Kristen Monsell (CA Bar No. 304793)
Email: kmonsell@biologicaldiversity.org
Miyoko Sakashita (CA Bar No. 239639)
Email: miyoko@biologicaldiversity.org
Julie Teel Simmonds (CA Bar No. 208282)
Email: jteelsimmonds@biologicaldiversity.org
CENTER FOR BIOLOGICAL DIVERSITY
2100 Franklin St., Suite 375
Oakland, CA 94612
Phone: (510) 844-7100
Facsimile: (510) 844-7150

*Attorneys for Plaintiffs*

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**
**WESTERN DIVISION**

| | |
|---|---|
| CENTER FOR BIOLOGICAL DIVERSITY, et al., <br><br> *Plaintiffs*, <br><br> v. <br><br> DOUG BURGUM, et al., <br><br> *Defendants*, <br><br> SABLE OFFSHORE CORP., <br><br> *Intervenor-Defendant.* | Case No. 2:24-cv-05459-MWC-MAA <br><br> **PLAINTIFFS' NOTICE OF MOTION AND MOTION TO COMPEL COMPLETION AND SUPPLEMENTATION OF THE ADMINISTRATIVE RECORD** <br><br> Hearing Date: March 13, 2026 <br> Hearing Time: 1:30 p.m. <br> Judge: Hon. Michelle Williams Court <br> Location: Courtroom 6A |

TO ALL PARTIES AND THEIR COUNSEL OF RECORD:

PLEASE TAKE NOTICE that on March 13, 2026 at 1:30 p.m., or as soon thereafter as they may be heard, Plaintiffs Center for Biological Diversity and Wishtoyo Foundation will move the Court for an order compelling Federal Defendants Secretary of the Interior Doug Burgum, the Pacific Regional Director of the Bureau of Safety and Environmental Enforcement, and the Bureau of Safety and Environmental Enforcement (collectively, BSEE) to complete the new administrative record with missing documents, including: (1) a letter and report Plaintiffs sent to BSEE and its counsel regarding the risk of oil spills from offshore oil and gas activity at the Santa Ynez Unit; (2) communications between BSEE and other agencies regarding the Santa Ynez Unit; and (3) communications between BSEE and Sable Offshore Corp. regarding the Santa Ynez Unit. Plaintiffs seek records between the date Plaintiffs notified BSEE of their intent to sue, April 19, 2024, and the date of BSEE's 2025 lease extensions decision (2025 Decision), May 29, 2025. Additionally, Plaintiffs will move the Court for an order seeking the production of documents outside the record, including BSEE's internal communications, meeting notes, draft documents, and other internal records regarding the agency's decision to issue the 2025 Decision and Environmental Assessment/Finding of No Significant Impact from April 19, 2024, to the present.

The hearing will take place before the Honorable Michelle Williams Court in Courtroom 6A at the U.S. District Court for the Central District of California, located at 350 West First Street in Los Angeles, California, 90012. Pursuant to Local Rule 7-3, counsel for Plaintiffs conferred on January 9, 2026, with counsel for BSEE and Intervenor-Defendant Sable Offshore Corp. Both BSEE and Sable oppose this Motion. *See* Sakashita Decl. ¶ 2.

i

# TABLE OF CONTENTS

TABLE OF AUTHORITIES .................................................................................. iii

INTRODUCTION ..............................................................................................1

PROCEDURAL BACKGROUND..........................................................................3

STANDARD OF REVIEW ..................................................................................4

ARGUMENT ....................................................................................................6

    I.    The Court Should Order BSEE to Complete the Administrative
        Record With External Communications ...................................................7

    II.    The Court Should Order BSEE to Supplement the Record With
        Internal Communications, Internal Memoranda, and Draft
        Documents Because the Evidence Shows the Agency's 2025
        Decision and EA/FONSI Were Pretextual ...............................................11

        a.    Extra-Record Documents Are Necessary to Determine
            Whether BSEE's Decisions Were Made in Bad Faith,
            Improperly Predetermined, or Unreasonably Slanted....................11

        b.    Deliberative Records Should Be Disclosed Due to
            Hallmarks of Impropriety in BSEE's Decisionmaking ..................16

        c.    At the Very Least, BSEE Must Produce a Privilege Log ...............18

CONCLUSION.................................................................................................19

# TABLE OF AUTHORITIES

**Cases**

*Am. Fed. of Gov. Emps. v. Trump*,
155 F.4th 1082 (9th Cir. 2025)............................................................ 16, 17

*Am. Fed. of Gov. Emps. v. Trump*,
782 F. Supp. 3d 872 (N.D. Cal. 2025) ..................................................17

*Am. Fed. of Gov. Emps. v. Trump*,
No. 25-3293, 2026 WL 22005 (9th Cir. Jan. 5, 2026) ........................16

*Blue Mts. Biodiversity Proj. v. Jeffries*,
99 F.4th 438 (9th Cir. 2024)..................................................... 5, 11, 19

*Califano v. Sanders*,
430 U.S. 99 (1977). .................................................................................5

*California v. Ross*,
358 F. Supp. 3d 965 (N.D. Cal. 2019) .............................................5, 15

*Citizens to Preserve Overton Park, Inc. v. Volpe*,
401 U.S. 402 (1971) ................................................................................5

*Ctr. for Biological Diversity v. Zinke*,
No. 3:18-cv-00064-SLG, 2018 WL 8805325 (D. Alaska Nov. 16, 2018)...........10

*Dep't of Comm. v. New York*,
588 U.S. 752 (2019) ...........................................................................6, 15

*Env't Def. Ctr. v. BOEM*,
36 F.4th 850 (9th Cir. 2022)..................................................................11

*FTC v. Warner Communications, Inc.*,
742 F.2d 1156 (9th Cir. 1984)................................................................16

*In re U.S.*,
583 U.S. 29 (2017) ..................................................................................8

*Inst. for Fisheries Res. v. Burwell*,
No. 16-cv-01574-VC, 2017 WL 89003 (N.D. Cal. Jan. 10, 2017).....................18

*Lands Council v. Forester of Region One of the U.S. Forest Serv.*,
395 F.3d 1019 (9th Cir. 2005)..................................................................6

*Latecoere Int'l, Inc. v. U.S. Dep't of the Navy,*
    19 F.3d 1342 (11th Cir. 1994).............................................................................

*Nat'l TPS All. v. Noem,*
    No. 25-cv-01766-EMC, 2025 WL 1276229 (N.D. Cal. May 2, 2025)...............15

*Nat'l TPS All. v. Noem,*
    No. 25-cv-05687-TLT (SK), 2025 WL 2419266 (N.D. Cal. Aug. 21,
    2025)........................................................................................................... 15, 19

*Oceana v. Pritzker,*
    No. 16-cv-06784-LHK (SVK), 2017 WL 2670733 (N.D. Cal. June 21,
    2017)............................................................................................................ 5, 6, 7

*Portland Audubon Soc'y v. Endangered Species Comm.,*
    984 F.2d 1534 (9th Cir. 1993).....................................................................5, 10

*Public Power Council v. Johnson,*
    674 F.2d 791 (9th Cir. 1982)............................................................................11

*Regents of the Univ. of Cal. v. U.S. Dep't of Homeland Sec.,*
    No. 17-05211-WHA, 2017 WL 4642324 (N.D. Cal. Oct. 17, 2017).....................8

*Thompson v. U.S. Dep't of Labor,*
    885 F.2d 551 (9th Cir. 1989)..............................................................................5

*Transgender Law Ctr. v. Immigration & Customs Enf't,*
    46 F.4th 771 (9th Cir. 2022).............................................................................19

*Trump v. United States Dis. of N. Cal.,*
    875 F.3d 1200 (9th Cir. 2017).............................................................................8

*Tummino v. Von Eschenbach,*
    427 F. Supp. 2d 212 (E.D.N.Y. 2006)................................................................16

*W&T Offshore, Inc. v. U.S. Dep't of Interior,*
    No. 17-7102, 2025 WL 2460337 (E.D. La. Aug. 25, 2025) ...............................11

**Other Authorities**

Exec. Order No. 14154, "Unleashing American Energy," 90 Fed. Reg. 8353
    (Jan. 29, 2025) ................................................................................................12

Exec. Order No. 14213, "Establishing the National Energy Dominance Council," 90 Fed. Reg. 9945 (Feb. 20, 2025) .......................................................12

Secretarial Order No. 3417, "Addressing the National Energy Emergency" (Feb. 3, 2025)................................................................................................12

**INTRODUCTION**

In this case, Plaintiffs challenge several Bureau of Safety and Environmental Enforcement (BSEE) actions that enable a restart of offshore oil and gas production at the Santa Ynez Unit in the Santa Barbara Channel following a massive oil spill and decade-long shutdown. The agency's actions all stem from its 2023 decision to extend the 16 leases that constitute the Unit—without which the Unit's leases would have expired and operations would have permanently ceased.

As Plaintiffs have previously explained, BSEE made that 2023 decision without considering several relevant factors, by relying on arbitrary assumptions, and without conducting the careful environmental analysis required by law. In 2025, on the eve of its summary judgment briefing deadline, the agency issued a revised lease extensions decision (2025 Decision) and Environmental Assessment/Finding of No Significant Impact (EA/FONSI) purporting to address these failures. In ruling on the parties' cross-motions for summary judgment, the Court determined that whether BSEE made those decisions in bad faith, improperly predetermined their outcome, or unreasonably slanted its analysis is a material question in this case, but that the Court could not rule on the issue because the 2025 Decision and EA/FONSI were not before the Court.

Since then, Plaintiffs have amended their complaint, alleging that (1) BSEE's 2025 Decision and EA/FONSI were issued in bad faith, improperly predetermined, and unreasonably slanted; and (2) the agency's analysis is substantively flawed, including for arbitrarily assessing the risk and impacts of oil spills. Plaintiffs have also uncovered further evidence (including communications between BSEE and other agencies and social media posts), indicating that BSEE's 2025 Decision and EA/FONSI were nothing but pretext for a predetermined outcome that it quickly approve the lease extensions so that Sable Offshore Corp. (Sable) could restart production.

But the new administrative record BSEE filed on its 2025 Decision and EA/FONSI contains none of these documents. The record is devoid of any communications between BSEE and the Bureau of Ocean Energy Management (BOEM) or any other state or federal agency, communications between BSEE and Sable, and other records the agency had before it when it made its 2025 Decision regarding spill risk.

The record also does not contain any internal BSEE communications, drafts of the agency's EA/FONSI or 2025 Decision, or other documents going to the agency's reasoning behind issuing the 2025 Decision. And while these types of documents are typically excluded from the administrative record as deliberative, courts can consider such documents upon a strong showing of bad faith or improper behavior. The circumstances of this case satisfy this standard. Available information demonstrates, for example, that BSEE was instructed to quickly complete its new analysis; that the agency then touted how its actions helped enable a restart of oil production from the Santa Ynez Unit in "just months," which it broadcast as a win for the Trump administration's Energy Dominance and Unleashing American Energy agenda; and high-ranking cabinet members have expressed their desire to bring the project back online. In other words, available information shows that BSEE's 2025 Decision and EA/FONSI were not the product of objective analysis, but rather a politically driven move to justify a pre-determined outcome, which counsels for the admission of extra-record evidence.

Accordingly, this Court should (1) compel BSEE to complete the record with missing documents from the date Plaintiffs notified BSEE of their intent to sue, April 19, 2024, to the decision date May 29, 2025, and (2) clarify that extra-record evidence is permissible under the bad-faith exception and compel BSEE to supplement the record with internal communications and other deliberative documents from April 19, 2024 to the present. Should BSEE object to including

2

any specific record(s) as deliberative, they should be compelled to produce a privilege log and the documents for *in camera* review.

## PROCEDURAL BACKGROUND

Plaintiffs filed this case on June 27, 2024, challenging BSEE's 2023 decision to extend the Santa Ynez Unit oil and gas leases based on a flawed national interest determination under the Outer Continental Shelf Lands Act (OCSLA) and improper reliance on a categorical exclusion in violation of the National Environmental Policy Act (NEPA). *See generally* Dkt. No. 1.

On December 20, 2024, BSEE moved for a voluntary remand of the decisions, admitting errors in its analysis, including the incorrect assumption that the Santa Ynez Unit would remain shut down. Dkt. No. 37. The Court denied the voluntary remand upon finding that BSEE's filings failed to "establish an intent to seriously reconsider or re-review its decision." Dkt. No. 61 at 7.

On January 29, 2025, the Court granted Plaintiffs' motion to amend their complaint to add new claims challenging additional actions BSEE had taken to enable a restart of the Santa Ynez Unit. Dkt. No. 46. The new claims challenged BSEE's issuance of two drilling permits to Sable, known as applications for permits to modify (APMs), as well as the agency's continued reliance on outdated, decades-old environmental impact statements to authorize new oil and gas activity at the Unit. *See id.* at 2.

The parties cross-moved for summary judgment. Less than 48 hours before BSEE's brief was due, the agency published an EA/FONSI and a revised national interest determination (the 2025 Decision) for its action granting the 2023 lease extensions. Dkt. No. 75-1 (Kurtz Decl.). The agency then claimed that the EA/FONSI and 2025 Decision mooted all Plaintiffs' claims. Dkt. No. 75 at 14.

On September 24, 2025, following supplemental briefing on whether BSEE's issuance of the 2025 Decision and EA/FONSI was "completed in bad faith, was improperly predetermined, was unreasonably slanted, and/or was

substantively inadequate pursuant to the relevant case law," *see* Dkt. No. 84, the Court denied the parties' cross-motions for summary judgment, Dkt. No. 89. The Court concluded "that if BSEE's 2025 Decision was made in bad faith, was improperly predetermined, or was unreasonably slanted, then th[e] case is not moot." Dkt. No. 89 at 15. The Court found that there was a triable issue of material fact on those questions. *Id*.

Plaintiffs then filed their second amended complaint on November 10, 2025, adding claims about the impropriety and inadequacy of BSEE's 2025 Decision and EA/FONSI. Dkt. No. 104. BSEE lodged its so-called "administrative record" on December 19, 2025. Dkt. No. 108.

The newly produced administrative record contains 174 additional documents, 131 of which are scientific references cited in the EA/FONSI.[1] Notably, the new record on the 2025 Decision and EA/FONSI does not contain any external communications, such as emails, texts, chat messages, or meeting notes, between BSEE and Sable, between BSEE and BOEM, or between BSEE and any other agency. And—despite the fact that this Court previously questioned the propriety of the agency's decisionmaking process and Plaintiffs have now alleged that BSEE's 2025 Decision and EA/FONSI were issued in bad faith—the record is devoid of any drafts of those documents, internal communications among BSEE, or other deliberative documents.

## STANDARD OF REVIEW

A motion to compel completion of the administrative record and a motion to supplement the record with extra-record evidence both seek to expand the evidence before the Court beyond the administrative record compiled by the agency so that judicial review of the agency's decision can be effective and meaningful. *See, e.g.*,

---

[1] The other documents include APMs issued to Sable (20), a 2023 EIS on oil and gas decommissioning activities off California and its references (13) as well as BSEE's 2025 Decision, APM determinations of NEPA adequacy (3) and Endangered Species Act-related records (3).

4

*Blue Mts. Biodiversity Proj. v. Jeffries*, 99 F.4th 438, 452 (9th Cir. 2024) (The "requirement that the administrative record be complete is critical for effective judicial review."); *California v. Ross*, 358 F. Supp. 3d 965, 1008 (N.D. Cal. 2019) (In certain circumstances, "consideration of extra-record evidence is 'necessary to a meaningful judicial review' of the agency's actual decision-making process." (citation omitted)). However, they are evaluated under different standards.

A motion to compel completion of the record stems from the fact that, in evaluating the validity of an agency decision under the Administrative Procedure Act, the Court must consider "the full administrative record that was before the [agency] at the time [it] made [its] decision." *Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 420 (1971), *abrogated on other grounds by Califano v. Sanders*, 430 U.S. 99 (1977). "The whole administrative record, however, 'is not necessarily those documents that the *agency* has compiled and submitted as 'the' administrative record.'" *Thompson v. U.S. Dep't of Labor*, 885 F.2d 551, 555 (9th Cir. 1989) (citation omitted). Rather, "[t]he 'whole' administrative record … consists of all documents and materials directly or *indirectly* considered by agency decision-makers and includes evidence contrary to the agency's position." *Id.* (citation omitted). "An incomplete record must be viewed as a 'fictional account of the actual decisionmaking process.'" *Portland Audubon Soc'y v. Endangered Species Comm.*, 984 F.2d 1534, 1548 (9th Cir. 1993) (citation omitted).

Although agencies are entitled to "a strong presumption" that their administrative records are complete, to rebut that presumption, a movant need only "identify the allegedly omitted materials with sufficient specificity" and "reasonable, non-speculative grounds for the belief that documents were considered by the agency and not included in the record." *Oceana v. Pritzker*, No. 16-cv-06784-LHK (SVK), 2017 WL 2670733, at *2 (N.D. Cal. June 21, 2017) (citation modified). A movant can also rebut the presumption by showing "the

agency applied the wrong standard for compiling the record." *Id.* A showing of "bad faith or improper motive" is not needed. *Id.*

In contrast, a motion to supplement the record (also known as a motion to admit extra-record evidence), seeks to admit evidence that is not part of the record. Supplementation is allowed: (1) when necessary to determine whether the agency considered all relevant factors; (2) when the agency relied on documents not in the record; (3) to explain technical terms or complex matters; and (4) upon a strong showing of bad faith or improper behavior. *Lands Council v. Forester of Region One of the U.S. Forest Serv.*, 395 F.3d 1019, 1030 (9th Cir. 2005).

While deliberative documents are typically not considered part of the administrative record, a court can admit these extra-record documents upon the movant's "strong showing of bad faith or improper behavior" on the part of the agency, including when its decision "rested on a pretextual basis." *Dep't of Comm. v. New York*, 588 U.S. 752, 780–81 (2019) (citation omitted).

## ARGUMENT

The Court should grant Plaintiffs' Motion. The administrative record BSEE lodged is deficient to effectively resolve the issues in this case, including whether BSEE's 2025 Decision and EA/FONSI were made in bad faith, improperly predetermined, or unreasonably slanted.

First, the record lodged by the agency is not the "whole record." It fails to include documents about the Santa Ynez Unit that were before the agency when it made its decision. Thus, the Court should compel BSEE to complete the record with records of external communications. Second, given the unique circumstances surrounding BSEE's issuance of its 2025 Decision and EA/FONSI, the Court should order the record supplemented with additional materials going to the mental processes and political pressures that appear to have improperly influenced the decision-makers. Specifically, BSEE should produce internal communications and other deliberative records, such as draft documents and memos.

## I.  The Court Should Order BSEE to Complete the Administrative Record With External Communications

The Court should order BSEE to complete its administrative record with external communications between April 19, 2024, and May 29, 2025, including (1) an analysis of oil spill risk from restarting production at the Santa Ynez Unit provided to BSEE before it issued its decision; and (2) BSEE's external communications with other state and federal agencies and with Sable regarding the Santa Ynez Unit—including emails, texts, chats, and meeting notes—because the record is incomplete and inadequate without these.

Plaintiffs have identified several specific categories of documents that have not been included in the record but were before the agency and are relevant to the agency's evaluation of oil and gas activities at the Santa Ynez Unit and its 2025 Decision and EA/FONSI. The existence of these documents is sufficient for Plaintiffs to overcome the presumption that the lodged record is complete. *See Oceana v. Pritzker*, 2017 WL 2670733, at *2.

First, BSEE's record is missing a report that Plaintiffs' counsel sent to BSEE, BOEM, and BSEE's counsel in April 2025. That report explained the inadequacy of a 2023 oil spill risk assessment that BOEM prepared as part of an Endangered Species Act consultation with the National Marine Fisheries Service on the effects of oil and gas drilling off California. Sakashita Decl., Ex. 1. This report speaks directly to the risks and harms that BSEE purported to evaluate in issuing its 2025 Decision and EA/FONSI and therefore should have been included in the record.

Second, the record is missing BSEE's external communications with other agencies. For example, an email between BSEE and BOEM regarding the "Environmental Assessment - Sable SYU," which Plaintiffs received as part of an administrative record in another case, states that "the decision was made that we (BSEE/BOEM, collectively) have between two to three months to have [the new] analysis completed." *Id.,* Ex. 2 at 3. Another document refers to "inspectors staying

on the facilities (24/7) … to expedite the process," presumably referring to helping to expedite a restart. *Id.*, Ex. 2 at 3.

These documents were, at the very least, indirectly considered by the agency because they go to the speed at which BSEE was directed to complete its analysis. Moreover, one email references "conversations to which [the email's author was] not privy," *id.*, Ex. 2 at 4, indicating that there are likely other communications between BSEE and BOEM, between BSEE and the Department of the Interior, and/or between BSEE and other government officials regarding BSEE's instruction to reach a decision within a specific timeframe. These types of documents should be included as part of the record. *See Regents of the Univ. of Cal. v. U.S. Dep't of Homeland Sec.*, No. 17-05211-WHA, 2017 WL 4642324, at *3–5 (N.D. Cal. Oct. 17, 2017) (ordering the defendants to complete the record with communications with the White House and other agencies, including emails and meeting notes, because of evidence that the President and high-level officials at other agencies were involved in the agency action at issue), *aff'd by Trump v. United States Dis. of N. Cal.*, 875 F.3d 1200 (9th Cir. 2017), *vacated on other grounds by In re U.S.*, 583 U.S. 29 (2017).[2]

Other documents, which Plaintiffs received in response to a California Public Records Act Request, demonstrate the existence of communications between BSEE and state agencies regarding activities at the Santa Ynez Unit. For example, one email dated November 5, 2024, discusses a meeting between BSEE

---

[2] The Supreme Court held that the district court should have first ruled on the government's arguments that the action at issue was unreviewable because if the district court agreed, that "likely would eliminate the need for the [d]istrict [c]ourt to examine a complete administrative record." 583 U.S. at 32. In doing so, the Court also referred to "the … serious arguments" the government raised "that at least portions of the [d]istrict [c]ourt's order [was] overly broad." *Id.* at 31. Here, however, the documents that are the subject of Plaintiffs' motion to complete are narrow in scope and time-bound, consisting of a single category of documents regarding a single project.

and the California State Lands Commission regarding "Sable, the [Santa Ynez Unit] restart … and Exxon assignment applications." *See* Sakashita Decl., Ex. 3 at 2. But the record contains no communications about or from this meeting, including meeting notes. It also lacks any records of other communications with state or local agencies about the restart of the Santa Ynez Unit.

Third, the record is missing communications between BSEE and Sable. The only email communication between BSEE and Sable included in the record is from the original record in this case. It consists of a single email dated March 18, 2025, in which BSEE stated that "BOEM is working on expediting additional environmental review of the 2023 lease extension" and requested information from Sable regarding vessel traffic and its air permit for the Unit. AR_0000003. However, documents that Plaintiffs received in response to various records requests demonstrate that more communications exist. *See* Sakashita Decl., Ex. 4 (email and attachment regarding hydrotesting of the Santa Ynez Unit emulsion pipelines and a delay in the testing due to "equipment failure"); *id.*, Ex. 5 (September 2024 emails describing failed hydrotest, noting that the "pipeline leaked yesterday at around 1500 psi"); *id.*, Ex. 6 (email from Sable to BSEE describing a meeting "discuss[ing] updated schedules for pipeline and platform subsea inspections and tests"); *see also* AR_0029903 (referencing Sable's "verbal communications with BSEE during November 2024" about activity at the Santa Ynez Unit). These documents were also at least indirectly considered by the agency as they involve activities necessary to restart operations.

BSEE has no valid basis on which to exclude these communications from the record. Courts have held, for example, that the deliberative process "privilege extends only to those communications entirely within the particular agency." *Ctr. for Biological Diversity v. Zinke*, No. 3:18-cv-00064-SLG, 2018 WL 8805325, at *4 (D. Alaska Nov. 16, 2018). "When an agency obtains and considers materials from outside of that agency, or shares the agency's documents with others outside

the agency, including other governmental agencies, the deliberative process privilege does not apply" and "[a]ll such materials should be included within the administrative record." *Id.*; *see also id.* at *8 (ordering that "all email exchanges and other communications relating to the [agency's challenged decision] with other agencies and other organizations outside of [that agency]" be added to the record); *see also Portland Audubon Soc'y*, 984 F.2d at 1549 (distinguishing unprotected communications "between decisionmakers and outside parties" from "the internal deliberative processes of the agency).[3]

The irregular process followed by the agency in issuing the 2025 Decision and EA/FONSI also rebuts the presumption of a complete record. For example, after Plaintiffs filed this case, BSEE sought voluntary remand of its 2023 lease extensions decision and categorical exclusion review to purportedly correct errors Plaintiffs had identified in their lawsuit. But during the pendency of this case, BSEE also authorized further activities at the Santa Ynez Unit, signaling no genuine intent to reconsider. *See* Dkt. No. 61 at 7–8 (denying BSEE's motion for voluntary remand upon concluding the agency failed to "establish an intent to seriously reconsider or re-review its decision" because the agency had permitted Sable to perforate two wells at the Unit after Plaintiffs filed this case and indicated its intent to continue to permit additional activity, among other reasons). Also during this litigation, BSEE issued a press release heralding the Trump administration's role in enabling a restart of Sable's oil production. Sakashita Decl., Ex. 7. These actions, coupled with BSEE's issuance of its 2025 Decision and EA/FONSI on the eve of its briefing deadline, indicate pretext.

Finally, BSEE's failure to include a single communication in the new administrative record indicates that BSEE applied the wrong standard in compiling

---

[3] To the extent BSEE claims any of its communications with BOEM are deliberative because both agencies prepared the EA/FONSI, those documents should still be admitted for the reasons explained below. *Infra at* Argument, Section II.

the record, particularly where these types of communications have been included as part of the administrative record in other cases. *See, e.g., Env't Def. Ctr. v. BOEM*, 36 F.4th 850, 875 (9th Cir. 2022) (referring to "internal emails among Department of Interior officials"); *W&T Offshore, Inc. v. U.S. Dep't of Interior*, No. 17-7102, 2025 WL 2460337, at *3, 20 (E.D. La. Aug. 25, 2025) (referring to emails between BSEE and another agency within the Interior Department).

**II.      The Court Should Order BSEE to Supplement the Record With Internal Communications, Internal Memoranda, and Draft Documents Because the Evidence Shows the Agency's 2025 Decision and EA/FONSI Were Pretextual**

Although internal agency communications, internal memoranda, and draft documents are now typically excluded from the administrative record as deliberative, courts may require an agency to supplement the record to reveal the agency's decisionmaking process and ensure meaningful review in certain circumstances. *See Public Power Council v. Johnson*, 674 F.2d 791, 795 (9th Cir. 1982) ("[C]ourts will go beyond the agency record when agency bad faith is claimed."); *Jeffries*, 99 F.4th at 444 (agreeing with "[t]he District of Columbia Circuit … that deliberative materials are generally not part of the [administrative record] absent impropriety or bad faith by the agency"). This case presents such circumstances: the Court has already identified a triable issue of fact as to whether BSEE's 2025 Decision was made in bad faith, predetermined, or unreasonably slanted. Resolving that issue requires more than the curated record BSEE provided. Plaintiffs therefore seek supplementation with internal BSEE communications, drafts of its 2025 Decision and EA/FONSI, and other documents BSEE has withheld as deliberative from April 19, 2024, to the present.

**a.      Extra-Record Documents Are Necessary to Determine Whether BSEE's Decisions Were Made in Bad Faith, Improperly Predetermined, or Unreasonably Slanted**

The unusual circumstances of this case—the irregular process, public statements, and political pressure—mean that it is necessary to understand what

11

was happening behind the scenes when BSEE decided, post hoc, to revise its 2023 decisions in 2025 with so-called new analyses that reach the same outcomes and justify its issuance of lease extensions for the Santa Ynez Unit.

These statements below—reflecting President Trump's energy dominance agenda, cabinet members championing the Santa Ynez Unit project, and instructions to BSEE that it quickly complete its analysis—coupled with irregularities in BSEE's processes demonstrate bad faith and warrant supplementation of the record:

- President Trump directed BSEE and other agencies to prioritize fast-track permitting over environmental review as part of an aggressive "energy dominance" agenda aimed at dismantling regulatory barriers to fossil fuel development, including offshore oil. *See* Exec. Order No. 14154, "Unleashing American Energy," 90 Fed. Reg. 8353 (Jan. 29, 2025); Exec. Order No. 14213, "Establishing the National Energy Dominance Council," 90 Fed. Reg. 9945 (Feb. 20, 2025).

- Secretary Burgum issued Secretarial Order No. 3417, directing Interior Department agencies, including BSEE, to use emergency and other authorities to fast-track permitting, leasing, and development of fossil fuels on federal lands and the Outer Continental Shelf in response to the national energy emergency. *See* Secretarial Order No. 3417, "Addressing the National Energy Emergency" (Feb. 3, 2025); available at https://www.doi.gov/sites/default/files/document_secretarys_orders/so-3417-signed.pdf.

- In February 2025, BSEE's regional environmental officer requested fast-turnaround NEPA review for Sable: "Due to conversations to which I am not privy, the decision was made that we (BSEE/BOEM, collectively) have between two to three months to have this analysis completed." Sakashita Decl., Ex. 2 at 4.

- BSEE Regional Director Bruce Hesson communicated plans for around-the-clock inspectors on Platform Harmony to expedite a return to production: "We have began [sic] pre-production safety system testing on PF Harmony this week (just daylights) and will have 3-4 inspectors staying on the facilities (24/7) beginning February 24th to expedite the process. If all goes well the testing could be completed by the second week of March." *Id.*, Ex. 2 at 3.

- Pacific Regional Director of BOEM, Douglas Boren, emailed BSEE stating, "It sounds like we need to have a meeting soon so we can discuss exactly what this EA needs to cover so we can be responsive to BSEEs [sic] decision needs." *Id.*, Ex. 2 at 4.

- BSEE issued APMs and conducted pre-production testing that enabled oil production from the Santa Ynez Unit before the case was resolved—or even before completing the 2025 Decision and EA/FONSI, AR_0030110 (2025 Decision); AR_0029881 (EA/FONSI)—indicating it had predetermined the outcome of its new decisions and prioritized advancing the project over meaningful analysis.

- BSEE issued a rare press release on July 25, 2025, trumpeting its role in swiftly enabling oil production at the Santa Ynez Unit to resume, Sakashita Decl., Ex. 7, and stating, "This is a significant achievement for the Interior Department and aligns with the Administration's Energy Dominance initiative, as it successfully resumed production in just five months," *id.* at 3.

- The irregular timing of BSEE's 2025 Decision and EA/FONSI on the eve of the agency's briefing deadline indicates pretext—a post hoc effort to defend prior decisions rather than a genuine analysis made before the agency decision.

- The Chief Executive Officer of Sable, Jim Flores proclaimed that the Santa Ynez Unit restart, "[is] absolutely on Trump's agenda." The same news

13

source confirmed the company's discussions with Trump administration cabinet members, "Trump's National Energy Dominance Council led by Interior Secretary Doug Burgum and Energy Secretary Chris Wright has been apprised of Sable's dilemma and is engaged in discussions with the company." *Id.*, Ex. 8.

- Secretary of Energy Chris Wright, Vice Chair of the Energy Dominance Council, posted a message on social media criticizing Newsom for "blocking oil production off California's coast," and news media reported that the tweet referred to the Santa Ynez Unit a day after Sable lost a lawsuit it filed against the California Coastal Commission. *Id.*, Ex. 9 and Ex. 10.

- Secretary of Transportation Sean Duffy posted on social media on Jan. 1, 2026, that "Leftists in California just lost a battle in their war on affordable energy 🛢️ 💰 [oil barrel and moneybag emojis] Oil production at the Las Flores Pipeline off the coast of Santa Barbara is MOVING FORWARD. It's time to DRILL, BABY, DRILL and bring down high energy prices!" *Id.*, Ex. 11. This statement was made shortly after Duffy's agency (at Sable's request) seized jurisdiction from California over the pipeline system that ruptured and led to the 2015 oil spill, issued Sable emergency special permits that waived federal pipeline safety regulations, and approved Sable's restart plan. *Id.*, Ex. 12.

- Senior Policy Advisor to the National Energy Dominance Council, Brittany Kelm, shared a post by a Sable employee on LinkedIn and thanked Sable for "trusting the Trump Administration to deliver on regulatory certainty for your operations..." *Id.*, Ex. 13.

This evidence shows high-level political influence to clear a path for restart of the Santa Ynez Unit, which entitles Plaintiffs to extra-record evidence.

14

These are precisely the types of circumstances in which courts have allowed extra-record evidence. For example, in *Department of Commerce v. New York*, the Supreme Court upheld a district court order authorizing supplementation of the administrative record with deliberative documents where the available information showed that the agency decision was pretext for the Commerce Secretary's agenda to reinstate a citizenship question on the census. 588 U.S. at 781–82. That information included statements regarding the Secretary's commitment to including this question on the census "from the time he entered office," and adopting a particular rationale "late in the process." *Id.* at 782–83.

Likewise, in *National TPS Alliance v. Noem*, the court held that the plaintiffs were entitled to discovery for their Administrative Procedure Act claims challenging an agency decision to end a particular immigration program given the available evidence demonstrated, *inter alia*, that the Secretary of Homeland Security had indicated her intent to end the program before taking office and made the decision under an unusually short decision timeframe. No. 25-cv-05687-TLT (SK), 2025 WL 2419266, at *2 (N.D. Cal. Aug. 21, 2025); *Nat'l TPS All. v. Noem,* No. 25-cv-01766-EMC, 2025 WL 1276229, at *2–3 (N.D. Cal. May 2, 2025);[4] *see also California v. Ross*, 358 F. Supp. 3d at 1044–45 (examining extra-record evidence in evaluating whether the agency's decision was mere pretext for a desired outcome); *Tummino v. Von Eschenbach*, 427 F. Supp. 2d 212, 233–34 (E.D.N.Y. 2006) (finding evidence of bad faith where, *inter alia*, the agency's decisionmaking processes for approving Plan B over-the-counter contraception was unusual compared to other approvals); *Latecoere Int'l, Inc. v. U.S. Dep't of the Navy*, 19 F.3d 1342, 1344, 1349, 1357 (11th Cir. 1994) (showing that the Navy

---

[4] Because admission of the documents Plaintiffs seek through this Motion may obviate any need for discovery, Plaintiffs are not seeking to take discovery of Federal Defendants at this time, but they reserve their right to do so.

manipulated its evaluation to favor a domestic bidder on a project that was a "political hot potatoe [sic]").

With evidence of irregularities in timing and political pressure, Plaintiffs have proven bad faith sufficiently to support this Court ordering BSEE to supplement the record with extra-record documents.

### b. Deliberative Records Should Be Disclosed Due to Hallmarks of Impropriety in BSEE's Decisionmaking

To the extent that BSEE's claims the missing documents are privileged as deliberative, there are nonetheless grounds to require disclosure. "A litigant may obtain deliberative materials if his or her need for the materials and the need for accurate fact-finding override the government's interest in non-disclosure." *FTC v. Warner Communications, Inc.*, 742 F.2d 1156, 1161 (9th Cir. 1984) (per curiam). In determining whether the deliberative process privilege is overridden, the Ninth Circuit considers four factors: "(1) the relevance of the evidence; (2) the availability of other evidence; (3) the government's role in the litigation; and (4) the extent to which disclosure would hinder frank and independent discussion regarding contemplated policies and decisions." *Am. Fed. of Gov. Emps. v. Trump*, 155 F.4th 1082, 1092 (9th Cir. 2025) (citing *Warner*, 742 F.2d at 1161), *rehearing en banc denied*, 2026 WL 22005. Applying those factors here demonstrates that disclosure of BSEE's communications and related deliberative materials is warranted.

First, the requested deliberative documents are highly relevant because they go to the heart of the Court's inquiry: whether BSEE's 2025 Decision and EA/FONSI were made in bad faith, predetermined, or unreasonably slanted. The Court has already recognized this as a triable issue of fact, and these materials—emails, chats, meeting notes, memos—are the only way to illuminate the agency's motives and processes. Without them, the Court cannot meaningfully assess whether BSEE's new decisions—issued *after* it had originally made the decision to

16

grant the lease extensions for the Santa Ynez Unit—were genuine reconsiderations or pretextual efforts to defend prior decisions.

Courts have held this first factor satisfied in similar circumstances. For example, in *American Federation of Government Employees*, the Ninth Circuit affirmed a district court order requiring disclosure of deliberative records because the agency reorganization plans were critical to evaluating whether reductions in force of federal employees were lawful. *Am. Fed. of Gov. Emps.*, 155 F.4th at 1091– 93. The district court had identified that the records were relevant to a factual dispute about whether high-level officials directed the firings or instructed agencies to plan for reductions in force. *Am. Fed. of Gov. Emps. v. Trump*, 782 F. Supp. 3d 872, 874 (N.D. Cal. 2025). Here, BSEE's internal emails are relevant to understanding whether the analyses and outcomes of it 2025 Decision and EA/FONSI were improperly biased or directed by high-level officials.

Second, there is no other source for this evidence. BSEE's lodged record categorically omits internal communications, draft documents, and other deliberative materials, and the agency has refused to provide even a privilege log. Plaintiffs submitted a Freedom of Information Act request for these records on October 3, 2025, but BSEE has yet to produce any records. Sakashita Decl. ¶ 16. Thus, Plaintiffs have attempted and cannot obtain this information in a timely manner through alternative means.

Third, the government's role in this litigation further tips the balance toward disclosure. After Plaintiffs filed this case, BSEE authorized well perforation permits to enhance production and other activities before completing reconsideration of its lease extensions decision and new NEPA analysis, issued revised decisions on the eve of its briefing deadline, and publicly celebrated the restart of production. These actions raise serious questions about whether political pressure and predetermined outcomes drove its process. In these circumstances,

transparency is not optional; it is essential to determine whether the agency action was lawful or tainted by improper influence.

Finally, disclosure poses little burden on BSEE. Plaintiffs seek a discrete set of records within a specific timeframe about one project for which the Court has already acknowledged bad faith as an issue. Moreover, concerns about disclosure are weaker here, compared to deliberations about ongoing policy formulation, because it involves a past decision about a single project. Disclosure will not impede ongoing policymaking or inhibit future dialogue; rather, it will ensure accountability and illuminate the process behind BSEE's decision where there is evidence of irregularity and political influence. Moreover, any residual risk can be mitigated through protective measures such as redactions or *in camera* review.

On balance, all four factors favor disclosure. Communications and related materials are indispensable to resolving the issues before the Court and withholding them would undermine the integrity of judicial review under the Administrative Procedure Act.

### c.  At the Very Least, BSEE Must Produce a Privilege Log

To the extent that the Court does not immediately compel BSEE to produce internal documents, the Court should order BSEE to provide a privilege log to assist Plaintiffs and the Court in determining if the records (or parts thereof)[5] being withheld qualify for this privilege. The Ninth Circuit has recognized that "in appropriate circumstances," such as when a plaintiff has demonstrated "bad faith or improper behavior," a privilege log may be appropriate. *Jeffries*, 99 F.4th at 445 (citation omitted).

---

[5] If BSEE claims parts of the documents are exempt from disclosure under the deliberative process privilege, BSEE must still provide the documents' factual material. *See Inst. for Fisheries Res. v. Burwell*, No. 16-cv-01574-VC, 2017 WL 89003, at *1 (N.D. Cal. Jan. 10, 2017) ("If a privilege applies, the proper strategy isn't pretending the protected material wasn't considered, but withholding or redacting the protected material and then logging the privilege.").

This is such a case. Given the evidence described above, a privilege log will help determine whether any documents withheld as deliberative are "actually … related to the process by which policies are formulated," or go to the pretext under which BSEE issued its 2025 Decision and EA/FONSI. *See Transgender Law Ctr. v. Immigration & Customs Enf't*, 46 F.4th 771, 783 (9th Cir. 2022) (citations omitted); *see also id.* (further explaining what the agency must show to withhold a document under deliberative process privilege); *Nat'l TPS Alliance*, 2025 WL 2419266, at *4 (ordering production of a privilege log where the plaintiff had demonstrated bad faith in the agency's decisionmaking process and the withheld documents were likely "improperly categorized as deliberative, or … even if the [documents] are deliberative, they should be produced due to Defendants' impropriety").

The Court should therefore order BSEE to produce a privilege log for any documents withheld as deliberative and to provide the withheld records to the Court for *in camera* review. *See Nat'l TPS Alliance*, 2025 WL 2419266, at *4 (issuing a similar order).

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court order BSEE to complete its administrative record with missing documents, including an expert report regarding oil spill risk from a restart of the Santa Ynez Unit and external communications between BSEE and BOEM, BSEE and other state and federal agencies, and BSEE and Sable regarding the Santa Ynez Unit. Plaintiffs also respectfully request that the Court order BSEE to supplement the record with internal communications, internal memoranda, drafts of the 2025 Decision and EA/FONSI, and other deliberative documents from April 19, 2024, to the present regarding the Santa Ynez Unit, including BSEE's decision to issue the 2025 Decision and EA/FONSI; or, in the alternative, to produce a privilege log for any

documents withheld as deliberative and provide the withheld records to the Court for *in camera* review.

Such relief is necessary to ensure the Court has before it a full record from which to meaningfully review Plaintiffs' claims in this case, and to prevent BSEE from withholding critical evidence going to the pretextual nature of the 2025 Decision and EA/FONSI through selective record compilation.

Respectfully submitted this 16th of January 2026,

/s/ *Miyoko Sakashita*
Miyoko Sakashita (CA Bar No. 239639)
Email: miyoko@biologicaldiversity.org

/s/ *Kristen Monsell*
Kristen Monsell (CA Bar No. 304793)
Email: kmonsell@biologicaldiversity.org

Julie Teel Simmonds (CA Bar No. 208282)
Email: jteelsimmonds@biologicaldiversity.org

CENTER FOR BIOLOGICAL DIVERSITY
2100 Franklin St., Suite 375
Oakland, CA 94612
Phone: (510) 844-7100
Fax: (510) 844-7150

*Attorneys for Plaintiffs*

## CERTIFICATE OF COMPLIANCE

The undersigned, counsel of record for Plaintiffs Center for Biological Diversity and Wishtoyo Foundation, certifies that this brief does not exceed 25 pages, in compliance with the page limit set by this Court's Standing Order, Section 6.c, dated November 22, 2024 (Dkt. No. 34).

DATED: January 16, 2026          /s/ *Miyoko Sakashita*
                                 Miyoko Sakashita