ADAM R.F. GUSTAFSON
Principal Deputy Assistant Attorney General
United States Department of Justice
Environment and Natural Resources Division

JOHN K. HEISE (CA Bar No. 331615)
Trial Attorney, Natural Resources Section
Ben Franklin Station, P.O. Box 7611
Washington, D.C. 20044-7611
Telephone:    (202) 598-3312
Email:        john.heise@usdoj.gov

*Counsel for Federal Defendants*

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA
## WESTERN DIVISION

|  |  |
|---|---|
| CENTER FOR BIOLOGICAL DIVERSITY; *et al.* <br><br> *Plaintiffs,* <br><br> v. <br><br> DOUG BURGUM, et al., <br><br> *Federal Defendants,* <br><br> and <br><br> SABLE OFFSHORE CORP. <br><br> *Intervenor-Defendant.* | Case No. 2:24-cv-05459-MWC-MAA <br><br> **FEDERAL DEFENDANTS' RESPONSE TO PLAINTIFFS' MOTION TO COMPEL COMPLETION AND SUPPLEMENTATION OF THE ADMINISTRATIVE RECORD** <br><br> Hearing Date: March 13, 2026 <br> Hearing Time: 1:30 p.m. <br> Judge: Hon. Michelle Williams Court <br> Location: Courtroom 6A |

# TABLE OF CONTENTS

INTRODUCTION ........................................................................................................1

BACKGROUND ........................................................................................................2

LEGAL STANDARDS ..............................................................................................4

ARGUMENT ..............................................................................................................6

I.    Plaintiffs' Motion to Complete the AR Lacks Merit because
      They Fail to Identify Documents that Belong in the AR. .....................7

      A.    Plaintiffs fail to specify which documents they believe
            would complete the AR. ..............................................................8

      B.    Plaintiffs seek to include documents that were not
            considered by the agency in the course of making the
            challenged decision. .................................................................10

      C.    Plaintiffs seek to include post-decisional documents and
            other documents outside the temporal scope of the
            challenged decisions. ...............................................................13

      D.    Deliberative documents are not part of the AR. ......................14

II.   The Court Should Deny Plaintiffs' Motion to Supplement the AR
      with Extra-Record Evidence because Plaintiffs have Made No
      Showing of Bad Faith, let alone the Requisite "Strong Showing." ....17

III.  Plaintiffs' Requests that the Court Make Rulings About
      Deliberative Process Privilege or the Necessity of a Privilege
      Log are Premature. ...........................................................................21

CONCLUSION .........................................................................................................23

Federal Defs.' Resp. to Pls.' AR Mot.

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Am. Fed'n of Gov't Emps., AFL-CIO v. Trump,*
 155 F.4th 1082 (9th Cir. 2025).................................................................22

*Animal Def. Council v. Hodel,*
 840 F.2d 1432 (9th Cir. 1988)...................................................................4

*ASSE Int'l, Inc. v. Kerry,*
 No. SACV 14-00534-CJC(JPRx), 2018 WL 3326687 (C.D. Cal. Jan. 3, 2018)...7

*Biden v. Texas,*
 597 U.S. 785 (2022) .............................................................................18, 21

*Blue Mountains Biodiversity Project v. Jeffries,*
 99 F.4th 438 (9th Cir. 2024).............................................................passim

*Cachil Dehe Band of Wintun Indians of Colusa Indian Cmty. v. Zinke,*
 889 F.3d 584 (9th Cir. 2018)............................................................13, 20

*Carolina Env't Study Grp. v. United States,*
 510 F.2d 796 (D.C. Cir. 1975) .................................................................18

*Center for Biological Diversity v. Zinke,*
 No. 3:18-CV-00064-SLG, 2018 WL 8805325 (D. Alaska Nov. 16, 2018).........16

*Ctr. For Biological Diversity v. U.S. E.P.A.,*
 90 F. Supp. 3d 1177 (W.D. Wash. 2015).................................................13

*Ctr. for Biological Diversity v. U.S. Fish & Wildlife Serv.,*
 450 F.3d 930 (9th Cir. 2006).....................................................................13

*Ctr. for Biological Diversity v. U.S. Fish & Wildlife Serv.,*
 No. 21-CV-5706 (LJL), 2022 WL 2805464 (S.D.N.Y. July 18, 2022)..............11

*Dep't of Com. v. New York,*
 588 U.S. 752 (2019) ...................................................................................18

*Dunn v. F.D.I.C.,*
 No. CV 08-06652 MMM (AJWx), 2012 WL 1986042 (C.D. Cal. May 31, 2012)... 7

*F.T.C. v. Warner Commc'ns Inc.,*
 742 F.2d 1156 (9th Cir. 1984)...................................................................22

ii

*Fence Creek Cattle Co. v. U.S. Forest Serv.*,
   602 F.3d 1125 (9th Cir. 2010)................................................................5

*Fla. Power & Light Co. v. Lorion*,
   470 U.S. 729 (1985) ........................................................................4

*In re United States*,
   583 U.S. 29 (2017) .........................................................................16

*Lands Council v. Powell*,
   395 F.3d 1019 (9th Cir. 2005)........................................................5, 18

*Mission Creek Band of Mission Indians v. Zinke*,
   No. 5:16-cv-00569-ODW (SPx), 2017 WL 10562667 (C.D. Cal. Nov. 1, 2017) . 5, 8

*Nat'l TPS All. v. Noem*,
   798 F. Supp. 3d 1108 (N.D. Cal. 2025) ...........................................21

*Nat'l TPS All. v. Noem*,
   No. 25-CV-01766-EMC, 2025 WL 1276229 (N.D. Cal. May 2, 2025).............19

*Pac. Shores Subdivision, Cal. Water Dist. v. U.S. Army Corps of Eng'rs*,
   448 F. Supp. 2d 1 (D.D.C. 2006) ......................................................4

*Pinnacle Armor, Inc. v. United States*,
   923 F. Supp. 2d 1226 (E.D. Cal. 2013).........................................5, 6, 7

*Regents of Univ. of California v. U.S. Dep't of Homeland Security.*,
   No. C 17-05211 WHA, 2017 WL 4642324 (N.D. Cal. Oct. 17, 2017) ..............16

*Safari Club Int'l v. Jewell*,
   No. CV-16-00094-TUC-JGZ, 2016 WL 7785452 (D. Ariz. July 7, 2016) ..passim

*Save the Colo. v. U. S. Dep't of the Interior*,
   517 F. Supp. 3d 890 (D. Ariz. 2021) ..................................................8

*Thompson v. U.S. Dep't of Labor*,
   885 F.2d 551 (9th Cir. 1989)........................................................4, 10

*Tri-Valley CAREs v. U.S. Dep't of Energy*,
   671 F.3d 1113 (9th Cir. 2012)..........................................................13

*Tummino v. Von Eschenbach*,
   427 F. Supp. 2d 212 (E.D.N.Y. 2006)..................................................18

*Vt. Yankee Nuclear Power Corp. v. Nat. Res. Def. Council, Inc.*,
   435 U.S. 519 (1978) .......................................................................13

iii

Federal Defs.' Resp. to Pls.' AR Mot.

*Wildearth Guardians v. U.S. Forest Serv.*,
    713 F. Supp. 2d 1243 (D. Colo. 2010) ....................................................................7

*Xerces Soc'y for Invertebrate Conservation v. Shea*,
    682 F. Supp. 3d 948 (D. Or. 2023) .......................................................................8

**Statutes**

43 U.S.C. § 1332 ....................................................................................................19

5 U.S.C. § 706 .............................................................................................3, 4, 7

**Regulations**

30 C.F.R. § 250.180(e) .........................................................................................19

Federal Defs.' Resp. to Pls.' AR Mot.

# INTRODUCTION

The administrative record ("AR") consists of the documents that the agency decision-maker considered while making the challenged decision. The Center for Biological Diversity and Wishtoyo Foundation ("Plaintiffs") in this case challenge the Bureau of Safety and Environmental Enforcement's ("BSEE") November 2023 decision to extend leases in the Santa Ynez Unit, BSEE's decision to grant applications for permits to modify ("APMs") in September 2024 and July 2025, and the adequacy of BSEE's May 2025 Environmental Assessment ("EA") and Finding of No Significant Impact ("FONSI) related to the November 2023 lease extension decision.

While this case challenges the series of actions described above, it does not challenge BSEE's decision to "restart" production at the Santa Ynez Unit more generally. But Plaintiffs ignore this distinction in their motion to complete and supplement the AR. They ask the Court to compel BSEE to add to the AR nearly every record in BSEE's possession, from April 2024 to the present, "regarding the Santa Ynez Unit." Dkt. No. 109 at 19. In essence, Plaintiffs have sought the Court's enforcement of an overbroad civil discovery request, which has no place in Administrative Procedure Act ("APA") litigation.

Plaintiffs' motion has two parts—a motion to complete the record and a motion to supplement the record with extra-record evidence—and the Court should deny both. First, to grant Plaintiffs' motion to complete the record, the Court would have to ignore a number of settled principles of administrative law. Plaintiffs have the burden to identify the specific documents they believe the agency actually considered and explain why they believe the agency considered them. Instead, Plaintiffs do little more than speculate that unspecified communications exist and ask the Court to assume that the decisionmaker considered those unknown documents. Plaintiffs' request is also untethered to the

1

1 decisions they challenge in this litigation, such that there is no reason to think the

2 agency decision-maker considered, directly or indirectly, all the evidence Plaintiffs

3 want to include in the record. And Plaintiffs seek to include in the AR both

4 deliberative materials and documents that post-date the challenged decisions,

5 which as a matter of black-letter law do not belong in the record.

6       Second, Plaintiffs' request to supplement the AR with extra-record evidence

7 lacks legal merit. Plaintiffs premise this request for relief on allegations of bad

8 faith, which reduce to the following: BSEE produced its May 2025 EA relatively

9 quickly, without pausing all activity at the Santa Ynez Unit, and the agency

10 thereafter celebrated the efficient restart of oil and gas production. But this is not

11 the rare sort of bad-faith case where the agency gave one reason for its action and

12 plainly had another extra-statutory reason that it did not disclose. Rather, the

13 agency decision at issue—that the extension of the lease term was in the national

14 interest—is well supported by the record, and the expeditious development of

15 offshore oil and gas resources is a policy set by statute that BSEE is obliged to

16 carry out. Thus, extra-record evidence is not needed here to plug a hole in the

17 existing evidence.

18       Lastly, because they have identified no documents to make the supposed

19 dispute concrete, Plaintiffs' request for a determination of deliberative process

20 privilege as to the loosely defined category of documents they would like to put

21 before the Court is premature, as is the request for a privilege log. Plaintiffs'

22 fishing-expedition tactics would be objectionable in ordinary civil litigation and

23 are doubly inappropriate here. The Court should deny the motion.

## BACKGROUND

25       In the current iteration of their complaint, Plaintiffs challenge several

26 distinct agency actions: (1) BSEE's November 2023 decision to extend lease terms

27 for the Santa Ynez Unit, Dkt. No. 104 ¶¶ 169-82; (2) BSEE's decision to grant

2

APMs in September 2024 and July 2025, *id.* ¶¶ 183-92; and (3) BSEE's May 2025 EA/FONSI, prepared in connection with the November 2023 lease extension decision, *id.* ¶¶ 201-210.  Plaintiffs also allege that BSEE has failed to supplement prior Environmental Impact Statements, such that they have "unlawfully withheld" or "unreasonably delayed" agency action under 5 U.S.C. § 706(1).  *Id.* ¶¶ 193-200.

The same plaintiffs in this case are currently litigating other actions related to the Santa Ynez Unit.  They have brought separate challenges to the Bureau of Ocean Energy Management's ("BOEM") actions in connection with development and production plans ("DPPs") at the Santa Ynez Unit, *see* Case No. 2:25-cv-2480-MWC-MAA (C.D. Cal.), Dkt. No. 12, and the Pipeline and Hazardous Materials Safety Administration's ("PHMSA") decision to approve and issue permits for the pipeline system connected to the Santa Ynez Unit, *see* Case No. 25-8059 (9th Cir.), Dkt. No. 1.

On December 19, 2025, Federal Defendants provided to Plaintiffs, Intervenors, and the Court a Supplemental Administrative Record (responsive to the claims in Plaintiffs' Second Supplemental and Amended Complaint, Dkt. No. 104) that totaled over 52,000 pages.  *See* Dkt. No. 108.  That AR contains the EA and FONSI, *see* BSEE_AR_0029881 – BSEE_AR_0029959; the 2023 lease extension decision, *see* BSEE_AR0000422 – BSEE_AR_00000425; and the APMs and their Determination of NEPA Adequacy, *see* BSEE_AR_0000023 – BSEE_AR_0000036, BSEE_AR_0030040 – BSEE_AR_0030109, BSEE_AR_0030143.  It also includes the documents to which the EA tiered, *see, e.g.*, BSEE_AR_0040196; the references and data cited in the EA, *see, e.g.*, BSEE_AR_0030682; and over 13,000 pages worth of documents that Plaintiffs submitted to the agency taking issue with the challenged decisions, BSEE_AR_0001824 – BSEE_AR_0015009.

Federal Defs.' Resp. to Pls.' AR Mot.

With the exception of a handful of references to the EA that BSEE was
unable to locate at that time, BSEE certified that the documents provided were the
items "considered directly or indirectly during the challenged decisions and
constitute the full and complete Supplemental Administrative Record for this
litigation." Dkt. No. 108-1 at 3. Plaintiffs filed the present motion on January 16,
2026.

## LEGAL STANDARDS

Judicial review of an agency action is governed by the APA. 5 U.S.C. §
706. The scope of judicial review under the APA is limited to the administrative
record. *See id.* ("[T]he court shall review the whole record or those parts of it
cited by a party."). The "focal point" for such "judicial review should be the
administrative record already in existence, not some new record made initially in
the reviewing court." *Fla. Power & Light Co. v. Lorion*, 470 U.S. 729, 743-44
(1985) (internal citation omitted); *see also Animal Def. Council v. Hodel*, 840 F.2d
1432, 1436-37 (9th Cir. 1988) (same). The record "consists of all documents and
materials directly or *indirectly* considered by agency decision-makers," regardless
of whether those materials support or detract from the reasonableness of the
decision at issue. *Thompson v. U.S. Dep't of Labor*, 885 F.2d 551, 555 (9th Cir.
1989).

An agency's record is entitled to a "strong presumption of regularity" which
a challenging party must overcome by "clear evidence." *Safari Club Int'l v.
Jewell*, No. CV-16-00094-TUC-JGZ, 2016 WL 7785452, at *2 (D. Ariz. July 7,
2016). The presumption derives from recognition that "it is the agency that did
the considering, and . . . therefore is in a position to indicate initially which of the
materials were before it—namely, were directly or indirectly considered." *Pac.
Shores Subdivision, Cal. Water Dist. v. U.S. Army Corps of Eng'rs*, 448 F. Supp.
2d 1, 5 (D.D.C. 2006) (citation modified and citation omitted).

4

Federal Defs.' Resp. to Pls.' AR Mot.

In a motion to complete the record, Plaintiffs must "set forth in their motion: (1) when the documents were presented to the agency; (2) to whom; (3) and under what context," and "this showing is not sufficient unless the party can also prove the documents were considered by the agency, directly or indirectly." *Mission Creek Band of Mission Indians v. Zinke*, No. 5:16-cv-00569-ODW (SPx), 2017 WL 10562667, at *2 (C.D. Cal. Nov. 1, 2017); *see also Safari Club Int'l*, 2016 WL 7785452, at *2; *Pinnacle Armor, Inc. v. United States*, 923 F. Supp. 2d 1226, 1239 (E.D. Cal. 2013) (same). "Plaintiff must do more than imply that the documents at issue were in the agency's possession," and instead must "prove that the documents were before the actual decision makers involved in the determination." *Pinnacle Armor*, 923 F. Supp. 2d at 1239 (citation and brackets omitted).

In a motion to supplement the record—that is, to compel inclusion for the Court's consideration of evidence that is not within the bounds of the administrative record as defined by the APA—Plaintiffs have a "heavy burden to show that the additional materials sought are necessary to adequately review the . . . decision" at issue. *Fence Creek Cattle Co. v. U.S. Forest Serv.*, 602 F.3d 1125, 1131 (9th Cir. 2010). As is relevant here, Plaintiffs must make a "strong showing of bad faith or improper behavior" before an inquiry into the mental processes of administrative decisionmakers, including a review of deliberative documents, is appropriate. *Blue Mountains Biodiversity Project v. Jeffries*, 99 F.4th 438, 454 (9th Cir. 2024) (citation omitted). This limited exception exists "to identify and plug holes in the administrative record." *Lands Council v. Powell*, 395 F.3d 1019, 1030 (9th Cir. 2005).

Federal Defs.' Resp. to Pls.' AR Mot.

# ARGUMENT

The Court should deny Plaintiffs' motions.[1]  First, concerning the motion to complete the record, Plaintiffs generally fail to identify with any specificity the documents they believe ought to be included in the AR and draw the scope of the possible records far too broadly.  And to the extent that intra- or inter-agency communication might otherwise appropriately be included as items considered by the decisionmaker, recent Ninth Circuit precedent makes clear that such deliberative documents are not part of the AR.

Second, Plaintiffs have not made the requisite showing of bad faith to compel the supplementation of the AR with extra-record evidence.  Stated broadly, courts permit this sort of discovery only where the plaintiff establishes significant irregularities in an agency's decisionmaking process in conjunction with evidence that the agency's stated reasons for a decision were not the agency's actual reasons for a decision.  Plaintiffs' showing here falls short.

Third, Plaintiffs' requests that the Court pass judgment as to the applicability of the deliberative process privilege or the need for a privilege log

---

[1] Courts have used varying terminology when describing these types of motions. Some opinions describe what Plaintiffs refer to as motions to complete the record as motions to "supplement" the record, *see generally Pinnacle Armor*, 923 F.Supp.2d at 1239 (explaining that a party moved to "supplement" the record with documents "directly or indirectly considered" by the agency), and other opinions describe what Plaintiffs label a motion to supplement the record as a motion to admit extra-record evidence, *see generally Safari Club Int'l*, 2016 WL 7785452, at *5 (explaining that Plaintiffs "move in the alternative for the admission" of certain documents as "extra-record evidence.")  The category of motion at issue is generally evident from the context of an opinion, but for clarity, Federal Defendants understand the former sort of motion to argue that the agency should have included in the AR documents that were directly or indirectly considered, but failed to do so, and the latter sort of motion to argue that the court should consider evidence even though it is not definitionally within the scope of the AR.

6

Federal Defs.' Resp. to Pls.' AR Mot.

are highly premature.  To date, the agency has not withheld any documents based on the deliberative process privilege.  It follows that there would be no documents to include on a privilege log at this time.  And Plaintiffs fail to identify any specific document about which there exists a dispute.

## I.    Plaintiffs' Motion to Complete the AR Lacks Merit because They Fail to Identify Documents that Belong in the AR.

The APA requires the Court to "review the whole record," 5 U.S.C. § 706, which includes "all documents and materials directly or indirectly considered by agency decision-makers," *Blue Mountains Biodiversity Project*, 99 F.4th at 444. But "the 'whole record' is not everything before the agency."  *ASSE Int'l, Inc. v. Kerry*, No. SACV 14-00534-CJC(JPRx), 2018 WL 3326687, at *2 (C.D. Cal. Jan. 3, 2018); *see also Pinnacle Armor*, 923 F. Supp. 2d at 1237 ("the record does not include 'every scrap of paper that could or might have been created' on a subject") (citation omitted); *Wildearth Guardians v. U.S. Forest Serv.*, 713 F. Supp. 2d 1243, 1255 (D. Colo. 2010) (explaining that courts should not "allow inclusion in the record of any relevant document contained in an agency's file cabinets").

Instead, the "touchstone" of the analysis as to whether a document belongs in an administrative record "should be the decision-makers' actual consideration [of the document] at the time of the agency action in question."  *Safari Club Int'l*, 2016 WL 7785452, at *4; *see also Dunn v. F.D.I.C.,* No. CV 08-06652 MMM (AJWx), 2012 WL 1986042, at *5 (C.D. Cal. May 31, 2012) ("the crux of the analysis is whether the documents or materials . . . were actually considered, directly or indirectly, by the agency decisionmakers") (citation omitted). Accordingly, in a motion to complete the AR, the movant "must do more than imply that the documents at issue were in the agency's possession." *Pinnacle Armor,* 923 F. Supp. 2d at 1239 (brackets and citation omitted).  Courts have

7

1  generally required movants to "set forth in their motion: (1) when the documents

2  were presented to the agency; (2) to whom; (3) and under what context," and "this

3  showing is not sufficient unless the party can also prove the documents were

4  considered by the agency, directly or indirectly." *Mission Creek Band of Mission*

5  *Indians*, 2017 WL 10562667, at *2.

6      **A. Plaintiffs fail to specify which documents they believe would**

7      **complete the AR.**

8      Plaintiffs say that they have identified several "categories of documents"

9  that are absent from the current AR, "but were before the agency and are relevant

10  to the agency's evaluation of oil and gas activities at the Santa Ynez Unit." Dkt.

11  No. 109 at 7.  Courts routinely deny motions to complete the record that lack the

12  requisite specificity as to the documents that ought to be included.  *See, e.g.*,

13  *Xerces Soc'y for Invertebrate Conservation v. Shea*, 682 F. Supp. 3d 948, 957 (D.

14  Or. 2023) (concluding that plaintiffs had not rebutted presumption of complete

15  record where they "merely speculate[d] about the existence of . . . emails" and did

16  not identify specific documents); *Save the Colo. v. U. S. Dep't of the Interior*, 517

17  F. Supp. 3d 890, 901 (D. Ariz. 2021) (denying motion to complete record and

18  explaining, "Save the Colorado has not made a particularized showing of what

19  documents were omitted from the administrative record."); *Safari Club Int'l*, 2016

20  WL 7785452, at *3 ("having failed to identify the requested documents, Plaintiffs

21  cannot show that . . . the document might fairly be said to have been indirectly

22  considered by the decision-maker.").

23      Here, Plaintiffs assert that the record should include "BSEE's external

24  communications with other agencies," "communications between BSEE and state

25  agencies," and "communications between BSEE and Sable."  Dkt. No. 109 at 7-9.

26  Although Plaintiffs include a handful of documents that purportedly represent

27  sample documents from these categories, *see id.*, the requested relief seeks the

8

Federal Defs.' Resp. to Pls.' AR Mot.

1  inclusion in the record of a loosely defined category of documents and

2  communications, *see id.* at 7.

3      Plaintiffs' approach is entirely at odds with the relevant case law.  They ask

4  the Court not only to speculate that an unenumerated set of other documents and

5  communications exist, but further to assume that the agency considered those

6  unspecified documents in the course of reaching the challenged decisions (even

7  though the agency has submitted a sworn certification to the contrary, *see* Dkt.

8  No. 108-1 at 3).  Even if one were to make the logical leap that other unidentified

9  documents and communications exist in Federal Defendants' possession, there

10  would be absolutely no basis to conclude that those unidentified documents were

11  actually considered by the agency decision-maker in making the challenged

12  decisions.  That is because, from the face of Plaintiffs' motion, it remains a

13  mystery what those documents are, much less who saw them, and when, and in

14  what context.  At most, the Court can review for inclusion the documents that

15  Plaintiffs have attached as exhibits to their motion.  But Plaintiffs' "categories of

16  documents" approach is most akin to a request for production of documents,

17  which has no place in a motion to complete the administrative record in an APA

18  case.

19      Plaintiffs also say that "BSEE applied the wrong standard in compiling the

20  record" because some of the communications they would like to include in the AR

21  "have been included . . . in other cases."  Dkt. No. 109 at 10-11.  Again, this

22  statement does little to illuminate what records Plaintiffs believe merit inclusion in

23  the AR.  Whether inter- or intra-agency communications may have been included

24  in the AR for another case has little bearing on the propriety of the inclusion in the

25  AR of the broad categories of documents Plaintiffs seek now.  Plaintiffs fail to

26  identify the relevance of those other cases to this one, or in what way the

27  documents referenced in passing in either opinion are like the ones they want to

9

Federal Defs.' Resp. to Pls.' AR Mot.

1    include here.  Perhaps in those cases there was reason to think the decisionmaker

2    actually considered the emails.  Perhaps federal defendants stipulated to the

3    inclusion of those documents, included them in error, or applied a different

4    standard of compilation of the AR in those cases.  But that does little to move the

5    needle here.  At bottom, Plaintiffs have failed to identify any basis to believe that

6    the categories of documents they seek were actually considered by the

7    decisionmaker.  The Court should decline to compel completion of the

8    administrative record with the vaguely defined "categories of documents"

9    referenced in Plaintiffs' motion.

10       **B.  Plaintiffs seek to include documents that were not considered by**

11       **the agency in the course of making the challenged decision.**

12       Plaintiffs' standard for the inclusion of a document in the AR appears to be

13    whether that document is "relevant to . . . oil and gas activities at the Santa Ynez

14    Unit" or "regard[s] the Santa Ynez Unit."  Dkt. No. 109 at 7.  But in this litigation,

15    Plaintiffs challenge only certain discrete actions that BSEE has taken with respect

16    to the Santa Ynez Unit (and indeed have sued other agencies in relation to other

17    oil and gas activity at or around the Santa Ynez Unit, *see* Background, *supra*).

18    "[J]udicial review of agency action is limited to review of the record *on which the*

19    *administrative decision was based*."  *Thompson*, 885 F.2d at 555 (emphasis

20    added).  And the agency must have also "directly or indirectly considered" the

21    document at issue in connection with the challenged decision for that document to

22    belong in the AR.  *Blue Mountains Biodiversity Project*, 99 F.4th at 444.  That is,

23    the AR is made up of documents that are both specific to a challenged decision

24    and were actually considered by the agency; mere relevance to the decision or

25    subject matter does not suffice.  *See generally Safari Int'l Club*, 2016 WL

26    7785452 at *2.

27

10

Federal Defs.' Resp. to Pls.' AR Mot.

Here, Plaintiffs requested relief runs afoul of these basic standards. Plaintiffs do not tether the documents they believe merit inclusion in the AR to the challenged decisions at issue but instead argue that any document or communication that BSEE has related to the Santa Ynez Unit within certain overly broad[2] time parameters belongs in the administrative record. This is plainly so for the "categories of documents" that Plaintiffs say belong in the record: BSEE's challenged decisions touched on a subcomponent of activities and regulatory processes at the Santa Ynez Unit, rather than everything about the leases, platforms, pipelines, and restart of production.

So too for the specific documents that Plaintiffs have attached as exhibits to their motion.[3] Plaintiffs' Exhibit 2 reflects a series of email communications between agency personnel that concern the schedule on which the agencies hoped to produce the challenged EA, which Plaintiffs say "go to the speed at which BSEE was directed to complete its analysis" and may reflect the existence of other inter- and intra-agency communication. Dkt. No. 109-3, Dkt. No. 109 at 8. Plaintiffs fail to explain, however, what bearing the desired timing of the EA had on the substance of the challenged decisions. Thus it is not at all clear that the agency decision-maker considered these emails when deciding that lease extension served the national interest or that the proposed extension would not have a significant impact on the environment. *See Ctr. for Biological Diversity v.*

---

[2] *See* Section I.C, *infra*.

[3] Federal Defendants do not oppose the addition of Plaintiffs' Exhibit 1, a letter and report sent from Plaintiffs to Federal Defendants on April 29, 2025, to the AR. In contrast to the other documents at issue, this missive was sent to the relevant decision-makers, while the challenged decision was being made, and related to the challenged decision. The juxtaposition between this document and the other documents or categories of documents speaks volumes.

11

Federal Defs.' Resp. to Pls.' AR Mot.

1  *U.S. Fish & Wildlife Serv.*, No. 21-CV-5706 (LJL), 2022 WL 2805464, at *3

2  (S.D.N.Y. July 18, 2022) ("not every email, draft notice, discussion note, or

3  meeting reminder that agency personnel circulate in the course of making the

4  decision how to apply the statutory directive to the facts that they have found

5  constitutes the whole record").

6  　　　　Plaintiffs' Exhibit 3 suggests that BSEE personnel met with state regulators

7  in late 2024 in connection with the "SYU restart," and Plaintiffs indicate that this

8  document merits inclusion in the AR because it is relevant to the general subject

9  matter of this litigation.  Dkt. No. 109-4, Dkt. No. 109 at 8-9.  But this civil action

10  does not concern the entire "restart" process, only subcomponents thereof.  The

11  focus of the meetings between BSEE and the state appears to have been the

12  pipelines that connect to the Santa Ynez Unit platforms; Plaintiffs have challenged

13  that aspect of restarting production, which appears to have been the "[s]pecific[]"

14  focus of those meetings, in separate litigation.  *See* Dkt. No. 109-4 at 2,

15  Background, *supra*.

16  　　　　Plaintiffs' Exhibits 4 through 6 similarly contain email communication

17  between BSEE and Sable, which Plaintiffs again say should be included in the AR

18  because "they involve activities necessary to restart operations."  Dkt. No. 109 at

19  9.  But again, the entire "restart" of production is not at issue here, and it is not

20  evident from the face of the documents themselves how or why the September

21  2024 hydrotesting of emulsion pipelines and ROV [remotely operated vehicle]

22  inspections, *see* Dkt. No. 109-5 at 3, Dkt. No. 109-6 at 2, Dkt. No. 109-7 at 2,

23  would have been something BSEE would have considered in connection with the

24  challenged decisions (or to which of the challenges these documents might relate).

25  And Plaintiffs, even though they bear the burden to rebut the "strong presumption

26  of regularity" with "clear evidence," offer no further explanation.  *See Safari Club*

27  *Int'l*, 2016 WL 7785452 at *2.  Plaintiffs have failed to explain how even the

Federal Defs.' Resp. to Pls.' AR Mot.

exhibits attached to their motion might have been considered by the decision-maker in the course of making the challenged decisions.  The Court should not permit the inclusion in the AR of these individual documents or the categories of documents they purportedly represent.

### C.  Plaintiffs seek to include post-decisional documents and other documents outside the temporal scope of the challenged decisions.

Plaintiffs' requested relief seeks to complete the AR with documents and communications concerning the Santa Ynez Unit "from April 19, 2024, to the present."  Dkt. No. 109 at 19.[4]  But it is black-letter law that "[p]arties may not use 'post-decision information as a new rationalization either for sustaining or attacking the Agency's decision.'"  *Ctr. for Biological Diversity v. U.S. Fish & Wildlife Serv.*, 450 F.3d 930, 943 (9th Cir. 2006); *see generally Vt. Yankee Nuclear Power Corp. v. Nat. Res. Def. Council, Inc.*, 435 U.S. 519, 555 (1978) ("the role of a court in reviewing the sufficiency of an agency's consideration of environmental factors is . . . limited . . . by the time at which the decision was made").  This is true irrespective of whether a party presses the Court to include extra-record evidence: "exceptions to the normal rule regarding consideration of extra-record materials only apply to information available at the time, not post-decisional information."  *Cachil Dehe Band of Wintun Indians of Colusa Indian Cmty. v. Zinke*, 889 F.3d 584, 600 (9th Cir. 2018); *see also Tri-Valley CAREs v. U.S. Dep't of Energy*, 671 F.3d 1113, 1130 (9th Cir. 2012) (citation omitted) (same); *Ctr. For Biological Diversity v. U.S. E.P.A.*, 90 F. Supp. 3d 1177, 1198

---

[4] Elsewhere in Plaintiffs' briefing, they indicate that the motion to complete the record seeks documents only until May 29, 2025.  *See* Dkt. No. 109-15 at 1, Dkt. No. 109 at i.  Federal Defendants nevertheless address the issue out of an abundance of caution, and because it applies to Plaintiffs' motion to supplement the record, too.

Federal Defs.' Resp. to Pls.' AR Mot.

1  (W.D. Wash. 2015) ("Precedent forecloses the Scientists' arguments that EPA's

2  decisions should be reversed in light of the post-decision evidence cited in their

3  briefs.").

4         Here, Plaintiffs' requested relief is dramatically overbroad in terms of

5  temporal scope.  There is no basis to include post-decisional documents in the AR,

6  irrespective of whether Plaintiffs believe the bad-faith exception applies.  For that

7  reason alone, the Court should exclude from the AR, and from consideration in

8  this case as extra-record evidence, Plaintiffs' Exhibits 7 through 14.   Nor is it

9  clear why April 19, 2024—the date Plaintiffs gave notice of the intent to sue, *see*

10 Dkt. No. 109 at i—would be the relevant start date.  The agency decision, which

11 that Plaintiffs assert was made in bad faith, happened over a year later, in May

12 2025, and the evidence submitted in connection with this motion suggests that the

13 NEPA analysis for that decision began in earnest in February 2025.  *See* Dkt. 109-

14 3 at 4.  Assuming for the sake of argument that a non-deliberative document

15 related to the Santa Ynez Unit dated April 20, 2024, exists in BSEE's possession,

16 it is not at all clear why Plaintiffs believe that Federal Defendants would have

17 considered that document in making a discrete decision over a year later.  The

18 Court should not consider any post-decisional documents for purposes of

19 attacking BSEE's decisions, and ought not to consider pre-decisional documents

20 distant in time from the challenged decisions without further explanation from

21 Plaintiffs.

22        **D. Deliberative documents are not part of the AR.**

23        Plaintiffs also speculate that categories of documents were excluded from

24 the AR because they are deliberative in nature.  Dkt. No. 109 at 9-10, 16-18.  The

25 argument fails, most fundamentally, because the certification for the AR does not

26 distinguish between deliberative and non-deliberative documents.  It instead states

27 that "the documents listed in the Index were considered directly or indirectly

14

Federal Defs.' Resp. to Pls.' AR Mot.

during the challenged decisions and constitute the full and complete Supplemental Administrative Record for this litigation." Dkt. No. 108-1 at 3. But even if certain deliberative documents otherwise satisfied the legal standard for inclusion in the AR (i.e., even if they were "considered"), there would be no basis for including them here because the Ninth Circuit has determined as a matter of law that "deliberative materials are not part of the administrative record." *Blue Mountains Biodiversity Project*, 99 F.4th at 445. (internal quotations omitted)

It makes no difference, moreover, that one of the categories of documents Plaintiffs seek are "external communications with other agencies,"[5] including BOEM. Dkt. No. 109 at 7. The argument fails as an initial matter because BOEM and BSEE are not separate agencies but are instead bureaus within the Department of the Interior. *See Reorganization of Title 30: Bureaus of Safety and Environmental Enforcement and Ocean Energy Management*, 76 Fed. Reg. 64432 (Oct. 18, 2011) (describing restructuring that created BSEE and BOEM as "new bureaus within the Department of the Interior"). The only agency in this case is the Department of the Interior; communications between BOEM and BSEE, or among any of the Department's bureaus and sub-agencies, are not "external."

The argument also fails because the external or internal nature of communications is irrelevant to whether they are deliberative within the meaning of *Blue Mountains*. The Ninth Circuit there held that deliberative documents— which it described as "advisory opinions, recommendations and deliberations comprising part of a process by which governmental decisions and policies are formulated"—do not form part of an AR because they simply are not relevant to judicial review. *Blue Mountains Biodiversity Project*, 99 F.4th at 445 & n.4

---

[5] Plaintiffs decline to specify which other agencies they believe to be relevant, which further complicates the Court's task of determining whether the supposedly missing documents were actually considered by the relevant decisionmaker.

15

Federal Defs.' Resp. to Pls.' AR Mot.

(explaining that courts "assess the lawfulness of agency action based on the reasons offered by the agency" and that "inquiry into the mental processes of administrative decisionmakers is usually to be avoided") (citation modified). Because the panel's rationale did not turn on whether the deliberative documents in question were also privileged, but whether they belong in the AR in the first place, Plaintiffs' apparent reliance on the waiver doctrine for the deliberative process privilege is wholly inapplicable here.  *See* Dkt. No. 109 at 9-10.[6]

Although the issue is not squarely before the Court, the categories of documents Plaintiffs seek may well include deliberative material.  The EA and FONSI reflect collaborative effort between the two bureaus: BOEM prepared the EA, and BSEE made the decision.  *See* BSEE_AR_0029965 (listing BOEM as agency that prepared and published EA); BSEE_AR_0029886 (BSEE Regional

---

[6] Because they pre-date the Ninth Circuit's *Blue Mountain* decision, Plaintiffs misplace their reliance on *Regents of University of California v. United States Department of Homeland Security.*, No. C 17-05211 WHA, 2017 WL 4642324 (N.D. Cal. Oct. 17, 2017), and *Center for Biological Diversity v. Zinke*, No. 3:18-CV-00064-SLG, 2018 WL 8805325 (D. Alaska Nov. 16, 2018), for the proposition that an agency's external communications relevant to a decision should be included in the AR.

Nor are these decisions persuasive in and of themselves, anyway.  In the former case, the Supreme Court not only vacated the District Court's decision, but further observed that the government raised "serious arguments" that the relief granted—which included all materials "related to" a rescinded immigration program considered by anyone in the government who might have had input on the decision, *see Regents*, 2017 WL 4642324 at *8—was "overly broad."  *In re United States*, 583 U.S. 29, 31 (2017).  Plaintiffs seek similar relief here.  In the latter case, the court appears to have deviated without explanation from the more widely accepted approach that requires the movant to show with some level of specificity which documents are missing from the record and upon what grounds the court might conclude that the agency actually considered the documents.  *See* Sections I, I.A., *supra*; *CBD v. Zinke*, 2018 WL 8805325 at *8.

Federal Defs.' Resp. to Pls.' AR Mot.

1   Environmental Officer made Finding of No Significant Impact).  As such,

2   communications between the bureaus could reflect the "process by which

3   governmental decisions and policies are formulated," *Blue Mountains Biodiversity*

4   *Project*, 99 F.4th at 445 n.4, and such documents would not belong in the AR.  In

5   sum, Plaintiffs mischaracterize what BSEE has done with respect to AR

6   compilation, misconstrue the state of Ninth Circuit law with respect to deliberative

7   documents, and give the Court no reason to order the disclosure of broad

8   categories of communications.

9   **II.   The Court Should Deny Plaintiffs' Motion to Supplement the AR with**

10  **Extra-Record Evidence because Plaintiffs have Made No Showing of**

11  **Bad Faith, let alone the Requisite "Strong Showing."**

12       Plaintiffs say that the "unusual circumstances of this case—the irregular

13  process, public statements, and political pressure—mean that it is necessary to

14  understand what was happening behind the scenes when BSEE decided, post hoc,

15  to revise its 2023 decisions in 2025 with so-called new analyses that reach the

16  same outcomes and justify its issuance of lease extensions for the Santa Ynez

17  Unit."  Dkt. No. 109 at 11-12.  In support of their assertion that the circumstances

18  here are "unusual," Plaintiffs cite an Executive Order and a Secretarial Order

19  concerning the development of domestic energy resources, emails that go to the

20  speed with which the agencies hoped to prepare the EA, the issuance of APMs

21  and presence of pre-production testing, and a handful of media items related to the

22  Santa Ynez Unit that post-date the decisions at issue.  *Id*. at 12-14.

23       Although agency "decisions are routinely informed by unstated

24  considerations of politics, the legislative process, public relations, interest group

25  relations, foreign relations, and national security concerns (among others)," it is a

26  "settled proposition[]" that "a court may not reject an agency's stated reasons for

27  acting simply because the agency might also have had other unstated reasons."

17

Federal Defs.' Resp. to Pls.' AR Mot.

*Dep't of Com. v. New York*, 588 U.S. 752, 781 (2019); *see also Carolina Env't Study Grp. v. United States*, 510 F.2d 796, 801 (D.C. Cir. 1975) ("Agencies are required to consider in good faith, and to objectively evaluate, arguments presented to them; agency officials, however, need not be subjectively impartial.").  The "narrow exception" that permits inquiry into the mental processes of a decisionmaker must be based on a "strong showing of bad faith or improper behavior." *Biden v. Texas*, 597 U.S. 785, 811 (2022) (citation omitted). This limited exception exists "to identify and plug holes in the administrative record." *Lands Council*, 395 F.3d at 1030.

Courts have found bad faith sufficient to permit extra-record evidence where the movant's evidence revealed a "significant mismatch" between the decision made and the rationale provided, like where the "sole stated reason" for agency action "seem[ed] to have been contrived." *Dep't of Com. v. New York*, 588 U.S. 752, 783 (2019).  For example, one district court permitted extra-record evidence in a case pertaining to the authorization of an over-the-counter contraceptive where evidence showed that the "real reason" for the decision (concerns about adolescent sexual activity) was "unrelated to . . . the mandate" of the agency, coupled with significant irregularities in the agency's decisionmaking process. *Tummino v. Von Eschenbach*, 427 F. Supp. 2d 212, 233 (E.D.N.Y. 2006).  And the Northern District of California recently permitted extra-record evidence in a case pertaining to the revocation of temporary protected status for Haitian and Venezuelan immigrants—a decision that was, by statute, supposed to turn on the conditions in those countries—where the court found that the record contained "repeated discriminatory statements" towards Haitians and Venezuelans, the decisions lacked legal and evidentiary support, the decisionmaking process was irregular, and the decisions reached were

Federal Defs.' Resp. to Pls.' AR Mot.

unprecedented.  *Nat'l TPS All. v. Noem*, No. 25-CV-01766-EMC, 2025 WL 1276229, at *3 (N.D. Cal. May 2, 2025).

Here, the question before the agency is whether the lease extension in November 2023 (and the subsequent reaffirmation in May 2025 after the preparation of an EA) was "in the National interest."  30 C.F.R. § 250.180(e).  BSEE's mission, as stated in the EA, "promotes a balance between environmental stewardship and responsible development of energy resources on the OCS, while ensuring a fair return to the taxpayer from offshore royalties."  BSEE_AR_0029971.  In OCSLA, Congress has stated that the United States manages the OCS as a "vital national resource reserve . . . for the public" that "should be made available for expeditious and orderly development, subject to environmental safeguards." 43 U.S.C. § 1332(3).  BSEE concluded that the lease extension was in the national interest because "[a]llowing Sable to maintain its offshore leases and resume production supports the national interest in reducing dependence on foreign energy sources, conserving resources, preventing waste, and correlative rights," and "the collection of royalties, bonuses, and rents represent a revenue source for the federal government."  BSEE_AR_0029975.  BSEE "consider[ed] these benefits in the context of protecting the sensitive marine, coastal, and human resources of the OCS." *Id*.  But based on the EA, BSEE concluded that the proposed action (the lease extension) would not have a significant impact on the environment, BSEE_AR_0029886, and thus upheld its prior national interest determination.

Plaintiffs argue that this decision was improper and made in bad faith because there was alleged political pressure to quickly "clear a path for the restart of the Santa Ynez Unit."  Dkt. No. 109 at 14.  Even taking Plaintiffs' argument at

Federal Defs.' Resp. to Pls.' AR Mot.

1  face value,[7] this is completely unlike the circumstances presented in *Tummino* and

2  *National TPS Alliance*: the expeditious development of offshore energy resources

3  was not a forbidden extra-statutory factor for consideration but was indeed a valid

4  part of the agency's statutory mandate, which the EA recognized.  *See*

5  BSEE_AR_0029971.  BSEE explained why allowing Sable to continue its leases

6  served the national interest—because of the importance of domestic energy

7  production, which is exactly what BSEE celebrated after the decision.  *See* Dkt.

8  No. 109-8 at 3 (BSEE Principal Deputy Director Kennth Stevens stated, "In just

9  months, BSEE helped bring oil back online safely and efficiently—right in our

10  own backyard.").  Plaintiffs have not shown a "significant mismatch" between the

11  agency's stated and unstated reasons for reaching the decision at issue.

12       Nor have Plaintiffs made a convincing argument that these decisions were

13  aberrations or the product of significant procedural irregularities.  Rather, the

14  decisions here were routine and spanned two different political administrations.

15  BSEE approved the challenged APMs in September 2024 and July 2025.  Dkt. No.

16  104 ¶¶ 186, 192.  BSEE approved annual lease extensions from 2015 to 2023 and

17  prepared the challenged EA, which upheld the November 2023 national interest

18  determination, in May 2025.  *Id*. ¶¶ 3, 174.  The consistency across nearly a decade

19  tends to rebut the suggestion that there was some sudden, nefarious political

20  motivation at work.  Nor is there anything unprecedented about the processes at

21  issue.  In terms of timing, BSEE reached the challenged decisions at issue in a

22  matter of several months, which is far more time than the decisions at issue in

23

24  _____

24  [7] Although Plaintiffs cite to an Executive Order and Secretarial Order that state a

25  policy favoring efficient energy development that both predate the challenged

26  decision, much of the evidence they present post-dates the challenged decision, and

26  as such ought not to inform the Court's decision.  *See Cachil Dehe Band of Wintun*

27  *Indians*, 889 F.3d at 600-01.

Federal Defs.' Resp. to Pls.' AR Mot.

1   *National TPS Alliance.  See Nat'l TPS All. v. Noem*, 798 F. Supp. 3d 1108, 1123

2   (N.D. Cal. 2025) (recounting decision timeline, which took place over a matter of

3   days, and concluding that the "decision to vacate was already made" by the time

4   Secretary Noem took office).  BSEE's decisions are hardly unprecedented and lack

5   the significant procedural irregularities courts have relied upon in the past.

6        It is also not as damning as Plaintiffs suggest for the agency to reconsider a

7   prior action and reach the same decision.  Rather, "[i]t is black-letter law that an

8   agency that takes superseding action on remand is entitled to reexamine the

9   problem, recast its rationale and reach the same result."  *Texas*, 597 U.S. at 813

10  (citation modified and citation omitted).  Although there was no formal remand in

11  this case, the point is the same: BSEE and BOEM reexamined the national interest

12  determination, amplified the reasoning and environmental analysis (like Plaintiffs

13  had requested), and concluded that the lease extension was indeed in the national

14  interest.  The EA itself is lengthy and thorough; Plaintiffs have made no argument

15  in this motion that the EA itself is woefully inadequate, fails to follow the agency's

16  statutory mandate, or improperly disguises the agency's "real reason" for its

17  decision.  Plaintiffs have offered no reason for the Court to conclude that this is the

18  rare bad-faith case that would permit extra-record evidence and discovery, much

19  less the "strong showing" that is required under Supreme Court precedent.

20  Plaintiffs' motion to supplement the AR with extra-record evidence should be

21  denied.

22  **III.    Plaintiffs' Requests that the Court Make Rulings About Deliberative**

23  **      Process Privilege or the Necessity of a Privilege Log are Premature.**

24       Plaintiffs request that the Court issue an order as to whether Federal

25  Defendants must disclose deliberative documents that have been "withheld," and,

26  in the alternative, that BSEE must provide a privilege log that catalogues any

27  documents so withheld.  Dkt. No. 109 at 16-19.  The Ninth Circuit has explained

21

Federal Defs.' Resp. to Pls.' AR Mot.

1    that an agency's designation of documents as deliberative may be subject to

2    judicial review, and that courts may order a privilege log to aid in that analysis

3    upon a showing of bad faith.  *See Blue Mountains Biodiversity Project*, 99 F.4th at

4    445.  But "[b]ecause deliberative materials are 'not part of the administrative

5    record to begin with, they are not required to be placed on a privilege log" as a

6    matter of course.  *Id.* (citation modified and citation omitted).

7           Here, the certification does not say that documents were excluded from the

8    AR because they are deliberative.  *See* Dkt No. 108-1 at 3.  Instead, the

9    certification makes clear that documents were included within or excluded from

10   the AR solely based on whether they were considered, directly or indirectly, in

11   making the challenged decisions.  *See id*.  As such, it would be premature for the

12   Court to rule on the applicability of deliberative process privilege, most

13   fundamentally, because the agency has not yet determined whether to invoke the

14   deliberative process privilege over any document.

15          If and to the extent the Court compels the inclusion of additional documents

16   in the AR, and if and to the extent the agency determines those documents are

17   deliberative, the agency will at that point determine whether to invoke the

18   privilege, including by supplying a declaration from the agency head explaining

19   why the disclosure of certain documents must be prevented to avoid "chill[ing]

20   frank discussion and deliberation in the future among those responsible for

21   making governmental decisions."  *F.T.C. v. Warner Commc'ns Inc.*, 742 F.2d

22   1156, 1162 (9th Cir. 1984).  But that time has not yet come.  In both cases that

23   Plaintiffs cite in support of the argument that the Court should make a

24   determination now, there were specific documents at issue that made the dispute

25   concrete.  *See Am. Fed'n of Gov't Emps., AFL-CIO v. Trump*, 155 F.4th 1082,

26   1091 (9th Cir. 2025); *Warner Commc'ns Inc.*, 742 F.2d at 1161.  Not so here.

27

22

Federal Defs.' Resp. to Pls.' AR Mot.

1    So too for a "privilege" log.  Because the agency did not purport to

2    withhold any documents based on their "deliberative" nature, a ruling on a

3    "privilege" log would cast no light on the agency's record compilation process.

4    Plaintiffs' desired relief in practice reduces to a sort of extra-record discovery

5    request, requiring the agency to compile an additional list of documents for *in*

6    *camera* review.  That request has no legal basis.  And even to the extent the Court

7    determines that certain documents merit inclusion in the AR and were omitted

8    because of their deliberative nature, a privilege log is still not required because

9    Plaintiffs fail to make the requisite showing of bad faith described in *Blue*

10    *Mountains Biodiversity Project*, *i.e.*, that the agency acted in bad faith in

11    mislabeling documents as deliberative.  *See* 99 F.4th at 445.  Plaintiffs' requests

12    for (1) a ruling on the applicability of deliberative process privilege to a loosely

13    defined category of documents and (2) to compel the creation of a privilege log

14    for documents that by definition do not belong in the AR, should both be denied.

15                                    **CONCLUSION**

16    Agencies' designations of an AR are subject to a strong presumption of

17    regularity, which Plaintiffs—serial litigants with years of FOIA requests and

18    administrative records from parallel cases to rely upon—have failed to rebut with

19    any concrete evidence.  Except for Plaintiffs' Exhibit 1, Plaintiffs' motion to

20    complete and supplement the AR should be denied.  Plaintiffs' "categories of

21    documents" approach lacks support in the case law, and they fail to identify with

22    particularity the documents Plaintiffs believe to be missing from the AR.  All but

23    one of the documents Plaintiffs have attached to their motion either lack an

24    obvious connection to the challenged decision or post-date the decision, such that

25    they either ought not to be or cannot be included in the AR.  There is no evidence

26    of bad faith that warrants permitting extra-record discovery and supplementation

27    of the record.  And Plaintiffs' requests for rulings on the applicability of the

23

Federal Defs.' Resp. to Pls.' AR Mot.

1    deliberative process privilege and the need for a privilege log are premature.

2    Plaintiffs' motions should therefore be denied.

3

4    Respectfully submitted this 13th of February, 2026.

5

6                                    ADAM R.F. GUSTAFSON
                                     Principal Deputy Assistant Attorney General
7                                    U.S. Department of Justice
8                                    Environment and Natural Resources Division

9                                    /s/ John K. Heise
10                                   JOHN K. HEISE
                                     Trial Attorney (CA Bar No. 331615)
11                                   Natural Resources Section
12                                   P.O. Box 7611, Ben Franklin Station
                                     Washington, D.C. 20044
13                                   (202) 598-3312
14                                   john.heise@usdoj.gov

15                                   *Counsel for Federal Defendants*

16

17

18

19

20

21

22

23

24

25

26

27

Federal Defs.' Resp. to Pls.' AR Mot.

**CERTIFICATE OF COMPLIANCE**

The undersigned, counsel of record for Federal Defendants, certifies that this brief does not exceed 25 pages, in compliance with the page limit set by this Court's Standing Order, Section 6.c, dated November 22, 2024 (Dkt. No. 34).

DATED: February 13, 2026

/s/ *John K. Heise*
John K. Heise

*Counsel for Federal Defendants*

Federal Defs.' Resp. to Pls.' AR Mot.