UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.   2:24-cv-05459-MWC-MAA                    Date: March 12, 2026

Title:   Center For Biological Diversity *et al* v. Doug Burgum *et al*

Present:  The Honorable Michelle Williams Court, United States District Judge

|  T. Jackson  |  Not Reported  |
| --- | --- |
| Deputy Clerk | Court Reporter / Recorder |

Attorneys Present for Plaintiffs:          Attorneys Present for Defendants:
N/A                                         N/A

**Proceedings: (In Chambers) The Court GRANTS Plaintiffs' Motion to Compel Completion and Supplementation of the Administrative Record (Dkt. [109]).**

Before the Court is a Motion to Compel Completion and Supplementation of the Administrative Record ("Motion") filed by Plaintiffs Center for Biological Diversity ("Biological Diversity") and Wishtoyo Foundation ("Wishtoyo") (collectively, "Plaintiffs").  Dkt. # 109 ("*Mot.*").  Federal Defendants Doug Burgum, in his official capacity as Secretary of the United States Department of the Interior, the Bureau of Safety and Environmental Enforcement ("BSEE"), and Bobby Kurtz, in his official capacity as Acting Pacific Regional Director for BSEE (collectively, "Federal Defendants"), opposed.  Dkt. # 110 ("*Fed. Opp.*").  Intervenor-Defendant Sable Offshore Corp. ("Sable") also opposed.  Dkt. # 111 ("*Sable Opp.*").  Plaintiffs replied.  Dkt. # 113 ("*Reply*").  The Court finds the matter appropriate for decision without oral argument and **VACATES** the Motion hearing.  *See* Fed. R. Civ. P. 78; L.R. 7-15.  Having considered the papers, the Court **GRANTS** Plaintiffs' Motion.

I.      Background

The Court incorporates the background section of its prior order and repeats only that necessary to decide the instant motion.  *See* Dkt. # 89 ("*MSJ O.*").

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.   2:24-cv-05459-MWC-MAA                           Date: March 12, 2026

Title:   Center For Biological Diversity *et al* v. Doug Burgum *et al*

A.   Factual and Procedural Background

This case concerns Federal Defendants' approval of lease extensions and drilling permits that enabled the restart of offshore oil and gas production at the Santa Ynez Unit ("Unit" or "SYU") following a 2015 oil spill. *See id.* 2; *see generally* Dkt. # 1 ("*Compl.*").

The initial complaint, filed in June 2024, alleged that BSEE's November 2023 lease extension decision failed to conduct meaningful reviews as required by law. *See Compl.* ¶¶ 90–103.  Specifically, the complaint alleged that BSEE violated the National Environmental Policy Act ("NEPA"), the Outer Continental Shelf Lands Act ("OCSLA"), and the Administrative Procedure Act ("APA"), by failing to conduct required environmental review and by issuing extensions and permits without a proper national-interest determination. *Id*.

On September 19, 2024, Sable submitted two Applications for Permit Modification ("APMs"), which would allow Sable to rework two of the Unit's wells by reperforating and adding new perforations to enhance future production potential. *MSJ O.* 5. On January 29, 2025, the Court granted Plaintiff's motion for leave to file a first amended complaint to include BSEE's approval of Sable's APMs. *See* Dkt. # 46.

On May 2, 2025, Plaintiff filed its motion for summary judgment. *MSJ. O.* 6. Shortly after, Sable began limited resumption of production at the Unit, including producing to onshore storage tanks until it gains final approval to operate its onshore pipeline. *Id*. On May 29, 2025, less than 48 hours before BSEE's summary judgment briefs were due, BSEE reconsidered its November 2023 lease extension decision. *Id.*; *see* Dkt. # 75-3 ("*EA*"); Dkt. # 75-4 ("*FONSI*"); Dkt. # 75-5 ("*Decision Letter*").  BSEE, in coordination with the Bureau of Ocean Energy Management ("BOEM"), prepared an Environmental Assessment ("EA") and a Finding of No Significant Impact ("FONSI"). *EA*; *FONSI*.  The Court generally refers to the 2025 EA, FONSI, and decision letter as the "2025 Decision."

In explaining the procedural history of the lease extension, the EA mentions the November 2023 decision and states,

> BSEE conducted a Categorical Exclusion Review (CER) of Exxon's October 2023 lease extension request to resume production. A categorial exclusion [("CE")] exists for BSEE's

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.   2:24-cv-05459-MWC-MAA                     Date: March 12, 2026

Title:       Center For Biological Diversity *et al* v. Doug Burgum *et al*

> decision on the lease extension. CEs are appropriate for federal actions that do not normally have a significant effect on the human environment (42 USC 4336(e)(1)).  However, the CBD [L]etter alleged potential impacts associated with extending Exxon's lease thus creating controversy regarding the proposed action's environmental impacts and triggering an extraordinary circumstance (43 CFR 46.215(c)).  Accordingly, this Environmental Assessment serves to provide a more in-depth analysis of the environmental impacts associated with the lease extension request.

*EA* 3.  The EA states in a footnote, "The lease extension at issue here is appropriate for a CE.  However, BSEE is undertaking additional environmental review here."  *Id.*

On May 30, 2025, shortly after the new BSEE decision, Federal Defendants and Sable filed cross motions for summary judgment and oppositions to Plaintiffs' motion for summary judgment.  *MSJ O.* 6.  Both defendants argued they were entitled to summary judgment due to BSEE's new decision, because the 2025 Decision mooted the case.  *Id.*

On September 24, 2025, following supplemental briefing on whether BSEE's issuance of the 2025 Decision and EA/FONSI was "completed in bad faith, was improperly predetermined, was unreasonably slanted, and/or was substantively inadequate pursuant to the relevant case law," *see* Dkt. # 84, the Court denied the parties' cross-motions for summary judgment, *see MSJ O.* 14-15.  The Court stated that, "if BSEE's 2025 Decision was made in bad faith, was improperly predetermined, or was unreasonably slanted, then th[e] case is not moot."  *Id*. 15. However, that issue was not before the Court in the operative complaint, and there remained a triable issue of material fact.  *Id*.

On November 10, 2025, Plaintiffs filed their Second Supplemental and Amended Complaint ("SAC"), adding claims about the impropriety and inadequacy of BSEE's 2025 Decision and EA/FONSI.  Dkt. # 104.  On December 19, 2025, BSEE lodged its administrative record.  Dkt. # 108.  According to Plaintiffs, the newly produced administrative record contains 174 additional documents, 131 of which are scientific references cited in the EA/FONSI. *Mot.* 4.  Regarding the 2025 Decision and EA/FONSI, the new record does not contain any external communications, such as emails, texts, chat messages, or meeting notes, between BSEE and Sable, between BSEE and BOEM, or between BSEE and any other agency.  *Id.*  Nor does the record contain any drafts

---

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.    2:24-cv-05459-MWC-MAA                    Date: March 12, 2026

Title:      Center For Biological Diversity *et al* v. Doug Burgum *et al*

documents, internal communications among BSEE, or other deliberative documents regarding BSEE's 2025 Decision and EA/FONSI for the Santa Ynez Unit lease.  *Id.*

B.      Motion to Compel and Supplement

In the instant Motion, Plaintiffs seek an order requiring BSEE to: (1) complete the administrative record with external communications and a risk report they contend were directly or indirectly considered in BSEE's May 29, 2025 decision and associated EA/FONSI (the 2025 Decision); and (2) supplement the AR with internal deliberative materials.  *Mot.* 2.  Should BSEE object to including any specific record as deliberative, Plaintiffs argue Federal Defendants should be compelled to produce a privilege log and in camera review.  *Id.* 2-3.

Federal Defendants and Sable oppose, arguing that Plaintiffs have not identified specific documents, that deliberative material is categorically excluded from the AR, and that Plaintiffs have not made the requisite bad faith showing for extra record review.  *See Fed. Opp.*; *Sable Opp.*

The Court takes each motion in turn.

II.     Motion to Compel Completion of Administrative Record

A.      Legal Standard

The APA provides that a court's arbitrary and capricious review shall be based on "the whole record or those parts of it cited by a party."  5 U.S.C. § 706.  The whole administrative record "includes everything that was before the agency pertaining to the merits of its decision."  *Portland Audubon Soc'y v. Endangered Species Comm.*, 984 F.2d 1534, 1548 (9th Cir. 1993).  Further, the whole record "consists of all documents and materials directly or indirectly considered by agency decision-makers and includes evidence contrary to the agency's position."  *Thompson v. U.S. Dep't of Labor*, 885 F.2d 551, 555 (9th Cir. 1989) (citing *Exxon Corp. v. U.S. Dep't of Energy*, 91 F.R.D. 26, 33 (N.D. Tex. 1981)).

The administrative record submitted by the federal government is entitled to a presumption of completeness, which is rebutted by clear evidence.  *Id.*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.    2:24-cv-05459-MWC-MAA                    Date: March 12, 2026

Title:    Center For Biological Diversity *et al* v. Doug Burgum *et al*

> In order to overcome the presumption that the record was properly designated, plaintiff must put forth concrete evidence. Plaintiff cannot merely assert that other relevant documents were before the agency but were not adequately considered. Instead, plaintiff must identify reasonable, non-speculative grounds for its belief that the documents were considered by the agency and not included in the record. Finally, plaintiff must do more than imply that the documents at issue were in the agency's possession. Rather, plaintiff must prove that the documents were before the actual decision makers involved in the determination.

*Pinnacle Armor, Inc. v. United States*, 923 F. Supp. 2d 1226, 1239 (E.D. Cal. 2013) (brackets omitted) (quoting *Sara Lee Corp. v. Am. Bakers Ass'n*, 252 F.R.D. 31, 34 (D.D.C. 2008); *see also Ctr. for Native Ecosystems v. Salazar*, 711 F.Supp.2d 1267, 1275 (D. Colo. 2010) ("To overcome the presumption of regularity and meet the burden of proving that the record designated by the agency is incomplete, Petitioners must clearly set forth in their motion: (1) when the documents were presented to the agency; (2) to whom; (3) and under what context.").

B.    Discussion

Plaintiffs ask the Court to order BSEE to complete its administrative record with external communications between April 19, 2024, and May 29, 2025, including (1) an analysis of oil spill risk from restarting production at the Santa Ynez Unit provided to BSEE before it issued its decision, and (2) BSEE's external communications with other state and federal agencies and with Sable regarding the Santa Ynez Unit, including emails, texts, chats, and meeting notes.

For the reasons described below, Plaintiffs have met their burden to demonstrate "reasonable, nonspeculative grounds" that BSEE considered the missing records. *Inland Empire– Immigrant Youth Collective v. Nielsen*, No. EDCV-17-2048 PSG (SHKx), 2019 WL 13240629, at *4 (C.D. Cal. Apr. 8, 2019) (citation omitted); *Save Our Forest Ass'n, Inc. v. U.S. Forest Serv.*, No. EDCV-24-1336 JGB (DTBx), 2026 WL 433725, at *1 (C.D. Cal. Jan. 8, 2026).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.    2:24-cv-05459-MWC-MAA                    Date: March 12, 2026

Title:    Center For Biological Diversity *et al* v. Doug Burgum *et al*

First, Plaintiffs have put forth proof that certain categories of documents were not included in the record but were before the agency and are relevant to its 2025 Decision and EA/FONSI.  For one, it is undisputed that Plaintiffs' counsel sent a letter and expert report (of Dr. Susan C. Lubetkin) to BSEE, BOEM, and BSEE's counsel on April 29, 2025, that BSEE omitted from the record.  *See Fed. Opp.* 11 n.3 (Federal Defendants conceding "this missive was sent to the relevant decision-makers, while the challenged decision was being made, and related to the challenged decision."); Dkt. # 109-1 ("*Sakashita Decl.*"), Ex. 1.

Plaintiffs also submit with their Motion emails that constitute reasonable, non-speculative grounds for their belief that the record lacks BSEE's external communications with specified agencies that were considered but not included.  *See Sara Lee Corp.*, 252 F.R.D. at 34.  One email between BSEE and BOEM, which Plaintiffs received as part of an administrative record in another case, refers to the timeline of the 2025 Decision.  *Mot.* 7-8; *Sakashita Decl.*, Ex. 2 at 3 (stating that "the decision was made that we (BSEE/BOEM, collectively) have between two to three months to have [the new] analysis completed").  The email references "conversations to which [the author] was not privy," *see* Dkt. # 109-1 ("*Sakashita Decl.*"), Ex. 2 at 4, which indicates the existence of other relevant communications.  Another document refers to "inspectors staying on the facilities (24/7) . . . to expedite the process."  *Id.*, Ex. 2 at 3.  Contrary to Federal Defendants' argument, *see, e.g.*, *Fed Opp.* 11:16-17, documents regarding the speed at which BSEE was directed to complete its analysis are relevant to the question of whether the review was lawfully completed.  Plaintiffs also provide an email dated November 5, 2024, describing a meeting between BSEE and the California State Lands Commission regarding "Sable, the [Santa Ynez Unit] restart … and Exxon assignment applications."  *See Sakashita Decl.*, Ex. 3 at 2.  Communications about or from a BSEE meeting concerning the restart at the Santa Ynez Unit are relevant to BSEE's decisionmaking and, thus, Plaintiffs' claims.[1]

Third, Plaintiffs provide emails demonstrating that more communications between BSEE and Sable exist concerning activities necessary to restart operations at the Santa Ynez Unit, including inspections, hydrotesting, and scheduling.  *See Sakashita Decl.*, Exs.

---

[1] Federal Defendants argue that BOEM and BSEE are not "separate agencies" but instead separate bureaus within the Department of the Interior.  *Fed. Opp.* 15.  For purposes of completing the administrative record, the Court credits Plaintiffs' showing that the APA defines "agency" to include authorities within larger departments.  *See* 5 U.S.C. § 551(1) (defining agency as "each authority of the Government of the United States, whether or not it is within or subject to review by another agency."); *Reply* 8.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.   2:24-cv-05459-MWC-MAA                    Date: March 12, 2026

Title:        Center For Biological Diversity *et al* v. Doug Burgum *et al*

4–6. And while Federal Defendants argue the documents are not relevant because "the entire 'restart' of production is not at issue," *Fed. Opp.* 12, the Court finds the restart of production at the Santa Ynez Unit remains central to the case, because the 2025 Decision revised the prior lease extension decision that granted the restart.

Finally, the Court finds the proposed timeframe of documents to complete the record (April 19, 2024 to May 29, 2025) is appropriate. *See Reply* 3 n. 1. This period captures pre-decisional materials plausibly considered in making the EA/FONSI and 2025 Decision. Sable argues that the decision-making process for the 2025 Decision and EA/FONSI "began no earlier than in December 2024." *Sable Opp.* 7. To the extent Sable suggests BSEE's process in deciding to revise the lease extension decision began when BSEE requested voluntary remand, the Court disagrees and finds the proper start date to be when Plaintiffs notified BSEE of their intent to sue.

The Court finds the level of detail provided in Plaintiffs' evidence adequate, particularly given that the missing items are the agency's own communications, cabined to the relevant time frame (April 19, 2024 through May 29, 2025), and concern documents BSEE likely considered in reaching its 2025 Decision and EA/FONSI.

For these reasons, the Court **GRANTS** the Motion with respect to an order that BSEE complete the administrative record as described herein.

III.     Motion to Supplement Administrative Record with Internal Deliberative Materials

A.     Legal Standard

As noted, agency action, including designation and certification of an administrative record, is entitled to a "presumption of regularity." *See McCrary v. Gutierrez*, 495 F.Supp.2d 1038, 1041 (N.D. Cal. 2007). Accordingly, a court may only consider extra-record materials in the following circumstances: "(1) if necessary to determine 'whether the agency has considered all relevant factors and has explained its decision,' (2) 'when the agency has relied on documents not in the record,' or (3) 'when supplementing the record is necessary to explain technical terms or complex subject matter.' " *Sw. Ctr. for Biological Diversity v. U.S. Forest Serv.*, 100 F.3d 1443, 1450 (9th Cir. 1996) (quoting *Inland Empire Public Lands Council v. Glickman*, 88 F.3d 697, 703– 04 (9th Cir. 1996)). The Ninth Circuit also permits extra-record documents when a plaintiff demonstrates bad faith by the agency. *Id.* (citing *Nat'l Audubon Soc. v. U.S. Forest Serv.*, 46 F.3d 1437, 1447

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.    2:24-cv-05459-MWC-MAA                    Date: March 12, 2026

Title:    Center For Biological Diversity *et al* v. Doug Burgum *et al*

n.9 (9th Cir. 1993)).    These four exceptions (the "*Lands Council*" exceptions) are "narrowly construed."  *See Lands Council v. Powell*, 395 F.3d 1019, 1030 (9th Cir. 2005) (citations omitted).

For the bad faith exception to apply, "[n]ormally there must be a strong showing of bad faith or improper behavior before the court may inquire into the thought processes of administrative decision makers."  *Animal Def. Council v. Hodel*, 840 F.2d 1432, 1437 (9th Cir.1988), amended, 867 F.2d 1244 (9th Cir.1989).

    B.    <u>Application</u>

        i.    *"Bad Faith" Exception Applies*

Plaintiffs request the Court order BSEE to supplement the record with internal deliberative materials under *Lands Council*'s "bad faith" exception.  *Mot.* 11–18.

In support of the request, Plaintiffs point to the "irregular process, public statements, and political pressure" behind the unusual circumstances of this case.  *Mot.* 11.  Plaintiffs cite public messaging, including a press release from President Trump directing BSEE and other agencies to prioritize fast-track permitting over environmental review; a Secretarial Order from Secretary Burgum directing Interior Department agencies, including BSEE, to fast-track the permitting, leasing, and development of fossil fuels on federal lands and the Outer Continental Shelf; the February 2025 email between BSEE and BOEM, previously described, requesting a two to three month turnaround on a NEPA review for Sable; and additional emails, communications, and social media posts purporting to suggest irregularities, bad faith, or predetermination in BSEE's issuance of the 2025 Decision and revised EA/FONSI.  *Mot.* 12–14.

Federal Defendants dispute the characterization of these documents as evidence of bad faith on the part of any defendant, much less a "strong showing" of bad faith.  *Fed Opp.* 17–21.  Similarly, Sable argues that no showing of bad faith has been made, because political statements, executive orders, and press releases merely reflect lawful policy preferences and not improper influence.  *Sable Opp.* 14–20.  Both defendants point out that the decisions spanned both the Biden and Trump administrations, *Sable Opp.* 19; *Fed. Opp.* 20, and that most of Plaintiffs' evidence post-dates the relevant decisions.  *Sable Opp.* 17; *Fed. Opp.* 20 n.7.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.   2:24-cv-05459-MWC-MAA                    Date: March 12, 2026

Title:   Center For Biological Diversity *et al* v. Doug Burgum *et al*


The Court finds Plaintiffs have made the requisite showing of bad faith to warrant supplementation of the administrative record with extra-record documents. Plaintiffs have presented evidence of a compressed directive to complete the EA, restart-focused coordination and approvals surrounding the Santa Ynez Unit, and post-decision statements celebrating a rapid restart. The Court adopts the reasoning of Plaintiffs' cited authorities, including *Department of Commerce v. New York*, 588 U.S. 752, 781–82 (2019) (holding extra-record discovery justified by evidence that agency decision was pretextual), *National TPS Alliance v. Noem*, No. 25-cv-05687-TLT (SK), 2025 WL 2419266, at \*2 (N.D. Cal. Aug. 21, 2025 (evidence that Secretary of Homeland Security Kristi Noem expressed her intention to alter the TPS program before taking office sufficient showing that TPS determinations "were based on a preordained determination to end the TPS program, rather than an objective review of the country conditions"), and *Tummino v. Von Eschenbach*, 427 F. Supp. 2d 212, 233–34 (E.D.N.Y. 2006) (finding evidence of bad faith where the agency's decisionmaking processes was "unusual" in several respects), in concluding the timing of the 2025 Decision and EA/FONSI raise the issue of whether the agency's decision was made in bad faith, improperly predetermined, or unreasonably slanted. Indeed, this Court has already recognized the relevance of questions about predetermination and bad faith given the posture of this case. *See MSJ O.* 14-15. Extra record materials appear necessary to permit meaningful judicial review of Plaintiffs' claims of bad faith or predetermination.

### ii.   *Deliberative Materials Should Be Disclosed*

Finally, both defendants rely on *Blue Mountains Biodiversity Project v. Jeffries*, 99 F.4th 438 (9th Cir. 2024), to argue deliberative materials are categorically outside the record. *Fed. Opp.* 22; *Sable Opp.* 24.

The deliberative process privilege "shields from disclosure documents reflecting advisory opinions, recommendations, and deliberations comprising part of a process by which governmental decisions and policies are formulated." *U.S. Fish & Wildlife Serv. v. Sierra Club, Inc.*, 592 U.S. 261, 267 (2021) (cleaned up); *see also F.T.C. v. Warner Commc'ns Inc.*, 742 F.2d 1156, 1161 (9th Cir. 1984) (describing requirements of deliberative process privilege). While *Blue Mountains* confirms that deliberative materials generally are not part of the record, the Ninth Circuit expressly cabined this principle to circumstances "absent impropriety or bad faith by the agency." *Blue Mountains*, 99 F.4th at 444. Indeed, *Blue Mountains* recognized that "'a showing of bad faith or improper behavior' might justify production of a privilege log to allow the district to determine

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.   2:24-cv-05459-MWC-MAA                              Date: March 12, 2026

Title:      Center For Biological Diversity *et al* v. Doug Burgum *et al*

whether excluded documents are actually deliberative." *Id.* at 445.  Further, to the extent communications were shared with Sable, a non-governmental applicant, they are not shielded by the deliberative process privilege.

Accordingly, the Court will require a privilege log for any withheld materials. BSEE must identify any withheld documents (including internal communications, drafts, and memoranda) responsive to the categories below and log them with sufficient detail to permit assessment of any deliberative process or other privilege claim.  Specifically, the privilege log must identify each document for which a privilege or work product protection is claimed, its author, recipients, date of preparation, and the specific privilege or work product protection claimed. [2]

IV.      Conclusion

For the foregoing reasons, the Court **GRANTS** the Motion and hereby **ORDERS** as follows:

1.      Plaintiffs' motion to compel completion of the administrative record with the report by Dr. Susan C. Lubetkin, transmittal email, and cover letter is **GRANTED**.

2.      The Court **ORDERS** Federal Defendants to complete the record with all external agency communications— including but not limited to all records of correspondence, emails, chats, meeting notes, memos—regarding the Santa Ynez Unit between April 19, 2024, and May 29, 2025, the date that BSEE issued its 2025 Decision on the lease extensions for the Santa Ynez Unit. This shall include all external communications directly and indirectly considered by the Bureau of Safety and Environmental Enforcement (BSEE) in connection with its 2025 Decision and Environmental Assessment/ Finding of No Significant Impact (EA/FONSI) on the lease extensions for the Santa Ynez Unit.

3.      The Court **DECLARES** that Plaintiffs have met their burden to establish bad faith and therefore judicial review of Plaintiffs' claims is not confined to the administrative

---

[2] The Court will conduct limited in camera review, as needed, to resolve any disputes after the privilege log is served.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA


**CIVIL MINUTES – GENERAL**


Case No.   2:24-cv-05459-MWC-MAA                    Date: March 12, 2026

Title:   Center For Biological Diversity *et al* v. Doug Burgum *et al*


record as lodged, and that the admission of extra-record evidence is permissible under the applicable exceptions to record review.

4.       The Court **GRANTS** the motion to supplement the administrative record with internal communications and other records that may be considered deliberative, limited to records created between April 19, 2024, and the present regarding the 2025 Decision and EA/FONSI for the Santa Ynez Unit lease extensions.  The Court finds that Plaintiffs have met their burden to overcome the deliberative process privilege as it applies to internal correspondence, draft documents, and other records in connection with the 2025 Decision and EA/FONSI.  The Court **ORDERS** Federal Defendants to produce deliberative materials documenting the process and motives of decisionmakers for the 2025 lease extensions determinations.

5.       The Court **ORDERS** Federal Defendants to produce a privilege log for any withheld materials.  Any withheld documents (including internal communications, drafts, and memoranda) responsive to the categories identified herein must be identified in the privilege log.  For each document for which a privilege or work product protection is claimed, the log must note its author, recipients, date of preparation, and the specific privilege or work product protection claimed.

6.       Federal Defendants shall comply with the foregoing requirements **within 60 days** of the date of this order.


     **IT IS SO ORDERED.**


                                                                    :

                                          **Initials of Preparer**   TJ